**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ART AKIANE LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 19-cv-02952 |
| v. | ) |
| | ) Judge Edmond E. Chang |
| ART & SOULWORKS LLC, and | ) |
| CAROL CORNELIUSON, | ) |
| | ) |
| Defendants. | ) |

### DECLARATION OF CAROLYN CORNELIUSON

    I, Carolyn Corneliuson, am of majority age, and I give this Declaration of my own free will. I have personal knowledge of and am competent to testify to the facts stated here.

**A.    BACKGROUND**

    1.    I am a resident of Evergreen, Colorado.

    2.    Art & SoulWorks LLC is a Colorado limited liability company with its principal place of business in Evergreen, Colorado.

    3.    I am the sole member of Art & SoulWorks, LLC.

    4.    I founded Art & SoulWorks ("ASW") approximately ten years ago to reflect my devotion to God and to help further my mission to be an example to others. I took early retirement in order to open ASW. Prior to that I was a successful entrepreneur and for the past 8 years before ASW, I was a Director of Antioch Publishing, dealing with licensing for Disney with such partners as Barnes & Noble, Scholastic, Walden's Books, Family Christian.

    5.    Through the www.art-soulworks.com website, trade shows, social media and other avenues, ASW provides a variety of religious-based gifts and art designed to inspire, educate and promote Bible-based values to individuals and families globally.

6. ASW donates 20% of its proceeds to local, national and global programs dedicated to helping those in need.

**B.   ART AKIANE**

7. Beginning in 2006, ASW began a relationship with the Kramarik family, at first creating products such as bookmarks reflecting Akiane's art and selling them to retail outlets like Barnes & Noble.

8. We formalized our relationship in writing in 2008 through the Art Akiane, LLC & Art & SoulWorks, LLC Art Images & Licensing Agreement ("Licensing Agreement") which is attached to this Declaration. (A copy of the Licensing Agreement attached as Ex. 1.)

**C.   LICENSING AGREEMENT**

9. The Licensing Agreement had an initial term of five years, was renewed in 2012 until 2015 via a second round of signatures on the original agreement, and was renewed again in 2016 (via a third set of signatures on the original agreement) until January 11, 2019.

10. ASW was initially limited to the manufacture, reproduction, marketing and sales of solely the works listed on the first Schedule A ("Schedule A1") to the License Agreement.

11. ASW obtained the rights in "All images painted, drawn, sketched or otherwise created by Akine [sic] Kramarik from age 4 to current" as part of the second Schedule A ("Schedule A2").

12. Per the Licensing Agreement, ASW paid Art Akiane a 10% royalty on the wholesale price of all items sold under the agreement (the "licensed sales").

13. There is no provision in the contract that addresses the wind-down of the relationship or the parties' obligations in the event the contract is not renewed after expiration.

**D.** **WHOLESALE SALES**

14. In addition to the licensing rights, beginning in 2008, ASW and Art Akiane also had an oral agreement allowing ASW to sell and market additional works and products.

15. This agreement arose out of a request from Art Akiane that ASW essentially mimic the Akiane Gallery website to enhance the exposure and selling opportunities of Akiane's prints and paintings.

16. At ASW's own expense, we greatly expanded the website to include paintings, prints and canvasses of Art Akiane, with the assistance of Art Akiane to ensure accurate descriptions and appropriate photos of all of these works.

17. As part of this ongoing agreement, we were able to and encouraged to display Akiane's prints, canvasses, paintings, etc., sold by the Akiane Gallery on the ASW website and elsewhere.

18. ASW either purchased these works at wholesale prices and kept them in inventory for customers, or, if a customer expressed interest in a piece that ASW was allowed to market but had not yet purchased, ASW would then purchase the piece from Akiane Gallery at the wholesale price (50% discount off of retail prices), and resell the piece to the customer with Art Akiane's blessing.

19. One example of the latter is reflected in the 7/1/2010 email between Art Akiane and me, along with an ASW Purchase Order and request that Art Akiane ship to ASW's customer. Id. (A copy of the 7/1/2010 email and Purchase Order are attached as Ex. 2.)

20. ASW publicized the pieces under the wholesale sales agreement on its website, Twitter, Instagram, youtube, in marketing materials and at trade shows, with full knowledge and assistance by Art Akiane.

21. Not only were these wholesale sales requested and endorsed by Art Akiane, but they were totally facilitated with its approval, as ASW had to obtain the pieces to resell from Art Akiane itself.

22. In fact, Art Akiane often drop-shipped items that were not yet in ASW's inventory to customers that came through ASW's social media sites or website to purchase. (*See* Ex. 2).

23. A spreadsheet reflecting the more than 50,000 "wholesale sales" that ASW made with over the years with Art Akiane's knowledge and blessing and pursuant to the oral agreement is attached as Ex. 3.

24. Even after the termination by Art Akiane, I forwarded interested customers to Art Akiane. The email attached as Exhibit 4 illustrates that one such customer purchased three pieces of art. This is simply one example of Akiane Gallery purchases facilitated by ASW and me.

E.  **PRIVATE COLLECTION**

25. At various points in time, ASW or I purchased original or limited edition pieces from the Art Akiane Gallery at full price for my private collection ("private collection" pieces).

26. I own 10 pieces of Akiane art as part of my private collection.

27. These pieces currently have a retail value of approximately $600,000 or more.

F.  **ASW RELIANCE**

28. ASW and I relied on the parties' course of dealings over the span of the more than 11-year relationship in conducting its business.

29. For example, since the contractual relationship began, ASW and I expended hundreds of thousands of dollars on inventory, paying for and attending trade shows, building out and maintaining its website, paying staff, drafting content and continuously trying to promote Akiane, her works and Art Akiane and Akiane Gallery.

30. These expenditures continued in the months leading up to the termination and non-renewal.

31. I trusted that, as we had many times before, the parties would renew the Licensing Agreement, and the verbal wholesale agreement allowing for the purchase, display and resale of other Akiane works, would continue to be in effect.

32. While I recognized that the parties' relationship might not continue forever, I reasonably expected that any cessation of the relationship would occur only with sufficient advanced notice to ensure that entire ASW business did not fail in the process.

33. I was so unaware of Art Akiane's intention of non-renewal, that ASW committed to trade shows, advertising, marketing brochures and collateral, and new product orders well into 2019, for which it had already expended substantial amounts of money.

34. Also, as it had for the previous years of their relationship, ASW created the 2019 "Prince of Peace" calendar, and committed to the 2020 calendar, as well as many other items intended for sale in 2019 and beyond.

35. ASW also placed an order of $11,000 worth of wholesale sales merchandise on January 10 – one day before Art Akiane summarily terminated the relationship.

36. Art Akiane did nothing to dissuade me or ASW of this purchase.

37. In the months leading up to the termination, Art Akiane continued to send videos it had created and links of new Akiane works to ensure that the ASW website posted them at the same time and price as the Akiane Gallery to multiply the exposure.

38. An email written by Jeanlu Kramarik and attached, illustrates that Art Akiane not only gave permission for ASW to market and post its works, including new ones, but that it created

5

videos to be posted to the ASW website so that sales of these works could be made. (A copy of the Jeanlu Kramarik e-mail attached as Ex. 5.)

39. In fact, the posting of the video on ASW's site at Art Akiane's direction resulted in an $85,000 sale of a recent Akiane painting, "The Light."

**G. TERMINATION OF LICENSING AGREEMENT**

40. When Art Akiane did give notice of the termination and non-renewal of the Licensing Agreement, it did so with a glowing 8 page letter to ASW which had a "Licensing Dissolvement Agreement" signed by Art Akiane and Akiane Art Gallery at the end. (A copy of the termination letter is attached as Ex. 5.)

41. The letter contained said things like, "The relationship between you and our family has been meaningful, fruitful and positive," and "The decade-long relationship between Art Akiane LLC, Akiane Art Gallery LLC and Art-SoulWorks continued to be mutually beneficial and progressive."

42. The Dissolvement Agreement, dated January 10, 2019, stated that as of January 11, 2019, ASW had to remove all "official" titles, change Facebook page names, remove all "official source" titles from all Google web search pages, and remove all references to being an "authorized" seller or distributor of Akiane's work, forego any "future posts" on all social medial platforms, Google searches, websites that have anything to do with Akiane's "name," "brand" or "artwork," etc.

43. Furthermore, effect January 11, 2019, Art Akiane stated that ASW could "no longer sell, license or distribute Akiane's artwork," and "all merchandise" associated with Akiane's art had to be "discontinued."

44. Finally, Art Akiane dictated that ASW had only until March 1, 2019 to "liquidate" all inventory, but noted that the full royalty fee would still be in effect.

45. "Dissolvement Agreement" was not agreed to by me or ASW, nor was it consistent with the parties' prior course of dealings which ASW and I relied upon based on the previous "business as usual" conduct between the parties.

46. As of 2018, the Akiane works and products made up approximately 85% of ASW's business.

47. The "Dissolvement Agreement" gave literally *no* notice to ASW before the mandate to remove all prior references and stop selling kicked in, effective January 11.

48. The Dissolvement Agreement also attempted to dictate ASW's conduct with respect to the works that had already been purchased under the wholesale agreement, as well as the works that were part of my own private collection.

**H.     COMPLIANCE WITH BAD FAITH WIND DOWN DEMANDS**

49. ASW and I attempted in good faith to work with Art Akiane to extend the date of liquidation listed in the termination letter.

50. The parties went back and forth so many times with respect to this issue that ASW packed and unpacked their merchandise again and again each time it seemed that there would be a reprieve.

51. Ultimately, there was no reprieve from Art Akiane, and ASW was forced to sell the remainder of the merchandise covered by the Licensing Agreement at fire-sale prices.

52. It did so prior to the artificially imposed March 1 deadline.

53. In doing so, ASW lost hundreds of thousands of dollars that it would have obtained had it had a reasonable period of time in which to make the sales.

54. Prior to and following the termination, Art Akiane was well aware of the fact that ASW and I resold works they had purchased through the wholesale agreement or from the private collection.

55. In fact, in an email dated March 29, 2019, Foreli Kramarik, Akiane's mother and the "Original Art Acquisition Director" of the Akiane Gallery gave me advice on the suggested resale prices, depending on whether I wanted to sell the pieces quickly or more patiently. (A copy of the Foreli Kramarik email is Ex. 7.)

56. In addition to liquidating its inventory covered by the Licensing Agreement as directed by Art Akiane, ASW also made the voluminous and time consuming changes to its website and other social media outlets as demanded by the termination letter.

57. In addition to hiding hundreds of pages, with the Kramarik's blessing, ASW changed the many previous references from "exclusive source…" to "trusted source of Akiane art."

58. Also, in the "About" section of its website, it states the following:

> We were pleased to be the exclusive global licensors and distributors of "Prince of Peace" and all art by Akiane Kramarik from 2006 through March 1, 2019. Considered one of the top 20 living artists, Akiane painted her first masterpiece "Prince of Peace," her portrait of Jesus, at age 8. Akiane, now 25 has informed us that she has chosen to be completely independent. We wish her well and hope that her visions of God, Jesus, and heaven continue to bless her and her artwork.

https://art-soulworks.com/pages/about-us.

59. Making these changes caused significant problems for ASW, as it resulted in the ASW website having hundreds of broken links and errors, as reflected in the SEMrush site audit report. (A copy of the SEMrush site audit report is attached as Ex. 8.)

60. Trying to fix these issues has cost ASW time and money.

61. ASW continues to market for sale the works it purchased pursuant to the verbal wholesale agreement and works I own as part of the private collection.

62. ASW has done so on the ASW website, Facebook page and through other social media avenues.

63. ASW owns the domain name "Jesusprinceofpeace.com," which points to the ASW website.

64. Hundreds of people and other entities selling Akiane work they own are doing the same on sites like, Etsy, eBay, Pinterest, in Facebook groups or on their own websites. (Copies of examples of these sites are attached as Ex. 9.)

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

                                              **Signed version will be tendered in court on 5/23**

                                              _____
                                              Carolyn Corneliuson