**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ART AKIANE LLC,         ) | |
|        ) | |
|     Plaintiff,     ) | |
|        ) | Case No. 19-cv-02952 |
| v.        ) | |
|        ) | Judge Edmond E. Chang |
| ART & SOULWORKS LLC, and   ) | |
| CAROL CORNELIUSON,     ) | |
|        ) | |
|     Defendants.    ) | |

-------------------------------------------------------- )

| | |
|---|---|
|        ) | |
| ART & SOULWORKS LLC, and   ) | |
| CAROLYNE CORNELIUSON,    ) | |
|        ) | |
|    Defendants - Counter-Plaintiffs,  ) | |
| v.        ) | |
|        ) | |
| ART AKIANE LLC,      ) | |
|        ) | |
|    Plaintiff - Counter-Defendant,  ) | |
|        ) | |
| and        ) | |
|        ) | |
| AKIANE ART GALLERY, LLC, and  ) | |
| AKIANE KRAMARIK,     ) | |
|        ) | |
|    Counter-Defendants.   ) | |

**ART & SOULWORKS LLC AND
CAROLYNE CORNELIUSON'S ANSWER,
AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

      Art & Soulworks LLC and Carolyne Corneliuson hereby answers Plaintiff Art Akiane

LLC's Complaint as follows:

      1.    Plaintiff Art Akiane LLC ("Art Akiane") brings this action against Defendants

Carolyne Corneliuson ("Corneliuson") and Art & SoulWorks LLC ("ASW") (collectively

"Defendants") because of Defendants' illicit copying and distribution of Akiane Kramarik's

artwork, trademark infringement, deceptive trade practices, unfair competition, and Defendants' other violations of federal and state law.

**ANSWER:** Defendants deny that Defendants engaged in any unlawful conduct as set forth in paragraph 1.

2. Akiane Kramarik is an internationally renowned artist who has been recognized as a gifted child prodigy and garnered international acclaim for her works. She has appeared on the *Oprah Winfrey Show*, and been featured on the *Katie Couric Show, World News Tonight, Good Morning America, CNN, The View, Fox News*, the *Montel Williams Show*, and many others.

**ANSWER:** Defendants admit the allegations contained in paragraph 2.

3. In 2007, Akiane licensed to ASW the right to print certain artwork on bookmarks, journals, wallet cards, calendars, and greeting cards for sale, through her licensing company, Art Akiane LLC, the plaintiff in this matter. The license expired on January 11, 2019.  Undeterred by the expiration of the license, Defendants refused to stop selling Akiane's artwork, and continue to sell, copy, modify and distribute Akiane's artwork without authorization and misrepresent that they are the authorized source and representatives of Akiane's artwork.

**ANSWER:** Defendants admit there is a written license agreement between ASW and Art Akiane LLC ("License Agreement") that Plaintiff opted to ***not*** attach to this Complaint, but deny the agreement was limited in the manner claimed by Plaintiff for the entirety of the relationship between the parties. Furthermore, there were also a number of oral modifications to the License Agreement that the parties entered into in over the course of their relationship.  In one, Plaintiff wanted to expand the scope of its sales and sold Akiane art to Defendants at wholesale prices so Defendants could resell the work ("Wholesale Agreement"). This oral agreement did not have an expiration date. Art Akiane, through Mark Kramarik, also entered into an oral agreement with

2

ASW and Corneliuson in which they were allowed to print copies of any works in a series called "the Jesus Series," as well as other works, such as, "Supreme Sanctuary," market and display these works and pay a royalty to Art Akiane for any sales (the "Printing Agreement"). The Printing Agreement also did not have an expiration date. Plaintiff also sold Akiane art to Defendant Corneliuson for her private collection. As the Plaintiffs admitted in open court during the TRO proceedings, and the Court held (*see* Dkt. 25), Defendants are entitled to continue selling and displaying for sale any works in their private collection or in their possession because of the Wholesale Agreement. Defendants deny the remaining allegations contained in paragraph 3.

4. Through their misconduct Defendants continue to reap immense financial profit and benefit off of Akiane's work.

**ANSWER:** Defendants deny the allegations contained in paragraph 4.

## I. THE PARTIES

5. Art Akiane LLC is an Illinois limited liability company with its principal place of business at 833 Central Ave., Unit 1250, Highland Park, IL 60035. Art Akiane is the intellectual property holding company of Akiane Kramarik, and Akiane Kramarik has transferred all right, title and interest in her artwork, and name and likeness, to Art Akiane.

**ANSWER:** Defendants admit that Art Akiane LLC is an Illinois limited liability company with its principal place of business at 833 Central Ave., Unit 1250, Highland Park, IL 60035. However, Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 5 and therefore deny the same.

6. Upon information and belief, Art & SoulWorks LLC is a Colorado limited liability company with its principal place of business at 214 Ranch Road, Evergreen, CO 80439.

**ANSWER:** Defendants admit the allegations contained in paragraph 6.

7.      Corneliuson is an individual who, on information and belief, resides at 214 Ranch Road, Evergreen, CO 80439. Upon information and belief, Corneliuson is the owner and sole member of Art & SoulWorks LLC.

**ANSWER:**      Defendants admit the allegations contained in paragraph 7.

## II.      STATUTORY BASIS AND NATURE OF ACTION

8.      This action is for: (1) copyright infringement under the Copyright Act, 17 U.S.C. §§ 1, *et seq*.; (2) unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair competition under Illinois common law; (4) deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1-510/7; (5) unjust enrichment under Illinois common law; (6) removal and alteration of copyright management information under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202; (7) violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (8) tortious interference with a prospective economic advantage under Illinois common law; and (9) violation of the Illinois Right of Publicity Act, 765 ILCS § 1075/1-60.

**ANSWER:**      This paragraph is a conclusory statement to which no answer is required. To the extent an answer is required, Defendants deny that they have acted unlawfully in any way as set for in the counts listed in paragraph 8.

9.      Art Akiane seeks preliminary and permanent injunctive relief and an award of profits and statutory damages, among other remedies.

**ANSWER:**      Defendants admit the allegations contained in paragraph 9.

## III.      JURISDICTION AND VENUE

4

10.    This Court has subject matter jurisdiction to hear and determine this controversy pursuant to 28 U.S.C. §§ 1331 and 1338 because the action arises under the federal Copyright Act and Lanham Act. *See* 17 U.S.C. §§ 101, *et seq.*; 15 U.S.C. §§ 1051, *et seq.*

**ANSWER:**    To the extent the copyright and trademark claims remain, Defendants admit the allegations contained in paragraph 10. To the extent the copyright and trademark claims are extinguished, Defendants deny the allegations contained in paragraph 10.

11.    This Court has supplemental jurisdiction to hear and determine the state law claims, which arise under the statutory and common laws of the State of Illinois, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution and derive from a common nucleus of operative facts.

**ANSWER:**    Defendants admit that so long as there are viable federal claims, the Court has supplemental jurisdiction for the remaining causes of action. If the federal claims are dismissed, this Court would not have supplemental jurisdiction for the remaining causes of action contained in paragraph 10.

12.    Venue and personal jurisdiction are proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims herein occurred in this District and Defendants have promoted infringing goods in this District.

**ANSWER:**    Defendants submit to the jurisdiction and venue in this Court, but deny that a substantial part of the events giving rise to the claims occurred in this District and therefore deny the allegations contained in paragraph 12.

13.    This Court has personal jurisdiction over Defendants because Defendants have continuous and systematic contacts with the state of Illinois, because they have purposefully

directed their activities toward the state of Illinois, causing harm suffered in the state of Illinois, and because this action is based upon activities that arise out of or relate to those contacts. Defendants targets consumers in Illinois in the sale of goods, and have contracted with Plaintiff, an Illinois company.

**ANSWER:** Defendants deny the allegations as stated in paragraph 13 but submit to the jurisdiction of this court for purposes of this dispute.

### IV.     FACTUAL BACKGROUND

### A. Akiane Kramarik and Art Akiane

14.     Akiane comes from humble beginnings, having been born and raised in abject poverty. She began creating her artwork, including many of the Works (as defined in paragraph 22 below) at age four. Despite the challenges she faced growing up, she worked hard to develop her artistic talent, creating hundreds of original and renowned masterpieces over the past two decades.

**ANSWER:** Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 14 and therefore deny the same.

15.     Throughout her young life, Akiane developed her skillset through no formal training: she began drawing complex and sophisticated artwork utilizing different mediums including candles, charcoal, and pencils; at the age of six, she began painting; by the age of seven, Akiane was knowledgeable in the use of color pastels and acrylic paints; and at the age of eight, she had completed a five-foot long oil painting mastering realism, and was already holding solo art exhibitions.

**ANSWER:** Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 15 and therefore deny the same.

16.     Akiane's art has been showcased in numerous galleries and developed an international fan base that continues to grow. She has received extensive media coverage in Australia, China, Brazil, Japan, Korea, Russia, Ireland, England, Scotland, the Netherlands, France, Hungary, Poland, Lithuania, Latvia, Canada, the Middle East, and Norway.

**ANSWER:**     Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 16 and therefore deny the same.

17.     Akiane's online gallery, located at www.akiane.com, has had nearly 450 million global visitors over the past decade. Her art exhibitions have been featured in museums, galleries, embassies, universities, institutes, churches, and corporations all around the world.

**ANSWER:**     Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 17 and therefore deny the same.

18.     She has also been featured in documentaries and made hundreds of media appearances. In addition to the shows mentioned above, she has been featured on the *Glen Beck Program*, *The Late Late Show*, *Lou Dobbs Tonight*, *Hour of Power*, *Superhuman: Genius*, *The Indigo Evolution*, *Miracle Detectives*, *Extreme Prophetic*, *Trinity Broadcast Network*, *Supreme Master Television*, and *Super Kids*.

**ANSWER:**     Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 18 and therefore deny the same.

19.     Akiane has raised hundreds of thousands of dollars globally through her charity auctions and art exhibits for the impoverished, and she has used her talents and artwork to contribute to over two hundred international and charitable foundations and fundraisers, including Northwest Medical Teams and the Smile Network.

**ANSWER:**     Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 19 and therefore deny the same.

20.     Due to her immense talent and fan base, Akiane has even been portrayed in the *New York Times* best-selling book *Heaven is For Real*, which was adapted into a 2014 film produced by Sony Pictures.

**ANSWER:**     Defendants deny that Akiane's portrayal in *Heaven is For Real* is due to her "immense talent and fan base," and instead states that it was due to Defendants' intervention to ensure Akiane's work was included. Defendants admit the remaining allegations contained in paragraph 20.

21.     Akiane's name and persona have developed enormous commercial value in promoting her artwork as a result of the public's widespread knowledge and admiration of her talents.

**ANSWER:**     Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 21 and therefore deny the same.

22.     Akiane assigned the copyright registrations for the Works to Art Akiane. Art Akiane owns all necessary rights to the following copyrights, registered at the U.S. Copyright Office, for the following visual works of art (the "Works"):

| Title of Work | Registration No. | Work |
|---|---|---|
| Prince of Peace | VA 1-921-911 |  |

8

| | | |
|---|---|---|
| Father Forgive Them | VA 1-960-272 |  |
| Jesus | VA 2-142-942 |  |
| Barefoot | VA 2-010-303 |  |
| I AM | VA 2-010-300 |  |
| Mother's Love | VA 1-925-543 |  |
| Innocence | VA 2-010-352 |  |
| On My Knees | VA 1-924-181 |  |

| Hope | VA 1-925-448 |  |
|------|--------------|--------------|
| Co-Creation | VA 1-924-158 |  |
| The Swing | VA 2-011-840 |  |
| Love at First Sight | VA 1-924-183 |  |
| Vulnerable | VA 2-010-397 |  |

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 22 and therefore deny the same.

23.     Attached as Exhibit A are true and correct copies of the certificates of registration or registration information for the Works.

**ANSWER:**     Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 23 and therefore deny the same.

24.     The Works are original works of authorship, all created between 2002 and 2018. Akiane is the sole author of the Works.

**ANSWER:** Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 24 and therefore deny the same.

25. As the owner of the above-listed Works and pursuant to Section 106 of the Copyright Act, Art Akiane has the exclusive right to reproduce the Works, prepare derivative works of them, distribute copies to the public, and display the Works publicly.

**ANSWER:** Defendants deny the allegations contained in paragraph 25. Since 2007, ASW owned the exclusive right to take certain actions alleged in paragraph 25.

26. Art Akiane owns all right, title and interest in and to Akiane's name and likeness.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 26 as they relate to the relationship between Art Akiane and Akiane Kramarik and therefore deny the same. However, Defendants had rights and interests bestowed upon them as a result of the written License Agreement, the Wholesale Agreement and Printing Agreement and therefore deny the allegations in this paragraph on that basis.

27. Since at least as early as 2003, Art Akiane has also been substantially and continuously using the name and likeness of Akiane in the marketing and sale of the Works.

**ANSWER:** Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 27 and therefore deny the same.

28. Art Akiane owns all right, title and interest in and to Art Akiane and Akiane's trademarks, which are imprinted on the Works that Art Akiane sells, and are extensively used in online and media advertising. By virtue of the quality and nature of the goods offered under the trademarks, the extensive sales, advertising, provision, marketing and promotion under the trademarks, and the substantially exclusive and continuous use of the trademarks for over 16 years

for and in connection with the Works, the trademarks have come to symbolize and identify a source of great and valuable goodwill for and in connection with Art Akiane's goods.

**ANSWER:** Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 28, as they relate to the relationship between Art Akiane and Akiane Kramarik and therefore deny the same. However, Defendants had rights and interests bestowed upon them as a result of the written License Agreement, Wholesale Agreement and Printing Agreement and therefore deny the allegations in this paragraph on that basis.

29. Art Akiane has used its trademarks in commerce throughout the United States continuously since at least 2003 for the distribution, provision, sale, marketing, advertising, and promotion of the goods associated with its marks. Attached as Exhibit B is a representative sample showing Art Akiane's use of its trademarks (the "AKIANE Marks") in connection with these goods.

**ANSWER:** Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 29 and therefore deny the same.

30. As a result of its widespread, continuous, and exclusive use of the AKIANE Marks to identify its goods and Art Akiane as their source, Art Akiane owns valid and subsisting rights to the AKIANE Marks.

**ANSWER:** Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 30 and therefore deny the same.

31. The AKIANE Marks are distinctive to both the consuming public and to those in Art Akiane's industry.

**ANSWER:** Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 31 and therefore deny the same.

12

32.     Art Akiane has expended substantial time, money, and resources marketing, advertising, and promoting the goods sold under the AKIANE Marks, including through online blog posts, speaking engagements, attendance and participation at media events, and publishing books and newsletters about Akiane. Exhibit C. Art Akiane has expended significant resources on the marketing, advertising, and promotion of the goods sold under the AKIANE Marks.

**ANSWER:**     Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 32 and therefore deny the same.

33.     Consumers understand and see that the Art Akiane goods originate from Art Akiane. As a result of Art Akiane's considerable expenditures and efforts, the AKIANE Marks have come to signify the high quality of the goods designated by the AKIANE Marks, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Art Akiane.

**ANSWER:**     Defendants deny the allegations contained in paragraph 33.

34.     Art Akiane has protected and enforced its AKIANE Marks against past infringements, including sending numerous cease and desist letters to infringers.

**ANSWER:**     Defendants deny the allegations contained in paragraph 34.

**B. Defendants Corneliuson and ASW**

35.     ASW is a business entity that profits from selling religiously themed art, ornaments, home décor, and other various goods to consumers.

**ANSWER:**     Defendants admit that ASW is a for-profit entity, but states that at least 20% of its profits are donated to non-profit organizations.

36.     Upon information and belief, Corneliuson is the owner and sole member of ASW. ASW, at the direction of Corneliuson, sells products on its website, which it also utilizes to promote and sell its goods. Exhibit D.  At Corneliuson's direction and with her knowledge, ASW

sells products on various e-commerce stores such as Amazon, eBay, Christianbooks, Mardel, and others.

**ANSWER:** Defendants admit they sell on Amazon but deny the remaining allegations contained in paragraph 36.

37. Upon information and belief, Corneliuson directs and controls the operations of ASW, ASW's websites https://art-soulworks.com and www.jesusprinceofpeace.com, and ASW's social media, including its Facebook page at www.facebook.com/jesusprinceofpeace, its Twitter page at https://twitter.com/ArtnSoulworks, and its Instagram page at https://www.instagram.com/jesus_art_akiane/.

**ANSWER:** Www.jesusprinceofpeace.com is a URL that points to www.art-soulworks.com. It is not an independent website. The Facebook page is called "Prince of Peace Friends." Plaintiff has absolutely no right to the phrase "Prince of Peace" or "Jesus" or any combination of these words. The Instagram account name referencing Akiane was made when the various agreements of the parties were in place. At Plaintiff's request, the Instagram page name was changed to "Jesus_art_inspiration." Defendants admit the remaining allegations contained in paragraph 37.

38. On January 11, 2007, Art Akiane and ASW entered into a licensing agreement (the "Agreement"), which expired on January 11, 2019.

**ANSWER:** Defendants admit that ASW entered into a licensing agreement with ASW on January 11, 2007, but states that in addition to the terms listed in the License Agreement, the parties' course of dealings and the Wholesale Agreement and Printing Agreement governed the parties' relationship. Defendants deny the remaining allegations contained in paragraph 38.

39. Art Akiane licensed the copyrighted paintings "Prince of Peace" (Reg. VA 1-921-911), Father Forgive Them (Reg. VA 1-960-272), Trust (Reg. VA 1-925-445), Love at First Sight

(Reg. VA 1-924-183), Blessing (Reg. VA 1-924-543), The Challenge (Reg. VA 1-924-186), and Mother's Love (VA 1-925-543), to ASW to be reproduced and printed on bookmarks, journals, wallet cards, calendars, deck cards, and greeting cards for Defendants to sell to consumers.

**ANSWER:** Defendants admit that some of the listed categories of items were included in the first Schedule A to the License Agreement and that it was limited to the works listed in paragraph 39. However, Defendants deny that these limitations applied throughout the parties' relationship and therefore deny the allegations contained in paragraph 39.

40. Unknown to Art Akiane, and upon information and belief, Defendants had been copying, displaying, distributing, and selling Art Akiane's other Works, despite never having been granted licensing rights to do so under the Agreement.

**ANSWER:** Defendants deny the allegations contained in paragraph 40.

41. Upon information and belief, Corneliuson represented herself to be the sole representative of all the Works to customers.

**ANSWER:** Defendants deny the allegations contained in paragraph 41.

42. Between 2011 to 2018, potential customers and art collectors who were interested in purchasing Art Akiane's artwork contacted Corneliuson in order to purchase original artwork. Corneliuson would contact Art Akiane to request the price for the original artwork, without disclosing to Art Akiane the identity of the potential customer.

**ANSWER:** Defendants deny the allegations contained in paragraph 42 and refers to her response to Plaintiff's Motion for TRO for examples demonstrating that this allegation is untrue.

43. Upon information and belief, Corneliuson would not allow further communications between these potential customers and Art Akiane, despite Art Akiane's willingness to negotiate purchase terms for the artwork and the legitimate expectancy to enter

15

into a valid business relationship with those customers.

**ANSWER:**    Defendants deny the allegations contained in paragraph 43.

44.    Art Akiane could not contact the potential customers because Corneliuson withheld customer contact information. Art Akiane lost sales because negotiations with potential customers deteriorated when Art Akiane could not contact these customers.

**ANSWER:**    Defendants deny the allegations contained in paragraph 44.

45.    On January 10, 2019, Art Akiane sent a letter to Corneliuson, formally notifying her that Art Akiane would not be renewing the Agreement.

**ANSWER:**    Defendants admit that they received a letter from Art Akiane, Mark and Foreli Kramarik, Akiane Art Gallery, LLC and Akiane Kramarik purporting to terminate the License Agreement.

46.    Corneliuson was upset that Art Akiane would not renew the Agreement.

**ANSWER:**    Defendants admit the allegations contained in paragraph 46.

## C. Defendants' Infringing Conduct and Willful Copying

47.    Despite the expiration of the Agreement, Defendants continue to make copies, display, and distribute the Works without authorization, including on ASW's online store, ASW's Facebook page at www.facebook.com/jesusprinceofpeace, ASW's Twitter page at https://twitter.com/ArtnSoulworks, ASW's Instagram page at https://www.instagram.com/jesus_art_akiane/, and through Squareup, St. Jude Shop, Amazon, eBay, Christianbook, Mardel, and other online stores on the internet. Exhibit E.

**ANSWER:**    Defendants deny the allegations contained in paragraph 47 and affirmatively state that the display or sale of the art in question is lawful.

48.    Defendants also modified copies of Akiane's artwork by altering or removing

16

Akiane's signature and other identifying information, and distributed the altered Works on the internet on ASW's Facebook page, Twitter page, Instagram page, YouTube, their online store, and other websites. Exhibit F.

**ANSWER:** Defendants deny the allegations contained in paragraph 48.

49. Defendants altered or removed copyright management information from Akiane's artwork in at least 755 instances, publicizing those images with altered or removed copyright management information. Attached as Exhibit G is a table summarizing the instances Defendants impermissibly published the artwork with altered or removed copyright management information.

**ANSWER:** Defendants deny the allegations contained in paragraph 49.

50. Upon information and belief, the alteration or removal of copyright management information was directed by Corneliuson, and done with the purpose of marketing and profiting off of ASW's association with Art Akiane.

**ANSWER:** Defendants deny the allegations contained in paragraph 50.

51. Art Akiane never gave Defendants permission or authority to remove copyright management information from the Works.

**ANSWER:** Defendants deny the allegations contained in paragraph 51.

52. Defendants also created, registered, and run unauthorized Facebook, Twitter, and Instagram pages using Akiane's likeness, and that prominently uses the AKIANE Marks, including in the domain name for the Facebook page located at www.facebook.com/jesusprinceofpeace. Exhibit H.

**ANSWER:** Defendants admit they run various social media channels, but deny the remaining allegations contained in paragraph 52 and affirmatively state that the display or sale of the art in

question, including on social media sites, is lawful and that all of it was displayed with Plaintiff and the Kramarik's knowledge and approval.

53.     The domains advertise the sale of the Works and uses Akiane's likeness to promote the sale of infringing goods.

**ANSWER:**     Defendants admit that certain "domains" advertise Akiane work. Defendants deny the remaining allegations contained in paragraph 53 and affirmatively state that the display or sale of the art in question is lawful.

54.     Upon information and belief, Defendants maintain the Facebook, Twitter, and Instagram domains solely to profit from the sale of the Works.

**ANSWER:**     Defendants deny the allegations contained in paragraph 54.

55.     Defendants also created, registered, and continue to run the website domain www.jesusprinceofpeace.com, which prominently uses the AKIANE Marks, including in the domain name.

**ANSWER:**     Defendants     deny     the     allegations     contained     in     paragraph     55. Www.jesusprinceofpeace.com is an URL that points to www.art-soulworks.com. It is not an independent website. Defendants further affirmatively state that neither the words "Jesus" nor "Prince of Peace" nor the combination of those words are proprietary to Plaintiff, the Kramarik family or their affiliated businesses. Defendants own that domain and the display is lawful.

56.     Without Art Akiane's authorization, Defendants continue to use Akiane's likeness and the AKIANE Marks on their domain names, websites, e-commerce sites, and social media sites, including on their Facebook page, Twitter page, and Instagram page. Exhibit I.

**ANSWER:**     Defendants deny the allegations contained in paragraph 56 and affirmatively state that the display or sale of the art in question is lawful.

57.     Upon information and belief, Defendants continue to willfully distribute, provide, market, advertise, promote, and offer for sale the Works under the AKIANE Marks.

**ANSWER:**     Defendants admit that they lawfully continue to sell and promote for sale those works that Plaintiff in open court admitted and the Court held that Defendants are entitled to display and sell. Defendants deny any remaining allegations contained in paragraph 57.

58.     Upon information and belief, Defendants offer and sell the Works under the AKIANE Marks to the same types of consumers that comprise Art Akiane's same class of consumers and to whom Art Akiane sells the same goods to. Consumers are likely to be confused as to the source or sponsorship of the goods, as well as the association between Defendants and Art Akiane.

**ANSWER:**     Defendants admit that they lawfully continue to sell and promote for sale those works that Plaintiff in open court admitted and the Court held that Defendants are entitled to display and sell. Defendants deny any remaining allegations contained in paragraph 58.

59.     Defendants, upon information and belief, willfully appropriated Akiane's name and likeness in multiple ways including, without limitation, by uploading Akiane's images and name to Defendants' publicly available YouTube channel, Facebook page, Twitter page, Instagram page, and Defendants' website.

**ANSWER:**     Defendants deny the allegations contained in paragraph 59.

60.     Art Akiane did not authorize Defendants to use Akiane's name, identity, or likeness and Defendants had no consent to do so.

**ANSWER:**     Defendants deny the allegations contained in paragraph 60.

61.     Upon information and belief, Defendants' utilization of Akiane's name, identity, likeness, and reputation was purely for commercial purposes including, without limitation, to

offer for sale and promote Defendants' products via Defendants' website, Facebook page, Twitter page, Instagram page, YouTube channel, and other channels of trade.

**ANSWER:** Defendants deny the allegations contained in paragraph 61 and affirmatively state that the sale and display of the art in question is lawful.

62. Upon information and belief, Defendants have received and continue to receive a benefit from their utilization of Akiane's full name, identity, likeness, and reputation including, without limitation, internet traffic to Defendant's social media channels and website, increased search engine relevancy, and potential or actual customers who were directed to Defendants for no reason other than Defendants' utilization of Akiane's name, identity, and likeness.

**ANSWER:** Defendants deny the allegations contained in paragraph 62.

63. Defendants' infringing acts as alleged above have caused and are likely to continue to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of Defendants' goods and have and are likely to continue to deceive the relevant consuming public into believing, mistakenly, that Defendants' goods originate from, are associated or affiliated with, or otherwise authorized by Art Akiane.

**ANSWER:** Defendants deny the allegations contained in paragraph 63 and affirmatively state that the sale and display of the art in question is lawful.

64. Upon information and belief, Defendants' acts are willful with the deliberate intent to trade on the goodwill of Art Akiane's AKIANE Marks, cause confusion and deception in the marketplace, and divert potential sales of Art Akiane's goods to Defendants.

**ANSWER:** Defendants deny the allegations contained in paragraph 64 and affirmatively state that the sale and display of the art in question is lawful.

65. Defendants' acts are causing, and unless restrained, will continue to cause damage

and immediate irreparable harm to Art Akiane and to its valuable reputation and goodwill with the consuming public for which Art Akiane has no adequate remedy at law.

**ANSWER:**    Defendants deny the allegations contained in paragraph 65, refer Plaintiff to the Court's order denying their Motion for TRO (*see* Dkt. 25), and affirmatively state that the display or sale of the art in question is lawful.

**COUNT I**
**COPYRIGHT INFRINGEMENT**
**(AGAINST ALL DEFENDANTS)**

66.    Art Akiane realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

**ANSWER:**    Defendants repeat and reallege their responses to paragraphs 1 through 65 as though fully set forth herein as their answer to the allegations of paragraph 66.

67.    Art Akiane is the assignee of copyrights registered with the United States Copyright Office.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 67 and therefore deny the same.

68.    Art Akiane is the true, rightful, and sole owner of the copyrights in the Works, including Copyright Registration Nos. VA 1-921-911, VA 1-960-272, VA 2-142-942, VA 2- 010-303, VA 2-010-300, VA 1-925-543, VA 2-010-352, VA 1-924-181, VA 1-924-448, VA 1-924-158, VA 2-011-840, VA 1-924-183, and VA 2-010-397.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 68 and therefore deny the same.

69.    By their actions alleged above, Defendants have infringed Art Akiane's copyrights by knowingly copying and willfully reproducing and distributing into the market infringing content with knowledge that they are either direct copies or derivatives of the copyrighted

materials.

**ANSWER:** Defendants deny the allegations contained in paragraph 69.

70. Defendants without authority copied copyrighted content owned by Art Akiane for use on websites including Defendants' website at http://art-soulworks.com, www.jesusprinceofpeace.com, Amazon, Facebook, Twitter, Instagram, YouTube, and eBay.

**ANSWER:** Defendants deny the allegations contained in paragraph 70.

71. Defendants' acts of copyright infringement have caused and will continue to cause damage to Art Akiane, in an amount to be proven at trial.

**ANSWER:** Defendants deny the allegations contained in paragraph 71.

72. Art Akiane is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest.

**ANSWER:** Defendants deny the allegations contained in paragraph 72.

### COUNT II
### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
### (AGAINST ALL DEFENDANTS)

73. Art Akiane realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

**ANSWER:** Defendants repeat and reallege their responses to paragraphs 1 through 72 as though fully set forth herein as their answer to the allegations of paragraph 73.

74. Defendants' unauthorized use in commerce of the AKIANE Marks as alleged above is likely to confuse, cause mistake, or to deceive consumers as to the origin, source, sponsorship, or affiliation of its goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Art Akiane, or that Defendants are in some way affiliated with or sponsored by Art Akiane.

22

**ANSWER:**     Defendants deny the allegations contained in paragraph 74.

75.     Defendants' unauthorized use in commerce of the AKIANE Marks as alleged above constitutes use of a false designation of origin and misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER:**     Defendants deny the allegations contained in paragraph 75.

76.     Upon information and belief, Defendants' conduct as alleged above is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Art Akiane.

**ANSWER:**     Defendants deny the allegations contained in paragraph 76.

77.     Defendants' conduct as alleged above constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER:**     Defendants deny the allegations contained in paragraph 77.

78.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Art Akiane, and to its goodwill and reputation, and will continue to both damage Art Akiane and confuse the public unless enjoined by this Court. Art Akiane has no adequate remedy at law.

**ANSWER:**     Defendants deny the allegations contained in paragraph 78.

79.     Art Akiane is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**ANSWER:**     Defendants deny the allegations contained in paragraph 79.

**COUNT III**
**COMMON LAW UNFAIR COMPETITION**

**(AGAINST ALL DEFENDANTS)**

80.     Art Akiane realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

**ANSWER:**    Defendants repeat and reallege their responses to paragraphs 1 through 79 as though fully set forth herein as their answer to the allegations of paragraph 80.

81.     Art Akiane owns all rights, title, and interest in and to the AKIANE Marks, including but not limited to all common law rights in such marks due to Art Akiane's first use of the AKIANE Marks in this district. Defendants' unauthorized use in commerce of the AKIANE Marks as alleged herein occurred long after Art Akiane began using the AKIANE Marks and is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Art Akiane, or that Defendants is in some way affiliated with or sponsored by Art Akiane.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the ownership, rights, title, and interest in and to the AKIANE Marks, and therefore deny the same. Further, Defendants deny the remaining allegations contained in paragraph 81.

82.     Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants' with Art Akiane.

**ANSWER:**    Defendants deny the allegations contained in paragraph 82.

83.     By reason of their acts, Defendants have committed unfair competition under Illinois common law.

**ANSWER:**    Defendants deny the allegations contained in paragraph 83.

84.     Defendants' conduct is causing immediate and irreparable harm and injury to Art

Akiane, and to its goodwill and reputation, and will continue to both damage Art Akiane and confuse the public unless enjoined by this Court. Art Akiane has no adequate remedy at law.

**ANSWER:**    Defendants deny the allegations contained in paragraph 84.

85.    Art Akiane is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Illinois common law, together with prejudgment and post-judgment interest.

**ANSWER:**    Defendants deny the allegations contained in paragraph 85.

**COUNT IV**
**VIOLATION OF THE ILLINOIS**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(AGAINST ALL DEFENDANTS)**

86.    Art Akiane realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

**ANSWER:**    Defendants repeat and reallege their responses to paragraphs 1 through 85 as though fully set forth herein as their answer to the allegations of paragraph 86.

87.    The Illinois Uniform Deceptive Practices Act ("UDPA"), 815 ILCS § 510/2, *et seq.* provides that a person engages in deceptive trade practices when the person "(1) passes off goods or services as those of another . . . (3) causes a likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another; . . . [or] (5) represents that goods or services has sponsorship, approval, characteristics, . . . that they do not have."

**ANSWER:**    This paragraph is a conclusory statement to which no answer is required. To the extent an answer is required, Defendants deny that they have acted unlawfully in any way as defined in paragraph 87.

88.     Upon information and belief, Corneliuson represented herself to be the sole representative of all the Works to customers.

**ANSWER:**     Defendants deny the allegations contained in paragraph 88.

89.     Defendants have violated the UDPA by falsely and deceptively representing to consumers that Art Akiane is associated with Defendant, and because Defendants have used deception, fraud, false pretense, misrepresentation or concealment, suppression or omission of material facts, either expressly or by implication, in causing the false association with the intent that the public rely upon those false representations.

**ANSWER:**     Defendants deny the allegations contained in paragraph 89 and state that since all allegations giving rise to this purported claim are made on information and belief, this conclusory paragraph should be plead on information and belief as well.

90.     Defendants' trade practice of misleadingly holding itself out as being associated with Art Akiane is directed to the market generally, and otherwise constitutes a consumer protection matter because consumers need to be protected from false and misleading advertising of the type that Defendants are engaged in.

**ANSWER:**     Defendants deny the allegations contained in paragraph 90.

91.     The unauthorized use by Defendants of Art Akiane's Works and the AKIANE Marks is causing and is likely to cause substantial injury to the public and to Art Akiane, and Art Akiane has no adequate remedy at law for this injury.

**ANSWER:**     Defendants deny the allegations contained in paragraph 91.

92.     As a result of Defendants' unlawful business practices, Art Akiane is entitled to an order enjoining such future conduct, attorneys' fees under 815 ILCS § 510/3, and such other orders and judgments necessary.

**ANSWER:**    Defendants deny the allegations contained in paragraph 92.

## COUNT V
## UNJUST ENRICHMENT
## (AGAINST ASW)

93.    Art Akiane realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

**ANSWER:**    ASW repeats and realleges its responses to paragraphs 1 through 92 as though fully set forth herein as its answer to the allegations of paragraph 93.

94.    Art Akiane's ownership of the rights to distribute and the rights to license the use of the Works are valuable assets to Art Akiane.

**ANSWER:**    ASW lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 94 and therefore denies the same.

95.    By reproducing, distributing, and selling Art Akiane's Works without permission or authorization, and profiting off the Works without paying compensation to Art Akiane, Defendant has appropriated a valuable asset belonging to Art Akiane.

**ANSWER:**    ASW denies the allegations contained in paragraph 95.

96.    By failing to pay proper compensation to Art Akiane for the sale and use of the Works, Defendant has retained Art Akiane's benefit and such retention violates the fundamental principles of justice, equity and good conscience.

**ANSWER:**    ASW denies the allegations contained in paragraph 96.

## COUNT VI
## INTEGRITY OF COPYRIGHT MANAGEMENT INFORMATION
## (AGAINST ALL DEFENDANTS)

97.    Art Akiane realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

**ANSWER:** Defendants repeat and reallege their responses to paragraphs 1 through 96 as though fully set forth herein as their answer to the allegations of paragraph 97.

98. The Works and Akiane's artwork contain the signature or name of Akiane or Art Akiane, which is copyright management information protected under 17 U.S.C. § 1202(b).

**ANSWER:** Defendants admit the allegations contained in paragraph 98 as they relate to the Works as Plaintiff has defined that term. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 98 as it relates to "Akiane's artwork," and therefore deny the same.

99. Upon information and belief, Defendants intentionally and knowingly removed and/or altered the copyright management information identifying Akiane or Art Akiane as the author and owner, and distributed the same without authorization.

**ANSWER:** Defendants deny the allegations contained in paragraph 99.

100. Defendants' conduct violates 17 U.S.C. § 1202(b).

**ANSWER:** Defendants deny the allegations contained in paragraph 100.

101. Defendants' removal and/or altering of the aforementioned copyright management information and its distribution was made without the knowledge or consent of Art Akiane.

**ANSWER:** Defendants deny the allegations contained in paragraph 101.

102. Upon information and belief, the removal and/or altering of the aforementioned copyright management information and its unauthorized distribution were made by Defendants to induce, enable, facilitate, or conceal its infringement of Art Akiane's copyrights.

**ANSWER:** Defendants deny the allegations contained in paragraph 102.

103. Defendants also knew, or should have known, that such removal of said copyright management information would induce, enable, facilitate, or conceal their infringement of Art

Akiane's copyrights.

**ANSWER:**    Defendants deny the allegations contained in paragraph 103 and state that, as the allegations in the Complaint and the Exhibit establish, at all times, Defendants' display of the art in question has been open and notorious and encouraged by Plaintiff, the Kramarik Family and the Akiane Gallery, and consistent with the manner in which Plaintiff and the Kramarik Family display the same works.

104.    As a result of the wrongful conducts [sic] of Defendants, Art Akiane is entitled to recover from Defendants the damages that Art Akiane sustained and will sustain, and any gains, profits and advantages obtained by Defendants because of its violations of 17 U.S.C. § 1202, including attorney's fees and costs.

**ANSWER:**    Defendants deny the allegations contained in paragraph 104.

105.    Alternatively, Art Akiane may elect to recover from Defendants statutory damages pursuant to 17 U.S.C. § 1203(c)(3) in a sum of at least $2,500 up to $25,000 for each violation of 17 U.S.C. § 1202.

**ANSWER:**    Defendants deny the allegations contained in paragraph 105.

**COUNT VII**
**VIOLATION OF THE LANHAM ACT – ANTI-CYBERSQUATTING CONSUMER**
**PROTECTION ACT**
**(AGAINST ASW)**

106.    Art Akiane realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

**ANSWER:**    ASW repeats and realleges its responses to paragraphs 1 through 105 as though fully set forth herein as its answer to the allegations of paragraph 106.

107.    At the time of Defendant's registration or first use of its domain names, including its Facebook domain name, Instagram domain name, and the www.jesusprinceofpeace.com

domain name, each of the AKIANE Marks was distinctive.

**ANSWER:**     ASW denies the allegations contained in paragraph 107.

108.     Defendant's domain names are identical or confusingly similar to the AKIANE Marks.

**ANSWER:**     ASW denies the allegations contained in paragraph 108 and affirmatively state that the domain names used belong to ASW and Plaintiff has no right to the words contained in them, notwithstanding that Akiane Kramarik chose to name some of her art using words in the public domain since the Bible was written.

109.     Defendant has registered, trafficked in, or used the domain names with a bad faith intent to profit from the AKIANE Marks in violation of 15 U.S.C. § 1125(d).

**ANSWER:**     ASW denies the allegations contained in paragraph 109.

110.     Defendant's bad faith intent is demonstrated by numerous factors, including the following:

    a.     Defendant intends to divert consumers from Art Akiane's online location to a site accessible under its own domain names that could harm the goodwill represented by the AKIANE Marks, either for Defendant's commercial gain or with the intent to tarnish or disparage the AKIANE Marks, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site accessible under the Defendant domain names; and

    b.     Defendant knows that the Defendant domain names are identical or confusingly similar to the AKIANE Marks.

**ANSWER:**     ASW denies the allegations contained in paragraph 110.

111.     Upon information and belief, Defendant's actions have been and are willful,

deliberate, and done with knowledge of Art Akiane's rights.

**ANSWER:**     ASW denies the allegations contained in paragraph 111.

112.     Art Akiane has no adequate remedy at law. Unless enjoined by this Court, Art Akiane will continue to do the acts complained of in this Complaint and cause damage and injury, all to Art Akiane's irreparable harm and to Defendant's unjust enrichment.

**ANSWER:**     ASW denies the allegations contained in paragraph 112.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
## (AGAINST CORNELIUSON)

113.     Art Akiane realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

**ANSWER:**     Corneliuson repeats and realleges her responses to paragraphs 1 through 112 as though fully set forth herein as her answer to the allegations of paragraph 113.

114.     Art Akiane had a reasonable business expectancy of entering into a valid business relationship with customers with whom Art Akiane would have sold artwork to.

**ANSWER:**     Corneliuson denies the allegations contained in paragraph 114.

115.     Corneliuson had knowledge of this expectancy, which knowledge Corneliuson acquired because she facilitated communications between Art Akiane and the potential customers.

**ANSWER:**     Corneliuson admits that she often facilitated communications between Plaintiff and potential customers, interested parties, fans, and regarding potential engagements for Akiane Kramarik, including among many things, requests for interviews and original or limited edition art. However, she denies there was any business expectancy of Plaintiff involved in those communications, as Plaintiff encouraged Defendants to purchase art from Plaintiff in order to resell to customers (which gave rise to the Wholesale Agreement and the Printing Agreement),

31

or Plaintiff sold the works outright at full retail value upon a referral from Corneliuson, and paid her a commission, as the emails from Mark Kramarik attached as an Exhibit to Defendants' Response to Plaintiff's Motion for TRO establishes. Defendant denies the remaining allegations contained in paragraph 115.

116.    Upon information and belief, through dishonest, unfair, and/or improper means, Corneliuson intentionally interfered with Art Akiane's prospective relationships with these customers, including by preventing further communications between Art Akiane and the potential customers.

**ANSWER:**    Corneliuson denies the allegations contained in paragraph 116.

117.    Corneliuson's interference caused injury to Art Akiane's prospective relationships with these customers.

**ANSWER:**    Corneliuson denies the allegations contained in paragraph 117.

118.    Art Akiane has no adequate remedy at law for Corneliuson's tortious conduct. Unless Corneliuson is enjoined by the Court, Art Akiane will continue to suffer irreparable harm.

**ANSWER:**    Corneliuson denies the allegations contained in paragraph 118.

119.    Art Akiane may elect to recover from Corneliuson exemplary and punitive damages and attorneys' fees under Illinois law for Corneliuson's willful, intentional, and tortious acts.

**ANSWER:**    Corneliuson denies the allegations contained in paragraph 119.

**COUNT IX**
**VIOLATION OF THE ILLINOIS RIGHT OF PUBLICITY ACT**
**(AGAINST ALL DEFENDANTS)**

120.    Art Akiane realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

**ANSWER:**     Defendants repeat and reallege their responses to paragraphs 1 through 119 as though fully set forth herein as their answer to the allegations of paragraph 120.

121.     Defendants' unauthorized use of Akiane's identity for commercial purposes is a violation of the Illinois Right of Publicity Act, 765 ILCS § 1075/1-60.

**ANSWER:**     Defendants deny the allegations contained in paragraph 121.

122.     Defendants' use of Akiane's identity was unauthorized because Defendants did not obtain Art Akiane's consent to use Akiane's identity in connection with any advertisement.

**ANSWER:**     Defendants deny the allegations contained in paragraph 122.

123.     Upon information and belief, Defendants' use of Akiane's identity was willful because they used Akiane's identity intentionally and with knowledge that its use was not authorized.

**ANSWER:**     Defendants deny the allegations contained in paragraph 123.

124.     Art Akiane has been damaged by Defendants' unauthorized use of Akiane's identity. Art Akiane has no adequate remedy at law.

**ANSWER:**     Defendants deny the allegations contained in paragraph 124.

125.     Unless enjoined by this Court, Defendants will continue to do the acts complained of in this Complaint and cause damage and injury, all to Art Akiane's irreparable harm and to Defendants' unjust enrichment.

**ANSWER:**     Defendants deny the allegations contained in paragraph 124.

126.     Art Akiane may elect to recover from Defendant statutory damages pursuant to 765 ILCS § 1075/40 in a sum of at least its actual damages, profits derived from the unauthorized use, or both, and punitive damages.

**ANSWER:**     Defendants deny the allegations contained in paragraph 126.

33

## AFFIRMATIVE DEFENSES

Defendants reincorporate the allegations and responses as if incorporated here for factual background, and assert the following affirmative defenses to the Complaint. Defendants reserve all defenses under Rule 8(c) of the Federal Rules of Civil Procedure and any other defenses at law or in equity that may become available based on discovery or any other factual investigation.

### FIRST AFFIRMATIVE DEFENSE – LICENSE

1.      Defendants' alleged copying posting, use or sale involving Art Akiane's works or Akiane marks is lawful use per the express terms of the License Agreement between Art Akiane and ASW, attached to Defendants' counterclaim as Exhibit A, as well as the license granted in the Wholesale Agreement and Printing Agreement.  Art Akiane authorized, ASW's allegedly infringing copying, posting, selling or use of the works and/or marks at issue and received the consideration it bargained for as a result.

### SECOND AFFIRMATIVE DEFENSE – IMPLIED LICENSE

2.      To the extent Art Akiane alleges that ASW's alleged copying, posting, selling or use involving Art Akiane works and/or Akiane marks went outside the written terms of the License Agreement, in addition to the express license to do so, there was an implied license to do so by virtue of the oral Wholesale Agreement and Printing Agreement. Art Akiane permitted the copying, posting, selling or use, knew of that copying, posting, selling or use, and benefitted from that copying, posting, selling or use.

### THIRD AFFIRMATIVE DEFENSE – FIRST SALE/EXHAUSTION DOCTRINE

3.      The causes of action Art Akiane alleges are barred, in whole or in part, by the first sale doctrine and/or the doctrine of exhaustion. Art Akiane placed its works into the stream of commerce by selling them and exhausted its exclusive statutory right to control distribution of those products. Defendants cannot be prevented from advertising and selling Art Akiane works.

## FOURTH AFFIRMATIVE DEFENSE – COPYRIGHT FAIR USE

4.       Any copying, posting, selling or use by Defendants involving Art Akiane work or Akiane marks was transformative and was created when the License Agreement, Wholesale Agreement and Printing Agreement were in full force and did not and does not harm the market for Art Akiane's works. The copying, posting, selling or use constitutes permissible fair use.

## FIFTH AFFIRMATIVE DEFENSE – WAIVER

5.       Art Akiane, its agents and/or those acting on its behalf, knew or should have known about the alleged copying, posting, sale or use involving Art Akiane's works and/or Akiane marks by Defendants. Plaintiff's display on social media sites and on her website was open and notorious. Plaintiff not only knew of her conduct, but sent her photos and videos to post and sold her the art in question for resale because it benefitted Art Akiane and/or its agents. In addition, Plaintiff waived any claims for the removal and alteration of copyright management information, as Plaintiff and the Kramarik family display the art in question in the same manner.

## SIXTH AFFIRMATIVE DEFENSE – ACQUIESENCE

6.       Art Akiane has acquiesced to the alleged copying, posting, selling or use about which it now complains because these activities were carried out with the full knowledge and encouragement of Art Akiane and/or its agents and without objection until this litigation. In addition, Plaintiff acquiesced to the manner in which Defendants displayed the artworks, and Plaintiff and the Kramarik family display the art in question in the same manner.

## SEVENTH AFFIRMATIVE DEFENSE – PREEMPTION

7.       The Copyright Act and/or Lanham Act both preempt the state law claims brought by Art Akiane because the facts that form the basis for the state law claims are the same as those that form the basis for the Copyright Act and/or Lanham Act claims.

## EIGHTH AFFIRMATIVE DEFENSE – COPYRIGHT MISUSE

8.      The cause of action of copyright infringement Art Akiane alleges in the Complaint is barred, in whole or in part, because Art Akiane misused its copyright to unlawfully restrict or monopolize the distribution, sale, and licensing of its products, and therefore used its copyright in a manner which violates the public policy embodied in the grant of a copyright.

## NINTH AFFIRMATIVE DEFENSE – TRADEMARK MISUSE

9.      The cause of action of trademark infringement Art Akiane alleges in the Complaint is barred, in whole or in part, because Art Akiane misused or misrepresented its ownership of the purported trademarks in an attempt to unlawfully restrict or monopolize the distribution, sale, and licensing of its products, and therefore used its trademarks in a manner which violates the public policy embodied in the grant of a trademark.

## TENTH AFFIRMATIVE DEFENSE – UNCLEAN HANDS

10.     Art Akiane had knowledge of and endorsed and facilitated the display and sale of the works it now complains of, and therefore comes to the Court with unclean hands to obtain the equitable relief it seeks. First, Plaintiff concealed its known attempt to terminate the contractual relations between the parties in an effort to decimate Defendants' business so that it could capitalize on the goodwill Defendants worked for 11 years to create for Plaintiff, Akiane Kramarik, the Akiane Gallery and the Kramarik family.  Knowing full well that they were going to abruptly end the License Agreement, Wholesale Agreement and Printing Agreement, Plaintiff and its agents stood back and watched while Defendants, in reliance on the prior conduct of the parties, continued to purchase inventory, make arrangements for the continuation of the business into 2019 and 2020 and even allowed an $11,000 order to go through the day before they planned to terminate the agreement. In addition, Plaintiff complains that the display of Akiane's artwork by Defendants is without appropriate copyright management information or Akiane alleged trademark, yet Plaintiff and the Kramarik family display the art in question in the same manner

on websites, social media posts and elsewhere. The prosecution of these claims is undertaken with unclean hands, rendering Art Akiane's asserted rights unenforceable.

## ELEVENTH AFFIRMATIVE DEFENSE – LACHES & ESTOPPEL

11.     The doctrines of laches and estoppel bar the claims in the Complaint. Art Akiane unreasonably delayed in bringing its claims for injunctive relief. It knew for years of Defendants' copying, posting, selling or use of Art Akiane works and/or Akiane Marks yet it not only remained utterly silent about the same, but it and its agents encouraged and facilitated the very conduct complained of here. Thus, laches prevents the assertion of the claims asserted and estoppel bars Plaintiff from obtaining the relief it seeks.

## TWELFTH AFFIRMATIVE DEFENSE – LACK OF STANDING

12.     Art Akiane has failed to provide evidence that Akiane properly assigned "all rights, title and interest" in her art works, likeness and/or her name. No assignments were attached to the Complaint.  Art Akiane therefore lacks standing to bring any cause of action asserted here against Defendants.

## THIRTEENTH AFFIRMATIVE DEFENSE – LACK OF TRADEMARK PROTECTION

13.     There are no federal or state trademark registrations for the trademarks Art Akiane suggests exists. Plaintiff has not established the necessary requirements to assert common law rights in the marks in question, nor has Art Akiane established that it owns such marks, as opposed to Akiane Kramarik, or some other person or entity, who is not a party to this lawsuit.

## FOURTEENTH AFFIRMATIVE DEFENSE – INADEQUACY OF CLAIM FOR INJUNCTIVE RELEIF

14.     Art Akiane cannot satisfy the requirements applicable to its requests for injunctive relief and has an adequate remedy at law, in that money damages, should it prove any of its claim, are adequate.

**FIFTEENTH AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS**

15.     Art Akiane's claims are barred in whole or in part by the applicable statute of limitations.

**SIXTEENTH AFFIRMATIVE DEFENSE – NO DAMAGES**

16.     Art Akiane's claims are barred in whole or in part because it has suffered no damages.

**SEVENTEENTH AFFIRMATIVE DEFENSE – NO STATUTORY DAMAGES AND ATTORNEYS FEES**

17.     To the extent Art Akiane's copyright claims involve infringement prior to the registration of a copyrighted Art Akiane work, statutory damages and attorney fees are barred.

**EIGHTEENTH AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM**

18.     Art Akiane fails to state a claim upon which relief may be granted.


WHEREFORE, Defendants pray for judgment in their favor and against Art Akiane on all counts and for their fees, costs and expenses under the Copyright and Trademark Act, and for such other relief as the Court deems just and proper.

## COUNTERCLAIMS

Art & Soulworks, LLC ("ASW") and Carolyne Corneliuson ("Corneliuson"), pursuant to Rule 13 of the Federal Rules of Civil Procedure, assert the following counterclaims against Art Akiane LLC ("Art Akiane"), Akiane Art Gallery, LLC ("Akiane Gallery"), and Akiane Kramarik as follows:

## BACKGROUND

1.      In 2006, Corneliuson became acquainted with Akiane art and the Kramarik family, including Mark, Foreli, Jeanlu and Akiane Kramarik. (collectively the "Kramarik Family.") Corneliuson and her husband were one of the first collectors to believe in the global value of art Akiane Kramarik created and that it could connect the world with their strongly held Christian beliefs. However, at the time, the Akiane art was only available at very expensive price points, unreachable to millions of people whom Corneliuson believed would benefit, as she had, from experiencing the art. Given her religious devotion and desire to be an example to others, Corneliuson wanted to bring Akiane's story and art to the masses by making it more accessible.

2.      The parties entered into a series of agreements over the years. Art Akiane and ASW entered into the first of several Copyright License Agreements with Art Akiane in 2008. (Art Akiane LLC & Art & SoulWorks, LLC Art Images & License Agreement ("License Agreement,") attached as Exhibit A). However, the License Agreement did not form the entirety of the business relationship between Defendants and Art Akiane, Akiane Gallery and the Kramarik Family, (collectively "Akiane Group"). Soon after the License Agreement was signed, Mark Kramarik, on behalf of Art Akiane, expanded the scope of the parties' relationship by entering into an oral "Wholesale Agreement" with Defendants, as described further below. Years after, when the Kramariks returned from years of living in Europe and had issues with their Idaho printer, Mark Kramarik entered into the oral "Printing Agreement" with Defendants, allowing

Defendants to hire their own printer to print Akiane artwork that was part of the "Jesus Series," as well as other works, such as, "Supreme Sanctuary," as described further below.

3.      During the 11+ year relationship, and even to this day, Art Akiane, Akiane Gallery and the Kramarik Family have enjoyed far more than royalty or wholesale payments stemming from the fruits of ASW and Corneliuson's labor. Corneliuson used her vast network to benefit the Akiane Group by obtaining an agreement with Barnes & Noble to sell bookmarks of the Art Akiane works in Barnes & Noble stores. ASW and Corneliuson also invested significant money to build out social media channels burnishing Art Akiane works and the Akiane brand. In fact, Defendants' Facebook pages have more than 725,000 followers. They also created successful distribution channels for Art Akiane works, such as an Amazon.com storefront. Corneliuson also repeatedly referred to the Akiane Group buyers who in turn purchased original Art Akiane works for hundreds of thousands of dollars.

4.      All of this ended abruptly when the Kramariks, Art Akiane and Akiane Gallery told Defendants in writing that all of the relationships were being terminated immediately. (Ex. F, "Termination Letter"). This case is a quintessential example of a mutually rewarding relationship, governed for more than a decade by written and oral agreements and the parties' extensive course of dealings, was eviscerated in a single instant by the bad faith action of the Counter-Defendants and their agents. Their conduct in extinguishing the parties' longstanding relationship was intentionally designed to inflict the most damage possible on Defendants and to put them out of business solely for the benefit of Art Akiane, Akiane Gallery and Akiane Kramarik.

## THE PARTIES

5.      Art Akiane LLC is an Illinois limited liability company with its principal place of

business at 833 Central Ave., Unit 1250, Highland Park, IL 60035.

6.      Akiane Art Gallery, LLC is an Idaho limited liability company with its principal

place of business at 833 Central Ave., Unit 1250, Highland Park, IL 60035.

7.      Akiane Kramarik, upon information and belief, is an individual who resides at 585

Sumac Rd., Highland Park, IL 60035. She is an owner and member of Akiane Art Gallery, LLC.

8.      Akiane Kramarik and Akiane Art Gallery, LLC are central parties to the

transactions, occurrence or series of occurrences which form the basis of the underlying claims

between the Parties.  Akiane Kramarik is the owner and/or assignor of the copyrights and

trademarks at issue, a signatory to the Termination Letter and Dissolvement Agreement, and the

sole member of Akiane Art Gallery, LLC. Akiane Kramarik and Akiane Gallery also either

undertook business directly with Counter-Plaintiffs or were the beneficiaries of business with

Counter-Plaintiffs through Art Akiane.  Akiane Gallery and Akiane Kramark are therefore joined

as counter-defendants pursuant to either Rule 19(a)(1) or 20(a) of the Federal Rules of Civil

Procedure.

9.      Art & SoulWorks LLC is a Colorado limited liability company with its principal

place of business at 214 Ranch Road, Evergreen, CO 80439.

10.     Carolyne Corneliuson is an individual who resides at 214 Ranch Road, Evergreen,

CO 80439. Corneliuson is the owner and sole member of Art & SoulWorks LLC.

11.     The injury to Counter-Plaintiffs occurred in Colorado, where Corneliuson has

resided since 2008 and where ASW has been a registered limited liability company since

September 7, 2010. The causes of action set forth in this Counterclaim arise under Colorado law.

**<u>ADDITIONAL INTERESTED PERSONS</u>**

12.     Mark Kramarik is the father of Akiane Kramarik, a member and manager of Art

Akiane LLC, and a manager of Akiane Art Gallery, LLC. Mark holds himself out as a conduit to and representative of his 25-year-old daughter, Akiane Kramarik.

13. Foreli Kramarik is the mother of Akiane Kramarik, and a member of Art Akiane LLC. Foreli also represents herself as a conduit to and representative of Akiane Kramarik and Akiane Gallery.

14. Jeanlu Kramarik is the brother of Akiane Kramarik and is the managing director of Akiane Gallery. Jeanlu also represents himself as a conduit to and representative of Akiane Kramarik and Akiane Gallery.

## THE EXTENSIVE & CLOSE BUSINESS RELATIONSHIP

15. Prior to starting ASW, Corneliuson had a successful career as an entrepreneur and, for the last 8 years before ASW, was a Director of Antioch Publishing, dealing with Disney, Flavia, Lord of the Rings and similar high profile licensed product development and customization of stationery related gift items for Barnes & Noble, Scholastic, Walden Books and Christian Family. Through the www.art-soulworks.com website, trade shows, social media and other avenues, ASW provides a variety of religious-based gifts and art designed to inspire, educate and promote Bible-based values to individuals and families globally. ASW donates at least 20% of its profits to local, national and global programs dedicated to helping those in need.

16. In 2006, ASW and Corneliuson began a relationship with Art Akiane, Akiane Gallery and the Kramarik Family, at first creating products such as bookmarks reflecting the Akiane art and selling it to retail outlets like Barnes & Noble. The 11+ year relationship continued during the Kramarik Family's journey throughout the world, including when they lived for years in Europe, Australia and in multiple locations in the United States. The parties formalized their relationship in writing in 2008 through the License Agreement, (Ex. A), but entered into several

42

additional oral agreements, and also often modified the terms of the agreements over the phone or in email.

### The License Agreement

17.     The License Agreement had an initial term of five years, was renewed in 2012 until 2015 via a second round of signatures on the original agreement, and was renewed again (via a third set of signatures on the original agreement) in 2016 until January 11, 2019, along with a second Schedule A that broadened the scope of the License Agreement. *See* Ex. A. The course of conduct of the parties was that the License Agreement often technically "expired" before an agreed renewal was signed, yet the parties continued with business as usual after the expiration until a renewal was negotiated and executed. This demonstrates a pattern of renewal, even after the expiration date of the License Agreement. (Id.)

18.     The License Agreement gave Defendants the exclusive world-wide rights to display, market and sell, initially certain of Akiane's artwork, and then eventually all of her works.

19.     ASW paid Art Akiane a 10% royalty on the wholesale price of all items sold under the License Agreement. There is no provision in the contract that addresses the wind-down of the relationship or the parties' obligations in the event the contract is not renewed after expiration. (Id.)

### The Wholesale Agreement

20.     In addition to the License Agreement rights, beginning in 2008, Mark Kramarik and others, on behalf of Art Akiane, requested that ASW essentially mimic the Akiane Gallery website to enhance the exposure and selling opportunities of Akiane's prints and paintings. Art Akiane through Mark Kramarik, and ASW, entered into an oral agreement which allowed ASW to sell and market additional Akiane works and products, including prints and canvasses.

("Wholesale Agreement").

21.     ASW either purchased the Wholesale Agreement works and kept them in inventory for customers, or, if a customer expressed interest in a piece that ASW had not yet purchased, ASW would purchase the piece from Akiane Gallery at the wholesale price (40% discount off retail prices if under 10 pieces and 50% discount if 10+ ordered on the same day), and resell the piece to the customer with ASW's own mark-up, with the Defendants' blessings. (These sales are referred to as "Wholesale Sales").

22.     At ASW's own expense, it greatly expanded its website to include paintings, prints and canvasses of Akiane's works, and did so with the assistance of Art Akiane and the Counter-Defendants to ensure accurate descriptions and appropriate photos of all of these works. As part of this ongoing Wholesale Agreement, ASW could market, display on its website and elsewhere, and sell Akiane's works sold under this agreement by Counter-Defendants.

23.     One example of the Akiane Group's knowledge of this agreement and arrangement is reflected in a 7/1/2010 email between ASW and Art Akiane, sent with an ASW Purchase Order, with a request that Art Akiane ship the purchases directly to ASW's customer. (7/1/2010 email and Purchase Order are attached as Ex. B).

***The Printing Agreement***

24.     In 2015 or 2016, the Kramariks moved to Los Angeles. At this time, the printer in Idaho that they had been using to provide ASW with Wholesale works ceased doing business. Multiple issues arose with a printer Counter-Defendants found in Los Angeles, including that the printer charged approximately 2.5 times more than the previous printer.

25.     Mark Kramarik, on behalf of Art Akiane, entered into another oral agreement with ASW and Corneliuson in which he gave them permission, from that point forward, to directly

44

print (through a printer in Colorado they hired) any works in the "Jesus Series", including several Prince of Peace pieces, as well as other works, such as, "Supreme Sanctuary." The Jesus Series initially included 7 pieces and in 2017 expanded to 8 pieces of Akiane work. As part of this agreement, ASW and Corneliuson were given permission to print, market and sell, as they did under the License and Wholesale Agreement, and in return, ASW was obligated to pay 10% of the wholesale price as a royalty, just as it did under the License Agreement. (the "Printing Agreement").

26. Counter-Defendants were well aware that ASW and Corneliuson were printing these pieces, and they also readily accepted the royalty payments that ASW tendered to them in return for all sales under this agreement.

### *Private Collection Pieces*

27. Over the years, Corneliuson also purchased Akiane original pieces for her and her husband's private collection. They paid retail price for these.

### *The Display and Marketing and Sale of Akiane Art*

28. ASW publicized the Akiane pieces covered on its website, Twitter, Instagram, YouTube, in marketing materials and at trade shows, with full knowledge and assistance from Art Akiane, Akiane Gallery, and the Kramarik Family. The display of works under the Wholesale Agreement were not only requested and endorsed by the Akiane Group, but they were facilitated by them, as ASW had to obtain the pieces to resell from the Art Akiane or Akiane Gallery themselves. In fact, the Akiane Group often drop-shipped items that were not yet in ASW's inventory to customers that came through ASW's social media sites or website to purchase. A spreadsheet reflecting the more than 50,000 Wholesale Sales that ASW made with the Akiane Group's knowledge, blessing and pursuant to the Wholesale Agreement, is attached as Ex.C.

29.     In addition, after the Printing Agreement was entered into, ASW similarly marketed and displayed these works on its website and various social media sites, just as it did with the License Agreement merchandise and the Wholesale Agreement merchandise. Mark Kramarik, Art Akiane and others were well aware of this display and these sales, and they received royalties for every sale.

30.     In addition, throughout the relationship, and even after the purported termination of the parties' contract by letter from the Akiane Art, Akiane Gallery and Akiane Kramarik, Corneliuson would routinely refer interested customers to the Akiane Group to purchase original works. In fact, the email exchange attached as Ex. D shows one example where Corneliuson sent Mark Kramarik a customer who made three expensive purchases.

31.     Per the parties' written exchange in Exhibit D, ASW is due a 15% commission for the purchases but to date, Counter-Defendant, Art Akiane has not paid her the commission.

### ART AKIANE, AKIANE GALLERY & AKIANE KRAMARIK'S BAD FAITH

32.     On January 10, 2019, Art Akiane, Akiane Gallery, Mark Kramarik and Foreli Kramarik and Akiane Kramarik, sent Corneliuson a letter with a "Licensing Dissolvement Agreement" (collectively, "Termination Letter", attached as Ex. F), which purported to terminate the License Agreement, Wholesale Agreement, Printing Agreement and all other agreements between the parties, and included a list of demands.  Neither ASW nor Corneliuson were a party to the "License Dissolvement Agreement." (*See* Ex. F).

33.     The list of demands in the Licensing Dissolvement Agreement were categorized as "A" demands, to be completed immediately and "B" demands, to be completed by March 1, 2019. (Ex. F.)

34.     The Termination Letter "A" demands included:

1. All "Official" titles on the "Prince of Peace by Akiane Kramarik" Facebook page will have to be removed. They are related to Akiane's Name or Brand.;
2. Facebook Name would have to be changed from "Prince of Peace Painting by Akiane Kramarik" to "Prince of Peace Painting Community.";
3. Art&Soulworks website must remove all "Official" titles from Google Web Search page or any reference anywhere saying that Art-Soulworks is the "Official", "Official Akiane Art Gallery", "Authorized" or the seller/distributor of Akiane's artwork.;
4. Any and all future posts on any social media platform, google search, website that has anything to do with Akiane's likeness, Name, Brand or Artwork is not permitted.;
5. Art & SoulWorks can no longer sell, license or distribute Akiane's artwork.;
6. All merchandise (Calendars, Bookmarks, Journals, Mugs, Candles, Tapestries, Throw Rugs, etc.) associated with Akiane's brand and artwork must be discontinued.;
7. If any is interested in purchasing Akiane's artwork, please, forward them to www.akiane.com. The Official Akiane Gallery. (Ex. A.)

35.    Termination Letter "B" demands included:

1. Art & SoulWorks will have until March 1st 2019 to liquidate inventory: any and all things related to Akiane's Artwork, Name, Brand and Likeness (Royalties to Akiane Gallery will still be in effect and active during the liquidation process). (Ex. F.)

36.    Long before the expiration of the License Agreement, Art Akiane, knew full well that it had no intention of renewing the License Agreement for the fourth time and that it intended to terminate without notice the Wholesale Agreement and the Printing Agreement. However, Art Akiane allowed ASW to continue to take all of the steps outlined above to continue "business as usual," including making commitments to customers, printers and trade shows, and making a sizeable purchase of merchandise one day before Art Akiane, Akiane Gallery and Akiane Kramarik attempted to terminate the agreements.

37.    Further, in concert with the termination of the License Agreement on the last day of the agreement, Art Akiane, Akiane Gallery and Akiane Kramarik demanded that ASW remove *all* references to its decades-long position as the exclusive, worldwide and original source of Art Akiane works from all media *that same day*, and insisted that all remaining inventory be

liquidated within 6-7 weeks. These were impossible and unreasonable demands that were not made in good faith, and were designed to cause substantial irreparable damage to ASW and Corneliuson.

38.     Art Akiane, Akiane Gallery, and Akiane Kramarik undertook these actions knowing Art Akiane was the source of the vast majority of the Art & Soulworks business and that meeting the demands would require ASW and Corneliuson to immediately liquidate the licensed and printed inventory at fire-sale prices. This further caused a detrimental impact on decades-long business relationships that ASW and Corneliuson had carefully cultivated, including with customers who relied on ASW for Jesus, Prince of Peace and other gifts and art from Art Akiane for Christmas, Easter and other occasions.

39.     The losses caused by Counter-Defendants to ASW as a result of the forced fire-sale and inability to service its long-standing customers with no notice, among other things, are in excess of one million dollars and have resulted in an avoidable but now existential crisis for ASW.  Effectively, Art Akiane, Akiane Gallery, and Akiane Kramarik have put ASW out of business by their conduct, ruined Defendants' reputation and significantly impacted Corneliuson's well-being.

### Akiane Gallery and Akiane Kramarik's Tortious Interference

40.     The License Agreement was entered into between ASW and Art Akiane (*see* Ex. A). Even though she was not a party to it, it appears that Akiane Kramarik signed the agreement as well.

41.     The Wholesale Agreement was entered into between ASW and Corneliuson on one hand and Art Akiane, through Mark Kramarik, on the other. All Counter-Defendants were aware of the Wholesale Agreement, as Mark Kramarik, a member of Art Akiane and manager of

Akiane Gallery made the agreement, and both entities provided the merchandise sold under that agreement. All Counter-Defendants were similarly aware of the Printing Agreement, as Mark Kramarik made that agreement too and the parties accepted royalties for the sales under this agreement.

42.     Akiane Kramarik owns and controls Akiane Gallery, but appears to have no legal interest in Art Akiane and/or did not retain any interest in the licensed Art Akiane works. Based on the Termination Letter provided to ASW (*see* Ex. F), at some point in time, Akiane Kramarik decided she wanted to solely control her art notwithstanding that, as alleged in the Complaint, she had already assigned all rights and interest in her art, her name and likeness to Art Akiane – the contracting party with ASW for the License Agreement, Wholesale Agreement and Printing Agreement.

43.     Akiane Kramarik was fully aware of the relationship Art Akiane had with ASW, was fully aware of the License Agreement (because she signed it even though she was not a party to it) and was or should have been fully aware of the Wholesale Agreement and the Printing Agreement between the parties. She also knew of and contributed to the course of conduct established between the parties in connection with contract renewal for the License Agreement, and also knew of the reliance that ASW and Corneliuson placed on the continuation of the parties' relationship.

44.     Nevertheless, Akiane Kramarik, in an effort to control her art, took steps to have the longstanding relationship and agreements with ASW abruptly terminated by Art Akiane, at the expense of Corneliuson and ASW.

45.     In fact, Art Akiane admitted in the Termination Letter sent to ASW that it was terminating the agreements due to Akiane Kramarik's threats to her parents and Art Akiane, that

if they refused to terminate the agreement with ASW, she would sever all business ties with them.

The Termination Letter states in part:

> Please, keep in mind, that Akiane will have to make another serious decision this summer if she wants to resign with her sister company – Art Akiane LLC managed by her family....

> We believe, that if we turned completely another direction, disregarding her intentions and not honoring her plans, Akiane would eventually need to dissolve our business partnership as well. As you can see there is a concrete concern for us too. (Ex. F.)

46.     By taking these actions, among others, Akiane Kramarik and Akiane Gallery intentionally interfered with the continuation of the License Agreement, Wholesale Agreement and Printing Agreement, or the expectancy of it by ASW by threatening Art Akiane and her parents with the cessation of any business partnership with them unless they abruptly terminated the agreements with ASW.

## ASW & CORNELIUSON'S RELIANCE ON THE PARTIES COURSE OF DEALINGS AND AFFIRMATIVE REPRESENTATIONS

47.     In conducting its business, ASW and Corneliuson relied on the agreements, the parties' course of dealings and the Akiane Group's representations over the span of their more than 11-year relationship.

48.     ASW and Corneliuson expended hundreds of thousands of dollars on inventory, paying for, creating marketing materials for and attending trade shows, building out and maintaining its website, social media sites and Amazon channel, paying staff, drafting marketing materials, and continuously trying to promote Art Akiane works, Akiane Kramarik as an artist and the Akiane Art Gallery. As Art Akiane gave absolutely no notice to ASW and Corneliuson that they intended to sever their longstanding relationship, these expenditures continued in the months, weeks and days leading up to the termination. In making these expenditures, ASW and Corneliuson trusted that, as they had many times before, the parties would renew the License Agreement and the Wholesale Agreement and the Printing Agreement would continue, allowing

her to continue to purchase, display and resell Akiane art as before, and maintain an ongoing supply to the many customers who came to rely on her for Akiane merchandise.

49.     While ASW recognized that the parties' relationship might not continue forever, she reasonably expected that any cessation of the relationship and the multiple agreements between the parties would only occur with sufficient advanced notice to allow her to sell off all of her existing inventory, notify her customers so they could find alternative sources and maintain her reputation and goodwill in the industry, reasonably wind down the part of the business dealing with Akiane's art, cease making expenditures in reliance on the agreements continuing, and ensure that her entire business did not fail in the process.

50.     As of the date of termination (which was the day before the License Agreement expired), ASW had committed to trade shows, had created advertising, marketing brochures and collateral, had new product orders well into 2019 for which it had already expended substantial amounts of money prior to the purported termination, and had print runs scheduled with the printer for which she incurred a cancelation fee. Also, as it had for the previous years of their relationship, ASW had created the 2019 "Prince of Peace" calendar to sell and had begun extensive work on the 2020 calendar.

51.     ASW was the sole supplier for hundreds of ministries, churches and independent Cristian bookstores, who routinely turned to her as the sole supplier of, for example, Prince of Peace wallet cards, which were often used by clergy for their congregants or to hand out at funeral services.  In anticipation of the continuation of the parties' relationship, ASW had built up a sizeable inventory of goods created under the License Agreement, purchased under the Wholesale Agreement, or printed under the Printing Agreement, for intended sale in 2019 and beyond. Art Akiane, Akiane Gallery, and Akiane Kramarik knew or should have known all of these facts.

52.     ASW also placed an order of $11,000 worth of Wholesale Sales merchandise on January 9 – one day before Art Akiane, Akiane Gallery and Akiane Kramarik summarily terminateed the relationship. In fact, ASW had trouble with its order and reached out to Art Akiane to ensure the wholesale purchase was received. Art Akiane remedied the problem and authorized ASW's purchase of wholesale inventory, knowing full well it intended to terminate within hours.

53.     In addition, in the months leading up to the termination, the Akiane Group continued to send videos and links to ASW of new Akiane art to ensure that the ASW website posted them simultaneously with the Akiane Gallery to multiply the exposure.  An email written by Jeanlu Kramarik, Akiane's brother, also the managing director of Akiane Gallery, attached as Ex. E, illustrates that the Akiane Group not only gave permission to ASW to market and post Akiane's works, including new ones, but that it created videos to be posted to the ASW website. It did this so Art Akiane, Akiane Gallery, Akiane Kramarik and her family would benefit from ASW's sales of the art and its extensive promotion of the Akiane brand to ASW's large audience of customers and contacts.  In fact, the posting of the video in Exhibit E on ASW's site at the Akiane Group's direction resulted in an $85,000 sale of a recent Akiane painting, "The Light."

## COUNT I
## BREACH OF CONTRACT - COMMISSIONS
### (ASW v. ART AKIANE and/or AKIANE GALLERY)

54.     ASW incorporates paragraphs 1-53 as if set forth fully herein.

55.     In 2019, as a result of the goodwill ASW and Corneliuson built up over the years related to Akiane's work, a potential buyer of original Akiane work contacted Corneliuson. She referred the buyer to Mark Kramarik, Art Akiane and Akiane Gallery. The individual purchased three Akiane Kramarik original paintings.

56. As Mark Kramarik agreed in writing in an email dated March 13, 2019, attached as Exhibit D, Art Akiane and/or Akiane Gallery owes 15% of the sale price as a commission to Corneliuson and ASW for the referral.

57. Art Akiane and Akiane Gallery have breached the commissions agreement by failing to pay the commissions owed.

58. As a result of Art Akiane and Akiane Gallery breach of the commission agreement, ASW suffered damages in the amount of the commissions due, to be specifically determined at trial.

**COUNT II**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**
**License, Wholesale & Printing Agreement**
**(ASW v. ART AKIANE)**

59. ASW incorporates paragraphs 1-53 as if set forth fully herein.

60. In addition to the express provisions, every contract contains an implied duty of good faith and fair dealing under Colorado law.

61. Art Akiane has breached the duty of good faith and fair dealing owed to ASW under the License Agreement, Wholesale and Printing Agreements by the conduct described above. Specifically, it knowingly terminated the parties' 11-year relationship in bad faith by failing to give advanced notice of the termination so that ASW could have stopped expending money on the manufacture of additional product, purchase of additional merchandise, extensive promotion of Akiane and her works on the social media platforms, the continuing of the Amazon.com channel, the retention of staff, among other things. She would have also had time to reap the benefits of being able to sell the Akiane works she lawfully acquired at retail instead of fire-sale prices.

62.     Counter-Defendants took advantage of the fact that by blind-siding Counter-Plaintiffs, they would be able to eliminate their presence with respect to Akiane art in the market, and thus, take over the goodwill ASW and Corneliuson built and obtain sales for themselves.

63.     Counter-Defendants were so intent on ruining ASW's business and damaging Corneliuson that they even allowed her to place an $11,000 dollar order **the day before** they terminated, knowing full well their plans to sever all ties.  This alone constitutes bad faith.

64.     ASW and Corneliuson have expended extensive resources to promote Akiane, Art Akiane and Akiane Gallery.  They continued to do so throughout the second half of 2018 based on their expected renewal of the License Agreement, Wholesale Agreement and Printing Agreement. Due to the course of performance and expectations of ASW and Corneliuson, they had also built up a sizeable inventory of goods created under the License Agreement, bought under the Wholesale Agreement or printed under the Printing Agreement. Art Akiane, Akiane Gallery and Akiane Kramarik knew all of these facts.

65.     Art Akiane's breaches of the duty of good faith and fair dealing as to the License, Wholesale and Printing Agreements caused ASW to lose 84% of its business overnight, business which Art Akiane is now seeking to secure by instigating litigation to thwart ASW from displaying or selling any of the works in her possession in an attempt to capture ASW's social media followers and by supplanting ASW as the primary seller of the products that had been licensed to ASW.

66.     ASW has complied with the terms of the agreements and with its obligations through the purported termination of the agreements.  ASW currently owes $23,413.74 dollars in royalty payments for merchandise sold before or liquidated after termination, pre-payments due

for printing authorized before the termination, and will use those payments to offset damages owed by Counter-Defendants.

67.     As a result of Art Akiane's breach of the duty of good faith and fair dealing, ASW has sustained and will continue to sustain damages, including without limitation lost profits, loss of business goodwill, and other financial damages in amounts in excess of $1,000,000, to be proven at trial.

## COUNT III
## UNJUST ENRINCHMENT
## (ASW v. ART AKIANE, AKIANE GALLERY, AKIANE KRAMARIK)

68.     ASW incorporates paragraphs 1-53 as if set forth fully herein.

69.     ASW and Corneliuson expended substantial time, money and effort into building the goodwill and interest in Akiane's work, including by establishing and maintaining a successful Amazon.com channel to sell Akiane's work.

70.     By terminating the agreements as they did and mandating that Counter-Plaintiffs cease all sales and display of Akiane's work, Counter-Defendants have completely undermined Counter-Plaintiff's ability to maintain goodwill and a supply of the Akiane work for long-standing customers of ASW.

71.     Art Akiane, Akiane Gallery and Akiane Kramarik—by forcing ASW out of the market and out of all Akiane-related social media— which ASW rightfully owns, has received the benefit of the business goodwill, social media followers, and promotional support built by ASW for the past 11 years. As demonstrated by the commission referral, they also reap the benefit of crippling ASW in order to obtain sales that otherwise would have gone in part to ASW.

72.     These benefits were received by Art Akiane, Akiane Gallery and Akiane Kramarik at the expense of ASW.

73.     Retaining the benefits without paying for their value would be unjust and inequitable.

74.     As a result of Art Akiane, Akiane Gallery and Akiane Kramarik's actions, ASW suffered damages in an amount to be determined at trial.

## COUNT IV
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
### (ASW v. AKIANE GALLERY, AKIANE KRAMARIK)

75.     ASW incorporates paragraphs 1-53 as if set forth fully herein

76.     ASW and Art Akiane entered into the License Agreement, which was subsequently renewed and amended. ASW and Mark Kramarik, on behalf of Art Akiane, also entered into the Wholesale and Printing Agreements.  The course of conduct of the parties demonstrated a pattern of renewal, even after the expiration date of the License Agreement.

77.     Art Akiane is a member managed limited liability company. Mark Kramarik and Foreli Kramarik are the sole members of Art Akiane and it is managed by Mark Kramarik.

78.     Akiane Gallery is a limited liability company managed by Mark Kramarik, with Akiane Kramarik as its sole member.

79.     According to the Complaint, all the copyrighted Art Akiane works were assigned to Art Akiane and Akiane Gallery, and Akiane Kramarik did not retain any rights to those works during the entirety of the License Agreement, Wholesale and Printing Agreement.

80.     Akiane Kramarik was fully aware of the relationship with ASW, was fully aware of the License Agreement (because she signed it) and was or should have been fully aware of the Wholesale and Printing Agreement. She knew of the previous course of conduct between the parties in connection with renewal, and also knew of the reliance that ASW and Corneliuson placed on the continuation of the parties' relationship.

81.     Nevertheless, Akiane Kramarik and Akiane Gallery, in an effort to control her art, took steps to have the longstanding relationship with ASW and Corneliuson abruptly terminated by Art Akiane, at the expense of Corneliuson and ASW.

82.     Akiane Kramarik and Akiane Gallery have intentionally interfered by influcencing Art Akiane to terminate its License Agreement with ASW.

83.     In the Termination Letter, there are references to Akiane Kramarik telling Art Akiane, through Mark and Foreli Kramarik, that she felt "her journey must be taken in her own way and expressed in her own voice, with her own message, in her own convictions; and to her, right now, that means-going completely independent." (Termination Letter, Ex. F, page 4.)

84.     By taking these actions, among others, Akiane Kramarik and Akiane Gallery intentionally interfered with the continuation of the agreements or the expectancy of them, or the reasonable wind down of them, by threatening Art Akiane with the removal of all rights, title and interest in her artwork, and name and likeness, if it did not abruptly terminate the License Agreement, Wholesale Agreement and Printing Agreement with ASW.

85.     Akiane Gallery and Akiane Kramarik's actions have caused ASW damages in an amount in excess of $1,000,000, to be specifically determined at trial.

### REQUEST FOR RELIEF

WHEREFORE, Art & Soulworks, LLC and Carolyne Corneliuson requests that this Court:

1.  Enter judgment in Counter-Plaintiffs favor on Counts I – IV;

2.  Award Counter-Plaintiffs its actual damages against Counter-Defendants in an amount to be determined at trial, but in excess of $1,000,000;

3.  Award Counter-Plaintiffs with punitive damages against Counter-Defendants for

Count IV;

4. Award Counter-Plaintiffs all of their costs and reasonable attorneys' fees in this action as authorized by 17 U.S.C. § 1203, 15 U.S. Code § 1117 and other applicable laws;

5. Award Counter-Plaintiffs with pre- and post-judgment interest at the maximum legal rate and costs;

6. Grant Counter-Plaintiffs with such other relief as may be just and warranted under the circumstances.

## JURY DEMAND

Counter-Plaintiffs demand trial by jury.


Dated:  June 24, 2019                                    Respectfully submitted,

                                                         */s/ Nicole N. Auerbach*

                                                         Nicole N. Auerbach
                                                         Patrick J. Lamb
                                                         Salvador Carranza
                                                         ELEVATENEXT LAW
                                                         218 N. Jefferson Street, Suite 300
                                                         Chicago, IL  60661
                                                         (312) 676-5460 - Telephone
                                                         (312) 676-5499 - Facsimile
                                                         nicole.auerbach@elevatenextlaw.com
                                                         Patrick.lamb@elevatenextlaw.com
                                                         Salvador.carranza@elevatenextlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 24, 2019, I caused a copy of the attached Answer, Affirmative

Defenses and Counterclaim to be served upon all counsel of record via the Court's ECF system.


*/s/ Nicole N. Auerbach*
Nicole N. Auerbach