**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ART AKIANE LLC, | |
| Plaintiff, | |
| v. | Case No. 19-cv-02952 |
| ART & SOULWORKS LLC, CAROL CORNELIUSON, and CARPENTREE, INC. | Judge Edmond E. Chang |
| Defendants. | |
| ART & SOULWORKS LLC, and CAROLYNE CORNELIUSON, | |
| Defendants-Counter-Plaintiffs, | |
| v. | |
| ART AKIANE LLC, | |
| Plaintiff – Counter-Defendant, | |
| and | |
| AKIANE ART GALLERY, LLC, and AKIANE KRAMARIK, | |
| Counter-Defendants. | |

**AKIANE ART GALLERY'S ANSWER TO
ART & SOULWORKS LLC'S AND CAROLYNE CORNELIUSON'S
<u>FIRST AMENDED COUNTERCLAIM</u>**

Counter-Defendant, Akiane Art Gallery ("Akiane Art Gallery"), through its attorneys, hereby answers the corresponding paragraphs of Defendants/Counter-Plaintiffs Art & SoulWorks LLC's ("ASW") and Carolyne Corneliuson's ("Corneliuson") First Amended Counterclaim as follows:

1

## BACKGROUND

1.      In 2006, Corneliuson became acquainted with Akiane art and the Kramarik family, including Mark, Foreli, Jeanlu, Delfini and Akiane Kramarik. (collectively the "Kramarik Family.") Corneliuson and her husband were one of the first collectors to believe in the global value of art Akiane Kramarik created and that it could connect the world with their strongly held Christian beliefs. However, at the time, the Akiane art was only available at very expensive price points, unreachable to millions of people whom Corneliuson believed would benefit, as she had, from experiencing the art. Given her religious devotion and desire to be an example to others, Corneliuson wanted to bring Akiane's story and art to the masses by making it more accessible.

**ANSWER:**      Akiane Art Gallery admits that Corneliuson became acquainted with Akiane Art and the Kramarik family in 2006; Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Corneliuson and her husband were one of the first collectors to believe in the global value of art Akiane Kramarik created and that it could connect the world with their strongly held Christian beliefs, therefore this allegation is accordingly denied; Akiane Art Gallery denies the allegation that Akiane's art was unreachable and not accessible as Akiane was an already established artist, her art and persona had reached international acclaim, and her art was available to the masses prior to Akiane meeting Corneliuson and Corneliuson's husband. Akiane Art Gallery denies the remainder of the paragraph.

2.      The parties entered into a series of agreements over the years, the vast majority of which were oral, with conversations occurring via telephone, email and other methods over the course of the parties +10 year relationship. Art Akiane and ASW entered into the first of several written Copyright License Agreements with Art Akiane in 2008. (Art Akiane LLC & Art & SoulWorks, LLC Art Images & License Agreement ("License Agreement,") attached as Exhibit

2

A). However, the License Agreement did not form the entirety of the business relationship between ASW and Art Akiane, Akiane Gallery and the Kramarik Family, (collectively "Akiane Group"). Soon after the License Agreement was signed, Mark Kramarik, on behalf of Art Akiane, expanded the scope of the parties' relationship by entering into an oral "Wholesale Agreement" with ASW, as described further below. Years after, when the Kramariks returned from years of living in Europe and had issues with their Idaho printer, Mark Kramarik entered into the oral "Printing Agreement" with Defendants, allowing Defendants to hire their own printer to print Akiane artwork that was part of the "Jesus Series," as well as other works, such as, "Supreme Sanctuary," as described further below. The terms of the various agreements often were modified in a telephone call or an email, as neither party formally documented the relationship except via the very first License Agreement, which was modified via additional signatures and the creation of a separate Schedule A only, and modified by course of conduct over the years. During the course of their +11 year relationship, the parties often communicated via telephone, email and other methods, and sometimes during the relationship, the communication was less frequent due to the Kramarik's travel, overseas tours or moving of residences. While Mark Kramarik and ASW/Corneliuson were the ones who communicated most often, Delfini Kramarik, then acting as the operations manager for Art Akiane, and later Jeanlu Kramarik and Foreli Kramarik also communicated with ASW and sent Akiane marketing materials and art to further the parties' relationship. Because of the travels of the Kramariks and the familiarity the parties had with one another, there was little documentation of formal approvals over the course of the relationship except if the parties were communicating at the time via email.

**ANSWER:**    Akiane Art Gallery admits that ASW and Art Akiane entered into a written licensed agreement in 2008; Akiane Art Gallery admits that ASW, Art Akiane, and various other parties

3

communicated, but it lacks knowledge or information regarding the various ways such communication was facilitated; and Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied, or is otherwise denied.

3.      During the 11+ year relationship, and even to this day, Art Akiane, Akiane Gallery and the Kramarik Family have enjoyed far more than royalty or wholesale payments stemming from the fruits of ASW and Corneliuson's labor. Corneliuson used her vast network to benefit the Akiane Group by obtaining an agreement with Barnes & Noble to sell bookmarks of the Art Akiane works in Barnes & Noble stores. ASW and Corneliuson also invested significant money to build out social media channels burnishing Art Akiane works and the Akiane brand. ASW and Corneliuson built up strong social media channels, including by creating a Facebook page called www.princeofpeacefriends.com, a domain name that Corneliuson owns which is used to promote the ASW business.     This Facebook page has more than 725,000 followers. In the course of  the parties' relationship, the Akiane Group never complained about the use of this domain name.

**ANSWER:**     Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the allegation that Corneliuson used her vast network to benefit the Akiane Group by obtaining an agreement with Barnes & Noble to sell bookmarks of the Art Akiane works in Barnes & Noble stores, therefore this allegation is accordingly denied; lacks knowledge or information sufficient to form a belief as to the allegation that ASW and Corneliuson also invested significant money to build out social media channels burnishing Art Akiane works and the Akiane brand, therefore this allegation is accordingly denied; lacks knowledge or information sufficient to form a belief as to the allegation that ASW and Corneliuson built up strong social media channels, therefore this allegation is denied; lacks knowledge or information sufficient to form a belief as to the allegation

4

that Corneliuson owns the domain www.princeofpeacefriends.com to promote the ASW business, therefore this allegation is accordingly denied; lacks knowledge or information sufficient to form a belief as to the allegation that ASW's Facebook page has more than 725,000 followers, therefore this allegation is accordingly denied; lacks knowledge or information sufficient to form a belief as to whether anyone in the "Akiane Group" ever complained about the use of ASW's and Corneliuson's domain name; denies that ASW and Corneliuson created a Facebook page called www.princeofpeacefriends.com as the name of ASW's and Corneliuson's Facebook page is www.facebook.com/jesusprinceofpeace/; and Akiane Art Gallery denies the remainder of the paragraph.

4.      ASW and Corneliuson also created successful distribution channels for Art Akiane works, such as an Amazon.com storefront. Corneliuson also repeatedly referred to the Akiane Group buyers who in turn purchased original Art Akiane works for hundreds of thousands of dollars. Corneliuson was instrumental in getting the Prince of Peace painting by Akiane included in the movie "Heaven is for Real." This inclusion can be substantially credited with helping firmly launch and perpetuated Akiane Kramarik and her art.

**ANSWER:**      Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegation that ASW and Corneliuson created successful distribution channels for Art Akiane works, such as an Amazon.com storefront, therefore this allegation is accordingly denied; lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Corneliuson repeatedly referred to the Akiane Group buyers who in turn purchased original Art Akiane works for hundreds of thousands of dollars, therefore this allegation is accordingly denied; and denies the remainder of the paragraph.

5.      All of this ended abruptly when the Kramariks, Art Akiane and Akiane Gallery told Defendants in writing that all of the relationships were being terminated immediately. (Ex. F, "Termination Letter"). That Termination Letter establishes clearly that the termination was not brought about by any wrongdoing by ASW or Corneliuson – all wrongdoing raised by the Akiane Group in this lawsuit was manufactured as retribution in response to ASW's resistance to the terms of the termination the Akiane Group improperly mandated.

**ANSWER:**      The phrase "All of this" is vague, ambiguous, unintelligible, and Akiane Art Gallery does not know its bounds so it cannot ascertain a proper response. To the extent a response is required, Akiane Art Gallery denies the allegations set forth in this paragraph. Akiane Art Gallery denies the allegation that "all of the relationships" were "terminated" as the license agreement simply ended and was not renewed and any purported relationship ended as a matter of course. Akiane Art Gallery denies the remainder of the paragraph.

6.      The manner of termination is the reason why this contentious litigation was set into motion. As soon as ASW resisted the bad faith conduct of the Akiane Group, they took revenge and turned a mutually rewarding relationship, governed for more than a decade by written and oral agreements and the parties' extensive course of dealings, into an effort to destroy ASW's business under the guise of copyright protection. Their conduct in extinguishing the parties' longstanding relationship in that manner and acting in bad faith through improper Take Down Notices, as described further below, was intentionally designed to inflict the most damage possible on ASW and to put ASW out of business solely for the benefit of Art Akiane, Akiane Gallery and Akiane Kramarik.

**ANSWER:**      Denied.

6

## THE PARTIES

7.     Art Akiane LLC is an Illinois limited liability company with its principal place of business at 833 Central Ave., Unit 1250, Highland Park, IL 60035.

**ANSWER:**     Admitted.

8.     Akiane Art Gallery, LLC is an Idaho limited liability company with its principal place of business at 833 Central Ave., Unit 1250, Highland Park, IL 60035.

**ANSWER:**     Admitted.

9.     Akiane Kramarik, upon information and belief, is an individual who resides at 585 Sumac Rd., Highland Park, IL 60035. She is an owner and member of Akiane Art Gallery, LLC.

**ANSWER:**     Admitted.

10.     Akiane Kramarik and Akiane Art Gallery, LLC are central parties to the transactions, occurrence or series of occurrences which form the basis of the underlying claims between the Parties. Akiane Kramarik is the owner and/or assignor of the copyrights and trademarks at issue, a signatory to the Termination Letter and Dissolvement Agreement, and the sole member of Akiane Art Gallery, LLC. Akiane Kramarik and Akiane Gallery also either undertook business directly with Counter-Plaintiffs or were the beneficiaries of business with Counter-Plaintiffs through Art Akiane. Akiane Gallery and Akiane Kramark are therefore joined as counter-defendants pursuant to either Rule 19(a)(1) or 20(a) of the Federal Rules of Civil Procedure.

**ANSWER:**     Akiane Art Gallery admits that Akiane assigned the copyright registrations for her Works to Art Akiane as alleged in the First Amended Complaint and that Akiane signed the

7

Licensing Dissolvement [sic] Agreement, and Akiane Art Gallery denies the remainder of the paragraph.

11.     Art & SoulWorks LLC is a Colorado limited liability company with its principal place of business at 214 Ranch Road, Evergreen, CO 80439.

**ANSWER:**     Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

12.     Carol Corneliuson is an individual who resides at 214 Ranch Road, Evergreen, CO 80439. Corneliuson is the owner and sole member of Art & SoulWorks LLC.

**ANSWER:**     Akiane Art Gallery admits that Carol Corneliuson is an individual and owner of Art & SoulWorks LLC, but it lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Carol Corneliuson resides at 214 Ranch Road, Evergreen, CO 80439 or that Carol Corneliuson is the sole member of Art & SoulWorks LLC, therefore these allegations are accordingly denied.

13.     The injury to Counter-Plaintiffs occurred in Colorado, where Corneliuson has resided since 2008 and where ASW has been a registered limited liability company since September 7, 2010. The causes of action set forth in this Counterclaim arise under federal or Colorado law.

**ANSWER:**     Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Corneliuson has resided in Colorado since 2008 or has registered its LLC, therefore these allegations are accordingly denied. Akiane Art Gallery denies the remainder of the paragraph, including any allegation that it has engaged in any unlawful conduct or that Counter-Plaintiffs were injured.

8

## ADDITIONAL INTERESTED PERSONS

14.     Mark Kramarik is the father of Akiane Kramarik, a member and manager of Art Akiane LLC, and a manager of Akiane Art Gallery, LLC. Mark holds himself out as a conduit to and representative of his 25-year-old daughter, Akiane Kramarik.

**ANSWER:**     Akiane Art Gallery admits that Mark Kramarik is Akiane's father, member and manager of Art Akiane LLC, manager of Akiane Art Gallery, LLC in a limited capacity, represents Akiane in certain capacities, and Akiane Art Gallery denies the remainder of the paragraph.

15.     Foreli Kramarik is the mother of Akiane Kramarik, and a member of Art Akiane LLC. Foreli also represents herself as a conduit to and representative of Akiane Kramarik and Akiane Gallery.

**ANSWER:**     Akiane Art Gallery admits that Foreli Kramarik is Akiane's mother and member of Art Akiane LLC, and Akiane Art Gallery denies the remainder of the paragraph.

16.     Jeanlu Kramarik is the brother of Akiane Kramarik and is the managing director of Akiane Gallery. Jeanlu also represents himself as a conduit to and representative of Akiane Kramarik and Akiane Gallery.

**ANSWER:**     Akiane Art Gallery admits that Jeanlu Kramarik is Akiane's brother, and it denies the remainder of the paragraph.

## THE EXTENSIVE & CLOSE PRIOR RELATIONSHIP OF THE PARTIES

17.     Prior to starting ASW, Corneliuson had a successful career as an entrepreneur and, for the last 8 years before ASW, was a Director of Antioch Publishing, dealing with Disney, Flavia, Lord of the Rings and similar high profile licensed product development and customization of stationery related gift items for Barnes & Noble, Scholastic, Walden Books and Christian Family.

9

Through the www.art-soulworks.com website, trade shows, social media and other avenues, ASW provides a variety of religious-based gifts and art designed to inspire, educate and promote Bible-based values to individuals and families globally. ASW donates at least 20% of its profits to local, national and global programs dedicated to helping those in need.

**ANSWER:**    Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

18.    In 2006, ASW and Corneliuson began a relationship with Art Akiane, Akiane Gallery and the Kramarik Family, at first creating products such as bookmarks reflecting the Akiane art and selling it to retail outlets like Barnes & Noble. The 11+ year relationship continued during the Kramarik Family's journey throughout the world, including when they lived for years in Europe, Australia and in multiple locations in the United States.

**ANSWER:**    Akiane Art Gallery admits that ASW and Corneliuson had become acquainted with Art Akiane, Akiane Art Gallery, and certain members of the Kramarik Family in 2006, though that relationship varied in depth with each individual member of the family or company, including only having minimal or only a few instances of contact with various members. Except as so admitted, Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied, or is otherwise denied.

19.    The parties formalized their relationship in writing in 2008 through the License Agreement (**Ex. A**), but entered into several additional oral agreements, and also often modified the terms of the agreements over the phone or in email. Unlike typical Licensor/Licensee relationships where the License Agreement dictates the rights of the parties following termination, the oral agreements that the parties entered into over the years created both a Licensor/Licensee relationship for the products at issue in the License Agreement Printing Agreement (for which

10

royalties were paid), but also a Buyer/Seller relationship for art purchased in the course of the Wholesale and Private Collection agreements described below.

**ANSWER:**   Akiane Art Gallery admits that ASW and Art Akiane entered into a written license agreement, but it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied, or is otherwise denied.

### The License Agreement

20.    The License Agreement had an initial term of five years, was renewed in 2012 until 2015 via a second round of signatures on the original agreement, and was renewed again (via a third set of signatures on the original agreement) in 2016 until January 11, 2019, along with a second Schedule A that broadened the scope of the License Agreement. *See* Ex. A. The course of conduct of the parties was that the License Agreement often technically "expired" before an agreed renewal was signed, yet the parties continued with business as usual after the expiration until a renewal was negotiated and executed. This demonstrates a pattern of renewal, even after the expiration date of the License Agreement. (Id.)

**ANSWER:**   Akiane Art Gallery admits that the license agreement had an initial term of five years and was renewed in 2012, and it specifically denies the allegation that the agreement was renewed in 2015, but believes it was in 2016. Akiane Art Gallery denies the remainder of the paragraph.

21.    The License Agreement gave Defendants the ***exclusive*** world-wide rights to display, market and sell, initially certain of Akiane's artwork, and then eventually ***all of her works***.

**ANSWER:**   Akiane Art Gallery denies the allegations and conclusions of law set forth in this paragraph.

22.     In addition, the License Agreement gave ASW the right to use the Akiane art images "in promotional advertisements and materials and ***for all promotional purposes*** in connection with the LICENSEE's web site and Internet related business without cost or royalty to LICENSOR." (Ex. A, ¶ D, emphasis added). Accordingly, throughout the parties' relationship, ASW and Corneliuson promoted the Akiane works and attempted to drive traffic to the ASW website through ASW and Corneliuson's Facebook pages, Pinterest and other social media and marketing platforms.

**ANSWER:**    Akiane Art Gallery admits that the license agreement gave ASW, upon Art Akiane's approval, the right to use the Akiane art images in promotional advertisements and materials in connection with the LICENSEE's web site and Internet related business without cost or royalty to LICENSOR. Except as so admitted, Akiane Art Gallery denies that the license agreement gave ASW the right to use the Akiane art images for all promotional purposes in connection with the LICENSEE'S web site and Internet related business without cost or royalty to LICENSOR, including during or after the expiration of the license agreement. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in this paragraph, and they are accordingly denied.

23.     This promotion was open and notorious throughout the parties' relationship, and the Akiane Group was not only well aware of it, but often copied, used or reposted posts that ASW made.

**ANSWER:**    As to itself, Akiane Art Gallery denies that the alleged "promotion" was open and notorious throughout any purported relationship with Akiane Art Gallery, ASW, or Corneliuson and it denies that ASW even informed Akiane Art Gallery of such "promotion." As to any other member of the "Akiane Group," Akiane Art Gallery lacks knowledge or information sufficient to

12

form a belief as to the truth of the allegations set forth in this paragraph, and they are accordingly denied.

24.     Given that ASW had the right to utilize the art for promotional purposes for the duration of the License Agreement, and ASW was a seller of Christian art, ASW often added scripture to the art to drive traffic to the website for promotional purposes. These posts resulted in derivative works being created under the Copyright Act while the License Agreement was in effect. One such example is as follows:



There were hundreds of posts in this manner over the course of the parties' relationship, and the Akiane Group did not complain even once to ASW or Corneliuson about these posts.

**ANSWER:**     Akiane Art Gallery admits that ASW added scripture to calendar products upon Art Akiane's approval and that ASW sold some art with a "Christian" theme. Except as so admitted, Akiane Art Gallery denies that ASW was granted permission to add any verbiage to any other

13

products or to any art published and displayed on ASW's social media. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the allegation that ASW's unauthorized posts were the result of derivative works being created under the Copyright Act, therefore this allegation is accordingly denied.

25.     ASW paid Art Akiane a 10% royalty on the wholesale price of all items sold under the License Agreement. There is no provision in the contract that addresses the wind-down of the relationship or the parties' obligations in the event the contract is not renewed after expiration. (*Id.*)

**ANSWER:**     The allegations alleged in this paragraph do not allege facts against Akiane Art Gallery; therefore, no response is required. To the extent a response is required, Akiane Art Gallery admits that there is no provision in the license agreement that addresses the wind-down of the relationship or the parties' obligations in the event the license agreement is not renewed after its expiration. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the allegation that ASW paid Art Akiane a 10% royalty on the wholesale price of all items sold under the license agreement, therefore this allegation is accordingly denied.

### The Wholesale Agreement[1]

26.     In addition to the License Agreement rights, beginning in 2008, Mark Kramarik and others, on behalf of Art Akiane, requested that ASW essentially mimic the Akiane Gallery website to enhance the exposure and selling opportunities of Akiane's prints and paintings. Art Akiane through Mark Kramarik, and ASW, entered into an oral agreement which allowed ASW

---

[1] The First Amended Counterclaim's headings are not interpreted to constitute allegations, and thus no response is required, but to the extent they require a response, they are denied.

to sell and market additional Akiane works and products, including prints and canvasses. ("Wholesale Agreement").

**ANSWER:** Akiane Art Gallery, to the best of its knowledge, denies that Art Akiane and ASW entered into an oral agreement; Akiane Art Gallery denies that there was a wholesale agreement; Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and they are accordingly denied.

27.     ASW either purchased the Wholesale Agreement works and kept them in inventory for customers, or, if a customer expressed interest in a piece that ASW had not yet purchased, ASW would purchase the piece from Akiane Gallery at the wholesale price (40% discount off retail prices if under 10 pieces and 50% discount if 10+ ordered on the same day), and resell the piece to the customer with ASW's own mark-up, with the Defendants' blessings. (These sales are referred to as "Wholesale Sales").

**ANSWER:** Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

28.     At ASW's own expense, it greatly expanded its website to include paintings, prints and canvasses of Akiane's works, and did so with the assistance of Art Akiane and the Counter-Defendants to ensure accurate descriptions and appropriate photos of all of these works. As part of this ongoing Wholesale Agreement, ASW could market, display on its website and elsewhere, and sell Akiane's works sold under this agreement by Counter-Defendants.

**ANSWER:** As to itself, Akiane Art Gallery denies that it assisted ASW to greatly expand its website to include paintings, prints, and canvasses of Akiane's works to ensure accurate descriptions and appropriate photos of all of her works. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegation that ASW at its own expense,

15

greatly expanded its website to include paintings, prints and canvasses of Akiane's works, and did so with the assistance of the other Counter-Defendants to ensure accurate descriptions and appropriate photos of all of these works, therefore this allegation is accordingly denied; Akiane Art Gallery denies that the display of works under the alleged Wholesale Agreement were requested, endorsed, or facilitated by it or the other Counter-Defendants. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied.

29.    One example of the Akiane Group's knowledge of this agreement and arrangement is reflected in a 7/1/2010 email between ASW and Art Akiane, sent with an ASW Purchase Order, with a request that Art Akiane ship the purchases directly to ASW's customer. (7/1/2010 email and Purchase Order are attached as **Ex. B**).

**ANSWER:**    Denied.

### The Printing Agreement

30.    In 2015 or 2016, the Kramariks moved to Los Angeles. At this time, the printer in Idaho that they had been using to provide ASW with Wholesale works ceased doing business. Multiple issues arose with a printer Counter-Defendants found in Los Angeles, including that the printer charged approximately 2.5 times more than the previous printer.

**ANSWER:**    Akiane Art Gallery admits that some of the Kramariks moved to Los Angeles in or around 2015 or 2016. Except as so admitted, Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied.

31.     Mark Kramarik, on behalf of Art Akiane, entered into another oral agreement with ASW and Corneliuson in which he gave them permission, from that point forward, to directly print (through a printer in Colorado they hired) any works in the "Jesus Series", including several Prince of Peace pieces, as well as other works, such as, "Supreme Sanctuary." The Jesus Series initially included 7 pieces and in 2017 expanded to 8 pieces of Akiane work. As part of this agreement, ASW and Corneliuson were given permission to print, market and sell, as they did under the License and Wholesale Agreement, and in return, ASW was obligated to pay 10% of the wholesale price as a royalty, just as it did under the License Agreement. (the "Printing Agreement").

**ANSWER:**     Akiane Art Gallery, to the best of its knowledge, denies that Art Akiane and ASW entered into an oral agreement. Akiane Art Gallery denies that there was a wholesale or printing agreement. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied.

32.     Counter-Defendants were well aware that ASW and Corneliuson were printing these pieces, and they also readily accepted the royalty payments that ASW tendered to them in return for all sales under this agreement.

**ANSWER:**     As to itself, Akiane Art Gallery denies that it was aware of ASW's and Corneliuson's actions or that it readily accepted any purported royalty payments tendered from ASW. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied.

**Private Collection Pieces**

33.     Over the years, Corneliuson also purchased Akiane original pieces for her and her husband's private collection. They paid retail price for these. In addition to original pieces, which,

according to the Kramariks, are currently worth $180,000 each at retail, ASW and Corneliuson also purchased at retail price a number of limited edition pieces that were often framed and resold.

**ANSWER:**    Akiane Art Gallery admits that Corneliuson purchased and owned two originals from Art Akiane, but it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied.

### The Display and Marketing and Sale of Akiane Art

34.    ASW publicized the Akiane pieces covered on its website, Twitter, Instagram, YouTube, in marketing materials and at trade shows, with full knowledge and assistance from Art Akiane, Akiane Gallery, and the Kramarik Family. The display of works under the Wholesale Agreement were not only requested and endorsed by the Akiane Group, but they were facilitated by them, as ASW had to obtain the pieces to resell from the Art Akiane or Akiane Gallery themselves. In fact, the Akiane Group often drop-shipped items that were not yet in ASW's inventory to customers that came through ASW's social media sites or website to purchase. A spreadsheet reflecting the more than 50,000 Wholesale Sales that ASW made with the Akiane Group's knowledge, blessing and pursuant to the Wholesale Agreement, is attached as **Ex. C**.

**ANSWER:**    As to itself, Akiane Art Gallery denies that ASW publicized the Akiane pieces covered on its website, Twitter, Instagram, YouTube, in marketing materials and at trade shows, with full knowledge and assistance from Akiane Art Gallery; denies that the display of works under the alleged Wholesale Agreement were requested, endorsed, or facilitated by Akiane Art Gallery; denies that Akiane Art Gallery often drop-shipped items that were not yet in ASW's inventory to customers that came through ASW's social media sites or website to purchase; and denies that the purported sales in Exhibit C were made with Akiane Art Gallery's blessing. To the extent this paragraph is directed to the actions of others, Akiane Art Gallery lacks knowledge or

18

information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

35.     In addition, after the Printing Agreement was entered into, ASW similarly marketed and displayed these works on its website and various social media sites, just as it did with the License Agreement merchandise and the Wholesale Agreement merchandise. Mark Kramarik, Art Akiane and others were well aware of this display and these sales, and they received royalties for every sale prior to the termination of the License Agreement (as noted in ASW's prior answer, royalties generated following the termination have been itemized and are reserved pending the resolution of the parties' claims).

**ANSWER:**     The phrase, "and others" is vague, ambiguous, unintelligible, and Akiane Art Gallery does not know its bounds so it cannot ascertain a proper response. To the extent a response is required, Akiane Art Gallery denies the allegation that others were well aware of ASW's alleged display and sales or that these unidentified persons or entities received royalties for every sale prior to the termination of the license agreement; Akiane denies that the display of works under the alleged Wholesale Agreement were requested, endorsed, or facilitated by it or others; and Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, therefore this allegation is accordingly denied, and denies the remainder of the paragraph.

36.     In addition, throughout the relationship, and even after the purported termination of the parties' contract by letter from the Akiane Art, Akiane Gallery and Akiane Kramarik, Corneliuson would routinely refer interested customers to the Akiane Group to purchase original works. In fact, the email exchange attached as **Ex. D** shows one example where Corneliuson sent Mark Kramarik a customer who, according to Kramarik, made three expensive purchases. Ex. D.

19

**ANSWER:**    Akiane Art Gallery denies that the purported contract was "terminated" and states that the contract simply expired and was not renewed. Akiane Art Gallery denies the allegation that the subject letter was from Akiane Art Gallery. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and they are accordingly denied.

37.    Per the parties' written exchange in Exhibit D, ASW is due a 15% commission for the purchases but to date, Counter-Defendant, Art Akiane has not paid her the commissions.

**ANSWER:**    The allegations alleged in this paragraph do not allege facts against Akiane Art Gallery; therefore, no response is required. To the extent a response is required, Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

### ART AKIANE, AKIANE GALLERY & AKIANE KRAMARIK'S BAD FAITH

38.    On January 10, 2019, Art Akiane, Akiane Gallery, Mark Kramarik and Foreli Kramarik and Akiane Kramarik, sent Corneliuson a letter with a "Licensing Dissolvement Agreement" (collectively, "Termination Letter", attached as **Ex. F**), which purported to terminate the License Agreement, Wholesale Agreement, Printing Agreement and all other agreements between the parties, and included a list of demands. Neither ASW nor Corneliuson were a party to the "License Dissolvement Agreement." (*See* Ex. F).

**ANSWER:**    Akiane Art Gallery admits that a letter was sent to Corneliuson on January 10, 2019, which was signed "Yours truly, The Kramarik Family" and contained a "Licensing Dissolvement [sic] Agreement," which is attached as Exhibit F to the counterclaim. Akiane Art Gallery specifically denies that the letter terminated the license agreement as the license agreement was never terminated. Rather, the license agreement expired and was not renewed. Akiane Art Gallery

20

lacks knowledge or information sufficient to form a belief as to the truth of the allegation that neither ASW nor Corneliuson were parties to the Licensing Dissolvement [sic] Agreement. Akiane Art Gallery denies the remainder of the paragraph.

39.     Notwithstanding the allegations made by Art Akiane in this lawsuit, the Termination Letter demonstrates the truth behind the termination. That glowing letter repeatedly compliments Corneliuson and ASW for the work they did and relationship the parties had, and indicated that the termination of the relationship was a result of Akiane wanting to go in a different direction. Id. Not once in the 8 page Termination Letter did the Akiane Group raise any issue such as copyright infringement, improper use of the copyright or trademark symbol, false designation or any of the other claims that were fabricated in a further attempt to punish ASW for not going quietly into the night.

**ANSWER:**     Akiane Art Gallery admits that Corneliuson's and ASW's unlawful conduct was not discussed in the January 10, 2019 letter because much of Corneliuson's and ASW's unlawful conduct was not discovered until after the license agreement expired, and/or that was not the purpose of the letter or such information was not required to have been included in the letter, and Akiane Art Gallery denies the remainder of the paragraph, and Akiane Art Gallery further states that the content of the letter speaks for itself and was not limiting of any rights.

40.     The list of demands in the Licensing Dissolution Agreement were categorized as "A" demands, which were to be completed immediately, and "B" demands, to be completed by March 1, 2019. (Ex. F.) Subsequent attempts to resolve the parties' disputes extended the demands to April 13, 2019.

**ANSWER:**     Akiane Art Gallery specifically denies that the Licensing Dissolvement [sic] Agreement contained a list of "demands." Akiane Art Gallery lacks knowledge or information

21

sufficient to form a belief as to the truth of the allegation that the parties' disputes extended the "demands" to April 13, 2019, therefore this allegation is accordingly denied.

41.     The Termination Letter "A" demands included:

1.      All "Official" titles on the "Prince of Peace by Akiane Kramarik" Facebook page will have to be removed. They are related to Akiane's Name or Brand;

2.      Facebook Name would have to be changed from "Prince of Peace Painting by Akiane Kramarik" to "Prince of Peace Painting Community.";

3.      Art&Soulworks website must remove all "Official" titles from Google Web Search page or any reference anywhere saying that Art-Soulworks is the "Official", "Official Akiane Art Gallery", "Authorized" or the seller/distributor of Akiane's artwork.;

4.      Any and all future posts on any social media platform, google search, website that has anything to do with Akiane's likeness, Name, Brand or Artwork is not permitted.;

5.      Art & SoulWorks can no longer sell, license or distribute Akiane's artwork.;

6.      All merchandise (Calendars, Bookmarks, Journals, Mugs, Candles, Tapestries, Throw Rugs, etc.) associated with Akiane's brand and artwork must be discontinued.;

7.      If any is interested in purchasing Akiane's artwork, please, forward them to www.akiane.com. The Official Akiane Gallery. (Ex. A.)

**ANSWER:**     Akiane Art Gallery admits that the January 10, 2019 letter included the language enumerated above, and Akiane Art Gallery denies that the letter was titled a "Termination Letter" or that it included any "demands."

42.     Termination Letter "B" demands included:

1.      Art & SoulWorks will have until March 1st 2019 to liquidate inventory: any and all things related to Akiane's Artwork, Name, Brand and Likeness (Royalties to Akiane Gallery will still be in effect and active during the liquidation process). (Ex. F.)

22

**ANSWER:**    Akiane Art Gallery admits that the January 10, 2019 letter included the language enumerated above, and Akiane Art Gallery denies that the letter was titled a "Termination Letter" or that it included any "demands."

43.    Long before the expiration of the License Agreement, Art Akiane, knew full well that it had no intention of renewing the License Agreement for the fourth time and that it intended to terminate without notice the Wholesale Agreement and the Printing Agreement and all other oral agreements the parties had agreed to over the years. Despite knowledge of their intended actions, Art Akiane failed to inform ASW of the intention and allowed ASW to continue to take all of the various efforts to continue to promote the Akiane Group and art and to continue "business as usual," including making commitments to customers, printers and trade shows, and making a sizeable purchase of merchandise one day before Art Akiane, Akiane Gallery and Akiane Kramarik attempted to terminate the agreements.

**ANSWER:**    Akiane Art Gallery denies the allegation that it attempted to terminate any of the purported agreements. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and they are accordingly denied.

44.    Not only did the Akiane Group essentially lie in wait until the last day of the License Agreement before informing ASW of the termination, in the course of doing so, they demanded that ASW remove *all* references to its decades-long position as the exclusive, worldwide and original source of Art Akiane works from all media *that same day*, and insisted that all remaining inventory be liquidated within 6-7 weeks. These were impossible and unreasonable demands that were not made in good faith, and were designed to cause substantial irreparable damage to ASW and Corneliuson.

23

**ANSWER:**     Denied.

45.     Art Akiane, Akiane Gallery, and Akiane Kramarik undertook these actions knowing Art Akiane was the source of the vast majority of the Art & Soulworks business and that meeting the demands would require ASW and Corneliuson to immediately liquidate the licensed and printed inventory at fire-sale prices. This further caused a detrimental impact on decades-long business relationships that ASW and Corneliuson had carefully cultivated, including with customers who relied on ASW for Jesus, Prince of Peace and other gifts and art from Art Akiane for Christmas, Easter and other occasions.

**ANSWER:**     As to itself, Akiane Art Gallery denies knowing that Art Akiane was the majority of ASW's business; denies knowing that ASW and Corneliuson would have to liquidate its inventory at "fire-sale" prices; denies knowing about ASW's and Corneliuson's business relationship with its own customers; denies any unlawful conduct on its behalf; and denies any unlawful conduct on behalf of Art Akiane, Akiane Gallery, or Akiane Kramarik; and Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and they are accordingly denied.

46.     Left with no choice, ASW liquidated all of the Licensed and Printing Agreement material in their possession in haste and at severe loss to customers willing to take such items in bulk and on such short notice.

**ANSWER:**     Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

47.     The losses caused by the Akiane Group to ASW and Corneliuson as a result of the forced fire-sale and inability to service its long-standing customers with no notice, among other

24

things, are in excess of one million dollars and have resulted in an avoidable but now existential crisis for ASW. Effectively, Art Akiane, Akiane Gallery, and Akiane Kramarik have put ASW out of business by their conduct, ruined Defendants' reputation and significantly impacted Corneliuson's well-being.

**ANSWER:**    Denied.

### *Akiane Gallery and Akiane Kramarik's First Instance of Tortious Interference*

48.    The License Agreement was entered into between ASW and Art Akiane (*see* Ex. A). Even though she was not a party to it, it appears that Akiane Kramarik signed the agreement as well.

**ANSWER:**    Akiane Art Gallery admits that the license agreement was entered into between ASW and Art Akiane, admits that Akiane signed the agreement, and admits that Akiane was not a party to the agreement.

49.    The Wholesale Agreement was entered into between ASW and Corneliuson on one hand and Art Akiane, through Mark Kramarik, on the other. All Counter-Defendants were aware of the Wholesale Agreement, as Mark Kramarik, a member of Art Akiane and manager of Akiane Gallery made the agreement, and both entities provided the merchandise sold under that agreement. All Counter-Defendants were similarly aware of the Printing Agreement, as Mark Kramarik made that agreement too and the parties accepted royalties for the sales under this agreement.

**ANSWER:**    As to itself, Akiane Art Gallery denies that it was aware of any purported wholesale or printing agreement or that it accepted royalties for sale under such agreements. Akiane Art Gallery, to the best of its knowledge, denies that Art Akiane and ASW entered into an oral agreement. Akiane Art Gallery denies that there was a wholesale or printing agreement. Akiane

25

Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied.

50.     Akiane Kramarik owns and controls Akiane Gallery, but appears to have no legal interest in Art Akiane and/or did not retain any interest in the licensed Art Akiane works. Based on the Termination Letter provided to ASW (*see* Ex. F), at some point in time, Akiane Kramarik decided she wanted to solely control her art notwithstanding that, as alleged in the Complaint, she had already assigned all rights and interest in her art, her name and likeness to Art Akiane – the contracting party with ASW for the License Agreement, Wholesale Agreement and Printing Agreement.

**ANSWER:**     Akiane Art Gallery admits that Akiane assigned the copyright registrations for her Works to Art Akiane as alleged in the First Amended Complaint and Akiane Art Gallery admits that Akiane owns and controls Akiane Art Gallery, but not Akiane Gallery as alleged. Except as so admitted, Akiane Art Gallery states that the phrase, "legal interest" is vague, ambiguous, unintelligible, and Akiane Art Gallery does not know its bounds so it cannot ascertain a proper response. To the extent a response is required, Akiane Art Gallery denies the allegation that Akiane has no legal interest in Art Akiane. Akiane Art Gallery further states that the phrase, "retain any interest" is vague, ambiguous, unintelligible, and it does not know its bounds so it cannot ascertain a proper response. To the extent a response is required, Akiane Art Gallery denies the allegation that Akiane did not retain any interest in the licensed Art Akiane works. Akiane Art Gallery denies the allegation that based on the "Termination Letter," Akiane wanted to solely control her art as that specific phrasing is not included in the letter nor was the letter titled, "Termination Letter." Akiane Art Gallery denies the remainder of the paragraph.

26

51.     Akiane Kramarik was fully aware of the relationship Art Akiane had with ASW, was fully aware of the License Agreement (because she signed it even though she was not a party to it) and was or should have been fully aware of the Wholesale Agreement and the Printing Agreement between the parties. She also knew of and contributed to the course of conduct established between the parties in connection with contract renewal for the License Agreement, and also knew of the reliance that ASW and Corneliuson placed on the continuation of the parties' relationship.

**ANSWER:**     Akiane Art Gallery admits that Akiane signed the license agreement and that it was not a party to the agreement. Answering further, Akiane Art Gallery states that the phrase "fully aware" is vague, ambiguous, unintelligible, and Akiane Art Gallery does not know its bounds so it cannot ascertain a proper response. To the extent a response is required, it denies that it was "fully aware" of the relationship Art Akiane had with ASW or that it was fully aware of the license agreement or the purported wholesale and printing agreements, assuming such agreements even exist. Akiane Art Gallery denies the remainder of the paragraph.

52.     Nevertheless, Akiane Kramarik, in an effort to "control" the art to which she has no legal rights, according to her own pleading, took steps to have the longstanding relationship and agreements with ASW abruptly terminated by Art Akiane, at the expense of Corneliuson and ASW.

**ANSWER:**     Denied.

53.     In fact, Art Akiane admitted in the Termination Letter sent to ASW that it was terminating the agreements due to Akiane Kramarik's threats to her parents and Art Akiane, that if they refused to terminate the agreement with ASW, she would sever all business ties with them. The Termination Letter states in part:

27

Please, keep in mind, that Akiane will have to make another serious decision this summer if she wants to resign with her sister company – Art Akiane LLC managed by her family....

We believe, that if we turned completely another direction, disregarding her intentions and not honoring her plans, Akiane would eventually need to dissolve our business partnership as well. As you can see there is a concrete concern for us too. (Ex. F.)

**ANSWER:**   Akiane Art Gallery admits that the language above is included in the January 10, 2019 letter. However, Akiane Art Gallery denies that the cited language is a complete and accurate description of the letter as Defendants/Counter-Plaintiffs excluded other language from the letter and lacks proper context. Except as so admitted, Akiane Art Gallery denies the remainder of the paragraph.

54.   By taking these actions, among others, Akiane Kramarik and Akiane Gallery intentionally interfered with the continuation of the License Agreement, Wholesale Agreement and Printing Agreement, or the expectancy of it by ASW by threatening Art Akiane and her parents with the cessation of any business partnership with them unless they abruptly terminated the agreements with ASW.

**ANSWER:**   Denied.

### ASW & CORNELIUSON'S RELIANCE ON THE PARTIES COURSE OF DEALINGS AND AFFIRMATIVE REPRESENTATIONS

55.   In conducting its business, ASW and Corneliuson relied on the agreements, the parties' course of dealings and the Akiane Group's representations over the span of their more than 11-year relationship.

**ANSWER:**   Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

56.     ASW and Corneliuson expended hundreds of thousands of dollars on inventory, paying for, creating marketing materials for and attending trade shows, building out and maintaining its website, social media sites and Amazon channel, paying staff, drafting marketing materials, and continuously trying to promote Art Akiane works, Akiane Kramarik as an artist and the Akiane Art Gallery. As Art Akiane gave absolutely no notice to ASW and Corneliuson that they intended to sever their longstanding relationship, these expenditures continued in the months, weeks and days leading up to the termination. In making these expenditures, ASW and Corneliuson trusted that, as they had many times before, the parties would renew the License Agreement and the Wholesale Agreement and the Printing Agreement would continue, allowing her to continue to purchase, display and resell Akiane art as before, and maintain an ongoing supply to the many customers who came to rely on her for Akiane merchandise.

**ANSWER:**     Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

57.     While ASW recognized that the parties' relationship might not continue forever, she reasonably expected that any cessation of the relationship and the multiple agreements between the parties would only occur with sufficient advanced notice to allow her to sell off all of her existing inventory, notify her customers so they could find alternative sources and maintain her reputation and goodwill in the industry, reasonably wind down the part of the business dealing with Akiane's art, cease making expenditures in reliance on the agreements continuing, and ensure that her entire business did not fail in the process.

**ANSWER:**     Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

58.     As of the date of termination (which was the day before the License Agreement expired), ASW had committed to trade shows, had created advertising, marketing brochures and collateral, had new product orders well into 2019 for which it had already expended substantial amounts of money prior to the purported termination, and had print runs scheduled with the printer for which she incurred a cancelation fee. Also, as it had for the previous years of their relationship, ASW had created the 2019 "Prince of Peace" calendar to sell and had begun extensive work on the 2020 calendar.

**ANSWER:**     Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

59.     ASW was the sole supplier for hundreds of ministries, churches and independent Cristian bookstores, who routinely turned to her as the sole supplier of, for example, Prince of Peace wallet cards, which were often used by clergy for their congregants or to hand out at funeral services. In anticipation of the continuation of the parties' relationship, ASW had built up a sizeable inventory of goods created under the License Agreement, purchased under the Wholesale Agreement, or printed under the Printing Agreement, for intended sale in 2019 and beyond. Art Akiane, Akiane Gallery, and Akiane Kramarik knew or should have known all of these facts.

**ANSWER:**     Akiane Art Gallery denies that it knew or should have known about the allegations alleged in this paragraph. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied.

60.     ASW also placed an order with a retail value of $11,000 worth of Wholesale Sales merchandise on January 9 – one day before Art Akiane, Akiane Gallery and Akiane Kramarik summarily terminated the relationship. In fact, ASW had trouble with its order and reached out to Art Akiane to ensure the wholesale purchase was received. Art Akiane remedied the problem and

30

authorized ASW's purchase of wholesale inventory, knowing full well it intended to terminate within hours.

**ANSWER:**    Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

61.    In addition, in the months leading up to the termination, the Akiane Group continued to send videos and links to ASW of new Akiane art to ensure that the ASW website posted them simultaneously with the Akiane Gallery to multiply the exposure. An email written by Jeanlu Kramarik, Akiane's brother, also the managing director of Akiane Gallery, attached as **Ex. E**, illustrates that the Akiane Group not only gave permission to ASW to market and post Akiane's works, including new ones, but that Jeanlu and the Akiane Group branded the videos with ASW's name and sent them to ASW to be posted to the ASW website and promoted through social media channels. It did this so Art Akiane, Akiane Gallery, Akiane Kramarik and her family would benefit from ASW's sales of the art and its extensive promotion of the Akiane brand to ASW's large audience of customers and contacts. In fact, the posting of the video in Exhibit E on ASW's site at the Akiane Group's direction resulted in an $85,000 sale of a recent Akiane painting, "The Light."

**ANSWER:**    Akiane Art Gallery admits that Jeanlu Kramarik is Akiane's brother; admits upon information and belief that Art Akiane sent various approved videos to ASW; and admits upon information and belief that ASW's website was listed in the upper right hand-corner on a few of the approved videos sent to ASW for marketing purposes. Except as so admitted, Akiane Art Gallery denies the allegation that it gave permission to ASW to market and post Akiane's works, including new ones; denies the allegation that it branded the purported videos with ASW's name and sent these videos to ASW to be posted to the ASW website or that it promoted these videos

31

through social media channels; denies the allegation that the activities alleged herein were performed so that Akiane Art Gallery would benefit from ASW's sales or ASW's alleged promotion of the Akiane brand to ASW's alleged audience of customers and contacts; and denies the allegation that it directed the posting of the video in Exhibit E on to ASW's site. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and they are accordingly denied.

## THE AKIANE GROUP'S CONTINUED TORTIOUS INTERFERENCE THROUGH IMPROPER TAKE DOWN NOTICES AND PATTERN OF BAD FAITH LITIGATION

62.    Following the date of liquidation mandated by the Akiane Group, ASW has taken a number of steps to inform the public that is no longer the exclusive or "official" source of Akiane Art and that the parties' relationship has terminated. For example, in the "About" section of the ASW website, it prominently states:

> We were pleased to be the exclusive global licensors and distributors of "Prince of Peace" and all art by Akiane Kramarik from 2006 through March 1, 2019. Considered one of the top 20 living artists, Akiane painted her first masterpiece "Prince of Peace," her portrait of Jesus, at age 8. Akiane, now 25 has informed us that she has chosen to be completely independent. We wish her well and hope that her visions of God, Jesus, and heaven continue to bless her and her artwork.

**ANSWER:**    Akiane Art Gallery admits that ASW's website contains the language cited above, and it denies that any relationship was terminated as the license agreement simply expired and was not renewed causing all the purported relationships to end as a matter of course. Akiane Art Gallery denies the remainder of the paragraph.

63.    ASW also changed the cover photos to remove the Prince of Peace Art or reference Akiane on her social media pages (the ASW Facebook account has more than 700,000 followers) and since the liquidation date of April 13, 2019, ASW has not posted anything related to Akiane

25827144.1

except in an effort to sell her own products. ASW has also hidden hundreds of pages that previously referred to Akiane, her art and the parties' relationship, and changed the name of the Facebook page and removed Akiane's name, at no small cost to the business. As expected, given the extensive promotion of Akiane art by ASW while the License Agreement was in effect for +11 years, search engines that utilize algorithms using key words continue to bring ASW up on searches regarding Akiane, through no effort of ASW.

**ANSWER:**    Akiane Art Gallery admits that ASW changed the name of its Facebook page prior to the filing of this lawsuit. Except as so admitted, Akiane Art Gallery denies that ASW removed the Prince of Peace Art from cover photos prior to the filing of  this lawsuit; denies that ASW removed any reference to Akiane on her social media pages; denies that ASW has not posted anything related to Akiane except in an effort to sell her own products; denies that ASW had no involvement in using search engines to bring up or to promote ASW in internet searches regarding Akiane. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied.

64.    In response to requests for licensed art, ASW gives similar information about the cessation of the parties' relationship, and refers customers to Art Akiane. (An example of the information provided to customers, see **Ex. H**).

**ANSWER:**    Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

65.    The First Sale Doctrine arises out of Section 109(a) of the Copyright Act, which allows purchasers of copyrighted material to transfer the work, by sale or otherwise, without the copyright owner's permission. 17 U.S.C. §109(a).

33

**ANSWER:**    This paragraph contains conclusions of law for which no answer is required. To the extent an answer is required, Akiane Art Gallery denies that the First Sale Doctrine permits Defendants/Counter-Plaintiffs' actions and infringements.

66.    ASW and Corneliuson have the right to sell and display for sale any Akiane art products purchased from the Akiane Group or from any other source, for that matter. In addition to being able to display that art for sale, ASW and Corneliuson are entitled to modify the display of the art without permission of the Akiane Group, for example, by selling the product with a frame, or affixing it to a ceramic tile, etc.

**ANSWER:**    Denied.

67.    In the course of this lawsuit, the Akiane Group learned that as part of the fire sale liquidation they mandated, ASW sold some of its inventory to third parties, including Carpentree, a company that was previously a party to a three-way supplier agreement between itself, ASW, and the Akiane Group. It further learned that Carpentree, in turn, sold some of the art to other third parties, including Christianbook, Inc.

**ANSWER:**    Akiane Art Gallery denies that there was a mandated fire sale liquidation mandated by itself or any member or entity of the "Akiane Group." Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied.

68.    Dissatisfied that it could not force ASW to cease selling the works that it has the right to sell via the First Sale Doctrine (in light of the denial of their Motion for Temporary Restraining Order), the Akiane Group instead has opted to embroil these third-parties into this litigation by naming Carpentree as a defendant in the Amended Complaint, and by sending Take

34

Down Notices under the Digital Copyright Millennium Act (DCMA) to other parties, like Christianbook.com and possibly others. (The Akiane Group Take Down Notice to Christianbook is attached as **Ex. G**).

**ANSWER:** Akiane Art Gallery admits that Carpentree is a defendant in this matter, denies that it sent any Take Down Notices, and admits that Take Down Notices were sent on behalf of other parties to other third parties pursuant to the Digital Copyright Millennium Act, and denies the remainder of the paragraph.

69. These customers are looking to ASW as the original source of the Akiane work with respect to the allegations of infringement in the lawsuit and false Take Down Notices. The conduct of the Akiane Group and its agents, made following the breakdown of the settlement process, is another example of bad faith by the Akiane Group designed at tarnishing ASW's reputation in the Christian business industry by calling her a "counterfeiter" and harassing her by using the litigation process to include her customers improperly. ASW has suffered irreparable harm as a result of this conduct, which harm will continue unless remedied, as well as extensive damage.

**ANSWER:** Akiane Art Gallery admits that customers are being misled to incorrectly believe that ASW is the original source of the Akiane work as a result of ASW misleading consumers that it is an "official" source of Akiane's works. Except as so admitted, Akiane Art Gallery denies the remainder of the paragraph, including any allegation that Akiane Art Gallery engaged in any unlawful conduct.

70. Furthermore, ASW and Corneliuson have been chilled from actions they are entitled to make, including promoting and selling the art they purchased and are entitled to sell under the First Sale Doctrine on the ASW website, www.jesusprinceofpeace.com social media

35

sites, Amazon and any other places it chooses to sell and display the works for sale. Without a declaration of the rights ASW has, it will continue to be thwarted by the vexatious litigation and tactics of the Akiane Group and the Kramariks in their effort to inappropriate assert control over art they sold.

**ANSWER:**    Akiane Art Gallery denies the allegations and conclusions of law set forth in this paragraph, including any allegation that Akiane Art Gallery engaged in any unlawful conduct.

**COUNT I**
**EXPEDITED DECLARATORY JUDGMENT**
**(AGAINST ALL DEFENDANTS)**

71.    ASW and Corneliuson incorporate all prior paragraphs as if set forth fully herein.

**ANSWER:**    Akiane Art Gallery realleges its responses to Paragraphs 1 through 70.

72.    ASW and Corneliuson seek an expedited determination of their rights following the termination of the agreements. Namely: (1) do they have the right to display for sale the Akiane work purchased through the Wholesale and Private Collection agreements and to continue to display that art on social media, the ASW websites, and on Amazon and other retail sites; (2) does ASW/Corneliuson have any obligation to go back through social media sites like Facebook, youtube, and its own website to remove prior posts that were made in accordance with the broad rights to market and advertise under the License Agreement; (3) can Corneliuson/ASW sell Akiane art and products they own with frames in accordance with the First Sale Doctrine; (4) can third parties who legitimately purchased art from ASW either while the License Agreements were in place, through the fire-sale liquidation process or from the Wholesale inventory, take down the materials as infringing or may they continue to sell them in accordance with the First Sale Doctrine; (5) does ASW/Corneliuson own the domains "Princeofpeacefriends" or "Jesusprinceofpeace" and can they continue to use the terms "Jesus" and "Prince of Peace"; (6) did ASW/Corneliuson have

36

the right to create derivative works of the Akiane right for purposes of promotion and display while the Agreements were in place; and (7) did the Akiane Group waive/forfeit the right to complain about the displays, use of trademarks and copyrights that have been open and notorious for more than 10 years.

**ANSWER:**    This paragraph is a conclusory statement and seeks a conclusion of law to which no answer is required. To the extent an answer is required, Akiane Art Gallery denies that Defendants/Counter-Plaintiffs are entitled to any relief sought.

73.    Corneliuson/ASW is unable to conduct business and rid herself of the Akiane inventory while these issues are unsettled, as every time she does so, the Akiane Group sends a take down notice, amends its complaint to add more claims or adds other defendants who are simply customers of ASW. There is a genuine dispute between the parties regarding these issues, and an actual justiciable controversy between ASW/Corneliuson and the Akiane Group exists within the meaning of 28 U.S.C. § 2201.

**ANSWER:**    Akiane Art Gallery denies the allegations and conclusions of law set forth in this paragraph.

74.    A determination of the rights of ASW/Corneliuson will allow all parties to act accordingly and severely streamline the litigation.

**ANSWER:**    This paragraph is a conclusory statement to which no answer is required. To the extent an answer is required, Akiane Art Gallery denies that Defendants/Counter-Plaintiffs are entitled to any relief sought.

25827144.1

## COUNT II
## BREACH OF CONTRACT – COMMISSIONS
### (AGAINST ART AKIANE and/or AKIANE GALLERY)

75. ASW and Corneliuson incorporate all prior paragraphs as if set forth fully herein.

**ANSWER:**    Akiane Art Gallery realleges its responses to Paragraphs 1 through 74.

76. In 2019, as a result of the goodwill ASW and Corneliuson built up over the years related to Akiane's work, a potential buyer of original Akiane work contacted Corneliuson. She referred the buyer to Mark Kramarik, Art Akiane and Akiane Gallery. The individual purchased three Akiane Kramarik original paintings.

**ANSWER:**    Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

77. As Mark Kramarik agreed in writing in an email dated March 13, 2019, attached as Exhibit D, Art Akiane and/or Akiane Gallery owes 15% of the sale price as a commission to Corneliuson and ASW for the referral.

**ANSWER:**    Akiane Art Gallery admits that Mark Kramarik discussed a 15% commission with Corneliuson, but Akiane Art Gallery denies that such a discussion established any contractual agreement between Akiane Art Gallery, Art Akiane, or Corneliuson; denies that Corneliuson fulfilled any purported obligations under the agreement, if such agreement exists; denies that Corneliuson is entitled to any commissions due to her acts; and denies that any sales made under the agreement have been finalized, if such agreement exists. Akiane Art Gallery denies the remainder of the paragraph.

78. Art Akiane and Akiane Gallery have breached the commissions agreement by failing to pay the commissions owed.

38

**ANSWER:**     Denied.

79.     As a result of Art Akiane and Akiane Gallery breach of the commission agreement, ASW suffered damages in the amount of the commissions due, to be specifically determined at trial.

**ANSWER:**     Denied.

### COUNT III
### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
### License, Wholesale & Printing Agreement
### (AGAINST ART AKIANE)

80.     ASW and Corneliuson incorporate all prior paragraphs as if set forth fully herein.

**ANSWER:**     Akiane Art Gallery realleges its responses to Paragraphs 1 through 79.

81.     In addition to the express provisions, every contract contains an implied duty of good faith and fair dealing under Colorado law.

**ANSWER:**     Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied. Nevertheless, this paragraph contains conclusions of law and does not allege facts against Akiane Art Gallery; therefore, no response is required.

82.     Art Akiane has breached the duty of good faith and fair dealing owed to ASW under the License Agreement, Wholesale and Printing Agreements by the conduct described above. Specifically, it knowingly terminated the parties' 11-year relationship in bad faith by failing to give advanced notice of the termination so that ASW could have stopped expending money on the manufacture of additional product, purchase of additional merchandise, extensive promotion of Akiane and her works on the social media platforms, the continuing of the Amazon.com channel,

the retention of staff, among other things. She would have also had time to reap the benefits of being able to sell the Akiane works she lawfully acquired at retail instead of fire-sale prices.

**ANSWER:**     The allegations alleged in this paragraph do not allege facts against Akiane Art Gallery; therefore, no response is required. To the extent a response is required, Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

83.     Counter-Defendants took advantage of the fact that by blind-siding Counter-Plaintiffs, they would be able to eliminate their presence with respect to Akiane art in the market, and thus, take over the goodwill ASW and Corneliuson built and obtain sales for themselves.

**ANSWER:**     The allegations alleged in this paragraph do not allege facts against Akiane Art Gallery; therefore, no response is required. To the extent a response is required, Akiane Art Gallery denies the allegations set forth in this paragraph.

84.     Counter-Defendants were so intent on ruining ASW's business and damaging Corneliuson that they even allowed her to place an order worth $11,000 at retail **the day before** they terminated, knowing full well their plans to sever all ties. This alone constitutes bad faith.

**ANSWER:**     The allegations alleged in this paragraph do not allege facts against Akiane Art Gallery; therefore, no response is required. To the extent a response is required, Akiane Art Gallery denies the allegations set forth in this paragraph.

85.     ASW and Corneliuson have expended extensive resources to promote Akiane, Art Akiane and Akiane Gallery. They continued to do so throughout the second half of 2018 based on their expected renewal of the License Agreement, Wholesale Agreement and Printing Agreement. Due to the course of performance and expectations of ASW and Corneliuson, they had also built

up a sizeable inventory of goods created under the License Agreement, bought under the Wholesale Agreement or printed under the Printing Agreement. Art Akiane, Akiane Gallery and Akiane Kramarik knew all of these facts.

**ANSWER:**    As to itself, Akiane Art Gallery denies knowing any of the alleged "facts" set forth above. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are accordingly denied.

86.    Art Akiane's breaches of the duty of good faith and fair dealing as to the License, Wholesale and Printing Agreements caused ASW to lose 84% of its business overnight, business which Art Akiane is now seeking to secure by instigating litigation to thwart ASW from displaying or selling any of the works in her possession in an attempt to capture ASW's social media followers and by supplanting ASW as the primary seller of the products that had been licensed to ASW.

**ANSWER:**    The allegations alleged in this paragraph do not allege facts against Akiane Art Gallery; therefore, no response is required. To the extent a response is required, Akiane Art Gallery denies the allegations set forth in this paragraph.

87.    ASW has complied with the terms of the agreements and with its obligations through the purported termination of the agreements. ASW currently owes $23,413.74 dollars in royalty payments for merchandise sold before or liquidated after termination, pre-payments due for printing authorized before the termination, and will use those payments to offset damages owed by Counter-Defendants.

**ANSWER:**    The allegations alleged in this paragraph do not allege facts against Akiane Art Gallery; therefore, no response is required. To the extent a response is required, Akiane Art Gallery denies the allegations set forth in this paragraph.

88.     As a result of Art Akiane's breach of the duty of good faith and fair dealing, ASW has sustained and will continue to sustain damages, including without limitation lost profits, loss of business goodwill, and other financial damages in amounts in excess of $1,000,000.00 to be proven at trial.

**ANSWER:**     The allegations alleged in this paragraph do not allege facts against Akiane Art Gallery; therefore, no response is required. To the extent a response is required, Akiane Art Gallery denies the allegations set forth in this paragraph.

## COUNT IV UNJUST ENRINCHMENT
## (AGAINST ART AKIANE, AKIANE GALLERY, AKIANE KRAMARIK)

89.     ASW and Corneliuson incorporate all prior paragraphs as if set forth fully herein.

**ANSWER:**     Akiane Art Gallery realleges its responses to Paragraphs 1 through 88.

90.     ASW and Corneliuson expended substantial time, money and effort into building the goodwill and interest in Akiane's work, including by establishing and maintaining a successful Amazon.com channel to sell Akiane's work.

**ANSWER:**     Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and they are accordingly denied.

91.     By terminating the agreements as they did and mandating that Counter-Plaintiffs cease all sales and display of Akiane's work, Counter-Defendants have completely undermined Counter-Plaintiff's ability to maintain goodwill and a supply of the Akiane work for long-standing customers of ASW.

**ANSWER:**     Denied.

42

92.     Art Akiane, Akiane Gallery and Akiane Kramarik—by forcing ASW out of the market and out of all Akiane-related social media— which ASW rightfully owns, has received the benefit of the business goodwill, social media followers, and promotional support built by ASW for the past 11 years. As demonstrated by the commission referral, they also reap the benefit of crippling ASW in order to obtain sales that otherwise would have gone in part to ASW.

**ANSWER:**     Denied.

93.     These benefits were received by Art Akiane, Akiane Gallery and Akiane Kramarik at the expense of ASW.

**ANSWER:**     Denied.

94.     Retaining the benefits without paying for their value would be unjust and inequitable.

**ANSWER:**     Denied.

95.     As a result of Art Akiane, Akiane Gallery and Akiane Kramarik's actions, ASW suffered damages in an amount to be determined at trial.

**ANSWER:**     Denied.

**COUNT V**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(AGAINST AKIANE GALLERY, AKIANE KRAMARIK)**

96.     ASW and Corneliuson incorporate all prior paragraphs as if set forth fully herein.

**ANSWER:**     Akiane Art Gallery realleges its responses to Paragraphs 1 through 95.

97.     ASW and Art Akiane entered into the License Agreement, which was subsequently renewed and amended. ASW and Mark Kramarik, on behalf of Art Akiane, also entered into the

43

Wholesale and Printing Agreements. The course of conduct of the parties demonstrated a pattern of renewal, even after the expiration date of the License Agreement.

**ANSWER:** Akiane Art Gallery admits that ASW and Art Akiane entered into a license agreement, which was renewed for specific terms. Akiane Art Gallery lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in the above paragraph, and they are accordingly denied.

98. Art Akiane is a member managed limited liability company. Mark Kramarik and Foreli Kramarik are the sole members of Art Akiane and it is managed by Mark Kramarik.

**ANSWER:** Admitted.

99. Akiane Gallery is a limited liability company managed by Mark Kramarik, with Akiane Kramarik as its sole member.

**ANSWER:** Akiane Art Gallery admits that it is a limited liability company; admits that Akiane Kramarik is Akiane Art Gallery's sole member; and admits that Mark Kramarik manages Akiane Art Gallery only in a limited capacity. Akiane Art Gallery denies that Akiane Gallery is the proper term as the correct term is "Akiane Art Gallery." Akiane Art Gallery denies the remainder of the paragraph.

100. According to the Complaint, all the copyrighted Art Akiane works were assigned to Art Akiane and Akiane Gallery, and Akiane Kramarik did not retain any rights to those works during the entirety of the License Agreement, Wholesale and Printing Agreement.

**ANSWER:** Akiane Art Gallery admits that Akiane assigned the copyright registrations for her Works to Art Akiane as alleged in the First Amended Complaint, and denies the remainder of the paragraph.

101.    Akiane Kramarik was fully aware of the relationship with ASW, was fully aware of the License Agreement (because she signed it) and was or should have been fully aware of the Wholesale and Printing Agreement. She knew of the previous course of conduct between the parties in connection with renewal, and also knew of the reliance that ASW and Corneliuson placed on the continuation of the parties' relationship.

**ANSWER:**    The phrase "fully aware" is vague, ambiguous, unintelligible, and Akiane Art Gallery does not know its bounds so it cannot ascertain a proper response. To the extent a response is required, it denies that it was "fully aware" of the relationship Art Akiane had with ASW or that it was fully aware of the license agreement or the purported wholesale and printing agreements, assuming such agreements even exist. Akiane Art Gallery denies the remainder of the paragraph.

102.    Nevertheless, Akiane Kramarik and Akiane Gallery, in an effort to control her art, took steps to have the longstanding relationship with ASW and Corneliuson abruptly terminated by Art Akiane, at the expense of Corneliuson and ASW.

**ANSWER:**    Denied.

103.    Akiane Kramarik and Akiane Gallery have intentionally interfered by influencing Art Akiane to terminate its License Agreement with ASW.

**ANSWER:**    Denied.

104.    In the Termination Letter, there are references to Akiane Kramarik telling Art Akiane, through Mark and Fioreli Kramarik, that she felt "her journey must be taken in her own way and expressed in her own voice, with her own message, in her own convictions; and to her, right now, that means-going completely independent." (Termination Letter, Ex. F, page 4.)

**ANSWER:**    Akiane Art Gallery admits that the quoted language is contained in the January 10, 2019 letter, and denies the remainder of the paragraph and states that the letter speaks for itself.

105.    By taking these actions, among others, Akiane Kramarik and Akiane Gallery intentionally interfered with the continuation of the agreements or the expectancy of them, or the reasonable wind down of them, by threatening Art Akiane with the removal of all rights, title and interest in her artwork, and name and likeness, if it did not abruptly terminate the License Agreement, Wholesale Agreement and Printing Agreement with ASW.

**ANSWER:**    Denied.

106.    Akiane Gallery and Akiane Kramarik's actions have caused ASW damages in an amount in excess of $1,000,000.00 to be specifically determined at trial.

**ANSWER:**    Denied.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES
### (AGAINST THE AKIANE GROUP)

107.    ASW and Corneliuson incorporate all prior paragraphs as if set forth fully herein.

**ANSWER:**    Akiane Art Gallery realleges its responses to Paragraphs 1 through 106.

108.    The Akiane Group has falsely sent Take Down Notices to customers of ASW and/or customers of ASW's customers, asserting that merchandise that ASW lawfully sold either under the liquidation sale mandated by the Akiane Group itself, is infringing or is counterfeit.

**ANSWER:**    Denied.

109.    The Akiane Group is aware that these are customers of ASW or of ASW's customers and that ASW has a business expectancy with these entities, including Christianbook.

46

**ANSWER:**    Denied.

110.    The action that the Akiane Group has taken with respect to these false allegations has tortuously interfered with ASW's business expectancies, has irreparably damaged ASW's reputation and caused damage to be proven at trial.

**ANSWER:**    Denied.

## COUNT VII VIOLATION OF THE DCMA
### (AGAINST THE AKIANE GROUP)

111.    ASW and Corneliuson incorporate all prior paragraphs as if set forth fully herein.

**ANSWER:**    Akiane Art Gallery realleges its responses to Paragraphs 1 through 110.

112.    In providing the false and misleading Take Down Notice to Christianbook.com and possibly others, the Akiane Group and its agents acted in bad faith, as they were aware that ASW had the right to sell the products in question, or, at the very least, that there is a current dispute before this Court regarding the rights regarding these works. Rather than seeking relief from this Court with respect to their position, they have instead taken steps in bad faith to wrongly assert the works are infringing or are counterfeit.

**ANSWER:**    As to itself, Akiane Art Gallery denies that it sent any Take Down Notices, and admits that upon information and belief, Take Down Notices were sent on behalf of other parties to other third parties pursuant to the Digital Copyright Millennium Act. Akiane Art Gallery denies the remainder of the paragraph.

113.    Section 512(f) of the Copyright Act provides that any person who knowingly materially misrepresents that material is infringing is liable for any resulting damages, including costs and attorneys' fees incurred by the alleged infringer, the copyright owner or its licensee.

Accordingly, the Akiane Group is liable for all damages that ASW has incurred as a result of their conduct, including costs and attorneys' fees.

**ANSWER:**    As to itself, Akiane Art Gallery denies that it sent any Take Down Notices, and admits that upon information and belief, Take Down Notices were sent on behalf of other parties to other third parties pursuant to the Digital Copyright Millennium Act. Akiane Art Gallery denies that ASW is entitled to any relief or remedy, including any relief under Section 512(f) of the Copyright Act.

## AFFIRMATIVE DEFENSES

1.    Defendants/Counter-Plaintiffs failed to state a claim upon which relief can be granted.

2.    Defendants/Counter-Plaintiffs' claims are barred under the equitable doctrine of unclean hands.

3.    Defendants/Counter-Plaintiffs' claims are barred in whole or in part by the doctrines of equitable estoppel and waiver.

4.    After the occurrence of the alleged loss and damage to Defendants/Counter-Plaintiffs, Defendants/Counter-Plaintiffs failed and refused to mitigate their damages, and by reason thereof, are barred from recovery.

5.    To the extent Akiane Art Gallery did not perform any obligations, its performance was excused by Defendants/Counter-Plaintiffs' conduct.

6.    The alleged damages complained of by Defendants/Counter-Plaintiffs, if any actually exist, were proximately caused and contributed to by Defendants/Counter-Plaintiffs' own negligence, acts or omissions. Defendants/Counter-Plaintiffs recovery herein, if any, should be

48

diminished to the extent Defendants/Counter-Plaintiffs' alleged damages are attributable to their negligence, acts and/or omissions.

7.      Any acts, or omissions to act, by Akiane Art Gallery were not the proximate cause of any damages allegedly incurred by Defendants/Counter-Plaintiffs.

8.      Any contractual or economic relationships alleged by Defendants/Counter-Plaintiffs were terminated prior to the actions of answering party alleged in Defendants/Counter-Plaintiffs' counterclaims.

9.      The damages claimed by Defendants/Counter-Plaintiffs are speculative.

10.      Akiane Art Gallery's conduct with respect to Defendants/Counter-Plaintiffs was justified, privileged, and effected in good faith and with innocent intent, without malice or spite, without conscious, reckless or negligent disregard of the rights, if any, of Defendants/Counter-Plaintiffs, and without improper purpose or ill-will of any kind. Consistent with the foregoing, Akiane Art Gallery did not directly or indirectly perform or fail to perform any act that constitutes a violation of any rights, if any, of Defendants/Counter-Plaintiffs or a violation of any duties or obligations, if any, owed to Defendants/Counter-Plaintiffs.

11.      Defendants/Counter-Plaintiffs' breach of contract claim is barred in whole or in part on the grounds that the alleged contract is uncertain, ambiguous, unintelligible and unenforceable.

12.      Defendants/Counter-Plaintiffs' breach of contract claim is barred in whole or in part on the grounds that any purported sales made under the alleged agreement, if such agreement exists, has not been finalized.

13.     Defendants/Counter-Plaintiffs' breach of duty claim is barred in whole or in part on the grounds that Akiane Art Gallery has no legal obligation to continue a business relationship into perpetuity, and ASW had no reasonable expectation of such a relationship.

14.     Defendants/Counter-Plaintiffs' breach of duty claim is barred in whole or in part on the grounds that the license agreement did not require Akiane Art Gallery or Art Akiane to give advance notice prior to terminating the contract.

15.     Defendants/Counter-Plaintiffs' intentional interference with contractual relations and tortious interference with business expectancy claims are barred in whole or in part on the grounds that the license agreement had expired therefore Akiane Art Gallery could not have interfered.

16.     Defendants/Counter-Plaintiffs' intentional interference with contractual relations claim is barred in whole or in part on the grounds that Akiane Art Gallery is privileged from liability as Akiane has a property interest in her likeness and artwork, and therefore has a right to control the distribution of her work to third-parties.

17.     To the extent any wholesale or printing agreement exists, Defendants/Counter-Plaintiff's intentional interference with contractual relations and tortious interference with business expectancy claims are barred in whole or in part on the grounds that Akiane Art Gallery was not a party to such agreements or was aware of such agreements.

18.     Defendants/Counter-Plaintiffs' counterclaim does not allege facts sufficient to enable Akiane Art Gallery to determine all of the defenses that might be available to Akiane Art Gallery. Accordingly, Akiane Art Gallery reserves the right to amend its answer to allege additional affirmative defenses as may be warranted through investigation and discovery.

50

## PRAYER FOR RELIEF

WHEREFORE, Akiane Art Gallery prays for judgment in its favor as follows:

1.      That this Court fully and finally dismiss with prejudice Defendants/Counter-Plaintiffs' counterclaims against Plaintiff/Counter-Defendants and that Defendants/Counter-Plaintiffs take nothing from Art Akiane LLC, Akiane Art Gallery, LLC, and Akiane Kramarik.

2.      That Akiane Art Gallery recovers its costs of suit incurred in the defense of Defendants/Counter-Plaintiffs' counterclaims.

3.      That Akiane Art Gallery be awarded its attorneys' fees, costs, and other expenses incurred in the defense of Defendants/Counter-Plaintiffs' counterclaims.

4.      For such other and further relief as the Court deems proper.

Dated: October 2, 2019                    Respectfully submitted,

                                          AKIANE ART GALLERY,


                                          By: s/  Adam Wolek
                                              Adam Wolek
                                              Marcus Harris
                                              Rashad Simmons
                                              TAFT STETTINIUS & HOLLISTER LLP
                                              111 E. Wacker Drive, Suite 2800
                                              Chicago, Illinois 60601
                                              Phone: (312) 836-4063
                                              Fax: (312) 966-8598
                                              awolek@taftlaw.com
                                              mharris@taftlaw.com
                                              rsimmons@taftlaw.com

                                              *Counsel for Counter-Defendant Akiane Art Gallery*

51

25827144.1

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2019, the foregoing was filed with the Clerk of Court via CM/ECF, which provided notice of the same to all parties who have made an appearance in this case.

/s/   Rashad A. Simmons_____

25827144.1