**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ART AKIANE LLC,<br><br>     Plaintiff,<br><br>v.<br><br>ART & SOULWORKS LLC,<br>CAROL CORNELIUSON, and<br>CARPENTREE, INC.<br><br>     Defendants. | Civil Action No.: 19-cv-02952<br><br>Judge: Hon. Edmond E. Chang |
| ART & SOULWORKS LLC, and<br>CAROLYNE CORNELIUSON,<br><br>     Defendants-Counter-Plaintiffs,<br><br>v.<br><br>ART AKIANE LLC,<br><br>     Plaintiff-Counter-Defendant,<br><br>and<br><br>AKIANE ART GALLERY, LLC, and<br>AKIANE KRAMARIK,<br><br>     Counter-Defendants. | **EXPEDITED RULING**<br>**REQUESTED** |

**PLAINTIFF ART AKIANE LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    STATEMENT OF FACTS ............................................................................................... 4

    A.   The Parties and the License Agreement ................................................................ 4

    B.   Art Akiane's Copyrighted Works and Trademarks ............................................... 4

    C.   Defendants Corneliuson and ASW ....................................................................... 7

    D.   Defendants and their Unlawful Activities ............................................................ 8

III.   STANDARD FOR A PRELIMINARY INJUNCTION .................................................. 15

IV.   ART AKIANE IS ENTITLED TO A PRELIMINARY INJUNCTION ON ITS
      COPYRIGHT INFRINGEMENT, TRADEMARK INFRINGEMENT, AND RIGHT OF
      PUBLICITY CLAIMS ................................................................................................... 16

    A.   Art Akiane Will Likely Succeed on its Copyright Infringement Claim ..................... 16

        1.   Art Akiane Owns the Copyrights at Issue ............................................................ 17

        2.   Defendants are Copying, Distributing and Displaying Akiane's Works .............. 17

            a.   Defendants are violating Art Akiane's reproduction rights .......................... 17

            b.   Defendants are violating Art Akiane's distribution rights ............................ 18

            c.   Defendants are violating Art Akiane's display rights ................................... 23

            d.   Defendants are manipulating the Works ........................................................ 25

            e.   Defendants have contributed to infringement ................................................ 26

        3.   Defendants never had the right to display and distribute Akiane's Works on its
           social media, and definitely do not have those rights after their license expired . 27

        4.   Defendants' Continued Infringements Are Not Excused by Fair Use ................. 28

        5.   The first sale doctrine does not excuse Defendants from its continued
           infringement of Akiane's Works ........................................................................ 31

    B.   Art Akiane Is Likely to Succeed on its Trademark Infringement Claim ................... 33

        1.   Art Akiane Owns the Trademarks in Suit ........................................................... 36

        2.   Defendants' Use of the Akiane Marks is Likely to Cause Confusion ................. 36

            a.   Defendants are using the same trademarks .................................................... 37

            b.   Defendants intended to trade off of Art Akiane's marks ............................... 37

            c.   Art Akiane and Defendants both use websites and social media to promote
               similar goods ................................................................................................. 38

            d.   Area and Manner of Concurrent Use ............................................................. 38

            e.   Degree of care exercised by consumers ......................................................... 39

            f.   The Akiane Marks are Strong ........................................................................ 39

    g. Evidence of actual confusion ......................................................... 40

  C. Art Akiane Will Likely Succeed on its Right of Publicity Claim ............................... 41

V. THERE IS NO ADEQUATE REMEDY AT LAW AND ART AKIANE WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF .................. 43

  A. Irreparable Harm Due to Copyright Infringement ........................................................ 43

   1. Art Akiane has lost its ability to control its Works because Defendants have allowed third-party infringers to make use of Akiane's Works ............................ 44

   2. Defendants have irreparably harmed Art Akiane's marketing and search engine strategies ..................................................................................................... 46

   3. The extent of harm is irreparable and incalculable ............................................... 46

  B. Irreparable Harm Due to Trademark Infringement ..................................................... 47

VI. THE BALANCE OF HARMS IS IN ART AKIANE'S FAVOR AND ISSUANCE OF THE INJUNCTION IS IN THE PUBLIC INTEREST ....................................................... 49

VII. DISCOVERY IS NOT NEEDED FOR THE COURT TO RULE ON ART AKIANE'S PRELIMINARY INJUNCTION ........................................................................................ 50

VIII. A BOND IS NOT NEEDED HERE, BUT IF REQUIRED, IT SHOULD BE NO MORE THAN $10,000 ................................................................................................................. 50

IX. CONCLUSION ............................................................................................................... 52

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A & M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ............................................... 17

*Abraham v. Alpha Chi Omega*,
   708 F.3d 614 (5th Cir. 2013) ............................................... 46

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*,
   940 F. Supp. 2d 850 (C.D. Ill. 2013) ............................... 34, 37

*Atari, Inc. v. N. Am. Philips Consumer Electronics Corp.*,
   672 F.2d 607 (7th Cir. 1982) ............................................... 16

*AutoZone, Inc. v. Strick*,
   543 F.3d 923 (7th Cir. 2008) ....................................... 36, 37, 39

*Batesville Servs., Inc. v. Funeral Depot, Inc.*,
   2004 WL 2750253 (S.D. Ind. Nov. 10, 2004) ...................... 29

*Bonneville Int'l Corp. v. Peters*,
   347 F.3d 485 (3d Cir. 2003) ............................................... 23

*Bryant v. Gordon*,
   483 F. Supp. 2d 605 (N.D. Ill. 2007) ................................ 31

*BWP Media USA Inc. v. Uropa Media, Inc.*,
   No. 13 CIV. 7871 JSR JCF, 2014 WL 2011775 (S.D.N.Y. May 16, 2014) ............ 23

*CAE, Inc. v. Clean Air Eng'g, Inc.*,
   267 F.3d 660 (7th Cir. 2001) ....................................... 34, 36, 38

*Campbell*,
   510 U.S. 569 at 579 ............................................... 31

*Capitol Records, LLC v. ReDigi Inc.*,
   934 F. Supp. 2d 640 (S.D.N.Y. 2013) ................................ 17

*Cent. Point Software, Inc. v. Nugent*,
   903 F. Supp. 1057 (E.D. Tex. 1995) ................................ 19

*Chicago Bd. of Educ. v. Substance, Inc.*,
   354 F.3d 624 (7th Cir. 2003) ............................................... 28

*Coach, Inc. v. The Partnerships & Unincorporated Associations Identified on Schedule "A"*,
   WL 5477573 (N.D. Ill. Oct. 1, 2013) ........................... 47, 48, 50

*Country Inns & Suites By Carlson, Inc. v. 3 AM, LLC*,
   No. 14-cv-3126, 2014 WL 5431621 (D. Minn. Oct. 24, 2014) ................ 49

*Courthouse News Serv. v. Brown*,
   908 F.3d 1063 (7th Cir. 2018) ............................................... 15

*Deckers Outdoor Corp. v. Does 1-1,281*,
   No. 12-cv-01973 (N.D. Ill. Apr. 4, 2012) ........................... 50

*Deckers Outdoor Corp. v. Does 1–100*,
  2013 WL 169998 (N.D. Ill. Jan. 16, 2013) ............................................................ 46

*Dental USA, Inc. v. McClellan*,
  2013 WL 4451257 (N.D. Ill. Aug. 16, 2013) ......................................................... 46

*Dobrowolski v. Intelius, Inc.*,
  2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) ......................................................... 40

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ................................................................................................ 46

*Eli Lilly & Co. v. Nat. Answers, Inc.*,
  233 F.3d 456 (7th Cir. 2000) ........................................................................... 36, 39

*Engineered Abrasives, Inc. v. Am. Mach. Products & Serv. Inc.*,
  2015 WL 1281460 (N.D. Ill. Mar. 18, 2015) ........................................................ 46

*FameFlynet, Inc. v. Jasmine Enter., Inc.*,
  344 F. Supp. 3d 906 (N.D. Ill. 2018) ........................................................ 28, 29, 30

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*,
  499 U.S. 340 (1991) ................................................................................................ 16

*Foodcomm Int'l v. Barry*,
  328 F.3d 300 (7th Cir. 2003) .................................................................................. 42

*Gen. Elec. Co. v. Speicher*,
  877 F.2d 531 (7th Cir. 1989) .................................................................................. 36

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*,
  549 F.3d 1079 (7th Cir. 2008) ................................................................................ 15

*Glovaroma, Inc. v. Maljack Prods., Inc.*,
  71 F.Supp.2d 846 (N.D. Ill. Sept. 23, 1999) ......................................................... 16

*Gorenstein Enter., Inc. v. Quality Care-USA, Inc.*,
  874 F.2d 431 (7th Cir. 1989) ............................................................................ 35, 37

*Grote v. Sebelius*,
  708 F.3d 850 (7th Cir. 2013) .................................................................................. 48

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985) .......................................................................................... 29, 30

*HH-Indianapolis, LLC v. Consol. Cty. of Indianapolis*,
  889 F.3d 432 (7th Cir. 2018) .................................................................................. 15

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
  174 F.3d 411 (4th Cir. 1999) .................................................................................. 49

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*,
  118 F.3d 199 (4th Cir. 1997) .................................................................................. 18

*Hyatt Corp. v. Hyatt Legal Serv.*,
  736 F.2d 1153 (7th Cir. 1984) ................................................................................ 47

iv

*ICG-Internet Commerce Grp., Inc. v. Wolf*,
   519 F. Supp. 2d 1014 (D. Ariz. 2007) .................................................... 19

*Igram v. Page*,
   1999 WL 705895 (N.D. Ill. Aug. 27, 1999) ...................................... 43, 44

*In re Aimster Copyright Litig.*,
   334 F.3d 643 (7th Cir. 2003) .............................................................. 16

*Janky v. Lake Cnty. Convention & Visitors Bureau*,
   576 F.3d 356 (7th Cir. 2009) .............................................................. 16

*Johnny Blastoff, Inc. v. L.A. Rams Football Co.*,
   188 F.3d 427 (7th Cir. 1999) ........................................................ 33, 35

*Kernal Records Oy v. Mosley*,
   794 F. Supp. 2d 1355 (S.D. Fla. 2011) ............................................... 19

*Kinsey v. Jambow, Ltd.*,
   76 F. Supp. 3d 708 (N.D. Ill. 2014) ............................................... 43, 44

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*,
   735 F.3d 735 (7th Cir. 2013) .............................................................. 46

*Lettuce Entertain You Enter., Inc. v. Leila Sophia AR, LLC*,
   703 F.Supp.2d 777 (N.D. Ill. 2010) .................................................... 46

*London-Sire Records, Inc. v. Doe 1*,
   542 F. Supp. 2d 153 (D. Mass. 2008) ................................................. 18

*Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distributors*,
   983 F. Supp. 1167 (N.D. Ill. 1997) ............................................... 16, 19

*MetroPCS v. Devor*,
   215 F. Supp. 3d 626 (N.D. Ill. 2016) .................................................. 46

*Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*,
   576 F.Supp.2d 868 (N.D. Ill. 2008) ............................................... 46, 48

*Monotype Imaging, Inc. v. Bitstream, Inc.*,
   376 F. Supp. 2d 877 (N.D. Ill. 2005) .................................................. 26

*Muhammad-Ali v. Final Call, Inc.*,
   832 F.3d 755 (7th Cir. 2016) .............................................................. 27

*Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*,
   2015 WL 3633987 (N.D. Ill. June 10, 2015) ....................................... 42

*Nebraska Mach. Co. v. Erickson Prods., Inc.*,
   No. 8:14CV91, 2014 WL 6980258 (D. Neb. Dec. 8, 2014) ................... 21

*Neuros Co. v. KTurbo, Inc.*,
   2013 WL 1706368 (N.D. Ill. Apr. 17, 2013) ....................................... 46

*Oakley, Inc. v. Does 1-100*,
   No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012)............................................ 50

*Ohio State Univ. v. Thomas,*
738 F. Supp. 2d 743 (S.D. Ohio 2010) ......................................................................... 50

*PBM Prod., LLC v. Mead Johnson & Co.,*
639 F.3d 111 (4th Cir. 2011) ...................................................................................... 46

Peaceable Planet, Inc. v. Ty, Inc.,
362 F.3d 986 (7th Cir. 2004)          39

*Playboy Enterprises, Inc. v. Webbworld, Inc.,*
991 F. Supp. 543 (N.D. Tex. 1997) .................................................................... 19, 23

*Promatek Indus., Ltd. v. Equitrac Corp.,*
300 F.3d 808 (7th Cir. 2002) ...................................................................................... 46

*Pure Imagination, Inc.,*
2004 WL 2967446 ......................................................................................................... 39

*Purepecha Enter., Inc. v. El Matador Spices & Dry Chiles,*
2012 WL 3686776 (N.D. Ill. Aug. 24, 2012) .............................................................. 35

*Rathmann Grp. V. Tanenbaum,*
889 F.2d 787 (8th Cir. 1989) ...................................................................................... 49

*Rosen v. R & R Auction Co., LLC,*
2016 WL 7626443 (C.D. Cal. Aug. 31, 2016)............................................................. 27

*SBA-TLC, LLC v. Merlin Corp.,*
2015 WL 6955493 (N.D. Ill. Nov. 10, 2015) ............................................................. 46

*Scherr v. Volpe,*
466 F.2d 1027 (7th Cir. 1972)..................................................................................... 49

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*,
689 F.3d 29 (1st Cir. 2012)................................................................................... 16, 23

*Sony,*
464 U.S. at 450 S.Ct. 774 ............................................................................................ 30

*Sorensen v. WD-40 Co.,*
792 F.3d 712 (7th Cir. 2015) ...................................................................................... 40

*Spinmaster, Ltd. v. Overbreak LLC,*
404 F. Supp. 2d 1097 (N.D. Ill. 2005) ....................................................................... 42

*State Farm Mut. Auto Ins. Co. v. Sharon Woods Collision Cent., Inc.,*
No. 07-cv-457, 2007 WL 4207150 (S.D. Ohio Nov. 26, 2007) ............................... 50

*Sylvan Learning, Inc. v. Learning Solutions, Inc.,*
795 F. Supp. 2d 1284 (S.D. Ala. 2011) ...................................................................... 50

*Teter v. Glass Onion, Inc.,*
723 F. Supp. 2d 1138 (W.D. Mo. 2010) ........................................................ 27, 28, 31

*Toney v. L'Oreal USA, Inc.,*
406 F.3d 905 (7th Cir. 2005) ...................................................................................... 41

*Tory Burch LLC v. Does 1–100*,
  2012 WL 4581409 (N.D. Ill. Oct. 2, 2012) ...................................................... 46, 50

*TracFone Wireless, Inc. v. Washington*,
  978 F. Supp. 2d 1225 (M.D. Fla. 2013) ............................................................. 50

*True Religion Apparel, Inc. v. Does 1-100*,
  No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) ......................................................... 50

*Turnell v. CentiMark Corp.*,
  796 F.3d 656 (7th Cir. 2015) ............................................................................. 15

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,
  996 F.2d 1366 (2d Cir. 1993) ............................................................................. 24

*Ty, Inc. v. Jones Group, Inc.*,
  237 F.3d 891 (7th Cir. 2001) .................................................................... passim

*Tylor v. Rhythm of Life Cosmetics, Inc.*,
  No. CIV. 13-00280 DKW, 2014 WL 253012 (D. Haw. Jan. 23, 2014) ................... 22

*USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*,
  No. 1:19 C 4693, 2019 WL 3818658 (N.D. Ill. Aug. 14, 2019) ............................ 47

*Venus Labs., Inc. v. Vlahakis*,
  2015 WL 1058264 (N.D. Ill. Mar. 5, 2015) ........................................................ 46

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ............................................................................. 26

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
  192 F. Supp. 2d 321 (D.N.J. 2002) .................................................................... 31

*Vienna Beef, Ltd. v. Red Hot Chicago, Inc.*,
  833 F.Supp.2d 870 (N.D. Ill. 2011) ................................................................... 46

*Vincent v. City Coll. of Chi.*,
  485 F.3d 919 (7th Cir. 2007) ............................................................................. 27

*Walthal v. Rusk*,
  172 F.3d 481 (7th Cir. 1999) ............................................................................. 27

*Warner Bros. Entm't v. X One X Prods.*,
  840 F.3d 971 (8th Cir. 2016) ............................................................................. 46

*Wm. Wrigley Jr. Co. v. Swerve IP, LLC*,
  900 F.Supp.2d 794 (N.D.Ill.2012) ..................................................................... 46

*Worldwide Church of God v. Phila. Church of God, Inc.*,
  227 F.3d 1110 (9th Cir. 2000) ............................................................................. 29

**Statutes**

15 U.S.C. § 1125 ........................................................................................... 33, 34

17 U.S.C. § 101 ............................................................................................ 17, 23

17 U.S.C. § 106 .................................................................................. 17, 18, 23, 31

17 U.S.C. § 107 ........................................................................................................... 28

17 U.S.C. § 1202 ......................................................................................................... 30

17 U.S.C. § 410 ........................................................................................................... 16

17 U.S.C. § 501 ........................................................................................................... 17

765 ILCS 1075/30 ....................................................................................................... 40

765 ILCS 1075/5 ......................................................................................................... 40

765 ILCS 1075/60 ....................................................................................................... 40

**Rules**

Federal Rule of Civil Procedure 65(b)(1) ................................................................... 46

## I. INTRODUCTION

The written license to use Akiane's artwork between Plaintiff Art Akiane and Defendant Art & SoulWorks expired, and no active licenses remain. Yet Defendants still copy, display and distribute copyrighted works by Akiane Kramarik on their website and social media pages, make and display unauthorized videos, and advertise as the "official" and "trusted" sources of Akiane's works. They also falsely represent that "Art by Akiane^TM is *a trademark of © Art & SoulWorks*." While Defendants cannot dispute this documented conduct, the parties dispute whether the law permits it. Namely:

1. May Defendants distribute, make copies of original and derivative works, or display Art Akiane's copyrighted works on their website and social media pages without a license or authorization?

2. May Defendants use Akiane's likeness on their website and social media, or advertise that they are the "official" and "trusted" source of the art, without a license or authorization?

The law is clear: distributing, copying or displaying a copyrighted work, and false affiliation and designation of origin, is not permitted without authorization or after a license expires. Indeed, Defendants' actions have permitted counterfeiters to make counterfeit goods from the illicit digital images they displayed and distributed.

Shockingly, Defendants advertised that they provide Akiane's digital images "*free of charge*" to its visitors, and continue to permit illicit downloading of Akiane's works. Dissemination of digital images is causing widespread counterfeiting of Art Akiane's goods on e-commerce websites like Alibaba, DHgate, and others. Defendants' actions have already led to counterfeiters sourcing the illicit images to make and sell counterfeit Akiane works.

And by claiming ownership of the "Art by Akiane" brand, stating that "*Art by Akiane^TM is a trademark of © Art & SoulWorks*," and listing themselves as the "official" and "trusted" source

of Akiane's art, Defendants are likely to confuse consumers as to who the origin or official source of Akiane's Works is.

Defendants have nevertheless argued that because they posted the digital images and content before the license expired, they are permitted to continue displaying, distributing and providing digital images and copies on their website and social media in perpetuity, and are able to make the above statements of affiliation based on their past relationship with Art Akiane.

To be sure, Defendants never had a license for acts complained of in the First Amended Complaint, but the instant preliminary injunction motion can be resolved on much narrower grounds. Because Defendants undisputedly do not have a license now, their continued displaying, copying and distributing of digital images, and claiming affiliation with Akiane, is without authorization and thus infringing.

Since the relationship ended, Art Akiane made good faith attempts to wind-down the parties' business relationship. But Defendants refused to cease selling counterfeit works, distributing and displaying Art Akiane's digital images online, and representing that it has an affiliation with Akiane or is an official source of Art Akiane products. After negotiations broke down and a formal cease and desist letter was ignored, Art Akiane filed suit. Through its investigation, Art Akiane discovered other rampant infringements by Defendants, including that Defendants digitally modified many images without approval and stripped Akiane's signature and identifying information from many of her works.[1] In fact, many of the infringement were only

---

[1] Unknown to Art Akiane, Defendants also printed thousands of prints without authorization. (Doc. # 38 ¶ 51). Defendants further took postcards and wallet cards meant for individual sale, digitally modified the wallet cards, and put frames around the postcards and wallet cards to make them look like legitimate framed artwork. (*Id.*, ¶ 175). They further digitally manipulated hundreds of digital images without approval. (*Id.*, ¶¶ 48, 79, 107).

revealed after the parties exchanged initial document production. The more Art Akiane looked, the more infringements it found.[23]

Defendants' conduct is causing irreparable harm to Art Akiane by causing it to lose its creative control over its works, and control over its commercial distribution and sales, likeness rights, goodwill, and is causing confusion over the source of the Works and the parties' (lack of) affiliations or sponsorship. It is further aiding counterfeiting of Art Akiane's goods, which is further causing it irreparable harm.

Because Defendants refuse to stop infringing Art Akiane's copyrights, trademarks and likeness rights, Art Akiane requests this Court to enter a preliminary injunction to enjoin:

A) Defendants from copying, displaying or distributing digital images of Art Akiane's copyrighted works, and modifying, creating derivative works or reproducing such materials on its webpages or social media accounts;

B) Defendants from copying, displaying, making derivative works of or distributing videos of Akiane's Works;

C) Defendants from using Akiane's likeness or identity to promote its webpages and social media; and

---

[2] Defendants ASW and Corneliuson only recently stopped selling counterfeit and unauthorized copies of Art Akiane's goods from their website, so those are not included as part of this preliminary injunction at this time, but Art Akiane reserves all rights to pursue such conduct. Those infringing works included printing Art Akiane's works on cardboard with inferior colors, which distorted the image, and framing and selling the cardboard printouts as fine art prints, among other acts.

[3] Defendants Carpentree, Inc. also took postcards and wallet cards meant for individual sale, and put frames around the postcards and wallet cards to make them look like legitimate framed artwork, and printed Akiane's Works on cardboard. They have stated that:

"Carpentree agrees to: a. remove from its websites, and not distribute or offer for sale, any goods that show any artwork by Akiane Kramarik and identified in your client's Complaint filed in the referenced matter including, but not limited to, any representations of the work entitled "Prince of Peace" (collectively, "Plaintiff's Works"); and b. not induce or enable others to sell or distribute any of Plaintiff's Works."

*September 13, 2019 Letter from Carpentree's counsel, Michael Hahn*. Carpentree appears to have complied with its representation in its letter at this time, but Art Akiane reserves all rights to pursue the acts.

D)    Defendants from marketing, holding themselves out as, or representing that they are the origin of, affiliated with, or endorsed or approved by Art Akiane or its works.

## II.    STATEMENT OF FACTS

### A.    The Parties and the License Agreement

Akiane Kramarik ("Akiane") is a renowned artist who has garnered international acclaim for her artwork, including her famous "Prince of Prince" portrait shown below:



(*See* Exhibit A).[4]

Defendant Corneliuson is the owner and sole member of Defendant ASW. (Doc. # 60 ¶ 13). In 2007, Akiane licensed to ASW the right to print and sell certain artwork on bookmarks, journals, wallet cards, calendars, and greeting cards, among a few other goods, through the licensing company, Art Akiane LLC, the plaintiff in this matter. (Doc. # 38 ¶ 3). The license expired on January 11, 2019. (Mark Kramarik Dec., ¶ 19).

### B.    Art Akiane's Copyrighted Works and Trademarks

Akiane has painted since she was four years old, and has developed numerous pieces of art and videos, including the works at issue in this suit, which are registered at the U.S. Copyright Office (the "Works"). (*See* Exhibit B). The Works are original works of authorship, all created

---

[4] All references to Exhibits A-DD in this memorandum refer to the exhibits in the Declaration of Rashad Simmons in Support of Plaintiff Art Akiane's Memorandum of Law in Support of its Motion for Preliminary Injunction, which is Exhibit 1 to this memorandum.  The Declaration of Akiane Kramarik and the Declaration of Mark Kramarik are Exhibit 2 and Exhibit 3, respectively, to this memorandum.

between 2002 and 2018, and Akiane is the sole author of the Works. (Akiane Kramarik Dec., ¶ 13). Art Akiane owns all right, title and interest in the Works, which are extensively used at gallery exhibitions, and in online and media advertising and sales. (*Id.* at ¶ 16); (Mark Kramarik Dec., ¶ 6).

Akiane's art has been showcased in numerous galleries, developed an international fan base, and has received extensive media coverage in the U.S. and worldwide. (*Id.* at ¶ 5). Akiane's online gallery, located at www.akiane.com, has had nearly 450 million global visitors over the past decade. (*Id.*). Her art exhibitions have extensively been featured in museums, galleries, embassies, universities, institutes, churches, and corporations, and she has also been featured in documentaries and made hundreds of media appearances. (*Id.* at ¶¶ 5-6). In addition, she has been featured on the *Oprah Winfrey Show*, the *Katie Couric Show, World News Tonight, Good Morning America, CNN, The View, Fox News*, the *Montel Williams Show*, and many others. (*Id.* at ¶ 6). Akiane has also been portrayed in the *New York Times* best-selling book *Heaven is For Real*, which was adapted into a 2014 film produced by Sony Pictures. (*Id.* at ¶ 8). Akiane's name and persona have developed enormous commercial value in promoting her artwork because of the public's widespread knowledge and admiration of her talents. (*Id.* at ¶ 9). Akiane's likeness has been substantially and continuously used for marketing and sale of the Works since 2003, including for numerous charitable endeavors. (*Id.* at ¶ 15); (Mark Kramarik Dec., ¶ 5).

The Akiane Marks, which include Akiane, Akiane's stylized signature, Art Akiane, Art by Akiane, and Akiane Art Gallery, including common law rights to the marks associated with Akiane and her works, and the goodwill associated therewith, have been used by Art Akiane and Akiane in commerce throughout the U.S. continuously since 2003. (Akiane Kramarik Dec., ¶ 18); (Mark Kramarik Dec., ¶ 7). The Akiane Marks are distinctive to both the consuming public and to those

in Art Akiane's industry. (*Id.*). Art Akiane has expended substantial time, money, and resources marketing, advertising, and promoting the goods sold under the Akiane Marks, including through online blog posts, speaking engagements, attendance and participation at media events, and publishing books and newsletters about Akiane. (*Id.* at ¶ 9). Consumers understand and see that the Art Akiane goods originate from Art Akiane. (*Id.* at ¶ 10). Furthermore, the media and consumer attention and recognition have helped the Akiane Marks gain widespread and extensive recognition, and consumers attribute those Marks with Akiane's artwork, images and goodwill associated with the Marks. (*Id.*). By virtue of the high quality of the goods designated by the Akiane Marks offered under the trademarks,[5] the extensive sales, Art Akiane's considerable expenditures and efforts, and the media and consumer exposure and recognition, and other provision, marketing and promotion under the trademarks, the acquired incalculable distinction, reputation, and goodwill belonging exclusively to Art Akiane, and the substantially exclusive and continuous use of the trademarks for over 16 years for and in connection with the Works, Art Akiane's trademarks have come to symbolize and identify a source of great and valuable goodwill for and in connection with Art Akiane's goods. (Mark Kramarik Dec., ¶ 11).

---

[5] Art Akiane uses a fine art printing vendor, Marco Fine Arts ("MFA"), to make giclee prints of its Works. (Akiane Kramarik Dec., ¶ 19). Giclee prints are often made from photographic images of fine art paintings, typically on inkjet canvas or fine art paper, to produce high-quality, permanent fine art reproductions. (*Id.* at ¶ 20). The extra-fine image resolution achieved in this inkjet printing process retains a high degree of fine detail from the original fine art image, rendering deeply saturated colors with broad ranges of tonal values. (*Id.*)

Giclee printing produces museum quality prints and it has many advantages over the printing methods employed by the Defendants to print their unauthorized goods because giclee prints are produced using pigment-based inks. (*Id.* at ¶ 21). Pigment-based inks have a longer life span than lower cost reproductions as they generally last anywhere from 100 to 200 years without significant fading. Additionally, the paper or substrate used for giclee prints are of archival quality, meaning it is the best option in regards to longevity and color reproduction. Any image that is printed as a giclee needs to be created at a resolution of no less than 300 dots per inch. (*Id.*). The resolution coupled with the enhanced CMYK color model increases the color gamut and allows smoother gradient transition. (*Id.* at ¶ 22). Thus, the quality of giclee prints is far greater than the standard, mass-producing printing services used by the Defendants to print their unauthorized works because you do not get color blotching or dot structures that break up the look of the artwork. (*Id.*).

Art Akiane LLC was assigned the copyright registrations for the Works, Marks and her rights of publicity. (*Id.* at ¶ 10); (Mark Kramarik Dec., ¶ 3). Art Akiane owns all necessary rights to Akiane's asserted trademarks, rights of publicity and copyrights. (*See* Exhibit B); (*see also* Akiane Kramarik Dec., ¶ 10); (Mark Kramarik Dec., ¶ 3)*;* (Doc. # 38, ¶¶ 30-31).

### C. Defendants Corneliuson and ASW

Defendant ASW is a business entity that profits from selling religiously themed ornaments, home décor, and other various goods. (Mark Kramarik Dec., ¶ 13). Corneliuson is the owner and sole member of ASW. (*Id.* at ¶ 14). ASW sells products on its website, and various e-commerce stores such as Amazon, eBay, Christianbooks, Mardel, Carpentree, and others. (*Id.* at ¶ 15). Upon information and belief, Corneliuson directs and controls the operations of ASW, ASW's websites https://art-soulworks.com and www.jesusprinceofpeace.com, and ASW's social media, including its Facebook,[6] Twitter,[7] and Instagram[8] pages. (*Id.* at ¶ 16).

Art Akiane and ASW entered into a licensing agreement (the "License Agreement") on January 6, 2008, which after a few renewals, expired on January 11, 2019. (*See* Exhibit C). The License Agreement granted ASW certain rights and privileges. For instance, under the License Agreement, Art Akiane licensed certain copyrighted paintings to be printed on bookmarks, journals, wallet cards, calendars, deck cards, and greeting cards. (Doc. # 38 ¶ 30). Since the license expired, Art Akiane has not reached any other agreements with Defendants to license the Works, Marks or likeness rights, and has explicitly terminated all rights to use any of its intellectual property. (Mark Kramarik Dec., ¶ 20).

---

[6] *See* www.facebook.com/jesusprinceofpeace and https://www.facebook.com/Art-SoulWorks-216117745075264/.
[7] *See* https://twitter.com/ArtnSoulworks.
[8] *See* https://www.instagram.com/jesus_art_akiane/.

### D. Defendants and their Unlawful Activities

Despite the License Agreement expiring, Defendants have refused to stop distributing, copying, and displaying Akiane's artwork on their website and social media, including illicit digital images and videos.[9] Defendants' displays and distributions have already been a source to counterfeiters for Akiane's Work. For instance, the following illicit image is on Defendants' Facebook account:



(*See* Exhibit D). The same illicit image from Defendants' social media is used by counterfeiters and sold as framed art on websites like Alibaba:

---

[9] Unknown to Art Akiane, Defendants also printed thousands of prints without authorization, including similar pieces offered by Art Akiane. (Doc. # 38 ¶ 51). Defendants sell to similar consumers throughout the U.S, and they promote and sell those works in the same market and channels of trade as Akiane, including online website sales and social media. (Akiane Kramarik Dec., ¶ 19). However, the quality of Art Akiane's works differ greatly from the unauthorized goods advertised by Defendants. (*Id.*). Defendants further took postcards and wallet cards meant for individual sale, digitally modified the wallet cards, and put frames around the postcards and wallet cards to make them look like legitimate framed artwork. (Doc. # 38 ¶ 175). Because Defendants have purportedly stopped selling the counterfeit goods, those are not included as part of this preliminary injunction at this time, but Art Akiane reserves all rights to pursue such conduct.



(*See* Exhibit E).

Other examples of Akiane's Works on Defendants' Facebook[10] page include the examples below. These examples, among many others, show that Defendants consistently remove Akiane's name, and replace it with Defendants:

 

(*See* Exhibit F).

Defendants' other Facebook page[11] also displays and distributes Akiane's Works:

---

[10] *See* https://www.facebook.com/jesusprinceofpeace/.
[11] *See* https://www.facebook.com/Art-SoulWorks-216117745075264/.



(*See* Exhibit G).

Defendants' Pinterest page does as well:

 

(*See* Exhibit H). As does Defendants' Twitter page:



(*See* Exhibit I). Likewise, Defendants continue to display and distribute Akiane's Works on their

Instagram:



(*See* Exhibit J).

Defendants continue to promote their websites and social media by using Akiane's Works in order to direct potential Art Akiane's customers to ASW's website. (Mark Kramarik Dec., ¶ 31).

Defendants also distribute and display Akiane's Works on Defendants' website. For instance, Defendants have posted digital images of Akiane's Works without Art Akiane's authorization on ASW's website at https://art-soulworks.com/collections/home-wall-decor. (Mark Kramarik Dec., ¶ 23). An example of these digital images are found below:



(*See* Exhibit K). Defendants' website enables any visitor to download one of the above images. (Mark Kramarik Dec., ¶ 23). Clicking on a digital image opens a new window where the image re-appears:



(*See* Exhibit L); (*see also* Mark Kramarik Dec., ¶23). The website visitor then is able to download the image to his or her computer by right clicking on the image and pressing save. (Mark Kramarik Dec., ¶ 24). Defendants' website has ***no protection*** to prevent a website visitor from downloading the digital images, does not prohibit or warn users from doing so, and does not watermark the images. (Mark Kramarik Dec., ¶ 25). Each time such an image is viewed or downloaded, Defendants' website transmits the digital display image to whoever requests them – whether a random visitor, or a counterfeiter looking for a free digital copy to use for his illicit printing. (Mark Kramarik Dec., ¶ 26).

Indeed, numerous counterfeit paintings are sold online, which could source the digital copies from Defendants' website to make, distribute and sell additional unauthorized and counterfeit Art Akiane goods to be sold online. (Mark Kramarik Dec., ¶ 27). Art Akiane expends extensive resources fighting counterfeit work similar to that posted on Defendants' websites from sites like Alibaba, DHgate, and others. (*Id.*); (*see also* Exhibit M).

In addition to the above, Defendants continue to misrepresent that they are the authorized source and representatives of Akiane's Works. (Mark Kramarik Dec., ¶ 29). For instance,

12

Defendants also claimed they owned the trademarks to Akiane's Works, including by stating that on the back of a magnet displaying one of the works, that: "*Art by Akiane*<sup>TM</sup> *is <u>a trademark of ©</u> <u>Art & SoulWorks</u>*," which is false. An example of the magnets are found below:



(*See* Exhibit N).

Defendants also added their names to a documentary that was made by Akiane, and edited and released the video to the public without authorization. Art Akiane provided Defendants with a copy of Art Akiane's and Akiane's copyrighted, "Painting the Impossible" documentary, which is a 24 minute and 56 second video regarding Akiane's commission of her famous "Jesus" portrait. (Mark Kramarik Dec., ¶ 30). Defendants without permission or authorization, manipulated the "Painting the Impossible" video by adding ASW's website to the closing credits and writing that ASW was the "Official Source for Akiane Gifts & Art." (*Id.*). Defendants further manipulated the documentary by deleting significant portions of the video and chopping the 24 minute video to 1 minute and 32 seconds. (*Id.*). Defendants posted its unauthorized video to their Facebook page and it is still publically available despite the expiration of the license agreement. (*Id.*). A screenshot of the actual documentary's closing credits are shown below on the left, and a screenshot of Defendants' adulterated version is on the right:

 

(*See* Exhibit O).[12]

Furthermore, Defendants' Facebook page also states that ASW is the trusted source for Art Akiane's "Prince of Peace" Works:



(*See* Exhibit P).

Defendants also induced the public to download illegal "free" copies of Akiane's Works from ASW's website while simultaneously stating that they were the authorized source and representatives of Akiane's Works. For instance, ASW's website[13] stated that ASW was the "Trusted Source for 'Prince of Peace' high-quality reproductions" and "everyone who [visited] Art & SoulWorks [was] invited to download" Akiane Kramarik's "Prince of Peace" portrait:

---

[12] Additionally, the video can be found online at https://www.facebook.com/watch/?v=1713019972044933 (last visited October 4, 2019).

[13] Defendants chose not to remove their unlawful language from their website until *after* Art Akiane filed its First Amended Complaint and threatened Defendants with the filing of a preliminary injunction.

14

> *That's why everyone who visits Art & SoulWorks is invited to download a portrait of Jesus, free of charge. The portrait is "Prince of Peace," painted by child artist Akiane Kramarik. You'll find it and other paintings by Akiane here at Art & SoulWorks. In fact, we are the Trusted Source for "Prince of Peace" high-quality reproductions.*

(*See* Exhibit Q).

In addition to the unlawful conduct described above, before and after ASW's license expired in January 2019, Defendants printed various illicit and counterfeit versions of Akiane's Works without permission, and then sold the illicit Works to consumers on ASW's website and via various vendors, including Defendant Carpentree. (Doc. # 38 ¶ 5). Carpentree then sold the illicit Works to consumers and resellers, among other acts. (Doc. #38 ¶¶ 187, 207). Art Akiane is not presently pursuing Carpentree's acts in the instant preliminary injunction as Carpentree has represented that they have ceased such sales.

## III.    STANDARD FOR A PRELIMINARY INJUNCTION

A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018); *see also Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If the movant makes the required threshold showing, then the court proceeds to the second phase, in which it considers: (4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the "public interest"). *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015); *see Ty, Inc.*, 237 F.3d at 895. The court weighs the balance of potential harms on a "sliding scale" against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must

weigh in his favor. *Turnell*, 796 F.3d at 662 (7th Cir. 2015); *see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

## IV. ART AKIANE IS ENTITLED TO A PRELIMINARY INJUNCTION ON ITS COPYRIGHT INFRINGEMENT, TRADEMARK INFRINGEMENT, AND RIGHT OF PUBLICITY CLAIMS

Art Akiane need only demonstrate a "better than negligible" chance of success on the merits of at least one of its claims, a standard the court has characterized as a "low requirement." *HH-Indianapolis, LLC v. Consol. Cty. of Indianapolis*, 889 F.3d 432, 437 (7th Cir. 2018). Art Akiane will likely succeed on its copyright infringement, trademark infringement, and right of publicity claims referenced in this motion.

### A. Art Akiane Will Likely Succeed on its Copyright Infringement Claim

Art Akiane can demonstrate a better than negligible chance of succeeding on the merits because it has valid and registered copyrights and Defendants are copying the entirety of Art Akiane's copyrighted Works. To establish copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009); *see also Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991).

To satisfy the copying element of infringement, direct evidence of copying will suffice. *See Atari, Inc. v. N. Am. Philips Consumer Electronics Corp.*, 672 F.2d 607, 614 (7th Cir. 1982). Direct evidence of infringement exists when identical or near-identical reproductions of plaintiff's works are made available on defendant's website. *See Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 49 (1st Cir. 2012); *see also In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) (making and transmitting a digital copy of content is copyright infringement, and the distributors are the direct infringers); *Marobie-FL, Inc. v. Nat'l Ass'n of Fire*

16

*Equip. Distributors*, 983 F. Supp. 1167, 1173 (N.D. Ill. 1997) (placing plaintiff's art onto the internet is evidence of direct infringement).

Art Akiane meets the elements for copyright infringement claim because Art Akiane holds the registrations for the thirteen (13) copyrights, which Defendants have used to directly infringe online and contribute to others' infringement.

### 1.    Art Akiane Owns the Copyrights at Issue

Certificates of registration constitute prima facie evidence of the validity of Art Akiane's copyright and ownership of the allegedly infringed material. 17 U.S.C. § 410(c); *see also Glovaroma, Inc. v. Maljack Prods., Inc.,* 71 F.Supp.2d 846, 850 (N.D. Ill. Sept. 23, 1999). The Works infringed by Defendants are covered by Art Akiane's 13 copyright registrations. (*See* Exhibit B). Akiane Kramarik has assigned all rights in and to the copyrights to Art Akiane. (Doc. # 38 ¶ 30). All rights in and to the copyrights have been assigned to Art Akiane.

### 2.    Defendants are Copying, Distributing and Displaying Akiane's Works

The Copyright Act grants the following exclusive rights on the copyright holder: (i) the right to reproduce the copyrighted work; (ii) the right to prepare derivatives of the work; (iii) the right to distribute the work; and (iv) the right to perform or display the work. 17 U.S.C. § 106. Liability under the Copyright Act falls on "[a]nyone who violates any of the exclusive rights of the copyright owner." 17 U.S.C. § 501(a).

Here, Defendants continue to violate Art Akiane's exclusive rights by copying, displaying, and distributing Akiane's Works on its website and social media, including digital images and videos, and by making derivative works.

### a.    Defendants are violating Art Akiane's reproduction rights

Defendants are directly infringing Art Akiane's reproduction rights by posting Akiane's Works on its website and social media. The Copyright Act provides that a copyright owner has the

exclusive right "to reproduce the copyrighted work in copies." 17 U.S.C. § 106(1).[14] Unauthorized duplication of copyrighted materials over the internet infringes a copyright owner's exclusive right to reproduce. *See A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001); *see also Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 648 (S.D.N.Y. 2013) (same).

Defendants copy and post Akiane's Works on their own website and social media accounts without authorization or license. (*See* Exhibit R). Accordingly, they have violated Art Akiane's exclusive right to reproduce.

### b. Defendants are violating Art Akiane's distribution rights

Defendants are similarly directly infringing Art Akiane's distribution rights by distributing digital images to third parties. 17 U.S.C. § 106(3) (A copyright owner has the exclusive right "to distribute copies…of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending [.]"). Distributing unlawful copies of a copyrighted work is a violation of the copyright owner's distribution right and, as a result, constitutes copyright infringement. *See Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997) (making work available to the public is "distribution" of work under the Copyright Act); *see also London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 172 (D. Mass. 2008) (transmitting electronic files over the internet constitutes "distribution" for the purposes of 17 U.S.C. § 106(3)); *Playboy Enterprises, Inc. v. Frena*, 839 F. Supp. 1552 (M.D. Fla. 1993) (copyrighted photographs posted on internet website implicated plaintiff's exclusive right of distribution).

---

[14] "Copies" are defined as "material objects…in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101. A work is "fixed" in a tangible medium of expression when its embodiment in a copy…is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.*

First, Defendants directly infringed Art Akiane's distribution rights when it distributed illicit copies of Akiane's Works "free of charge" from Defendants' website, and induced the public to download those illicit copies. Indeed, Defendants' website stated:

> *That's why everyone who visits Art & SoulWorks is invited to download a portrait of Jesus, free of charge. The portrait is "Prince of Peace," painted by child artist Akiane Kramarik. You'll find it and other paintings by Akiane here at Art & SoulWorks. In fact, we are the Trusted Source for "Prince of Peace" high-quality reproductions.*

(*See* Exhibit Q).[15]

Second, Defendants also infringe Art Akiane's distribution rights by posting, displaying, and distributing Akiane's Works on their website, and enabling users to download digital images of Akiane's Works. When a defendant places copyrighted material on a web page and makes such materials available for download to internet users, the defendant has violated a plaintiff's exclusive right to publicly distribute its copyrighted materials. *See Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355, 1364 (S.D. Fla. 2011) (plaintiff was distributing or offering to distribute his work to the public when he posted the copyrighted work online where it could be downloaded and copied); *see also ICG-Internet Commerce Grp., Inc. v. Wolf*, 519 F. Supp. 2d 1014, 1016 (D. Ariz. 2007) (making copyrighted works available for download implicates plaintiff's distribution right); *Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distributors*, 983 F. Supp. 1167, 1173 (N.D. Ill. 1997) (granting summary judgment on plaintiff's direct infringement claim after the defendant published plaintiff's copyrighted clip art on its web page and made such art available for internet users to download); *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 551 (N.D. Tex. 1997) (defendant distributed plaintiff's copyrighted works by allowing its users to download

---

[15] Defendants do not dispute that the above language was posted on their website. (Doc. # 60 at ¶¶ 7-8). Indeed, Defendants advertised this service until after Art Akiane filed its amended complaint. Defendants never had permission to distribute digital copies of Art Akiane's Works, and even continued to advertise that they would provide copies "free of charge" after they were sued for copyright infringement.

and print copies of electronic image files); *Cent. Point Software, Inc. v. Nugent*, 903 F. Supp. 1057, 1060 (E.D. Tex. 1995) (copying is established when a user posts copyrighted material on a computer bulletin board and makes the material available for download). Here, Defendants' website permits visitors to download Art Akiane's art as digital images directly from Defendants' website, which distributes the images to third parties without authorization, license or any control, including the following works:



(*See* Exhibit K); (*see also* Mark Kramarik Dec., ¶ 23). A single visitor to Defendants' website can click one of Defendants' displayed images and download local digital copies of the images to their hard drive, and then use them for whatever purpose. (Mark Kramarik Dec., ¶¶ 23-25). For instance, when a user clicks on a display image on ASW's website, a new browser window opens and the display image re-appears:



(*See* Exhibit L); (*See also* Mark Kramarik Dec., ¶ 23). The new browser window allows the user to download and save the display images to their computer by right-clicking the image and pressing save. (Mark Kramarik Dec., ¶ 24).

By providing and distributing illicit digital copies of Akiane's Works for download to anonymous internet users, Defendants are enabling and providing source material to the numerous other infringers of Akiane's Works found online. Indeed, such works are frequent targets of counterfeiters. (*See, e.g.*, Exhibit M); (Mark Kramarik Dec., ¶ 27).

Defendants' public posting of the images is further troubling because in addition to providing and distributing the Works, they have no protection measures for the images. To be clear, Defendants do nothing to prevent ***any*** website visitor from downloading Art Akiane's images. No safety measures are taken to prevent downloading, no watermarks,[16] no tracking of visitors, no digital image-tracking mechanisms, nor does Defendants' website have Terms of Use that prohibits such conduct. (Mark Kramarik Dec., ¶¶ 25, 28). Further, Defendants' website does not inform users that the downloading of Akiane's Works constitutes copyright infringement.

---

[16] The purpose of digital watermarks is to stop illegal copying and discourage infringements by signaling that a photo has not yet been properly licensed. *See Nebraska Mach. Co. v. Erickson Prods., Inc.*, No. 8:14CV91, 2014 WL 6980258, at *5 (D. Neb. Dec. 8, 2014) (the inclusion of a watermark on photographs is an "apparent attempt to discourage copying.").

(Mark Kramarik Dec., ¶ 25). Rather, Defendants provide un-marked digital images for download. (Mark Kramarik Dec., ¶¶ 25-26). In short, Defendants leave Akiane's Works completely exposed and available for any internet user's unauthorized taking. Accordingly, Defendants continue to violate Art Akiane's distribution rights when they send and enable visitors to download Art Akiane's art as digital images directly from Defendants' website.

Third, Defendants further violate Art Akiane's distribution rights by displaying and distributing Akiane's Works on its social media. (*See* Exhibits F-J). A defendant's continued use of plaintiff's art on its social media constitutes widespread distribution and is therefore copyright infringement. *See Tylor v. Rhythm of Life Cosmetics, Inc.*, No. CIV. 13-00280 DKW, 2014 WL 253012, at *4 (D. Haw. Jan. 23, 2014) (defendant's continued use of plaintiff's photographic works on its commercial Facebook page constituted widespread distribution of plaintiff's works). For instance, the following illicit image is on Defendants' Facebook account, and has been pirated:



(*See* Exhibit D). The same illicit and unauthorized image from Defendants' website is being counterfeited and sold as framed art on websites like Alibaba:



(*See* Exhibit E).

Accordingly, Defendants must be enjoined from their continued distribution of Akiane's

Works.

### c.    Defendants are violating Art Akiane's display rights

Defendants' publication of Akiane's Works on their website and social media websites is

also a violation of Art Akiane's display rights. A copyright owner has the exclusive right, "in the

case of ... pictorial [and] graphic ... works[,] ... to display the copyrighted work publicly." 17 U.S.C.

§ 106(5). Public display includes "show[ing] a copy of [a work], either directly or by means of a

film, slide, television image, or any other device or process." 17 U.S.C. § 101. To perform or

display a work "publicly" means:

> (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or

> (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

17 U.S.C. § 101. To "transmit" a performance or display is to communicate it by any device or

process whereby images or sounds are received beyond the place from which they are sent. 17

U.S.C. § 101. Transmit is to be "interpreted very broadly." *Bonneville Int'l Corp. v. Peters*, 347 F.3d 485, 492 (3d Cir. 2003).

Here, Defendants' publication of Akiane's Works over the internet, including on their website and social media, is a public display in violation of Art Akiane's exclusive rights. *See Playboy Enterprises, Inc.*, 839 F. Supp. 1552 at 1557 (website display of copyrighted photographs to internet subscribers was "public display."); *BWP Media USA Inc. v. Uropa Media, Inc.*, No. 13 CIV. 7871 JSR JCF, 2014 WL 2011775, at *1 (S.D.N.Y. May 16, 2014) (defendant's posting of plaintiff's photographs on a website without permission was a public display in violation of plaintiff's exclusive right); *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 54 (1st Cir. 2012) (finding direct infringement when the defendant's agent posted plaintiff's work on defendant's website); *Jackson v. Odenat*, 9 F. Supp. 3d 342, 352 (S.D.N.Y. 2014) (granting plaintiff's motion for summary judgment on copyright infringement claim where defendant displayed exact copy of copyrighted image on website without plaintiff's prior authorization).

Defendants display of Akiane's Works is deeply troubling as the images and videos Defendants display are still being sourced, and shared to third parties, directly from Defendants' social media pages, particularly from their Facebook page, even long after the license agreement expired. (Mark Kramarik Dec., ¶ 28); *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1376 (2d Cir. 1993) ("An abridgment of a copyrighted work is thus likely to be found to be *prima facie* infringing."). An example of such behavior is shown below:




(*See* Exhibit S).

Accordingly, Defendants continue to violate Art Akiane's exclusive rights and Art Akiane is likely to succeed on its copyright infringement claim.

### d.      Defendants are manipulating the Works[17]

The Defendants are also manipulating Akiane's Works and other copyrighted materials in violation of Art Akiane's rights to copy and to make derivative works. Indeed, not only do Defendants continue to post Akiane's Works on their social media, they unabashedly violated all of Art Akiane's exclusive rights by digitally modifying the Works, adding various unauthorized text to the images, and creating and editing videos. (*See* Exhibit F); (*see* also Docs. # 38-14, 38-16). For instance, Defendants unilaterally cutting the "Painting the Impossible" video from 24 minutes to 1 minute and displaying their manipulated version of the video on Facebook. (*See* Exhibit O). Furthermore, Defendants manipulated Akiane's copyrighted Works, including majority of the posts on social media. For instance, Akiane's "A New Journey" portrait appears below on the left, and Defendants manipulated image with unauthorized verbiage is on the right:

---

[17] If the Court finds that Defendants do not have a license to continue to distribute, copy or display the Works and accordingly enjoins such activity, this claim will not have to be separately decided as this conduct would be enjoined with the "distribute, reproduce and display" rights of Plaintiff. 17 U.S.C. § 501(a).

 

(Exhibit T); *compare with* (Exhibit U).[18]

Accordingly, Defendants should be enjoined from further manipulating and violating Art Akiane's rights under copyright.

### e. Defendants have contributed to infringement

To support a claim for contributory copyright infringement, a plaintiff must demonstrate (1) direct infringement by a primary infringer, (2) the defendant's knowledge of the infringement, and (3) the defendant's material contribution to the infringement. *Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877, 883 (N.D. Ill. 2005). A defendant is liable for contributory copyright infringement when it "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Id.*

In addition to direct infringement, Art Akiane is likely to succeed on its contributory infringement claim. Because Defendants have refused to take down the works, and leave Akiane's Works completely exposed and available for any internet user's unauthorized taking, they have caused third-party infringers to use Akiane's Works for their own illicit third-party endeavors.

---

[18] Akiane holds the copyright to "A New Journey," which was registered on March 7, 2019 and has the registration number VA0002143559.

Indeed, counterfeiters have already used Defendants' postings for their counterfeit goods. (*See* Exhibit E). Accordingly, Art Akiane has a "better than negligible chance" of succeeding on its contributory infringement claim. *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir. 2019) (a defendant may be liable for contributory infringement when they have actual knowledge that specific infringing material is available using its website, and they failed to take "simple measures to prevent further damage to copyrighted works.").

### 3. Defendants never had the right to display and distribute Akiane's Works on its social media, and definitely do not have those rights after their license expired

Defendants never had the right to display and distribute Akiane's Works on its social media absent Art Akiane's express authorization, which was never provided. (Doc. # 62 ¶¶ 24, 34-35). Indeed, the License Agreement is void of any language granting Art Akiane the right to display and distribute Art Akiane's digital images, and Defendants have not and cannot meet their heavy burden of showing authorization to continue the display or distribution of Akiane's Works on its social media. *See Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 761 (7th Cir. 2016) (the burden is on the alleged infringer to show that its use was authorized). Moreover, Defendants did not have the right to modify and alter Akiane's Works, and strip her signature from her works.

But this preliminary injunction motion can be decided without addressing whether Defendants *once* had rights for their conduct. Even assuming they did, it is clear that Defendants do not have a right to ***continue*** the display and distribution of Akiane's Works after the license expired. *See Teter v. Glass Onion, Inc.*, 723 F. Supp. 2d 1138, 1154 (W.D. Mo. 2010) (granting partial summary judgment as to artist's copyright infringement claim against art gallery, where gallery displayed artist's copyrighted works on gallery website after artist revoked license to display the pieces); *see also Rosen v. R & R Auction Co., LLC*, 2016 WL 7626443, at *6 (C.D. Cal. Aug. 31, 2016) (granting photographer's motion for summary judgment for copyright

infringement claim against auction website where auction website displayed copyrighted images in online catalogues and auction listings without license or consent of photographer).

Additionally, to the extent Defendants allege that their rights were granted via an oral contract, any rights conferred to Defendants ended when the agreement expired and Art Akiane sent notices to Defendant demanding that they stop their conduct, *or* when Art Akiane filed the instant lawsuit against Defendants. In any case, even assuming Defendants had any rights, which they did not, Defendants have no remaining rights. There is simply no basis for Defendants to have rights to Akiane's works in perpetuity. *See Walthal v. Rusk*, 172 F.3d 481, 485 (7th Cir. 1999) (oral licenses silent to length are terminable at will, including under 17 U.S.C. § 203); *Vincent v. City Coll. of Chi.*, 485 F.3d 919, 922 (7th Cir. 2007) (oral licenses terminable at will). Consequently, any purported oral license would not give Defendants the right to distribute Art Akiane's images in perpetuity.

At bottom, Defendants have no right to continue their display and distribution of Akiane's Works on their social media and their website, and their continued display of Akiane's Works without a license is copyright infringement.

### 4. Defendants' Continued Infringements Are Not Excused by Fair Use

Defendants' continued infringements on its website and social media, and cutting of the videos, are not excused by a fair use defense. The four statutory factors for a fair use defense are: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107; *FameFlynet, Inc. v. Jasmine Enter., Inc.*, 344 F. Supp. 3d 906, 911 (N.D. Ill. 2018). Fair use "is not an infringement of copyright" if used "for purposes such as criticism, comment, news

reporting, teaching (including multiple copies for classroom use), scholarship, or research." 17 U.S.C. § 107. The burden of proof is on the copier because fair use is an affirmative defense. *See Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003) (finding no fair use when defendant presented no evidence sufficient to withstand summary judgment).

Here, the four factors weigh against finding fair use by Defendants because they, among other reasons, use the entirety of Akiane's Works, do so for commercial purposes, and do not meet any of the enumerated or accepted exceptions.

The first factor weighs against fair use because Defendants are not using Akiane's works for an educational purpose, but a commercial purpose to draw consumers to their website and to sell their goods. *See Teter v. Glass Onion*, 723 F. Supp. 2d at 1153. (defendant gallery's thumbnail images of the plaintiff artist's works displayed on the gallery's website were not transformative because the images simply advertised plaintiff's works, which was a basic commercial purpose that suggested against a finding of fair use.); *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) (duplicating a church's religious book for use by a different church was not fair use). For instance, in *Batesville Servs., Inc. v. Funeral Depot, Inc.*, the court determined that defendant's use of plaintiff's thumbnail pictures was not fair use where the "thumbnails" were linked to a product and to larger images. *Id.* The court ruled against fair use because the defendant "simply copied [plaintiffs'] images and use[d] them for precisely the same purpose for which plaintiffs originally developed them: to sell the products that appear in the photographs." *Id.* at *7. 2004 WL 2750253, at *7 (S.D. Ind. Nov. 10, 2004). Defendants' use is commercial as it for advertising, and aims to draw consumers to its webpage and to sell products.

The second factor also weighs against fair use as the nature and character of Akiane's Work was original artwork, and not educational or a topic of news. By copying and distributing the work

in its entirety, and modifying it without prior approval, Defendants afforded Art Akiane no "opportunity for creative or quality control." *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 564 (1985) ("the nature of the copyrighted work," turns on whether the work is informational or creative). Akiane's work is her creative representations of her thoughts and visions for her art, and is not informational.

The third factor of amount and substantiality of the portion used weighs against fair use as Defendants copied the entire works, took the entirety of the work and added quotes, or combined two separately protected images. *See Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512, 517-519 (7th Cir. 2002) ("substitutional" rather than "complementary" copying weighs substantially against the fair use defense); *see also FameFlynet, Inc. v. Jasmine Enterprises, Inc.*, 344 F. Supp. 3d 906, 913 (N.D. Ill. 2018) (wholesale copying mitigates against a finding of fair use). *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000) ("copying an entire work 'militates against a finding of fair use.'"); *and see Harper & Row*, 471 U.S. 539, 565 (1985) ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression."). Indeed, often the only portions Defendants did not use were the artist's signature that Defendants inexplicably removed, which itself violates 17 U.S.C. § 1202 (b).

The fourth, and "single most important element of fair use," is Defendants' effect on the market. Defendants are former licensees of various Akiane Works. Defendants' continued distribution, copying and display of Akiane's works, and advertisements thereof, not only competes with Art Akiane's licensees, but Defendants' competition also directs consumers away from legitimate sources of the Works, affecting their sales and value. *Sony,* 464 U.S. at 450, 104

30

S.Ct. 774 ("Even copying for noncommercial purposes may impair the copyright holder's ability to obtain the rewards that Congress intended him to have."). Furthermore, distribution, copying and display of the digital images permits counterfeiters to use the images to create counterfeit works, as has already occurred, and which directly compete with the market for Art Akiane's goods. *FameFlynet, Inc. v. Jasmine Enterprises, Inc.*, 344 F. Supp. 3d 906, 913 (N.D. Ill. 2018) (J. Durkin) (addressing the fourth factor, "when a photograph is stolen, [plaintiff] loses the ability to control that photograph's exclusivity, and that the value of a photograph is usually diminished when a photo is leaked.").

The four fair use factors weigh against Defendants' use of Art Akiane's images on its website or social media because they are entire copies, compete with Art Akiane, and are not transformative or educational. The images displayed by Defendants are used to advertise their website, and are only being made available to aid Defendants' own sales, which is a basic commercial purpose. Defendants added nothing to the Works displayed on their website, and also added nothing new to the Works on their social media absent various verbiage across Akiane's Works, and removals of Akiane's signature. Accordingly, Defendants' use of Akiane's Works "merely supersedes the objects of the original creation." *Campbell*, 510 U.S. 569 at 579. Accordingly, Defendants are foreclosed from successfully asserting a fair use defense.

### 5. The first sale doctrine does not excuse Defendants from its continued infringement of Akiane's Works

Defendants have also refused to remove Akiane's Works from their website and social media or to remove the videos purportedly based on the first sale doctrine. They claim that because they bought goods to resell that they purportedly purchased from Art Akiane, that they in turn can copy, display, make derivative works of and distribute the digital images of those works on their website.

Defendants' arguments are unavailing because they do not own the digital images of Akiane's works, and do not have the right to display, distribute or copy those digital images.

Firstly, the first sale doctrine operates only to extinguish a copyright holder's exclusive right to distribute *a particular* copy sold to a defendant. *Teter*, 723 F. Supp. 2d at 1153-1154 (W.D. Mo. 2010). It does not extinguish any other exclusive rights under § 106, and only applies to assignments, and not to licenses. *Id. See Tete*r, 723 F. Supp. 2d at 1154 (first sale doctrine did not extinguish plaintiff's exclusive rights under §§ 106(1) and (5) to copy and display its works); *see also Bryant v. Gordon*, 483 F. Supp. 2d 605, 613 (N.D. Ill. 2007) ("Section 109(c) does not, however, entitle the owner of a particular copy of a copyrighted item to publicly display copyrighted images to the world via the Internet."); *see also Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 192 F. Supp. 2d 321, 331 (D.N.J. 2002) (rejecting the alleged infringer's first sale doctrine defense and concluding that the transmission of copyrighted images is a public display and violation of the Copyright Act when the images were made available to the public via the internet). Therefore, Defendants are not allowed to copy Akiane's Works and create "depictions," modify the images, or to distribute, display, and post copies of the images on the internet based on the first sale doctrine. Simply put, the first sale doctrine does not extinguish any exclusive rights outside of the right to distribute **_a_** particular copy.

Furthermore, the first sale doctrine is inapplicable because Defendants are not distributing any images it owns. In fact, many of the images it displays and distributes are modified and are not the actual goods that have been sold, as shown below:

  

(*See, e.g.,* Exhibit R).

Indeed, Defendants concede that they manipulated Akiane's Works by adding scripture to the Works. (*See* Doc. # 60 ¶ 24). Accordingly, Defendants' arguments are unavailing and Art Akiane will likely succeed on its copyright infringement claim.

### B. Art Akiane Is Likely to Succeed on its Trademark Infringement Claim

Art Akiane is likely to succeed on its trademark infringement claim, as Defendant is a former licensee that continues to advertise as the "official source," and that it owns Akiane's trademarks. Federal trademark law is governed by the Lanham Act, which provides in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…

15 U.S.C. § 1125(a). A false designation of origin claim under 15 U.S.C. § 1125(a) requires: (1) a protectable trademark; and (2) that a likelihood of confusion will exist as to the origin of plaintiff's products. *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 436 (7th Cir. 1999).

Art Akiane is likely to succeed on its trademark infringement claim because Defendants have falsely represented that they have an "affiliation, connection, or association" with Akiane, are an authorized dealer of Art Akiane's goods, and own the Akiane Marks, which will likely confuse consumers about the "origin, sponsorship, or approval" of the goods or commercial activities. For instance, Defendants falsely claimed they owned the trademarks to Akiane's Work's, including by stating "*Art by Akiane$^{TM}$ is <u>a trademark of © Art & SoulWorks.</u>*" (*See* Exhibit N).

Defendants YouTube page also falsely advertised that it was the "Official Source" for art by Akiane[19]:



(*See* Exhibit V).

Defendants also falsely continue to advertise that they have an association or affiliation with Art Akiane as they use the phrase "OfficialAkianeArt" on their Facebook page. (*See* Exhibit W). Furthermore, Defendants without Art Akiane's or Akiane's permission or authorization, manipulated Art Akiane's "Painting the Impossible" video by adding ASW's website to the closing credits and writing that ASW was the "Official Source for Akiane Gifts & Art." (Mark Kramarik Dec., ¶ 30).

---

[19] Defendants' infringing YouTube page was removed from YouTube's platform after Art Akiane was forced to send a takedown notice pursuant to the Digital Millennium Copyright Act after the Defendants failed to remove their infringing content upon request. (Doc. #62 ¶ 68).

Moreover, Defendants wrote that they were the "Trusted Source of Jesus Prince of Peace Gifts & Art" on ASW's website. (*See* Exhibit X). Similarly, Defendants wrote on their Facebook page that they were the "Trusted source of inspiration & gifts often featuring Prince of Peace, the Heaven is for the Real face of Jesus painted by 8-year old, child prodigy, Akiane Kramarik." (*See* Exhibit Y).

Defendants' representations that they own the trademarks, or that they are the "official source" or a "trusted source" of Akiane's Works, is false,[20] and Defendants' false misrepresentations and descriptions are likely to confuse consumers. *See* 15 U.S.C. § 1125(a). Indeed, Defendants admit that "customers are looking to ASW as the original source" of "Akiane['s] [W]ork." (Docs. # 62, 63, 64 ¶ 69).

And because Defendants are former licensees, their continue use is presumed as a matter of law to cause confusion. *See All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 860 (C.D. Ill. 2013) ("The likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the licensor after termination of the license."); *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 679 (7th Cir. 2001) (trademark rights "extend to any goods that might be, in the minds of consumers, 'related,' i.e., put out by a single producer," or "whether the public is likely to attribute the products and services to a single source."); *Gorenstein Enter., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989) ("If the owner of the trademark has broken off business relations with a licensee…[the licensee's] continued use of the trademark is therefore a violation of trademark law"). Accordingly, Art Akiane is likely to succeed on its trademark infringement claim.

---

[20] The only authorized sources for Art Akiane's Works are Art Akiane and Akiane Art Gallery. (Mark Kramarik Dec., ¶ 29).

### 1. Art Akiane Owns the Trademarks in Suit

As noted above, the Akiane Marks include Akiane's name, stylized signature, Art Akiane, Art by Akiane, and Akiane Art Gallery, and Art Akiane owns all rights, including common law rights, to the marks associated with Akiane and her works, including the goodwill associated therewith. The Akiane Marks have been continuously used in interstate commerce since at least 2002. *See Johnny Blastoff, Inc.*, 188 F.3d 427 at 434 ("party who first appropriates the mark through use, and for whom the mark serves as an identification of source, acquires superior rights to it."); *Purepecha Enter., Inc. v. El Matador Spices & Dry Chiles*, 2012 WL 3686776, at *9 (N.D. Ill. Aug. 24, 2012) ("whether a party has a protectable interest in a trademark is established by the first actual use of the mark in commerce."). As a result of such use and the reasons listed in the Statement of Facts above (**Section II.B. Art Akiane's Copyrighted Works and Trademarks**), Art Akiane has acquired exclusive and enforceable common law rights in the Akiane Marks.

### 2. Defendants' Use of the Akiane Marks is Likely to Cause Confusion

Defendants false claim that they owned the trademarks to Akiane's Works, including by stating that "*Art by Akiane<sup>TM</sup> is <u>a trademark of © Art & SoulWorks</u>*," is likely to confuse consumers about the ownership of the trademarks, or Defendants' "affiliation, connection, or association" with Art Akiane. Defendants' use of the Akiane Marks and representations that they are the "official source" and "trusted source" of Akiane's Works is also likely to cause confusion among consumers to the affiliation between Defendants and Art Akiane.

Courts consider the following factors when assessing consumers' likelihood of confusion: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d

923, 929 (7th Cir. 2008). No single factor is dispositive and courts may assign varying weight to each of the factors. *Id.* However, intent of the defendant and similarity of the marks are "particularly important." *Id.*

The likelihood of confusion is strong because Defendants are former licensees, and all of the factors favor Art Akiane, including the "particularly important" factors of Defendants' intent and the similarity of the marks.

### a.     Defendants are using the same trademarks

There is no dispute that Defendants' stated "*Art by Akiane*<sup>TM</sup> *is a trademark of © Art & SoulWorks*," or that they were the "official source" or "trusted source" of Akiane's goods. *Gen. Elec. Co. v. Speicher*, 877 F.2d 531, 534 (7th Cir. 1989) ("the danger of confusion is even greater because the 'imitation is not merely colorable, but perfect.'"); *CAE, Inc.*, 267 F.3d at 678 (identical marks create "no genuine issue of material fact about the similarity" and therefore "favor [] finding a likelihood of confusion."). Defendants' use of the same words, and claims to own the Akiane Marks, so therefore there is a greater "danger of confusion." Accordingly, this factor weighs heavily in favor of Art Akiane.

### b.     Defendants intended to trade off of Art Akiane's marks

The fact that one actively pursues an objective greatly increases the chances that the objective will be achieved. *Eli Lilly & Co.*, 233 F.3d 456, 465 (7th Cir. 2000). For this reason, a defendant's intent is an "important factor," and can even be weighed more heavily than other factors. *Id.* Here, Defendants', who are ex-licensees, intent is clear and obvious: they kept using Art Akiane's trademarks, and worse, claimed to own them. That is the hallmark of intending to trade off another's reputation. Indeed, you cannot accidently proclaim that the "Art by Akiane<sup>"</sup> trademark "*is a trademark of © Art & SoulWorks*." Even months after the filing of this lawsuit, Defendants' YouTube page boldly advertised that it was the "Official Source" for art by Akiane.

37

And as noted above, Defendants continue to advertise that they have an association or affiliation with Art Akiane. (*See* Exhibits W, X, Y); *see also Gorenstein Enter. v. Quality Care-USA*, 874 F.2d at 435 ("If the owner of the trademark has broken off business relations with a licensee…[the licensee's] continued use of the trademark is therefore a violation of trademark law"); *All Star Championship Racing v. O'Reilly Auto. Stores*, 940 F. Supp. 2d at 860 ("The ***likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the licensor after termination of the license***.") (emphasis added). Accordingly, this factor greatly supports a finding of likelihood of confusion and Art Akiane's need for a preliminary injunction.

### c. Art Akiane and Defendants both use websites and social media to promote similar goods

The more similar the parties' services and goods, the more likely infringement will be found. *See AutoZone*, 543 F.3d at 931 (finding that because there was some direct overlap between plaintiff's goods and defendant's services, a reasonable consumer could conclude from the relatedness of the goods and services that the marks were attributable to a single source). Here, both Art Akiane and Defendants use websites and social media to promote their respective goods to identical classes of potential purchasers. (Akiane Kramarik Dec.*,* ¶ 19). Accordingly, a reasonable consumer, taking into account the similarity of the marks, could conclude that the marks are all attributable to a single source due to the relatedness of Art Akiane's and Defendants' trade channels, which both sell and promote art via online stores.

### d. Area and Manner of Concurrent Use

The "area and manner of concurrent use" inquiry assesses "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *AutoZone*, 543 F.3d at 932 (quotations omitted). In determining whether the area and manner of concurrent use between two marks is likely to cause confusion, courts may consider: (1) the geographic

38

distribution areas; (2) evidence of direct competition between the products; and, (3) whether the products are sold through the same marketing channels. *Ty, Inc.*, 237 F.3d at 900.

Both Art Akiane and Defendants offer the same works of art to similar consumers throughout the United States, and they promote and sell those works in the same market and channels of trade: online sales. (Akiane Kramarik Dec., ¶ 19).

### e.  Degree of care exercised by consumers

To assess properly the degree of consumer care, the court must consider both parties' potential consumers, because even those consumers who buy only plaintiff's products and services could be confused as to the source of those products or services. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 682 (7th Cir. 2001). Here, there is a real likelihood of confusion because both Art Akiane and Defendants sell similar products at the same price via the same distribution channels: online sales. Indeed, a 24x24 limited edition canvas print of Art Akiane's "Jesus" portrait can be purchased online for $1,900 at www.akiane.com. (Mark Kramarik Dec., ¶ 34). Defendants are selling the same product on their own website for the same price. (*Id.*).

Furthermore, even a discerning consumer that reads "*Art by Akiane*$^{TM}$ *is <u>a trademark of ©</u> <u>Art & SoulWorks,</u>*" "official source" or "trusted source" would likely be confused that Defendants do indeed have some type of ownership of the trademark, or origin or affiliation with Akiane.

### f.  The Akiane Marks are Strong

"The stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone*, 543 F.3d at 933. The strength of a trademark "refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular...source." *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 464 (7th Cir. 2000).

As discussed above, the Akiane Marks are strong marks and inherently distinctive because they are arbitrary, or if not arbitrary, then suggestive. *See Pure Imagination, Inc.*, 2004 WL

2967446, at *4 ("Suggestive, arbitrary, and fanciful marks...are inherently distinctive and do not require any proof of secondary meaning."). Suggestive marks are also considered strong marks and secondary meaning does not need to be shown. *See id.* at *8; *see also Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 991 (7th Cir. 2004) ("Suggestive marks are protected by trademark law without proof of secondary meaning."). Regardless of whether the mark is arbitrary or suggestive, Art Akiane has invested substantial time, effort, and expense in the Akiane Marks. (Mark Kramarik Dec., ¶ 9). Indeed, even if considered descriptive, Akiane's international acclaim, media attention, and hundreds of millions of online visitors to her website support a strong secondary meaning to the Marks. Those Marks are used to ascribe the source of Akiane's art, and are used throughout Art Akiane's marketing, advertising and promotion for its works of art throughout the U.S., including on its website. (Akiane Kramarik Dec., ¶¶ 17-19). Indeed, if they the Marks were not strong, Defendants would not have been motivated to use them. Because the Akiane Marks are arbitrary or suggestive, or have an established secondary meaning, and because Art Akiane's extensive use of the Akiane Marks has reinforced that the Works originate from a single source, this factor favors Art Akiane.

### g. Evidence of actual confusion

While actual confusion is not required to prove a likelihood of confusion,[21] Defendants have caused actual confusion by misrepresenting that their websites are the authorized online platforms for Akiane's art — i.e. claiming to be the "Official Source for Akiane Gifts & Art" and the "Trusted Source of Jesus Prince of Peace Gifts & Art." (*See* Exhibit Z) (various correspondence from consumers where they mistakenly believe that Defendants are affiliated with Akiane's art). Defendants are likely to cause further confusion because they offer the

---

[21] *See Sorensen v. WD-40 Co.*, 792 F.3d 712, 731 (7th Cir. 2015).

identical works of art under the identical marks, through identical channels of trade, it is likely that actual confusion exists. Accordingly, this factor greatly favors Art Akiane.

### C.  Art Akiane Will Likely Succeed on its Right of Publicity Claim

The Illinois Right of Publicity Act (IRPA) prohibits the use of "an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person." 765 ILCS 1075/30(a).[22] IRPA supplanted the common-law tort of appropriation of likeness (also called the right of publicity), 765 ILCS 1075/60, but the statutory and common-law claims require essentially the same three elements: (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purposes. 765 ILCS 1075/30; *see Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at *5 (N.D. Ill. Aug. 29, 2017). Lastly, IRPA protects a person's right of publicity, or identity or persona of the plaintiff as a human being, separate from their works. *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 908 (7th Cir. 2005). Indeed, the purpose of IRPA is to allow a person to control the commercial value of his or her identity. *Id.* at 910.

Defendants violated IRPA by using Akiane's identity and likeness to promote their website without authorization. For instance, as noted above, Defendants' YouTube page contained a link to Defendants' website and the page included an artistic drawing of Akiane next to Defendants' statement that "Art & SoulWorks" was the "Official Source" for art by Akiane:

---

[22] IRPA defines "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS 1075/5. And "name" means "the actual name or other name by which an individual is known that is intended to identify that individual." 765 ILCS 1075/5.



(*See* Exhibit V).

Furthermore, Defendants' Facebook page uses Akiane's identity to promote the sale of goods on ASW's website:



(*See* Exhibit W).

Moreover, Defendants continue to use Akiane's likeness on their Instagram while also advertising their company to internet users:



(*See* Exhibit AA).

Accordingly, Art Akiane will likely succeed on its right of publicity claim as Defendants

violated IRPA by using Akiane's identity to promote their website and its sales despite not having

Art Akiane's consent to use Akiane's identity.

## V. THERE IS NO ADEQUATE REMEDY AT LAW AND ART AKIANE WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF

To obtain a preliminary injunction, the movant must show that it has no adequate remedy

at law and, as a result, that it will suffer irreparable harm if the injunction is not issued. *Foodcomm*

*Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). The stronger the case on the merits, the less

irreparable harm must be shown. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1111

(N.D. Ill. 2005); *see also Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, 2015 WL 3633987,

at *15 (N.D. Ill. June 10, 2015). Defendants' copyright, trademark and likeness rights

infringements all cause irreparable harm to Art Akiane.

### A. Irreparable Harm Due to Copyright Infringement

Art Akiane has suffered irreparable harm because it has lost its ability to control its

copyrighted material and creative control, Defendants have usurped Art Akiane's likeness rights,

marketing and search engine strategies, and Defendants' distribution of digital copies of the Works enables counterfeiters to use it as source material for their counterfeit goods.

1. **Art Akiane has lost its ability to control its Works because Defendants have allowed third-party infringers to make use of Akiane's Works**

The essence of the injury in "copyright infringement is that the copyright owner is deprived of control over the use of the copyrighted material." *Igram v. Page*, 1999 WL 705895, at *2 (N.D. Ill. Aug. 27, 1999). Courts have also held that irreparable injury is evident where a defendant has "usurped" plaintiff's "creative control" of its copyrighted work. *See Kinsey v. Jambow, Ltd.*, 76 F. Supp. 3d 708, 714 (N.D. Ill. 2014). Here, Defendants' distribution of illicit downloads and unauthorized social media postings pages usurp Art Akiane's creative control. While Akiane controlled her creative expression by fixing it in her art, and displaying it where approved, Defendants continued display and distribution of unauthorized Works, including works that are digitally modified without authorization, removed that control. (Mark Kramarik Dec., ¶ 36).

Furthermore, by Defendants distributing and displaying free digital copies of Akiane's Works on its website and social media, Defendants have essentially enabled and allowed third-party infringers and counterfeiters to source their own unauthorized and illicit goods. Indeed, counterfeiters are a pervasive and continuing issue that Art Akiane expends significant resources battling. In fact, counterfeiters have used the same digital images Defendants' from social media to source their counterfeit goods.

Counterfeiting is a clear and present danger to Art Akiane's business, and could irreparably ruin it and the market for Akiane's goods. Furthermore, the harm from such counterfeiting cannot be recovered through monetary damages, as the sales from counterfeit goods are difficult if not impossible to track. And once you take one site down that has counterfeit goods, if the images

44

keep getting sourced, another can easily pop up. For instance, another example of a counterfeit good is:



(*See* Exhibit BB).

Defendants' images also lack the superior quality that one would expect from Art Akiane artwork. (Akiane Kramarik Dec.*,* ¶¶ 19-22).

At bottom, injunctive relief is the only adequate remedy to prevent Defendants' continued threat of infringement and Defendants likely contribution of source/unauthorized material to third-party infringers. *See Igram*, 1999 WL 705895 at *2 (defendants' continued distribution of plaintiff's copyrighted material was an ongoing irreparable injury requiring equitable relief); *see also Kinsey*, 76 F. Supp. 3d 708, 714 (N.D. Ill. 2014) ("Defendants have continued to offer to license [plaintiff's works] despite having received notice that they were infringing. Without a permanent injunction, the defendants will likely continue their infringing conduct;" granting permanent injunction).

### 2. Defendants have irreparably harmed Art Akiane's marketing and search engine strategies

The harm to a plaintiff's marketing plan cannot readily be monetized and so is appropriately described as irreparable. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1173 (7th Cir. 1997). Here, Defendants have irreparably harmed Art Akiane's marketing because their unauthorized use of Akiane's Works affects the search results, and steers traffic to Defendants' website rather than Art Akiane's website. Defendants have posted Akiane's Works on ASW's website and social media and Defendants continue to reference Art Akiane's Work on these platforms so Defendants can direct consumers to their site, and thus steal potential customers from Art Akiane's website. (Mark Kramarik Dec., ¶ 31). For instance, when a person enters "Art Akiane" and "Prince of Peace" in Google, Facebook or Yahoo!, the search results mainly consist of pages operated by Defendants, including ASW's website and Facebook pages. (*See* Exhibit CC). Defendants' social media uses Akiane's likeness and Art Akaine's Works to drive consumers to its site. Indeed, Corneliuson admitted that ASW hired a search engine optimization specialist to designate ASW as the "official" and "authorized licensor" to the Akiane's Works. (Mark Kramarik Dec., ¶ 32); (*See also* EXHIBIT DD at 11). This was done without the knowledge and approval of Art Akiane. (Mark Kramarik Dec., ¶ 32). By use of Art Akiane's copyrighted works, trademarks and Akiane's likeness, Defendants intentionally direct customers to their website, which diverts sales away from Art Akiane's own website. Thus, Art Akiane has been irreparably harmed because of Defendants' conduct. (Mark Kramarik Dec., ¶¶ 36-37).

### 3. The extent of harm is irreparable and incalculable

Defendants' unauthorized and unlicensed use of Akiane's Works has and continues to irreparably harm Art Akiane. The extent of the harm and possible diversion of customers are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities

through injunctive relief. Art Akiane will suffer immediate and irreparable injury, loss, or damage if a preliminary injunction is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). As such, Art Akiane should be granted preliminary relief.

### B. Irreparable Harm Due to Trademark Infringement

Injuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss. *Engineered Abrasives, Inc. v. Am. Mach. Products & Serv. Inc*., 2015 WL 1281460, at *8 (N.D. Ill. Mar. 18, 2015) (*citing Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002)); *also citing Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013) ("[I]rreparable harm is especially likely in a trademark case..."); *see also PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011) (injuries from false advertising violations of the Lanham Act typically will be irreparable because diminished goodwill is difficult to quantify); *Warner Bros. Entm't v. X One X Prods.*, 840 F.3d 971, 982 (8th Cir. 2016) ("a finding that likelihood of confusion exists results in a presumption that a threat of irreparable harm exists."); *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (irreparable injury is presumed where a likelihood of confusion is found).[23]

---

[23] While Defendants' previously argued that *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (2006) universally eliminated the presumption of irreparable injury, that patent infringement case did not address irreparable harm for trademark infringement, or how goodwill and consumer confusion is weighed in the analysis. Nevertheless, Defendants' conduct causes an irreparable harm that has been recognized and is consistent with rulings by courts in this district, which have consistently found irreparable injury from Lanham Act violations after the *eBay* decision. *See MetroPCS v. Devor*, 215 F. Supp. 3d 626, 639 (N.D. Ill. 2016); *SBA-TLC, LLC v. Merlin Corp.*, 2015 WL 6955493, at *2 (N.D. Ill. Nov. 10, 2015); *Venus Labs., Inc. v. Vlahakis*, 2015 WL 1058264 (N.D. Ill. Mar. 5, 2015); *Dental USA, Inc. v. McClellan*, 2013 WL 4451257 (N.D. Ill. Aug. 16, 2013); *Neuros Co. v. KTurbo, Inc.*, 2013 WL 1706368 (N.D. Ill. Apr. 17, 2013); *Deckers Outdoor Corp. v. Does 1–100*, 2013 WL 169998 (N.D. Ill. Jan. 16, 2013); *Tory Burch LLC v. Does 1–100*, 2012 WL 4581409 (N.D. Ill. Oct. 2, 2012); *Wm. Wrigley Jr. Co. v. Swerve IP, LLC*, 900 F.Supp.2d 794, 803 (N.D.Ill.2012); *Vienna Beef, Ltd. v. Red Hot Chicago, Inc.*, 833 F.Supp.2d 870, 876 (N.D. Ill. 2011); *Lettuce Entertain You Enter., Inc. v. Leila Sophia AR, LLC*, 703 F.Supp.2d 777, 782 (N.D. Ill. 2010); *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 576 F.Supp.2d 868, 874 (N.D. Ill. 2008); *Coach, Inc.*

Art Akiane will be irreparably harmed because Defendants' actions, if allowed to persist, will continue to cause consumer confusion as Defendants continue to misrepresent that they are the authorized source and representatives of Akiane's Works. Indeed, Defendants concede that "customers are looking to ASW as the original source of the Akiane work." (*See* Doc. # 47, ¶ 69). Accordingly, Art Akiane will lose customer sales if Defendants continue to misrepresent that they are the authorized source and representatives of Akiane's Works. *See Hyatt Corp. v. Hyatt Legal Serv.,* 736 F.2d 1153, 1158 (7th Cir. 1984) ("'[T]here is no effective way to measure the loss of sales or potential growth – to ascertain the people who don't knock on the door or to identify the specific persons who do not [return] because of the existence of the infringer.'").

Simply put, Defendants' unauthorized affiliation with Art Akiane is likely to threaten the reputation and goodwill that Art Akiane has developed with respect to its goods and Marks. Akiane's art has been showcased in numerous galleries and the Akiane brand has developed an international fan base that continues to grow. (Akiane Kramarik Dec., ¶ 4). Moreover, the Art Akiane brand and Akiane's Works have received extensive media coverage in the U.S. and worldwide. (*Id.*). Accordingly, Defendants' unauthorized affiliation with Art Akiane has threatened the reputation and goodwill that Art Akiane has developed with respect to its goods and Marks. *See USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, No. 1:19 C 4693, 2019 WL 3818658, at *7 (N.D. Ill. Aug. 14, 2019) (granting an injunction when plaintiff lost the ability to monitor the quality of defendant's goods after the defendant used a mark similar to plaintiff's trademarks).

---

*v. The Partnerships & Unincorporated Associations Identified on Schedule "A"*, WL 5477573, at *3 (N.D. Ill. Oct. 1, 2013).

## VI.    THE BALANCE OF HARMS IS IN ART AKIANE'S FAVOR AND ISSUANCE OF THE INJUNCTION IS IN THE PUBLIC INTEREST

The irreparable harm that Art Akiane will suffer in the absence of a preliminary injunction outweighs any potential harm to Defendants. "In balancing the harms to parties and the public, the court uses a 'sliding scale' approach, so that the more likely it is the movant will succeed on the merits, the less the balance of irreparable harms need weigh toward its side…" *Abbott Labs,* 971 F.2d 6, 12 (7th Cir. 1992); *see also Grote v. Sebelius*, 708 F.3d 850, 853 n.2 (7th Cir. 2013).

Art Akiane is very likely to succeed on the merits, and Defendants are unlikely to show they have rights to make unauthorized use of Art Akiane's copyrights, trademarks, or likeness. Art Akiane's harms greatly exceed any purported harms to Defendants as Art Akiane has lost the ability to control the quality of its works, as described above. Additionally, Defendants' continued infringement has allowed third-party infringers to counterfeit Art Akiane's Works and to unfairly profit off them. Meanwhile, any harm to Defendants, if any, is purely monetary, as it would at most affect the value of its existing inventory of Akiane Works, which is not an equitable consideration. *See Ty, Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (a defendant "having adopted its course…cannot now complain that having to mend its ways will be too expensive.").

Furthermore, a preliminary injunction is in the public's interest because it restrains companies from stealing an individual's creativity and efforts, thereby preserving the integrity of copyright and trademark laws. *See JCW Investments,* 222 F. Supp. 2d at 1036 ("public interest in preserving the integrity of copyright laws will also be served by granting a[n]...injunction"); *see also Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 576 F. Supp. 2d 868, 889 (N.D. Ill. 2008) ("the public interest is generally served by the enforcement of trademark laws as such laws prevent confusion among and deception of consumers;" granting injunction). The public also has an interest to keep counterfeits from entering the marketplace. *Coach, Inc. v. 3D Designers Inspirations*, 70 F.

Supp. 3d 942, 950 (C.D. Ill. 2014) (finding a permanent injunction will "not harm the public interest, but benefit the consuming public by eliminating deception as to the source and quality of products they buy from [the infringing party] and other potential [infringers] deterred by this order;" granting permanent injunction). Accordingly, the Court should grant Art Akiane's preliminary injunction.

## VII. DISCOVERY IS NOT NEEDED FOR THE COURT TO RULE ON ART AKIANE'S PRELIMINARY INJUNCTION

Discovery is not warranted because the legal issues in this matter are clear and the facts are not in dispute,[24] as Defendants do not dispute that Art Akiane's artwork is on Defendants' website and social media pages. Accordingly, the Court should grant Art Akiane's preliminary injunction on the papers and without the need for discovery or evidentiary hearings as that would only prolong the case and cause continued harm to Art Akiane because Defendants would continue their infringement absent a ruling from the Court.

## VIII. A BOND IS NOT NEEDED HERE, BUT IF REQUIRED, IT SHOULD BE NO MORE THAN $10,000

The posting of security upon issuance of a preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. V. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed R. Civ. P. 65(c). Further, not requiring a bond prior to issuing an injunction is "not reversible error." *Scherr v. Volpe,* 466 F.2d 1027, 1035 (7th Cir. 1972). The Seventh Circuit has stated that a strong likelihood of success can justify waiving a bond. *Id.* Likewise, many courts have not required bonds to be posted when issuing a preliminary injunction. *See, e.g., Country Inns & Suites By Carlson, Inc. v. 3 AM, LLC,* No. 14-cv-3126, 2014 WL 5431621 (D. Minn. Oct. 24, 2014) (waiving bond); *TracFone*

---

[24] At most, in the event that the Court rules that continued use of the photographs is permitted on social media if such photographs were posted before the expiration of the license and were authorized, minimal discovery would be required to the extent to determine for which of the works Defendants had a license.

*Wireless, Inc. v. Washington,* 978 F. Supp. 2d 1225 (M.D. Fla. 2013) (no bond required); *Sylvan Learning, Inc. v. Learning Solutions, Inc.,* 795 F. Supp. 2d 1284 (S.D. Ala. 2011) (because plaintiff established a "high" likelihood of success on the merits as to part of its claim, no bond was required); *Ohio State Univ. v. Thomas,* 738 F. Supp. 2d 743 (S.D. Ohio 2010) (because plaintiff prevailed on each of the preliminary injunction factors, it was not required to post a bond); *State Farm Mut. Auto Ins. Co. v. Sharon Woods Collision Cent., Inc.,* No. 07-cv-457, 2007 WL 4207158 (S.D. Ohio Nov. 26, 2007) (no bond required). Because Art Akiane has a strong likelihood of success on its copyright infringement, trademark infringement, and right of publicity claims, no bond is necessary in this matter. Moreover, because Defendants have a finite inventory of goods, any such inventory could just as easily be sold in the future without a decrease value, further obviating the need for a bond.

If the Court does decide to require Art Akiane to post a bond, Art Akiane respectfully requests that this Court require it to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Oakley, Inc. v. Does 1-100,* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100,* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond); *Tory Burch LLC v. Zhong Feng, et al.,* No. 12-cv-09066 (N.D. III. Nov. 15, 2012) (unpublished) ($10,000 bond); *Coach, Inc., et al. v. Does 1100,* No. 12-cv-8963 (N.D. Iii. Nov. 15, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) ($10,000 bond).

Nevertheless, because of the strong and unequivocal nature of Art Akiane's evidence of copyright and trademark infringement and the use of Akiane's identity, Art Akiane respectfully requests that it not be required to post a bond, or at most, that it be required to post a minimal bond that the Court deems to be appropriate.

## IX.    CONCLUSION

Defendants' illegal copying and infringement are irreparably harming Art Akiane's business and consumers. Without entry of the requested relief, Defendants' copying, distribution and display of Akiane's Works and use of Art Akiane's Marks will continue to lead prospective purchasers and other consumers to buy unauthorized and illicit Works, and further contribute to the counterfeiting of Art Akiane's Works. Further, Defendants' unlawful activities robs Art Akiane of revenue and weakens Art Akiane's strong reputation associated with its copyrighted Works and trademarks. Accordingly, entry of a preliminary injunction order is necessary to protect Art Akiane's copyrights, to prevent further harm to Art Akiane and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with similar cases, Art Akiane respectfully requests that this Court enter a preliminary injunction order against Defendants Art & SoulWorks LLC and Carol Corneliuson.

Dated: October 7, 2019                                  Respectfully submitted,

                                                       ART AKIANE LLC,


                                                       By:  s/ Adam Wolek
                                                            Adam Wolek
                                                            Marcus Harris
                                                            Rashad A. Simmons
                                                            TAFT STETTINIUS & HOLLISTER LLP
                                                            111 E. Wacker Drive, Suite 2800
                                                            Chicago, Illinois 60601
                                                            Phone: (312) 836-4063
                                                            Fax: (312) 966-8598
                                                            awolek@taftlaw.com
                                                            mharris@taftlaw.com
                                                            rsimmons@taftlaw.com
                                                            *Counsel for Plaintiff and Counter-
                                                            Defendant Art Akiane LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 7, 2019, the foregoing was filed with the Clerk of Court via CM/ECF, which provided notice of the same to all parties who have made an appearance in this case.


/s/  Adam Wolek
_____