**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ART AKIANE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-02952 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| ART & SOULWORKS LLC, | ) | |
| CAROL CORNELIUSON, and | ) | |
| CARPENTREE, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| ------------------------------------------------------- | ) | |
| | ) | |
| ART & SOULWORKS LLC, and | ) | |
| CAROLYNE CORNELIUSON, | ) | |
| | ) | |
| Defendants - Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ART AKIANE LLC, | ) | |
| | ) | |
| Plaintiff - Counter-Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AKIANE ART GALLERY, LLC, and | ) | |
| AKIANE KRAMARIK, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

**ASW'S AND CORNELIUSON'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
<u>AND REQUEST FOR AFFIRMATIVE RELIEF</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

BACKGROUND FACTS .............................................................................................. 2

ARGUMENT ............................................................................................................... 15

I.   Art Akiane Has Not Shown It Is Entitled to a Preliminary Injunction ................... 15

   A.  Plaintiff Has Not Established a Likelihood of Success on the Merits .............. 16

      1.  Art Akiane is Unlikely to Succeed on Its Copyright Infringement Claim ................ 16

      2.  Art Akiane is Unlikely to Succeed on Its Trademark Infringement Claim ............... 21

      3.  Art Akiane is Unlikely to Succeed on Its Right of Publicity Claim .......................... 23

      4.  Affirmative Defenses Decrease AA's Likelihood of Success on the Merits ........... 23

         a. Unclean Hands ......................................................................................... 23

         b. Implied or Express Waiver ...................................................................... 25

         c. Statute of Limitations ............................................................................... 25

      5.  Art Akiane Cannot Demonstrate a Likelihood of Irreparable Harm ........................ 25

         a. AA's Alleged Irreparable Harm from Copyright Infringements Is Not
           Supported  by Evidence and Does Not Exist ........................................... 26

         b. AA's Alleged Harm from Trademark Infringements Does Not Exist ..... 27

   B.  Art Akiane Fails to Present Evidence That No Adequate Remedy At Law Exists ......... 27

II.  Granting a Preliminary Injunction Would Harm Defendants ................................... 28

   A.  The Balance of Equities Favors Defendants ................................................... 29

   B.  Defendants' Own Narrowly Tailored Cross-Motion for Declaratory Relief .................. 29

III. Conclusion ............................................................................................................. 31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317 (1994) ................................................ 24

*Alwood v. Clark*, No. 05-CV-0580-MJR, 2005 WL 2001317 (S.D. Ill. Aug. 19, 2005).............. 28

*Architettura, Inc. v. DBSI Cumberland*, 652 F.Supp. 2d 775 (N.D. Tex. 2009) ......................... 21

*Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176 (3d Cir. 2008)........ 28

*Boehm v. Svehla*, No. 15-cv-379-jhp, 2017 WL 4326308 (Sept. 27, 2017 W.D. Wis.) .............. 18

*Bryant v. Gordon*, 483 F. Supp. 2d 605 (N.D. Ill. 2007)..................................................... 17, 18

*City of L.A. v. Lyons*, 461 U.S. 95 (1983) ................................................................... 26

*Delta Consulting Group, Inc. v. R. Randle Constr., Inc.,* 554 F.3d 1133 (7th Cir. 2009)........... 25

*Ditton v. Rusch,* 2014 WL 4435928 (N.D. Ill. Sept. 9, 2014) ................................................ 26

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).......................................................... 27

*Enesco Corp. v. K's Merch. Mart*, No. 99 C 1070, 2000 WL 1800640
  (N.D. Ill. Aug. 29, 2000)............................................................................................. 21

*Flava Works, Inc. v. Gunter,* 689 F.3d 754 (7th Cir. 2012)....................................................... 27

*Goodman v. Ill. Dep't of Fin.*, 430 F.3d 432 (7th Cir. 2005)....................................................... 16

*Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453 (7th Cir. 2010) ....................................... 29

*Hoosier Energy Rural Elec. Corp., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721
  (7th Cir. 2009)............................................................................................................ 28

*Illinois Tamale Co. v. El-Greg, Inc.*, No. 16 C 5387, 2019 WL 4395139
  (N.D. Ill. Sept. 13, 2019) .......................................................................................... 27

*Ixmation, Inc. v. Switch Bulb Co., Inc.,* 2014 WL 5420273 (N.D. Ill. Oct. 23, 2014) ................ 27

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) ......................................................... 18

*Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F.Supp. 3d 898 (E.D. Mo. 2015).............. 18, 19

*Lee v. Deck the Walls, Inc.*, 925 F. Supp. 576, 578 (N.D. Ill. 1996) ......................................... 17

*Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16-CV-05314, 2016 WL 6092636
  (N.D. Ill. Oct. 19, 2016)........................................................................................... 15

*McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F. Supp. 2d 740 (N.D. Ill. 2010)................. 26

*Mills Music, Inc. v. Snyder*, 469 U.S. 153 (1985)....................................................................... 21

*Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, 2015 WL 3633987
  (N.D. Ill. June 10, 2015) ........................................................................................... 27

*Parfums Givenchy v. C & C Beauty Sales*, 832 F. Supp. 1378 (C.D. Cal. 1993)........................ 17

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ......................................... 18

ii

*Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803 (Feb. 8, 2012 N.D. Ill.) .......................................................................................................... 23

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671, 134 S. Ct. 1962, 1969 188 L. Ed. 2d 979 (2014) ....................................................................................................... 25

*Planned Parenthood of Ind. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962 (7th Cir. 2012) ........................................................................................................................ 29

*PPM Finance, Inc., v. Norandal USA, Inc.,* 392 F.3d 889 (7th Cir. 2004) ................................... 25

*Rosen v. eBay, Inc.,* No. CV-13-6801, 2015 WL 1600081 (C.D. Cal. Jan. 16, 2015) ................. 19

*Ryder v. Bank of Hickory Hills,* 146 Ill. 2d 98, 585 N.E.2d 46  (Ill. 1991) ................................... 25

*Sebastian Int'I, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073 (9th Cir. 1995) .......................... 21

*Stern v. Lavender*, 319 F. Supp. 3d 650 (S.D.N.Y. 2018) ........................................................... 19

*Students v. United States Dep't of Educ.*, 2016 WL 6134121 (N.D. Ill. Oct. 18, 2016) ............... 15

*Swanigan v. City of Chicago*, 881 F.3d 577 (7th Cir. 2018) ......................................................... 26

*TD Bank N.A. v. Hill,* 928 F.3d 259 (3d Cir. 2019) ....................................................................... 28

*Toney v. L'Oreal USA, Inc.*, 406 F.3d 905 (7th Cir. 2005) ............................................................ 23

*Truth Found. Min. v. Vill. of Romeoville*, 2016 WL 757982 (N.D. Ill. Feb. 26, 2016) ................. 15

*Turnell v. CentiMark Corp.*, 796 F.3d 656 (7th Cir. 2015) ............................................................ 15

*Video Pipeline, Inc. v. Buena Vista Home Entert., Inc*., 192 F. Supp. 2d 321 (D.N.J. 2002) ...... 17

*Winter v. NRDC*, 555 U.S. 7, 20 (2008) ................................................................................ 26, 28

*Zahl v. Krupa*, 850 N.E.2d 304 (Ill. App. Ct. 2006) ..................................................................... 24

## Statutes

17 U.S.C. § 101 .............................................................................................................................. 17

17 U.S.C. § 109 .............................................................................................................................. 17

17 U.S.C. § 113 .................................................................................................................... 17, 18, 29

17 U.S.C. § 203(b)(1) ..................................................................................................................... 21

17 U.S.C. § 507(b) .......................................................................................................................... 16

## INTRODUCTION

For the second time since this lawsuit was filed, Plaintiff Art Akiane, Inc. ("AA") seeks extraordinary relief from this Court, this time in the form of a broad preliminary injunction that would prohibit Art & Soulworks and Carol Corneliuson (collectively "ASW") from, among other things, displaying for sale the substantial inventory they were left with when AA terminated the parties 10+ year relationship without even a day's notice. Indirectly, AA is asking the Court to mandate that ASW go through past social media feeds to remove any previous post if it mentions or Akiane or her art. AA seeks this relief even though all of those posts were expressly allowed under the parties' agreements when they were made and AA was well aware of them but did not complain about them – not even once. As if AA has not already inflicted enough harm on ASW and Corneliuson by summarily terminating the parties' long-term agreements in bad faith and without notice, AA now wants the Court to hammer the final nail in the proverbial coffin by granting its motion. This request should be denied.

Just as it did with its previous TRO motion, in seeking *this* relief, AA again misstates, conflates or outright omits relevant facts that show there is no likelihood of success on the merits. For example, AA fails to mention any oral agreements (including the ones giving rise to ASW's rights to display them for sale post-termination. Also, rather than attaching the complete License Agreement, AA attaches only the original agreement from 2006, not the version showing it was amended three times or containing the most recent and expanded second Schedule A. (Ex. C to AA's Brief [Dkt. 66] ("Br.")).

As discussed below, AA cannot establish a likelihood of success on the merits or the other elements necessary to obtain a preliminary injunction. Even if it were able to do so, AA's unclean hands strongly counsel against granting its motion. Rather, as addressed in a narrowly tailored

cross-motion at the end of this Memo, it is ASW that is entitled to affirmative relief in the form of an expedited declaration that it: (a) can continue to sell (and display for sale) the Akiane works it purchased as part of the parties' Wholesale Agreement and for its private collection; and (b) it need not remove past posts it lawfully made while the parties' various license agreements were in place. AA's motion should be denied in its entirety and ASW's motion should be granted.

## BACKGROUND FACTS

Art & Soulworks is a business created by Corneliuson. (Declaration of Carolyne Corneliuson ("CC Decl.") ¶¶ 1-4; see also Dkt. 21 (prior CC Decl)). Through the www.art-soulworks.com website, trade shows, social media and other avenues, ASW provides a variety of religious-based gifts and art designed to promote Bible-based values globally. (*Id*.) 20% of proceeds are donated to charity. (*Id*., ¶ 6).

*The License Agreement:* ASW's relationship with the Kramarik family and AA began in 2006 and was expanded over the next decade via one written and various oral agreements. (CC Decl., ¶ 8-13). In 2008, ASW and AA entered into the Art Akiane, LLC & Art & SoulWorks, LLC Art Images & Licensing Agreement ("License Agreement" attached as Ex. 1 to CC Decl.; CC Decl., ¶ 8). The License Agreement had an initial term of five years, was renewed in 2012 until 2015 via a second round of signatures on the original agreement, and was renewed again in 2016 until January 11, 2019 (via a third set of signatures on the original agreement). (*Id.*, ¶ 9). ASW paid AA a 10% royalty on the wholesale price of all items sold under the License Agreement. (*Id.* ¶ 11). There is no provision that addresses the parties' obligations if the contract was not renewed after expiration. (*Id.*, ¶12).

Contrary to the allegations in AA's Brief, ASW was not limited to the manufacture, reproduction, marketing and sales of solely the works listed on page 4. The parties agreed to a

second Schedule A as part of the 2016 renewal which gave ASW rights in "*All images* painted, drawn, sketched or otherwise created by Akine [sic] Kramarik from age 4 to current" on an expanded but not exhaustive list of products. (*Id.*, ¶10; Ex. 1). Paragraph D also granted ASW the right to use all Akiane art in "promotional advertisements and materials, and *for all promotional purposes* in connection with [ASW's] website and Internet related business." (*Id.*) In addition, as described below, the parties entered into a series of oral agreements as well.[1]

On January 11, 2019, one day after ASW placed a substantial order, AA terminated the ASW agreements without notice. (*Id.*, ¶ 24-28, 31). At that time, the Akiane-related work made up approximately 85% of ASW's business. (*Id.*, ¶34) Corneliuson had spent more than a decade building her reputation such that at the time of AA's termination, the ASW Facebook page had approximately 750,000 followers. (*Id.*, ¶35). Since the termination, ASW's business has suffered precipitously, with revenues declining approximately 90% in 2019. (*Id.*, ¶40) Corneliuson is the only remaining ASW employee except for a contract bookkeeper who works periodically. (*Id*, ¶41). Though ASW intends to try to rebuild its business with other Christian artists, the manner in which AA terminated the agreements negatively impacted its reputation in the Christian business community. (*Id.*) AA continues to make it impossible for ASW to salvage its reputation and rid itself of the substantial inventory it purchased from AA. For example, rather than waiting for the Court to determine the issues in this case, AA has served take down notices on ASW's customers and social media sites (without notice), including YouTube and it is evident ASW's prior lawful posts have been removed. (*Id.* ¶41-42). If the marketing ASW has previously done disappears from view, it makes it incredibly difficult to attract new artists without being able to show the type of

---

[1] Not all of the oral agreements are pertinent to the instant motion, including a Printing Agreement, and thus, not all are discussed here. For a more detailed recitation of the various agreements and the parties' relationship, see ASW's Amended Counterclaim. [Dkt. 47].

marketing it previously lawfully did. (*Id*.) AA has also named a customer of ASW as a Defendant in this suit, and most recently, has served multiple subpoenas on ASW's other customers, along with a cover letter saying it is suing to recover damages for ASWs wrongful conduct. (*Id*., ¶42, a copy of the subpoena cover letter is attached as Ex. 2).

*The Wholesale Agreement:*  In addition to License Agreement, beginning in 2008, ASW and AA entered into an oral agreement which allowed ASW to market and sell additional works and products ("Wholesale Agreement") (CC Decl. ¶13-16). AA asked that ASW essentially mimic the Akiane Gallery website to enhance the selling opportunities for Akiane's art.  (*Id*.) At ASW's own expense, it expanded its website to include paintings, prints and canvasses of AA, with the assistance of AA to ensure accurate descriptions and photos of these works. (*Id*.) The Wholesale Agreement allowed ASW the same rights to market and display Akiane's works on its website and social media. (*Id*.) ASW either purchased these works at wholesale prices and kept them in inventory, or, if a customer expressed interest in a piece that ASW could market ASW did not have in stock, ASW would purchase the piece from AA and resell it to the customer with AA's blessing. (*Id*., ¶17, 20). An example of the latter scenario is reflected as Ex. 3 to CC Decl. (*Id*., ¶18). ASW promoted Akiane and her pieces exclusively and extensively on its website, social media and in marketing materials and at trade shows, with full knowledge and assistance by AA.  (*Id*., ¶19). A spreadsheet reflecting more than 50,000 Wholesale sales ASW made with art bought from AA for which AA was paid under the oral agreement, is attached as Ex. 20. (*Id*., ¶21).

Throughout the parties' relationship, including in the months leading up to the termination, AA would send ASW videos that AA had created and links to photos of new Akiane works and request that the ASW website post them simultaneously with the Akiane Gallery website to multiply the exposure. (*Id*. at ¶29).

4

*The Private Collection:* In addition, at various points in time, Corneliuson purchased pieces for her collection from AA at full price. (CC Decl., ¶23).

*Art Akiane's Termination of the License Agreement:* As described more fully in ASW's Counterclaim [Dkt. 47], AA and the Counter-Defendants knew they had no intention of renewing the parties' agreements, but withheld this from ASW. (*Id.*, ¶24-28). Mark Kramarik's declaration incredibly states, "[B]ecause of various issues with ASW's performance under the License Agreement, Art Akiane decided not to renew the license." (Br., AA Ex. 3). No evidence of this exists or has been offered. On the contrary, when AA terminated the parties' agreements, it did so with a glowing 8 page letter, replete with phrases like, "The relationship between you and our family has been meaningful, fruitful and positive," and "The decade-long relationship between Art Akiane LLC, Akiane Art Gallery LLC and Art-SoulWorks continued to be mutually beneficial and progressive." (CC. Decl. ¶32-33, and Term. Ltr. as Ex.4). In fact, AA blamed the termination on the fact that Akiane wanted to go in another direction. (*Id.*, Ex. 4 at p. 5).

*ASW's and Corneliuson's Actions Following the Termination:* ASW attempted in good faith to work with AA to extend the date of liquidation listed in the Termination Letter but ultimately was forced to sell its licensed merchandise at fire-sale prices.[2] (CC Decl., ¶37-39).In doing so, ASW lost hundreds of thousands of dollars that it would have obtained had it not been forced to sell in this manner. (*Id.*) ASW sold some of this inventory sold to Defendant Carpentree. (*Id.*). As ASW noted in its various pleadings, it has documented the royalties owed to ASW for these sales for offset. (*Id.*)

---

[2] After the Termination Letter mandated that ASW stop selling all Akiane merchandise immediately, AA agreed that ASW could have until July 11, 2019 to sell off its licensed merchandise. (CC Decl. at ¶37, Ex. 22). No restrictions regarding to whom ASW could sell existed. (Id.) AA rescinded the extension on 4/13/19 (*Id.*, Ex. 10). Thus, April 13 is the effective termination date in question. As ASW noted in its various pleadings, it has documented the royalties owed to ASW for these sales for offset. (*Id.*)

In addition to liquidating its licensed inventory, ASW has taken a number of steps to ensure consumers are not confused about its relationship to AA. First, it made extensive changes to its website and social media outlets. (*Id*. at ¶44). In addition to hiding hundreds of pages on its website, with the Kramarik's blessing, ASW changed the reference from "official source…" to "trusted source of Prince of Peace Gifts and Art," not as AA claims, "Trusted Source of Akiane art". (*Id*. at ¶45). ASW states in the "About" section of its website:

> We were pleased to be the exclusive global licensors and distributors of "Prince of Peace" and all art by Akiane Kramarik from 2006 through March 1, 2019. Considered one of the top 20 living artists, Akiane painted her first masterpiece "Prince of Peace," her portrait of Jesus, at age 8. Akiane, now 25 has informed us that she has chosen to be completely independent. We wish her well and hope that her visions of God, Jesus, and heaven continue to bless her and her artwork.

https://art-soulworks.com/pages/about-us. (*Id*. at ¶46). ASW has also stated, "We are sad to say that we no longer manufacture Gifts and Art by Akiane. You may want to check with www.Akiane.com or try Google – there may be some of our former customers who still have them available" in response to inquiries. (See Ex. 5, CC Decl. ¶47) It has even referred buyers to AA, which resulted in lucrative sales but commissions have not been paid. [Am. Counterclaim, Dkt. 47, Count II]. (*Id*. ¶37, Ex. 6).

**ASW's Continued Lawful Marketing & Sales -** ASW continues to market for sale the works it purchased thru the Wholesale and private collection agreements. (*Id*. at ¶48-50). It has done so on the ASW website, Facebook page and through other channels. (*Id*.). It has also left the posts on social media lawfully made while the agreements were in place, but these posts are now buried far down in the ASW's feeds because of the passage of time. (*Id*.) ASW owns the domain name "Jesusprinceofpeace.com," which points to the ASW website. (*Id*. at ¶50). Its Facebook page is called "Prince of Peace Friends." ASW has every right to these names, as Akiane did not coin "Prince of Peace" simply because she so named a painting – the phrase is prominently contained

in the Bible and universally used to refer to Jesus. Thomas Kinkade and Greg Olsen are two examples of other artists using the same name for their paintings.

ASW has the right to market for sale the works it owns. Hundreds of people and entities selling Akiane work do the same on sites or on their own websites. (*Id.*, ¶51, Ex. 7). AA blames ASW for allegedly permitting counterfeiters to make illicit goods sold on Alibaba and other websites (Br. at 1 and AA Ex. 3 ¶ 26-28), yet Akiane and her family's own websites and social media sites omit the same copyright and trademark information suddenly complained of in this suit. Some examples of Akiane's displays without symbols include:

www.facebook.com/akianeart/; www.etsy.com/shop/Akiane?ref=simple-shop-header-name&listing_id=623595973; pikdo.net/u/akianeart/1259666777; www.foreli.org/home/

  (Akiane's mother/Original Art Acquisition Director of Akiane Gallery – banner lacks copyright/trademark).

Furthermore, the use of Akiane's art is ubiquitous. There are examples from t-shirts, lego mosaics (flickr.com/photos/125281213@N08/33069415554) and even trucks replete with Akiane work. There is no evidence that ASW is responsible for all improper uses of Akiane's art.

AA also falsely claims that ASW's "illicit" use of the image above is causing counterfeiters to sell it as framed art on websites like Alibaba. (Br. at 8-9). This is a remarkable assertion since this image is from the ***joint*** AA/ASW 2016 calendar that AA approved and the Akiane Gallery sold.

(CC Decl., ¶52). The allegedly "illicit" image AA uses in its brief shows it is not framed art, but a sale of the 2016 calendar itself. (Br. 9, Ex. E) Thus, ***anyone*** who bought the calendar could be selling it. There is no basis to suggest it is being "sourced" by ASW.

***The Importance of Understanding the Scope of the Parties' Agreements.*** To put this motion in the proper context, it is necessary to understand the allegations. AA's likelihood of success on the merits depends not only on *when* the alleged wrongful conduct occurred (before or after termination) but also *in what role* ASW was acting (*i.e.,* is the alleged display/sale related to licensed art or art ASW owns thru the Wholesale Agreement/private collection).

Though AA attempts to conflate the parties' relationship into a simple licensor-licensee relationship where the rights of the licensee ceased upon termination, the record establishes otherwise. First, for the works in the License Agreement, there *was* a licensor-licensee relationship where ASW paid royalties and its rights terminated with the agreements. Second, for purchases under the Wholesale Agreement/private collection, the parties had a buyer-seller relationship where ASW obtained rights including those under the First Sale Doctrine that survived the termination of the parties' agreements. This distinction is paramount, yet ignored by AA. For example, AA makes misplaced assertions like, "[B]ecause Defendants are former licensees, their continue [sic] use is presumed as a matter of law to cause confusion." (Br. at 35).

At the hearing on AA's motion for TRO, AA *conceded* these oral agreements, and *admitted* that ASW has the right to sell the works it acquired from them:

THE COURT: So, in other words, with respect to what would be category 2, as the defendants had framed, the wholesale inventory, you do not dispute the defendant's right to continue to sell off whatever wholesale inventory has been purchased from the plaintiff, and to do so in the manner that they are at this point?

MR. GAUM: We don't have a problem with them selling off the authentic inventory purchased from Art Akiane. I haven't studied it fully, but it does look like the way they are doing it now on the web site would be okay.  * * *

8

THE COURT: That does substantially narrow the dispute there. And then on the private collection category, do you understand what it is that the defendants are alleging are part of -- actually, that is Ms. Corneliuson's private collection, and you are not trying to stop the sale of the private collection pieces?

MR. GAUM: That is correct.[3]

(Transcript ("TRO Tr.") attached to CC Decl. as Ex. 8). AA now denies ASW has any rights except those in the License Agreement (attaching an incomplete agreement, no less). *See* Br. at 28:

Additionally, to the extent Defendants allege that their rights were granted via an oral contract, any rights conferred to Defendants ended when the agreement expired and Art Akiane sent notices to Defendant demanding that they stop their conduct, *or* when Art Akiane filed the instant lawsuit against Defendants. In any case, ***even assuming Defendants had any rights, which they did not,*** Defendants have no remaining rights. (emphasis added).

Indeed, neither the Brief nor Mark Kramarik's Declaration mentions any oral agreement whatsoever. (*See* Br. at 7, Ex. 3 at ¶17-20).

*AA Lacked the Legal Authority to Enter Into the Parties' Agreements.* It is ironic that AA rests so much of its case on the License Agreement, since AA lacked legal authority to enter into it or the oral agreements. Akiane Kramarik, who owned ***all*** of the rights given to ASW via those agreements, only transferred her rights 11 days before this lawsuit. ("Assignments", Ex. 9 to CC Decl. ¶53) This is more than 10 years *after* AA entered into the agreements with ASW.[4]

The lack of authority seriously undermines any ability to show a likelihood of success on the merits. Even assuming AA had authority, all of the conduct AA complains of here occurred prior to the termination (even though AA disingenuously describes it in present tense, *see infra*).

---

[3] *McCaskill v. SCI Mgmt. Corp., Inc.*, 298 F.3d 677, 680 (7th Cir. 2002) (holding that "the verbal admission by [defendant's] counsel at oral argument is a binding judicial admission, the same as any other formal concession made during the course of proceedings.").

[4] ASW requested depositions of Mark and Akiane Kramarik related to this Response, in part, to flesh out this issue.

AA cannot show irreparable harm for conduct that is not ongoing. The only displays after the termination are those allowed by law. ASW need not remove prior lawful posts either.

**_Response to the Alleged Conduct:_** [5] Underline First, AA complains that ASW provides a link on its website that allowed viewers to download a copy of a Prince of Peace wallet card. (Br. at 14) This download was available only when the agreements were in force as a discount promotion that directed viewers to the ASW website to make a discounted Akiane purchase. (CC Decl., ¶54). This was allowed under Paragraph D of the License Agreement. AA disingenuously raises the download as if it is ongoing conduct because it found language at the bottom of ASW's website that inadvertently still contained an old reference to this download offer. AA knew (or would have known if it clicked the download link) that the link was a "dead link," meaning, when clicked, viewers got an error message saying no such page exists. (_Id_.)  It was a dead link because the downloads were discontinued upon termination. The language and the dead link have been removed. (_Id_.)

Second, AA contends ASW is creating "derivative works" and "manipulating" the works. (Br. 17, 25-26) This appears to be a complaint that ASW has made displays from (a) montages of Akiane works or (b) used a different background and/or added scripture; and (c) posted videos with ASW branded name on them. AA states, "…Defendants **continue** to post Akiane's Works on their social media…"[6] (_Id_. at 25)(emphasis added), but this is misleading.  All of the montage and

<hr>

[5] AA's Brief is 52 pages plus exhibits. Defendants have only 30 pages for their response, which includes their own request for relief. Accordingly, Defendants cannot respond to every allegation of wrongdoing Plaintiff asserts, and instead focuses on the most salient. Even if not specifically addressed, Defendants deny that any posts made while the agreements were in effect were improper and contend that all displays made since the termination relate only to Wholesale Works and private collection pieces.

[6] To the extent the "continue to post" on social media reference is a very round-about way of saying that ASW has not gone back through the nearly daily social media posts made when the agreements were in effect to delete them, this allegation is true. Which is why ASW seeks a declaration of ASW's obligations following the termination. This is addressed further below.

scripture displays were posted while the agreements were in effect – none have been posted since. (CC Decl. ¶48). In fact, a review of the many examples embedded in AA's 52 page brief shows the posts were dated *prior* to the termination of the agreements. (*E.g.,* the allegedly "manipulated" post example Br. at 26, Ex. T) is from 2018). All of these displays were allowed under the broad "for all promotional purposes" grant (CC Decl., Ex.1, ¶ D) as they were made to drive traffic to the website and included the ASW website link.

That AA has the audacity to raise issues about these displays, which were often made daily on the ASW Facebook page, is yet another example of its bad faith. There are many examples of AA approving, endorsing and even selling the same montaged/scriptured images (i.e., the Akiane calendars that they jointly created and which *both parties* sold.) See for example, the many calendars with montages or scripture that AA approved and sold itself. (CC Decl. ¶56).

**The pages of the 2015 Akiane calendar (all montages):**



11

Akiane's websitefrom April 6, 2016 showing her display and sale of the 2015 calendar with the images Plaintiff complains about here.



**The 2017 and 2019 Calendars (with Scripture and Montages)**

 

Mark Kramarik, manager of AA, was well aware of the use of these montages and scripture. (See CC. Decl, ¶55, Exs 11 and 12). None of the montages or scripture displays have been made since the termination so it is not "ongoing" conduct. (*Id*. ¶48).

12

Similarly, the assertion (that AA has repeated despite express contrary evidence) that ASW posted the "Painting the Impossible" video which it claims *ASW* branded or edited is patently false, as ASW has stated in every pleading to date. Jeanlu Kramarik routinely sent branded videos with ASW's information to ASW to post, as the email in Ex. 13 establishes (attaching link to "Art&Soulworks Labeled Video"). (CC Decl. ¶29-30). Corneliuson lacks the knowledge to brand a video, let alone edit it, and simply posted the videos which AA now complains about as directed by Jeanlu. (*Id*., ¶30).

The current displays of art from the Wholesale and private collection agreements have not included any montages or posts with scripture and every display since the termination has been lawful under the Right of First Sale. As described in the Argument section below, this is true even if ASW places a frame around the piece. (*See* Br. fn 1, 3). Further, the fact that AA considers ASW a competitor because both parties are listing the same pieces of art on websites and social media is an issue of its own making. If AA had truly wanted "exclusive control" over its works, it should has asked Akiane Kramarik, who held the licensing rights at the time, to contract with ASW to buy back its substantial inventory upon the sudden termination, including the batch AA happily sold to ASW the day before it terminated.

The same holds true for the "unfairness" AA claims as a result of its search engine results. (Br. at 46). That ASW's sites come up in search results is not a product of infringement by ASW, but a product of the more than 10 years promoting Akiane's work. Through sheer determination and effort, ASW was able to amass approximately 750,000 Facebook followers on ASW's Facebook page. (CC Decl. ¶35). The displays helped establish ASW's credibility as a business that can effectively market religious artists and generate sales. That the search engine algorithms place

13

ASW's website at the top of the social media channels is not an "infringement," it is the reality of search engines based on ASW's extensive promotion of AA over the years.

**AA's Hands Are Unclean.** As noted in the TRO pleadings, AA's unclean hands here are so soiled that even if it could satisfy the elements for a preliminary injunction, relief should be denied nonetheless. Every allegation of infringement, right of publicity violation or breach of contract is a fiction that has been created by AA in hindsight and as a result of apparent vengeance towards Corneliuson who refused to quietly accept being stuck with such substantial inventory and damage to her reputation. Most tellingly, in its hundreds of pages of exhibits, AA has not included **one** complaint made to ASW during the relationship about issues it raises now.

**ASW's Need for Relief.** Despite ASW's repeated efforts to resolve this case, AA instead continues to inflict more pain on ASW and Corneliuson by labeling her a "counterfeiter" and adding Carpentree (the buyer of much of the inventory ASW was forced to liquidate), who has, in turn, cross-claimed against ASW. AA also has sent "take down" notices to other customers of ASW, which has prompted those parties to remove works ASW sold and inform ASW they may seek damages. This hinders her ability to sell works she is entitled to sell. ASW learned for the first time by AA's Motion (Br., fn 19) that ASW pages and posts have been removed without permission as AA has sent takedown notices to social media platforms, resulting, i.e., in the removal of "Defendants' infringing YouTube page." *Id.*, CC. Decl., ¶ 41-42. Despite knowing these issues are the subject of this lawsuit and AA's motion, and ASW's lawyers' contact information, no notice was provided by AA or the platforms. Thus, ASW had no chance to file counter notices. It is unknown how many items have been removed by AA's conduct. AA has also issued subpoenas to other ASW customers with a letter stating, AA is in litigation with ASW

and Corneliuson "to recover damages due to among other things, Defendants' unauthorized use, distribution, display, and production of Art Akiane's copyrighted artwork." (Ex. 2).

AA's conduct is a concerted effort to destroy ASW and Corneliuson and it has had the desired chilling effect on ASW's business and reputation. (CC Decl. ¶42). Corneliuson and ASW are entitled to and seek an expedited determination of their rights.

## ARGUMENT

### I. Art Akiane Has Not Shown It Is Entitled to a Preliminary Injunction

AA asks this Court for extraordinary relief for the second time, and for the second time, it should be denied. The Seventh Circuit uses a two-step analysis to assess whether preliminary injunctive relief is warranted. *Luxottica Grp. S.p.A. v. Light in the Box Ltd*., No. 16-CV-05314, 2016 WL 6092636, (N.D. Ill. Oct. 19, 2016). A party seeking a preliminary injunction must establish that (1) it will suffer irreparable harm without the injunction; (2) there is no adequate remedy at law; and (3) it has a reasonable likelihood of success on the merits. *Turnell v. CentiMark Corp*., 796 F.3d 656, 661-62 (7th Cir. 2015). If it cannot clearly establish each of these threshold requirements, the injunction must be denied. *Id*. at 662. If the threshold showing is made, the court must then balance the equities of the parties. *Id*.

AA argues it need only demonstrate a "better than negligible" likelihood of success on the merits. (Br. at 16). Courts in this circuit have found that the "likelihood standard requires *more than a mere possibility of relief and *more* than a better than negligible showing." *Truth Found. Min. v. Vill. of Romeoville*, 2016 WL 757982, at *8 (N.D. Ill. Feb. 26, 2016) (quoting *Nken v. Holder*, 556 U.S. 418 (2009)); see also, *Students v. United States Dep't of Educ.*, 2016 WL 6134121, at *9 (N.D. Ill. Oct. 18, 2016). Indeed, the Seventh Circuit has held, "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the

15

movant, **by a clear showing**, carries the burden of persuasion." *Goodman v. Ill. Dep't of Fin.*, 430 F.3d 432, 437 (7th Cir. 2005)(emphasis added). No such showing has been made here.

### A.      Plaintiff Has Not Established a Likelihood of Success on the Merits

### 1.      Art Akiane is Unlikely to Succeed on Its Copyright Infringement Claim

There are a number of problems with AA's copyright infringement allegations.  First, AA conflates the allegedly infringing conduct without specifying when it occurred and whether the agreements were in effect.[7]  Second, as it did in its TRO, AA disingenuously asserts examples of alleged wrongdoing couched in the present tense. For example: "Defendants … make and display unauthorized videos..." (Br. At 1) and "Defendants copy and post Akiane's Works on their own website and social media accounts without authorization or license. (See Exhibit R)." (Br., 17, 18). In reality, the displays complained of (including those in Ex. R) were made only while the agreements were in effect.  ASW liquidated at a large financial loss all of the items that it had produced under the License Agreement. (CC Decl. at ¶ 37). There has been no manufacturing or printing since the termination. (*Id*). Corneliuson has not posted anything to the website or on social media since the termination except for work she has the right to display and sell. By making claims in the present tense, AA misleadingly contends the posting is ongoing. This is simply untrue.

Third, AA also falsely claims that all the allegations of wrongdoing were done "without authorization or license." (Br. at 18). This too is patently false, as the License Agreement gave ASW broad rights to use Akiane's art "for all promotional purposes." (CC Decl, Ex. 1 ¶ D). This alone gave ASW the right to make **every** display at issue, including montages, posts with scripture, the free promotional download, while the agreements were in effect.  Any display on ASW's website and social media sites of the Wholesale art ASW was stuck with because of AA's manner

---

[7] Failure to assert the time period has the effect of improperly sweeping up alleged conduct that, even if wrongful, would be barred by the 3 year statute of limitations for copyright claims. 17 U.S.C. §507(b).

of termination is allowed, as discussed below, under the "First Sale Doctrine," fair use and other sections of the Copyright Act. Art Akiane has already been compensated for those pieces at issue.[8]

Fourth, the most fundamental issue with the motion overall and the infringement claim specifically, is that AA disingenuously mischaracterizes the relationship between the parties as solely licensor-licensee. AA made a judicial admission by acknowledging the oral agreements at the TRO hearing and that ASW has rights based on its status as buyer for more than 10 years. *McCaskill*, 298 F.3d at 680.

While it is true that the Copyright Act, 17 U.S. C. §101, grants copyright owners certain exclusive rights, these rights are not absolute. Multiple portions of the Copyright Act including the First Sale Doctrine, Section 113(c) and fair use protect ASW's current displays for sale. The First Sale Doctrine, 17 U.S.C. § 109, allows an individual who legally acquires a lawfully-made copy of a copyrighted work to sell or otherwise transfer that particular copy. *Lee v. Deck the Walls, Inc.*, 925 F. Supp. 576, 578 (N.D. Ill. 1996). The First Sale Doctrine provides that once the copyright owner has transferred ownership of the work, the acquirer "is entitled to dispose of it by sale, rental, or any other means." *Id.* at 583, citing *Parfums Givenchy v. C & C Beauty Sales*, 832 F. Supp. 1378, 1385 (C.D. Cal. 1993) (citing H.R. Rep. No. 1476, 94th Cong., 2d Sess. 79 (1976)).

Although the First Sale Doctrine does not entitle the owner to publicly display copyrighted images "to the world via the Internet," *Bryant v. Gordon*, 483 F. Supp. 2d 605, 613 (N.D. Ill. 2007), it does entitle the owner to "sell or otherwise dispose of" the copy. 17 U.S.C. § 109(a).[9] AA actually cites *Bryant* for the limited view that ASW cannot publicly display Akiane's work

---

[8] Ex. H claiming to be ASW's Pinterest page is not. It may be images that others pinned to ASW's page, but it is not ASW's page. In fact, the ASW page had few posts and has been removed.

[9] *Video Pipeline, Inc. v. Buena Vista Home Entert., Inc.*, 192 F. Supp. 2d 321, 333 (D.N.J. 2002), cited by Plaintiff, is inapposite because there, the Court held that where the party is a licensee, the First Sale doctrine does not apply. ASW is not a licensee with respect to the art it purchased.

via the Internet. (Br. at 32). But *Bryant* actually supports ASW's position regarding its right to display. In *Bryant*, defendant's website depicted, among other things, t-shirts, calendars and notecards with plaintiff's copyrighted photo, which defendant had purchased in a bankruptcy asset sale. *Id.* at 613. The *Bryant* court found that while the First Sale Doctrine didn't allow internet display, "The rights of a copyright owner like [plaintiff] do not include any right to prevent the making, distribution, or display of pictures or photographs of useful articles in connection with advertisements related to the distribution or display of such articles." *Id.* (citing 17 U.S.C. § 113(c)). A "useful article" is one that has an intrinsic utilitarian function, like notebooks, t-shirts, calendars. *Id.* Notably, the court held that under § 113, defendant was entitled to display the items in order to advertise them for sale, "including over the internet." *Id.* Here, the pieces of art ASW is displaying are useful articles, and are solely being displayed to sell the works. Thus, under the First Sale Doctrine, coupled with 17 U.S.C. §113, the displays are allowed.

Furthermore, online display of lawfully acquired prints to promote their sale has been upheld as fair use. *Id.* at § 107. *Boehm v. Svehla*, No. 15-cv-379-jhp, 2017 WL 4326308 at *17 (Sept. 27, 2017 W.D. Wis.) (Noting that the fair use doctrine protects online displays for sale). Posting thumbnail images of copyrighted material has also been widely found to be protected by fair use. *See, e.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1164-1168 (9th Cir. 2007); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-21 (9th Cir. 2003); *see also Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F.Supp. 3d 898 (E.D. Mo. 2015) (finding fair use where defendant used unauthorized copies of photographs in ad mockups).

In a case similar to this one, a court found that posting images of copyrighted magazine photos on eBay for purposes of selling the physical magazines was fair use, even though the posted photographs were much larger than thumbnail-size. *See Rosen v. eBay, Inc.*, No. CV-13-6801,

18

2015 WL 1600081, *14-20 (C.D. Cal. Jan. 16, 2015). Posting of images for the purpose of allowing the public to assess a product for sale was deemed highly transformative, as there is "an important public benefit in allowing a thriving second-hand market for copyrighted material, and especially visual copyrighted material." *Id*. at *17. While the seller posted entire photographs, the court found this necessary for a buyer to assess the purchase. *Id.* at *19. The Rosen court noted, "[a]n online marketplace for copyrighted visual works being sold legitimately under the first sale doctrine would struggle immensely were the seller or broker not able to display the image itself." *Id. Stern v. Lavender*, 319 F. Supp. 3d 650, 681 (S.D.N.Y. 2018) (finding fair use to display an image of a copyrighted work incident to an offer of sale on a commercial website).

AA also claims that the thumbnail or smaller display images do not adequately display Akiane's copyright notice or trademark, yet this is not actionable either. All of the smaller displays, when clicked on, go to the larger display of the work where the copyright and trademark notices are visible.[10] "The DMCA expressly states its operation is not intended to affect fair use rights." *Kennedy*, 143 F.Supp. 3d at 914. Thus, where ASW is permitted to use images under the fair use doctrine, this is not in violation of § 1202(b)(1) *Id*. (finding no violation where defendant copied, cropped, and photoshopped photographs, including removing CMI, without authorization).

Furthermore, it is entirely disingenuous, and arguably frivolous, that Mark Kramarik's Declaration claims "upon information and belief, Defendants have been copying, displaying, distributing and selling AA's other works, despite *never having been granted licensing rights to do so under the Agreement.*" (Br., Ex. 3 at 23). The amended Schedule A alone gave ASW the right to promote and sell "All images as painted, drawn, sketched or otherwise created" by Akiane from age of 4 on. (Ex. 1, Amended Schedule A). This declaration is alarming since Mark Kramarik

---

[10] Of course the displays that Plaintiff have on their own website and social media pages similarly display the art in this manner, without visible trademark or copyright symbols. See e.g., Ex. 15.

provided the art for ASW to resell and often shipped it to ASW's customers, and readily accepted the wholesale payments from ASW over the past 10 years. (Ex. 3).

Similarly, the contention that "Defendants **never** had the right to display and distribute Akiane's Works on its social media" (Br. 26-27) and that ASW improperly "manipulated" the works by adding text or modifying the images (*Id.*, 25-26) is belied by Paragraph D to the License Agreement and multiple emails showing AA was well aware of ASW's social media pages, and endorsed and assisted with them. (CC Decl. ¶43 Exs.12 and 14). Does AA really ask this Court to believe that it **never** looked at ASW's posts and realized Akiane's works were being so used? In addition to Exs. 12 and 14, the easiest way to establish the fallacy of this allegation is by looking at the 2015, 2017 and 2019 Akiane calendars that were created by ASW with AA and Akiane, and sold by all on their own sites, *supra*. All of these calendars contained the very same montages and scriptured displays AA claims are infringing.[11]

AA and Mark Kramarik also make unsupported accusations that because of the manner in which ASW displays Akiane's art, "Defendants are enabling and providing source material to the numerous other infringers of Akiane's Works found online." (Br. at 21 - 22). These allegations do not establish ongoing copyright infringement, or, if they did, irreparable harm.  First, ASW does not post the montage or scriptured displays anymore. Second, the allegedly "illicit" display on page 22 of AA's brief was an allowed display that AA approved for the 2016 Akiane calendar! (CC Decl. ¶52). Third, Akiane's own website and social media posts display the art in the same manner, allowing the same copying and pasting being complained of. *Id*. ¶57, Ex. 15.[12]

---

[11]  The Court previously admonished the parties that attorneys' fees could be awarded if the parties are factually disingenuous. See Ex. 8, TRO Tr. at 22-23. These allegations are exactly the conduct that would support an award of fees to ASW.

[12] Art Akiane demands that ASW go back and scrape the internet clean of all images relating to Akiane that ASW posted online when the license agreement was in effect. Under the Copyright Act, "[a] derivative work prepared under authority of the grant before its termination may continue to be utilized under the

## 2. Art Akiane is Unlikely to Succeed on Its Trademark Infringement Claim

AA asserts that ASW misrepresents the "origin" of the Akiane art it sells in violation of the Lanham Act. Br. at 33-34. If AA is claiming a "misleading representation" by ASW that it is affiliated with Akiane or her business, there is again no likelihood of success on the merits in this regard. First, trademark law also has a "first sale" doctrine. "Once a trademark owner sells his product, the buyer may resell the product under the original mark without incurring any trademark liability." *Enesco Corp. v. K's Merch. Mart*, No. 99 C 1070, 2000 WL 1800640, at*12 (N.D. Ill. Aug. 29, 2000) (citation omitted). This resale is neither trademark infringement nor unfair competition. *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995).

Just because ASW is selling some of the same art AA sells does not mean that ASW is deceptively trading on Akiane's goodwill to do so. If that were the case, all third-parties (and there are many) selling Akiane art on Ebay, Etsy, Amazon and elsewhere would be similarly liable for "false designation of origin." There is no evidence that ASW is acting deceptively or in a manner intended to mislead the public, which is what is at the heart of a §1125 Lanham Act claim.

ASW's website and social media posts make it abundantly clear that Akiane is the artist. Also, that ASW is the "Official" source was removed upon termination from ASW's website and

---

terms of the grant after its termination . . . ." 17 U.S.C. § 203(b)(1). This is to "preserve the right of the owner of a derivative work to exploit it, notwithstanding the reversion" of rights following termination. *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 173 (1985). Thus, "[t]he critical point in determining whether the right to continue utilizing a derivative work survives the termination of a transfer of copyright is whether it was 'prepared' before the termination." *Mills*, 469 U.S. at 173. "Pretermination derivative works—those prepared under the authority of the terminated grant—*may continue to be utilized under the terms of the terminated agreement*." *Id.* (emphasis added). Further, modifications to derivative works are permitted post-termination, so long as any additional material is not based upon the underlying work. *See Architettura, Inc. v. DBSI Cumberland*, 652 F.Supp. 2d 775, 784-85 (N.D. Tex. 2009) (citing 3-11 Nimmer on Copyright § 11.02 n.65). The images Art Akiane alleges constitute infringing posts online and on social media are derivative works—they contain montages of Akiane's artwork and images with material such as stylized scripture added to it. The License Agreement gave ASW the "worldwide & exclusive" right to use all Art Akiane images "for all promotional purposes." ASW made those posts before Art Akiane's abrupt termination. While Art Akiane contends those posts are infringing *now*—since the license was terminated— that is directly contradicted by § 203(b) and *Mills*.

Twitter page (which AA also complains about even though ASW has 4 total followers and has only tweeted 3 times since it joined in 2011). (*Id*., Ex. 19). To the extent that there is an errant example of this phrase because it was inadvertently not removed, this does not support an injunction. ASW has removed any such instances as soon it has been brought to its attention. If ASW were trying to "trade" on an affiliation with AA, it would not have put up the language on its website saying the affiliation is over, and it would not so desperately be trying to rid itself of all of its remaining inventory. AA also complains that ASW uses the term "Trusted Source". This was an agreed term in lieu of "Official Source" after termination. (CC Decl. ¶45). Even if AA has changed its mind, it cannot restrict this use. ASW is a "trusted source" to its customers – a phrase routinely used in slogans (i.e., CNN claims to be the "trusted source" for news), and this is not confusing, as all sales are done on the ASW website, which prominently says the license agreement is over.

AA also complains that in the past, ASW stated on certain marketing materials, including magnets, that "Art by Akiane" is a trademark of Art & SoulWork. (Br. 1, 13, Ex. N). Notably, AA's Amended Complaint, Dkt. 38 at ¶ 88 claims, "Upon information and belief *and without AA's authorization*, Corneliuson and ASW also created "inspirational magnets" using the Works.") (emphasis added). <u>First</u>, ASW coined the phrase "Art by Akiane," and used it as a slogan with AA's approval to show it was the exclusive licensee. (CC Decl. ¶56, Ex. 16). The example AA cites (Br. at 13) does not say when that magnet was sold (it is not now). <u>Second,</u> contrary to the Amended Complaint, Mark Kramarik and AA saw, approved, and even bought and resold the inspirational magnets, ***including the backing card*** they complain about.. (*Id*.) They were sent complete retail samples of the magnets (all with scripture, with the backing card at issue) (Id., Ex. 17) and they approved them and even purchased them *(Id*., Ex. 18) to resell themselves! (*Id*., Ex.

22

21). <u>Third</u>, ASW stopped selling magnets and using the phrase in question upon termination/wind down of the agreements so there is no continued use. *Id.*

Even if there was a "false designation of origin," which there is not, there is no likelihood of confusion that ASW is affiliated with AA in light of the language on its website, its response to inquiries, and the cessation of the complained of use. Finally, the affirmative defenses of laches and waiver/acquiescence will prevail.

### 3. Art Akiane is Unlikely to Succeed on Its Right of Publicity Claim

AA similarly cannot show a likelihood of success on the merits for the right of publicity claim for two reasons. <u>First</u>, to the extent that AA is claiming that the display of the Akiane artwork violates Akiane's right of publicity, this fails because the cause of action is preempted by the copyright claims. "To 'avoid preemption, [the] law must regulate conduct that is quantitatively distinguishable from that governed by federal copyright law – i.e., conduct other than reproduction, adaption, publication, performance and display.'" *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803 at & 8 (Feb. 8, 2012 N.D. Ill.), citing *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005).

If the claim is based on prior displays of Akiane, this too fails, as (a) ASW has not created any posts or displays using photos of Akiane or her likeliness since the agreements were terminated, thus eliminating any continuing harm of purposes of a preliminary injunction; and (b) any posts made in the past that include images of Akiane, including the video in question, were sanctioned by and/or provided by AA with instructions to post them. (CC Decl. at 29-30), Ex. 13.[13]

### 4. Affirmative Defenses Decrease AA's Likelihood of Success on the Merits

#### a. Unclean Hands

---

[13] Even Plaintiff's website utilizes the "images" of people in connection with a description of Akiane and her work. For example, the website prominently displays a picture of Oprah Winfrey. https://akiane.com/

AA's motion should also be denied because it seeks an equitable remedy despite having woefully unclean hands. The unclean hands doctrine "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . . . ." *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 329-330 (1994) (internal quotations omitted); *Zahl v. Krupa*, 850 N.E.2d 304, 309-10 (Ill. App. Ct. 2006) (unclean hands doctrine bars equitable remedies). The parties are here not because ASW engaged in the asserted litany of unlawful conduct during the parties' relationship, but because Akiane required AA to summarily terminate the agreement with ASW. (See Term. Ltr, Ex.4 at 6). This threat was quite tangible because, as the Assignment Agreements at Ex.9 show, at that time, Akiane held *all* rights, title and interest to her works and the rights associated with them.[14] Rather than honoring the parties' more than 10 year relationship or the practice of renewing them when they expired, AA yanked the rug with no notice. Not only did AA ruin ASW's reputation by forcing it to cancel orders in progress for Easter, but to ensure that ASW continues to suffer for resisting the manner of termination, AA has filed untold take-down notices, brought in customers as defendants knowing they would look to ASW for recourse, and continues to sully ASW's name.

AA violated the implied covenant of good faith and fair dealing. Dkt. 47. Even if it did not, by terminating the agreements without notice a day after a substantial order was placed, disavowing any Wholesale or oral agreements despite its prior judicial admission, claiming displays were unauthorized though it expressly approved them, filing take-down notices and bringing in third-parties for the sole purposes of increasing the burden on ASW, AA is not entitled to avail itself of the equity of the Court.

---

[14] Likelihood of success on *any* aspect is dubious given AA's lack of authority to enter into the agreements. All of the actions taken by AA in terminating as it did, without authority, but causing millions in damages and the irreparable damage to Defendants' reputation was all done in bad faith, precluding any equity.

### b.   Implied or Express Waiver

The displays of Akiane's works were open and notorious and have been occurring with full knowledge by AA since 2011. Not only did AA *never* complain, it often displayed the same works in the same manner, without copyright or trademark info. (Ex. 15.) This constitutes unclean hands from an equitable standpoint, and waiver as well.  *See e.g., Delta Consulting Group, Inc. v. R. Randle Constr., Inc.,* 554 F.3d 1133, 1140 (7th Cir. 2009) (citing *Ryder v. Bank of Hickory Hills,* 146 Ill. 2d 98, 585 N.E.2d 46, 49 (Ill. 1991) ("Waiver may be made by an express agreement or it may be implied from the conduct, acts or words of the party who is alleged to have waived a right. An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it.) *Id.; see also PPM Finance, Inc., v. Norandal USA, Inc.,* 392 F.3d 889, 895 (7th Cir. 2004) (waiver implied when a party's conduct is inconsistent with an intention to assert that right).

### c.   Statute of Limitations

As noted above, AA's motion is purposely vague on the specific dates and items for which it is alleging infringements. Under the Copyright Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671, 134 S. Ct. 1962, 1969, 188 L. Ed. 2d 979 (2014). It is undisputed that the parties' business dealings go well beyond this three-year period.  As such, AA cannot succeed on the merits of any alleged infringement prior to this point, and the Court is likely unable to discern what conduct in AA's 52 page brief allegedly occurred within the past three years.

### 5.   Art Akiane Cannot Demonstrate a Likelihood of Irreparable Harm

A party seeking a preliminary injunction must establish that it is likely to suffer irreparable injury in the absence of the requested relief. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). The threat of irreparable injury must be "real," "substantial," and "immediate," not speculative or conjectural. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). Notably, a claim for injunctive relief requires ongoing or impending harm. *Swanigan v. City of Chicago*, 881 F.3d 577, 583 n.2 (7th Cir. 2018).

### a. AA's Alleged Irreparable Harm from Copyright Infringements Is Not Supported by Evidence and Does Not Exist

AA's allegations underscore the lack of irreparable injury here. AA asserts it has the lost its ability to control its copyrighted material and Defendants have "usurped" likeness rights, marketing, and search engine strategies, but it has not put forth any evidence to substantiate these allegations. Instead, it offers nothing more than generalized and speculative assertions of injury, which fall far short of the necessary showing to warrant preliminary relief. *See McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F. Supp. 2d 740, 749 (N.D. Ill. 2010) (noting a district court should be careful about issuing an injunction solely based on conclusory allegations and affidavits that lack evidence of any actual loss of market share or overall sales); *see also Ditton v. Rusch*, 2014 WL 4435928, at *3 (N.D. Ill. Sept. 9, 2014) ("issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

AA's basis for requesting injunctive relief is pure speculation: "At bottom, injunctive relief is the only adequate remedy to prevent Defendants' continued *threat of infringement* and Defendants *likely contribution* of source/unauthorized material to third- party infringers (Br. at 45). That ASW is the "source" of any alleged counterfeiting is unsupported, and AA displays the art in the same manner (Ex. 15), as do others who own Akiane art.

### b. AA's Alleged Harm from Trademark Infringements Does Not Exist

AA also takes the position that its injuries arising from the alleged trademark infringements are to be presumed because ASW was a former licensee. Br. at 35. Again, this ignores that the ongoing displays are made by ASW in its capacity as buyer, not licensee. In any event, this presumption is called into question in light of *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-94 (2006). While the Seventh Circuit has applied *eBay* in a copyright case, see *Flava Works, Inc. v. Gunter,* 689 F.3d 754, 755 (7th Cir. 2012), it has not addressed whether *eBay* applies to trademark infringement cases under the Lanham Act ("Act"). See *Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, 2015 WL 3633987, at *11 (N.D. Ill. June 10, 2015).

Similar to its alleged harm due to copyright violations, AA speculates on harm for this claim: "Defendants' unauthorized affiliation with Art Akiane is *likely* to threaten the reputation and goodwill that Art Akiane has developed with respect to its goods and Marks." (Br. at 48). It presents no evidence to support that such harm has occurred or is imminent.[15] AA must demonstrate irreparable harm to obtain a preliminary injunction. It has not done so.

### B. Art Akiane Fails to Present Evidence That No Adequate Remedy At Law Exists

Even if a party's conduct was willful and likely to cause confusion, the irreparable harm and inadequate remedy at law elements should not be presumed. *Illinois Tamale Co. v. El-Greg, Inc.*, No. 16 C 5387, 2019 WL 4395139, at *19 (N.D. Ill. Sept. 13, 2019)(citations omitted). At a minimum, where the copyright holder presents no evidence of actual harm and relies solely on the

---

[15] Courts also consider the time it took the moving party to seek injunctive relief. The conduct AA complains of here is not new. It has been ongoing since the termination of the agreements. "[U]nexcused delay on the part of parties seeking extraordinary injunctive relief is grounds for denial of a motion because such delay implies a lack of urgency and irreparable harm." *Ixmation, Inc. v. Switch Bulb Co., Inc.*, 2014 WL 5420273, at *7 (N.D. Ill. Oct. 23, 2014). Plaintiff's allegations that is has just now "discovered" wrongful conduct through its investigation is belied by the fact that all of the allegations at issue are related to displays that were not only open and notorious, but on social media platforms that Plaintiff was viewing itself and for which it was sending ASW materials to post.

exclusive nature of the rights conferred by the Copyright Act, the holder does not establish that it lacks an adequate remedy at law. *TD Bank N.A. v. Hill*, 928 F.3d 259, 283 (3d Cir. 2019) (*see also, Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (availability of adequate monetary damages belies a claim of irreparable injury)).

AA has not presented any evidence of actual harm, merely alleging that "the extent of the harm and *possible* diversion of customers are both irreparable and incalculable.[16]" (Br. at 46). (emphasis added). AA makes no attempt to explain why its harm cannot be calculated nor does it offer evidence like website traffic or sales before and after the alleged infringements to quantify the harm. Expenditure of money is almost never an adequate harm, particularly when the amount of money lost is calculable. *Alwood v. Clark*, No. 05-CV-0580-MJR, 2005 WL 2001317, at *10 (S.D. Ill. Aug. 19, 2005).

## II.     Granting a Preliminary Injunction Would Harm Defendants

"An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. NRDC*, 555 U.S. 7, 32 (2008).  "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the AA's claim on the merits can be while still supporting some preliminary relief." *Hoosier Energy Rural Elec. Corp., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009).

Because AA has not made the threshold showings of irreparable harm and a likelihood of success on the merits, there is no need for the Court to proceed to the balancing phase of the preliminary injunction analysis. *See Planned Parenthood of Ind. v. Comm'r of Ind. State Dep't*

---

[16]  The existence of an adequate remedy at law was another subject ASW sought depositions on.

*Health*, 699 F.3d 962, 972 (7th Cir. 2012). However, even if the Court were to consider the balance of equities, these factors tip sharply in favor of the Defendants.

### A.    The balance of equities favors Defendants

AA Akiane has dealt an effective deathblow to ASW's business. Defendants have already liquidated inventory connected to the License Agreement at a significant loss and own more than a million dollars of inventory. (CC Decl. at 37). Prohibiting them from mitigating losses and being rid of the unwanted Akiane work would weigh more heavily on ASW than AA. The balance of the equities here favors ASW, a small business currently hanging by a thread due to AA's conduct.[17]

### B.    Defendants' Own Narrowly Tailored Cross-Motion for Declaratory Relief

Due to the chilling effects of AA's conduct, the endless expansion of this litigation with every new display, by bringing in third-parties and sending take-down notices to stifle ASW's lawful sales and remove its displays without notice, Defendants seek their own affirmative relief in the form of a declaration that:

> (a)    Defendants can display and sell the works acquired through the Wholesale Agreement and in the private collection (as AA conceded in the TRO hearing); and
>
> (b)    Defendants can continue to use its social media sites and have no obligation to go back through years of posts to delete ones that were lawfully made when posted.

For the reasons stated in detail above, Defendants have a likelihood of success of defeating AA's allegations with respect to their right to sell and display the works they bought under the Wholesale and private collection agreements under the First Sale doctrine, Section 113(c) and fair

---

[17] If AA prevails here, it must post a bond in an amount that the Court considers proper to pay the costs and damages sustained by ASW of found to have been wrongfully restrained. *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 455 (7th Cir. 2010). "Judges [] should take care that the bond is set high enough to cover the losses that their handiwork could cause." *Id.* AA asks for a $10,000 bond, but that amount is far too low and would be exceeded by the price of even a single piece of art owned by ASW. The value of the art ASW holds exceeds $1 million. Accordingly, any bond should be set in that amount.

Use of the Copyright Act. They therefore have a likelihood of success on the Declaratory Judgment count of their counterclaim.

Defendants have suffered irreparable harm as they want to sever any lingering ties to AA. Without direction as to whether ASW can lawfully display and sell these works, Defendants are caught in no-man's land. Every day they fail to display the works, their followers and prospects diminish, and they are left holding on to inventory for a business that has been eviscerated. When a sale is made to a third-party, ASW risks an improper take-down notice, that the third-party will be named as a defendant or its reputation further sullied by the letter being sent with subpoenas to all its customers. (CC Decl. ¶42).

In contrast to AA's speculative harm, the harm to Defendants is real. AA's tactics have stymied Defendants' business, which has taken 12 years to build. (*Id*.) Through takedown notices and subsequent litigation, AA continues to chip away at Defendants' goodwill and business. Though Defendants want to rebuild their business with other Christian artists, in the face of the strong uncertainty about its social media sites and websites, it cannot reasonably do so. For example, compensating for the fair value of art in Defendants' possession would do nothing to restore Defendants' reputation as a seller in this market, nor would it assist in bringing back its social media followers who have chosen to leave while the issue of what Defendants can post keeps it in limbo. In addition, AA's conduct has had a chilling effect on what Defendants can now post and the manner in which they run the business, since there is now the real likelihood that AA will attempt to mischaracterize future activity as additional infringing conduct. As a result, Defendants move for the narrowly tailored relief specified above.

### III.    Conclusion

For the reasons stated above, AA's motion for preliminary injunction should be denied, and ASW's motion for narrow declaratory relief should be granted.

Dated:  December 6, 2019                              Respectfully submitted,

                                                     */s/ Nicole N. Auerbach*                 

                                                     Nicole N. Auerbach
                                                     Salvador Carranza
                                                     ELEVATENEXT LAW
                                                     218 N. Jefferson Street, Suite 300
                                                     Chicago, IL  60661
                                                     (312) 676-5460 - Telephone
                                                     (312) 676-5499 - Facsimile
                                                     nicole.auerbach@elevatenextlaw.com
                                                     Salvador.carranza@elevatenextlaw.com

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2019, I caused the foregoing to be served upon all counsel of record via the Court's ECF system.

*<u>/s/ Nicole Nehama Auerbach</u>*
Nicole Nehama Auerbach
