**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ART AKIANE LLC, | |
| Plaintiff, | |
| v. | Case No. 19-cv-02952 |
| ART & SOULWORKS LLC, CAROL CORNELIUSON, CARPENTREE, LLC, and VIRGINIA HOBSON, | Judge Edmond E. Chang |
| | Mag. Judge Jeffrey Cole |
| Defendants. | |
| ART & SOULWORKS LLC, and CAROLYNE CORNELIUSON, | |
| Defendants-Counter-Plaintiffs, | |
| v. | |
| ART AKIANE LLC, | |
| Plaintiff – Counter-Defendant, | |
| and | |
| AKIANE ART GALLERY, LLC, and AKIANE KRAMARIK, | |
| Counter-Defendants. | |

## ART AKIANE LLC'S REPLY IN SUPPORT OF ITS MOTIONS TO COMPEL

Art Akiane LLC ("Art Akiane" or "Plaintiff") moved to compel discovery from Defendant Art & Soulworks, LLC ("Defendant ASW") and Carolyne Corneliuson ("Defendant Corneliuson") (collectively "ASW") (Dkts. 120; 122; 124; 126). The four separate motions might seem "piecemeal," but Art Akiane had just cause to move in that fashion. Those four filings came with the close of discovery on the horizon, so Art Akiane filed its motions in late-March 2020 to ensure

that there would be enough time for briefing and hearings prior to any depositions before the initial end of fact discovery. As a *maybe* turned to a *no* on an issue, and as ASW terminated good faith negotiations aimed at resolving an issue, Art Akiane moved for judicial intervention. As previously noted, ASW's stark *no*'s contrast with Art Akiane's repeated position that it would revisit and supplement its responses to ASW's requests (Dkt. 157 at 2), which Art Akiane had in fact done, mooting much of the motion to compel filed by ASW.

Since Art Akiane's four March 2020 filings, ASW has reversed several of their previous *no*'s back to *maybe*'s; but their discovery responses remain deficient. As they put it, they have decided to "st[and] firm on certain responses" to produce nothing or nothing further. (Dkt. 158 at 3.) ASW's discovery deficiencies are by no means mere technical failures to turn over the information to which Art Akiane is entitled—rather, these deficiencies strike at the heart of Art Akiane's ability to prosecute its meritorious claims.

### General Factual and Legal Background

Art Akiane brought this case because ASW sold counterfeit versions of Art Akiane's artwork, and willfully exceeded a licensing agreement for their own unlawful financial gain. ASW also digitally manipulated the artwork to erase Akiane Kramarik's ("Akiane") signature on several pieces. ASW even manipulated the artwork to falsely claim *they* owned the copyright to Akiane's work.

ASW's conduct was unlawful under several statutory and common law theories, but Art Akiane will focus here on its Counts I and VI claims for infringement under the Copyright Act, 17 U.S.C. §§ 101, *et seq.* The Act provides Art Akiane with two broad damages calculations to vindicate its rights: Art Akiane can pursue either actual damages and profits, or statutory damages.

As for actual damages and profits, Art Akiane can seek "disgorg[ement of] ***any*** net profits from the infringer." *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 568 (7th Cir. 2003)

(emphasis added); *see also Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 932 (7th Cir. 2003) ("Once the plaintiff proves [its] losses, or the defendant's profits, from the defendant's sale of an infringing work, the burden shifts to the defendant to apportion the profits or losses between the infringing and noninfringing features of the defendant's work."). This standard was set both to make the plaintiff whole and to discourage theft of intellectual property. *McRoberts Software*, 329 F.3d at 568 ("[E]ven if the owner never would have realized the profit made by the infringer[,] by disgorging any net profits from the infringer, lost profit damages eliminate a major incentive to steal the copyright instead of fairly negotiating for its use with the owner"). If an infringer profits $100 from a theft but only has to pay $95 in damages, the infringer comes out ahead and has a continuing incentive to steal. Thus, information leading to a full reckoning of "any net profits" Defendant ASW or Defendant Corneliuson obtained as a result of their infringement is a central component of this measure of Art Akiane's damages.

As for the statutory damages, the Copyright Act sets damages on a "for each violation" basis. 17 U.S.C. § 1203(c) (for circumvented copyright management information, plaintiff entitled to "award of statutory damages for each violation"). *See GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 838 (N.D. Ill. 2019) (noting the statute awards damages ***per violation*** and it "does not only prohibit, as the defendants would have it, the *first* such distribution; it forbids *all* of them") (emphasis in original). *See also Design Basics, LLC v. Drexel Bldg. Supply, Inc.*, No. 13-C-560, 2016 WL 5794746, at *3 (E.D. Wis. Oct. 4, 2016), *on reconsideration in part,* No. 13-C-560, 2017 WL 354258 (E.D. Wis. Jan. 24, 2017) ("[I]f the defendant had sent 1,147 emails, that would result in 1,147 [DMCA] violations even if the emails contained the same copyrighted photo").[1] A damages calculation that includes an "each violation"

---

[1] Unpublished cases have been submitted with this brief as Exhibit J and are presented in the order in which they appear.

or "per violation" basis clearly requires a full reckoning of the number of violations or infringements.

Both measures of damages apply equally to individual Defendant Corneliuson, who is personally liable under copyright law because she willfully and knowingly and personally participated in the infringing activities of her company. *Desmond v. Chi. Boxed Beef Distribs., Inc.*, 921 F. Supp. 2d 872, 885-86 (N.D. Ill. 2013); *Dangler v. Imperial Mach., Co.*, 11 F.2d 945, 947 (7th Cir. 1926); *see also Asher Worldwide Enter. LLC v. Housewaresonly.com Inc.*, No. 12 C 568, 2013 WL 4516415, at *3 (N.D. Ill. Aug. 26, 2013) (collecting cases).

### Defendants' Two General Deficiencies

Art Akiane served interrogatories and requests for production in January 2020. Before discussing each specifically deficient request below, two aspects of ASW's responses bear emphasis. These two legal errors underlie most of ASW's discovery deficiencies.

*First*, ASW repeatedly argues it would be unduly burdensome to present a comprehensive account of "every instance" of their infringing activities or their copyright management information violations, because to do so would be "incredibly overbroad and in no way proportional to the needs of this case." (Dkt. 158 at 3.) ASW's argument here is at odds with the plain language of the Copyright Act. A statutory damages award stemming from "each violation" clearly requires information about "each violation." ASW's response says they have generally admitted to engaging in certain conduct at various times, like modifying Akiane's works, and suggests that this issue is therefore closed. (*See, e.g.*, Dkt 158 at 4 ("[T]o the extent the issue is whether ASW *in fact* modified Akiane's work, it has admitted that it did.").) But that is a misunderstanding of copyright law; since statutory damages are awarded for "each violation—*see, e.g.*, *GC2*, 391 F. Supp. 3d at 838; 17 U.S.C. § 1203(c)—Art Akiane needs to know the number of infringements and violations (ASW's "**First Error**").

4

*Second*, ASW suggests that a Licensing Agreement "and multiple oral agreements" gave them the right to engage in the conduct alleged by Art Akiane. (Dkt. 158 at 3.) To be sure, ASW has posited this notion as a defense; but ASW is acting as if they have already won partial summary judgment on this issue. To the contrary, the question of whether "oral agreements" gave ASW the right to engage in otherwise infringing conduct is, at the very minimum, hotly disputed. Indeed, to date, ASW has provided little to no evidence of these supposed oral agreements. But in any event, the remote and speculative possibility that ASW might succeed on their necessarily fact-sensitive defense cannot serve to block Art Akiane's discovery in the meantime (ASW's "**Second Error**").

### Specific Deficiencies

### A.     Interrogatories to ASW [and Corneliuson]

**No. 1**: Defendant ASW refuses to provide information regarding "all instances" that it modified Art Akiane's artwork, suggesting that a Licensing Agreement combined with unspecified oral agreements permitted this conduct, and that its production of "representative examples" of this conduct suffices. (Dkt. 158 at 4; Dkt. 120-2 at 3, Ex. C at 2-4.) Defendant ASW's position relies on its First and Second Errors noted above; since copyright law affords victims a "per violation" remedy (or for "each violation"), Art Akiane is entitled to discover how many times this unlawful conduct occurred. This information should be compelled.

[The same analysis applies to Interrogatory No. 1 to Defendant Corneliuson. (Dkt. 158 at 9-10; *see also* Dkt. 122-2 at 3; Ex. F at 2-4.) For the same reasons, Defendant Corneliuson should be compelled to provide this information. *See Asher Worldwide*, 2013 WL 4516415, at *3.]

**No. 2**: Defendant ASW refuses to provide information regarding "all instances" that it printed or direct another to print Art Akiane's artwork. (Dkt. 158 at 5; Dkt. 120-2 at 3.) Defendant ASW mentions a small range of documents purportedly showing some entities Defendant ASW directed to print Akiane's works—but Defendant ASW never suggests that this shows all instances

of such conduct. Defendant ASW's position relies on its First and Second Errors noted above; since copyright law affords victims a "per violation" remedy (or for "each violation"), Art Akiane is entitled to discover how many times this unlawful conduct occurred. This information should be compelled.

[The same analysis applies to Interrogatory No. 5 to Defendant Corneliuson. (Dkt. 158 at 10; *see also* Dkt. 122-2 at 6.) For the same reasons, Defendant Corneliuson should be compelled to provide this information. *See Asher Worldwide*, 2013 WL 4516415, at *3.]

**No. 3**: Defendant ASW refuses to provide information regarding "all instances" of disseminating Akiane's art over the internet, suggesting that its production of "examples of the broad type of conduct at issue" suffices. (Dkt. 158 at 5; Dkt. 120-2 at 4; Ex. A at 2-3.) That position relies on ASW's First Error noted above; since copyright law affords victims a "per infringement" remedy (or for "each violation"), Art Akiane is entitled to discover how many times this unlawful conduct occurred. Indeed, Defendant ASW is in the best position to discover and produce this information, considering it controlled and managed Art Akiane's social media accounts and marketing. For example, Defendant ASW has produced at least one document that seems to have been distributed to its customers and subscribers given the embedded hyperlink to Defendant ASW's social media. (ASW016066.) This one-sheet provided a discount code and invited visitors to download a free image from Defendant ASW's website, yet Defendant ASW has not provided any information as to how many persons received this notice, such as a listserv. Similarly, Defendant ASW invited "everyone who visits Art & SoulWorks . . . to download a portrait of Jesus, free of charge." (Dkt. 69 at 2; Ex. I at 2 (highlighting added).) Defendant ASW has not provided any information as to how many downloads occurred or pictures were disseminated. Interestingly enough, neither of these documents were identified in Defendant ASW's response

6

(Dkt. 120-2 at 4) or subsequent supplementations, which firstly referenced only documents that Plaintiff produced (Ex. A at 2-3) and secondly only cited to social media posts (Ex. B at 4-7). Information responsive to this Interrogatory should be compelled.[2]

[The same analysis applies to Interrogatory No. 4 to Defendant Corneliuson. (Dkt. 158 at 10; *see also* Dkt. 122-2 at 5-6; Ex. E at 2-4; Ex. F at 7-10.) For the same reasons, Defendant Corneliuson should be compelled to provide this information. *See Asher Worldwide*, 2013 WL 4516415, at *3.]

**No. 4**: Defendant ASW refuses to provide information regarding its own posting of Akiane's art on the internet. (Dkt. 158 at 5-6; Dkt. 120-2 at 4-5.) Contrary to Defendant ASW's claim, this does not duplicate Interrogatory No. 3. Interrogatory No. 3 focuses on inducing others to download materials, while No. 4 focuses on Defendant ASW's own posting of the art. Defendant ASW position here also relies on its First Error noted above; since copyright law affords victims a "per violation" remedy (or for "each violation"), Art Akiane is entitled to discover how many times this unlawful conduct occurred. For example, in its initial response, Defendant ASW states that "ASW routinely posted or displayed" images on its "Facebook page, on Amazon, . . . possibly 4 times on Twitter, a few times on Pinterest and potentially on other social media or internet sites that ASW cannot currently recall." (Dkt. 120-2 at 5.) Yet in its first supplementary response, Defendant ASW only identifies documents Plaintiff produced (Ex. A at 4-5) and then only supplements again with its Facebook and Twitter pages. (Ex. B at 7-10.) The lack of information

---

[2] ASW also makes a confusing reference to discovery being a "two-way street" and complains that Art Akiane has not provided information of Art Akiane disseminating its own art through the internet. Art Akiane agrees that discovery is a two-way street—which is why Art Akiane has been supplementing its discovery responses to ensure full compliance—but ASW's argument is nevertheless misplaced. A copyright plaintiff is entitled to "per infringement" damages, which is why ASW must provide this information. There is no comparable statutory imposition on Art Akiane, who owns the rights, so ASW's request for this information is not part of any legitimate defense to Art Akiane's copyright claim.

regarding Defendant ASW's posts to Pinterest are particularly troubling given the ease in which that information is shared/saved across Pinterest user accounts. This information should be compelled.

[The same analysis applies to Interrogatory No. 4 to Defendant Corneliuson. (Dkt. 158 at 10; *see also* Dkt. 122-2 at 5-6; Ex. E at 2-4; Ex. F at 7-10.) For the same reasons, Defendant Corneliuson should be compelled to provide this information. *See Asher Worldwide*, 2013 WL 4516415, at *3.]

**No. 5**: Art Akiane legitimately seeks information regarding the purported "multiple oral agreements" that Defendant ASW references throughout its response. (Dkt. 158 at 6.) Defendant ASW only produced two email chains totaling less than a dozen pages, plus a paragraph in a Declaration submitted by Defendant Corneliuson. Clearly, if there are agreements that Defendant ASW contends authorized its otherwise unlawful conduct, those should be compelled.

[The same analysis applies to Interrogatory No. 8 to Defendant Corneliuson. (Dkt. 158 at 11; *see also* Dkt. 122-2 at 8-9.) For the same reasons, Defendant Corneliuson should be compelled to provide this information. *See Asher Worldwide*, 2013 WL 4516415, at *3.]

**No. 6**: Defendant ASW says this duplicates Interrogatory No. 2 above (Dkt. 158 at 6), but this request focuses on the identities of persons Defendant ASW engaged or retained to print Akiane's works. Insofar as Defendant ASW's objection relies on the word "all" in the request, its position here relies on its First Error noted above. (Dkt. 120-2 at 6.) Since copyright law affords victims a "per infringement" remedy (or for "each violation"), Art Akiane is entitled to discover the identities of people assisting all of Defendant ASW's unlawful conduct, since those people may be witnesses in this case. This information should be compelled.

[The same analysis applies to Interrogatory No. 5 to Defendant Corneliuson. (Dkt. 158 at

10; *see also* Dkt. 122-2 at 5.) For the same reasons, Defendant Corneliuson should be compelled to provide this information. *See Asher Worldwide*, 2013 WL 4516415, at *3.]

**No. 7**: Defendant ASW asserts that it agreed to supplement its earlier response but that Art Akiane moved to compel regardless. (Dkt. 158 at 6.) That is false. Art Akiane moved to compel only after Defendant ASW gave a flat "no" response to a request to supplement, which Art Akiane documented in contemporaneously-taken notes. While Plaintiff acknowledges that following its filing of its Motion to Compel (Dkt. 124), Defendant ASW's position seems to have shifted to "reserv[ing] the right to supplement" (Ex. A at 5-7, Ex. B at 10-12), this Court should still compel Defendant ASW to provide a full answer so that Art Akiane can fully investigate Defendant ASW's damages claims. (*Id.*; *see also* Dkt 120-2 at 5-6.)

[The same analysis applies to Interrogatory No. 9 to Defendant Corneliuson. (Dkt. 158 at 11; *see also* Dkt. 122-2 at 9-10; Ex. E at 7-9; Ex. F at 17-18.) For the same reasons, Defendant Corneliuson should be compelled to provide this information. *See Asher Worldwide*, 2013 WL 4516415, at *3.]

**No. 9**: Art Akiane does not believe Defendant ASW's answer to this question is complete. (Dkt. 158 at 7; Dkt. 120-2 at 8; Ex. A at 7-8.) While Defendant ASW lists several companies, Defendant ASW also uses the generic catchall of "others" to purportedly identify additional third parties.[3] However, in order to maintain a claim of tortious interference, "a plaintiff must '[allege] a business expectancy with a *specific* third party as well as an action by the defendant directed towards that third party.'" *Wells Fargo Bank, N.A. v. Worldwide Shrimp Co.*, No. 17 CV 4723, 2019 WL 4189480, at *8 (N.D. Ill. Sept. 34, 2019) (citation omitted) (holding the plaintiff must specifically name or allege any third parties and cannot leave them unidentified). Moreover,

---

[3] ASW only identified the entities in its first set of supplemental responses, which were provided *after* ASW represented it would not supplement its response and Plaintiff filed its Motion to Compel.

Defendant ASW stated in its supplemental response that it had a "contract, interest, or business expectancy" with at least all the named and unnamed third parties but identifies no such documents. (Ex. A at 7-8.) A full answer should be compelled.

No. 10 and 11: Art Akiane sought information regarding Defendant ASW's stated defense of "acquiescence" and "copyright misuse." (Dkt. 158 at 7-8.) With respect to acquiescence, Defendant ASW cited to its own filings in this matter, and responded with the names of Kramarik family members who would have "acquiesced" – but with no description of the conduct that allegedly constituted acquiescence. (Dkt. 120-2 at 8-9.) Indeed, only one of the filings even mentions acquiescence in passing (Dkt. 82 at 23) while two others do not mention it at all (Dkt. 22; Dkt. 47), and the remaining filing only identifies it as an affirmative defense (Dkt. 141 at 63-64). With respect to copyright misuse, Defendant ASW again cited to its own filings in this matter, yet only one of the identified filings name copyright misuse in reference as affirmative defenses (Dkt. 151 at 64) while the other three identified filings do not mention misuse at all (Dkt. 47; Dkt. 22; Dkt. 82). (Dkt. 120-2 at 9-10.)

A full answer should be compelled, or if there is no further evidence supporting these defenses, Defendant ASW should withdraw the defenses. *See In re Dealer Mgmt. Sys. Antitrust Lit.*, MDL No. 2817, 2019 WL 6498081, at *5 (N.D. Ill. Dec. 3, 2019) ("Contention interrogatories are permitted by the Federal Rules of Civil Procedure, if other."); *Auto Meter Prods., Inc. v. Maxima Techs. & Sys., LLC*, No. 05 C 4587, 2006 WL 3253636, at *2 (N.D. Ill. Nov. 6, 2006) ("When one party poses contention interrogatories after considerable discovery, and the opposing party refuses to answer the interrogatories, courts routinely compel the resisting party to answer the interrogatories"). Here, considerable discovery has already taken place, such that the Court

should limit the responses or compel the requested information.[4]

**No. 12**: Art Akiane sought information regarding ASW's stated defense of unclean hands. (Dkt. 158 at 8.) Once again, Defendant ASW cited to its own filings in this matter (Dkt. 120-2 at 10-11), and only provided general statements that lacked specificity. For example, Defendant ASW references "email communications" without specific which, and states "[i]n further response, ASW directs AA to the production ASW made as part of the MIDP process . . . ." (Dkt. 120-2 at 11.) But it does not identify any actual documents from that production and leaves Art Akiane to guess which of those documents Defendant ASW intends to use to supports its defense. *See* FED. R. CIV. P. 33(d)(1) (requiring "specifying the records . . . in sufficient detail"). Defendant ASW's Response brief only generally cites Defendant ASW's response to Plaintiff's Motion for a Preliminary Injunction. A full answer should be compelled, or if there is no further evidence supporting this defense, Defendant ASW should withdraw it. *See Auto Meter Prods.,* 2006 WL 3253636, at *2 ("When one party poses contention interrogatories after considerable discovery, and the opposing party refuses to answer the interrogatories, courts routinely compel the resisting party to answer the interrogatories.").

**No. 14**: Defendant ASW refuses to provide information regarding "all instances" in which it added text to Plaintiff's art, instead asserting that the "representative examples" it produced are sufficient. (Dkt. 158 at 14; Dkt. 120-2 at 16; Ex. B at 13-16.) ASW's position speaks to its First Error noted *supra*. Since copyright law affords victims a "per violation" remedy, Plaintiff is entitled to discover how many times this unlawful conduct occurred. Therefore, this information

---

[4] Plaintiff concedes that fact discovery has not yet closed, but these interrogatories were initially served on January 14, 2020. Defendant ASW has had ample time to collect most, if not all, its documents by the time it responded and certainly by the time it supplemented its response. As stated *supra*, these disputes only matured into Motions to Compel after Defendant ASW flatly refused to supplement their responses; had Defendant ASW indicated a willingness to supplement later *after* additional discovery, Plaintiff would not have moved to compel on this Interrogatory.

should be compelled.

[The same analysis applies to Interrogatory No. 2 to Defendant Corneliuson. (Dkt. 158 at 10; *see also* Dkt. 122-2 at 3-4; Ex. F at 4-7.) For the same reasons, Defendant Corneliuson should be compelled to provide this information. *See Asher Worldwide*, 2013 WL 4516415, at *3.]

**No. 15**: Defendant ASW refuses to provide information regarding "all instances" of removing, cropping, or altering text on Akiane's art, instead stating that it has shown "different ways" that this has periodically happened. (Dkt. 158 at 8-9; Dkt. 120-2 at 3.) Defendant ASW attempts to explain away some of this conduct, blaming any editing on certain websites or social media platforms, but this is not a dispute over passive versus active editing. (Dkt. 158 at 8-9.) That position relies on ASW's First Error noted above; since copyright law affords victims a "per violation" remedy (or for "each violation"), Art Akiane is entitled to discover how many times this unlawful conduct occurred.[5] This information should be compelled.

[The same analysis applies to Interrogatory No. 3 to Defendant Corneliuson. (Dkt. 158 at 10; *see also* Dkt. 122-2 at 4-5.) For the same reasons, Defendant Corneliuson should be compelled to provide this information. *See Asher Worldwide*, 2013 WL 4516415, at *3.]

**B.     RFPs to ASW [and to Corneliuson]**

**No. 34 to ASW**: Art Akiane sought documents relating to payments from Defendant ASW to Defendant Corneliuson. Defendant ASW supplemented its initial response with 11 pages that purportedly show "all payments from ASW to Corneliuson," but this is highly suspect. (Dkt. 158 at 9; Ex. C at 3; Ex. D at 4.) Not only are those documents bereft of any identifying information, but also no profit and loss statements dated prior to 2015 were produced. As such, this information should be compelled.

---

[5] Indeed, from review of the edited pictures identified thus far, it appears that an overwhelming amount were from ASW's "active editing."

[The same analysis applies to Request No. 33 to Defendant Corneliuson. (Dkt. 158 at 11-12; *see also* Dkt. 122-3 at 8; Ex. G at 3-4; Ex. H at 5.) For the same reasons, Defendant Corneliuson should be compelled to provide this information. *See Asher Worldwide*, 2013 WL 4516415, at *3.]

**No. 32 to Corneliuson**: Defendant Corneliuson argues that she should not have to produce her tax returns because they also would have her husband's information on them, and he "does not consent." (Dkt. 158 at 11; *see also* Dkt. 122-3 at 8.) As a threshold matter, the tax returns would be protected by the Confidentiality Order. (Dkt. 85.) But at its core, copyright law gives Plaintiff the right to track down and recover "any net profits" ASW made from their infringement, *McRoberts Software*, 329 F.3d at 568, including the profits going directly to Ms. Corneliuson, *Asher Worldwide*, 2013 WL 4516415, for purposes of disgorgement. *See also Bucklew*, 329 F.3d at 932 ("Once the plaintiff proves [its] losses, or the defendant's profits, from the defendant's sale of an infringing work, the burden shifts to the defendant to apportion the profits or losses between the infringing and noninfringing features of the defendant's work."). Copyright law's disgorgement remedy necessarily gives Plaintiff the right to attempt to trace "any net profits" going to Defendant ASW *or* Defendant Corneliuson, Defendant Corneliuson's spouse's disagreement notwithstanding. Moreover, Defendant Corneliuson's statement that Defendant ASW's tax returns have been produced is disingenuous, as Defendant ASW has not produced taxes for every year since it was in business with Plaintiff. (Dkt. 158 at 11.) Thus, Defendant Corneliuson's flat refusal to comply with Request No. 32 is not proper, and documents responsive to that request should be compelled.

WHEREFORE, Plaintiff respectfully requests the Court

1) grant its motions (Dkts. 120, 122, 124, 126) and enter an order compelling

a. Defendant ASW to provide full and complete responses to Plaintiff's

Interrogatory Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 14, and 15 and Request for Production No. 34; and

b. Defendant Corneliuson to provide full and complete responses to Plaintiff's Interrogatory Nos. 1, 2, 3, 4, 5, 8, and 9 and Request for Production Nos. 32 and 33;

2) hold that ASW have waived all objections to the aforementioned discovery requests;

3) order ASW to reimburse Plaintiff for its reasonable fees under Fed. R. Civ. P. 37(a)(5)(A); and

4) grant any other and further relief the Court deems proper.

Dated: June 26, 2020                                 Respectfully submitted,

ART AKIANE LLC, AKIANE ART
GALLERY, LLC, AND AKIANE
KRAMARIK

By: *s/ Adam Wolek*
    Adam Wolek
    Marcus Harris
    TAFT STETTINIUS & HOLLISTER LLP
    111 E. Wacker Drive, Suite 2800
    Chicago, Illinois 60601
    Phone: (312) 836-4063
    Fax: (312) 966-8598
    awolek@taftlaw.com

    Rachel A. Smoot (*pro hac vice*)
    TAFT STETTINIUS & HOLLISTER LLP
    65 East State Street

Suite 1000
Columbus, Ohio 43215
Phone: (614) 221-2838
Fax: (614) 221-2007
rsmoot@taftlaw.com

Matthew B. Barbara (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114
Phone: (216) 241-2838
Fax: (216) 241-3707
mbarbara@taftlaw.com

*Counsel for Plaintiff and Counter-Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2020, the foregoing was filed with the Clerk of Court via

CM/ECF, which provided notice of same to all parties who have made an appearance in this case.

*/s/ Adam Wolek*