## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ART AKIANE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-02952 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| ART & SOULWORKS LLC, | ) | |
| CAROL CORNELIUSON, | ) | |
| CARPENTREE, LLC., and | ) | |
| VIRGINIA HOBSON, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

This is a dispute about a collection of paintings by artist Akiane Kramarik, who became known as a child prodigy for her portraits of Jesus Christ. More than a decade ago, the Kramarik family (via their licensing entity, Art Akiane) entered into a business arrangement with a company called Art & Soulworks, which sells religious-themed goods to consumers. Under the agreement, Art & Soulworks reproduced Akiane's artwork on products like greeting cards, journals, and bookmarks, and Art Akiane received royalties in exchange. Separately, the parties also entered into an agreement under which Art & Soulworks would purchase Akiane's actual artwork at wholesale prices for resale to consumers. Akiane now alleges that Art & Soulworks misused Akiane's paintings and violated the parties' agreements in various ways.

Specifically, Art Akiane brings claims under the Copyright Act, the Lanham Act, the Digital Millennium Copyright Act, the Illinois Uniform Deceptive Practices

Act, as well as claims of unjust enrichment, unfair competition, breach of contract, and a state-law right of publicity.[1] R. 96, Second Am. Compl.[2] The Defendants are Art & Soulworks, Carol Corneliuson (the owner of Art & Soulworks), Carpentree (an online vendor), and Virginia Hobson (the owner of Carpentree).[3] Art Akiane now seeks a preliminary injunction, R. 65, to enjoin Art & Soulworks and Corneliuson from copying, displaying, distributing, modifying and making derivative works or videos from Akiane's works online; using Akiane's name and likeness to promote their business; and marketing themselves as being affiliated with Art Akiane. For the reasons explained below, the motion for a preliminary injunction is granted in part and denied in part.

## I. Background

## A. The Artwork

Akiane Kramarik began creating art at the age of four. R. 66-1, Pl. Br., Exh. 2, Akiane Kramarik Decl. ¶ 2. When she was six years old, Akiane began painting, and in 2003, at the age of eight, she completed her most famous piece, a portrait of Jesus Christ entitled *Prince of Peace*. The portrait launched a litany of gallery exhibitions,

---

[1] The Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

[2] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

[3] When the preliminary injunction motion was filed, the operative complaint was the First Amended Complaint, R. 38. That complaint only named Art & Soulworks, Corneliuson, and Carpentree as Defendants. Since then, Art Akiane has filed a Second Amended Complaint, R. 96, adding Virginia Hobson, the owner of Carpentree, as a defendant. The Second Amended Complaint is the current operative complaint. But nothing in the Second Amended Complaint materially affects the preliminary injunction analysis.

talk show appearances, media writeups, and even a book deal for Akiane. *Id*. ¶¶ 3-8. Here is *Prince of Peace*:



R. 66-1, Pl. Br., Exh. 1, Simmons Decl., Exh. A. Since then, Akiane has created hundreds of pieces of original artwork, most of which feature Christian themes. Akiane Kramarik Decl. ¶ 2. At least 13 of those works—including all of the works at issue in this litigation—are federally registered copyrighted works. *See* Simmons Decl., Exh. B; R. 66-1, Pl. Br., Exh. 3, Mark Kramarik Decl. ¶ 4.

### B. Licensing and Wholesale Agreements

In 2006, when Akiane was around 11 years old, the Kramarik family entered into an informal business relationship with Carol Corneliusion, the owner of a religious-goods company called Art & Soulworks. R. 83, Corneliuson Decl. ¶¶ 5, 7. The initial agreement was for Art & Soulworks to print Akiane's art onto bookmarks

(and similar products) to be sold at larger retail outlets. *Id.* ¶ 7. Meanwhile, the Kramarik family themselves also marketed and sold Akiane's artwork through Akiane Gallery, their online gallery. Akiane Kramarik Decl. ¶ 5.

This arrangement with Art & Soulworks was formalized in 2008, when the Kramarik family, via their licensing entity Art Akiane, executed a written licensing agreement with the distributor. Corneliuson Decl. ¶ 8; Mark Kramarik Decl. ¶ 17. Under the licensing agreement, Art Akiane gave Art & Soulworks the right to "produce and sell bookmarks, journals, wallet cards, calendars, [and] greeting cards" featuring Akiane's artwork. R. 83-1, Corneliuson Decl., Exh. 1, Licensing Agreement at 1. In exchange, Art & Soulworks would pay a royalty fee to Art Akiane for merchandise sold to retailers and customers. *Id.* Part of the agreement—and this is important in this case—granted Art & Soulworks a license to use digital images of Akiane's paintings. *Id.* The contract made clear that Art Akiane controlled the copyrights to the digital images, but Art & Soulworks was allowed to "reproduce" the images onto its products and also "use" the digital images in "promotional advertisements and materials, and for all promotional purposes in connection with" its website and online business. *Id.* Art & Soulworks agreed "to obtain written/email/faxed art approval from Art Akiane … on each product and each image prior to production." *Id.* at 2.

Around that same time, Art Akiane and Art & Soulworks also entered into an oral agreement allowing the distributor to sell and market Akiane's actual artwork— that is, physical prints and canvases. Corneliuson Decl. ¶¶ 13-14. According to

Corneliuson, Art Akiane requested that Art & Soulworks "essentially mimic the Akiane Gallery website to enhance the exposure and selling opportunities of Akiane's prints and paintings." *Id.* ¶ 14. In response, the distributor "greatly expanded" its website to incorporate Akiane's paintings, prints, and canvasses, working together with Art Akiane on the photos and description of the artwork. *Id.* ¶ 15. Under this so-called "wholesale agreement," Art & Soulworks would purchase Akiane's artwork at wholesale prices and store the pieces in inventory to sell to its own customers. *Id.* ¶ 17. At other times, Art & Soulworks would "drop-ship" artwork by fulfilling orders for pieces not in its own inventory and then later ordering those pieces from the Akiane Gallery to ship to its customers. *Id.* ¶¶ 17, 20. As far as the record shows, this "wholesale agreement" was never written down. Nonetheless, under this arrangement, Art & Soulworks apparently sold more than 50,000 pieces of Akiane's art. *Id.* ¶ 21.

So, to sum up, the licensing agreement allowed Art & Soulworks to manufacture and sell *merchandise* featuring Akiane's art, while the wholesale agreement allowed Art & Soulworks to purchase Akiane's *artwork* directly and resell those prints and paintings to customers. For example, if Art & Soulworks was selling an art calendar, that would have been pursuant to the licensing agreement, and if it was selling a painting, then it would have been pursuant to the wholesale agreement.

But both sets of sales—licensed merchandise and wholesale artwork—were largely accomplished online through Art & Soulworks's website (www.art-

soulworks.com and www.jesusprinceofpeace.com[4]), as well as through various third-party online vendors. Mark Kramarik Decl. ¶¶ 14-15; Corneliuson Decl. ¶¶ 42, 50. For instance, a visitor to the art-soulworks.com online store (even today) will see numerous digital thumbnails of Akiane's artwork, each representing a piece of art for sale under the wholesale agreement:



Simmons Decl., Exh. K. As the above example shows, some of the thumbnails are just unmodified images of the artwork, while other thumbnails include framing and matting as well. Clicking any of the thumbnail images brings up a new screen with a larger version of the image:

---

[4]The jesusprinceofpeace.com domain name simply redirects to art-soulworks.com. *See* Corneliuson Decl. ¶ 50.



Simmons Decl., Exh. L. It is undisputed that these larger versions of the images are not watermarked and do not feature any sort of copyright insignias. Mark Kramarik Decl. ¶ 25; Corneliuson Decl. ¶¶ 55, 57. Nor are they protected by any sort of digital-rights management controls to prevent visitors from simply right-clicking and downloading the images. Mark Kramarik ¶ 24; Corneliuson Decl. ¶ 57. According to Art Akiane, this lack of protection has enabled substantial counterfeiting of Akiane's artwork, as evidenced by the appearance of Akiane-related products on third party online vendors like Alibaba. Pl. Br. at 1; Simmons Decl., Exh. E (*Prince of Peace* wall calendars for sale on Alibaba); Simmons Decl., Exh. M (*Prince of Peace* wall calendars, framed artwork, bookmarks, and pillows for sale on Alibaba and DHgate).

In addition to directly providing artwork and merchandise for sale through its online store, Art & Soulworks also engaged in extensive online marketing of Akiane's artwork in order to promote both the licensed merchandise as well as the wholesale art pieces. Corneliuson Decl. ¶ 19. For instance, Art & Soulworks operated multiple Facebook pages, including "Prince of Peace Friends" (which currently has roughly 750,000 followers) and "Art & SoulWorks." *Id*. ¶¶ 35, 50. Art & Soulworks often used

its Facebook pages to share derivative versions of Akiane's art. Specifically, Art &
Soulworks would superimpose religious scripture and other inspirational text onto
the digital images of Akiane's art, and then post the finished product on social media.
*Id*. ¶ 43. In addition to the superimposed text on the artwork itself, the caption to the
social media post would often contain additional scripture, as well as a link to the art-
soulworks.com online store. For instance, here is an example from the "Prince of
Peace Friends" Facebook page:

 

Simmons Decl., Exh. F.[5] And here is another 2018 example from the same Facebook
page; in this post, not only did Art & Soulworks add scripture to Akiane's artwork,
but Art & Soulworks also superimposed the *Prince of Peace* image onto the new
painting being advertised:

---

[5]The red circles were added by the Plaintiff as part of a filed exhibit in this litigation.



Simmons Decl., Exh. U. *See also* Simmons Decl., Exh. V (Facebook post featuring new painting from Akiane). According to Art & Soulworks, these derivative images were made pursuant to the broad "all promotional purposes" provision of the licensing agreement and were meant to drive traffic to the Art & Soulworks online store. R. 82, Def. Resp. Br. at 11. Art Akiane also submitted similar examples of the art and scripture montages from Art & Soulworks's Instagram, Twitter, and Pinterest pages. *See* Simmons Decl., Exh. H; Simmons Decl., Exh. I; Simmons Decl., Exh. J; Simmons Decl., Exh. R. It is not clear if Art & Soulworks obtained written approval from Art Akiane for each individual social media post as ostensibly required by the licensing agreement, Licensing Agreement at 2, but Art Akiane suggests that Art & Soulworks did not. *See* Pl. Reply Br. at 4.

Another promotional tool that Art & Soulworks used at one point was an invitation to "download" a wallet-sized image of *Prince of Peace* "free of charge" from the Art & Soulworks website. Simmons Decl., Exh. Q; Corneliuson Decl. ¶ 54.

According to Corneliuson, the invitation was a promotion meant to draw visitors to the Art & Soulworks website, where first-time visitors were given a discount code at checkout. Corneliuson Decl. ¶ 54. Corneliuson emphasizes, though, that all of these free promotional download links have since been removed from the website. *Id*.

In addition to pictures, the parties also used videos to promote Akiane's art and merchandise. According to Corneliuson, this was a collaborative process—Art Akiane would create videos about Akiane's art, brand the videos with Art & Soulworks's information, and then send Corneliuson the branded videos to be posted on the distributor's website or social media pages. Corneliuson Decl. ¶ 30. For example, in September 2018, the parties apparently did that with a video called "A New Journey" that was meant to promote a new painting by Akiane. *See* Corneliuson Decl., Exh. 13 (email from Art Akiane attaching "Art&SoulWorks Labeled Video" for Art & Soulworks "to use"). Art Akiane, however, points out that there were also times when Art & Soulworks went beyond that collaborative arrangement and did its own unauthorized editing of Art Akiane's videos. Specifically, Art Akiane points to a 25-minute-long documentary about Akiane's life called "Painting the Impossible." According to Art Akiane, Art & Soulworks chopped the video down to one minute and added its own name and website as well as the phrase "Official Source for Akiane Gifts and Art" to the end credits. Mark Kramarik Decl. ¶ 30. Art & Soulworks allegedly then posted the edited video to its Facebook page. *Id*. Here is a comparison of the original video and the edited version:

 

Simmons Decl., Exh. O.[6] Art & Soulworks sharply disputes this, claiming that Corneliuson does not know how to brand a video, let alone edit it. *See* Corneliuson Decl. ¶ 30.

As alluded to above, during this period, Art & Soulworks often presented itself as the "Official Source for Art by Akiane." Here is an example from Art & Soulworks's YouTube page:



Simmons Decl., Exh. V.[7] At some point, Art & Soulworks apparently also sold magnets (pursuant to the licensing agreement) that featured Akiane's artwork alongside the phrase "Art by Akiane is a trademark of Art & SoulWorks." Simmons Decl., Exh. N. And according to Art Akiane, there was at least a period of time where

---

[6]The red circle was added by the plaintiff.
[7]The red circle was added by the plaintiff.

Corneliuson would send emails from the handle "Carol at Art Akiane." R. 86-2, Pl. Reply Br., Exh. FF.

The parties formally renewed the licensing agreement in 2012 and again in 2016. License Agreement at 2 Corneliuson Decl. ¶ 9. During one of these renewals, the license was expanded to include *all* "images as painted, drawn, sketched or otherwise created by" Akiane. License Agreement at 5. The list of approved merchandise was also expanded to cover a variety of stationery (bookmarks, journals, calendars), home products (throw blankets, pillows, mugs, tote bags), and corporate products. *Id*. It is unclear whether the parties ever formally or orally renewed the wholesale agreement, but the record suggests that they continued to do business pursuant to the wholesale agreement.

### C. Termination and Wind-Down

January 2019 was the beginning of the end. When it came time to renew the licensing agreement again, Corneliuson instead received a written termination letter from the Kramarik family. R. 83-4, Corneliuson Decl., Exh. 4, January Termination Letter. The letter explained that Akiane, who was now an adult, had "begun playing a more active role in the business" and wished to go "completely independent." *Id*. at 4-5. Specifically, Akiane wished to streamline her artistic message, to stop commercializing her art, and to exit the various partnerships and marketing arrangements that her parents had established for her more than a decade previously. *Id*. at 7-8. Accordingly, the Kramarik family would not renew their business arrangement with Art & Soulworks and instead hoped to "postpone all

licensing, wholesaling and distributor agreements regarding any and all of Akiane's artwork, likeness and brand." *Id*. at 5.

As a practical matter, this meant that Art & Soulworks would have to modify its website and social media pages to reflect the dissolution of the relationship. Indeed, as set out in a "Licensing Dissolvement Agreement" attached to the termination letter, Art & Soulworks was required to "immediately" (1) remove all online references to Art & Soulworks being an "official" seller of Akiane's artwork; (2) change its Facebook page name from "Prince of Peace Painting by Akiane Kramarik" to "Prince of Peace Painting Community"; (3) no longer sell, license, or distribute Akiane's artwork; (4) discontinue all Akiane-related merchandise, including calendars, bookmarks, mugs, and candles; and (5) refrain from making any new social media posts featuring Akiane's name, likeness, or artwork. January Termination Letter at 11. *See also* Mark Kramarik Decl. ¶ 21. In addition, the Kramarik family gave Art & Soulworks until March 2019 to "liquidate" all of its inventory, defined as "any and all things related to Akiane's Artwork, Name, Brand and Likeness." January Termination Letter at 12. Based on the record, it does not appear that Corneliuson ever signed the January 2019 "Licensing Dissolvement Agreement," although Akiane and her parents did sign it. *Id*.

According to Corneliuson, this termination letter came out of the blue. In fact, just one day before she received the termination letter, she apparently placed an $11,000 order for wholesale artwork. Corneliuson Decl. ¶ 27. Art Akiane allegedly "did nothing to dissuade" her of the purchase. *Id*. ¶ 28.

13

The following week, the Kramarik family sent a follow-up message to Corneliuson. Simmons Decl., Exh. DD, Corneliuson Summary Letter at 20. Basically, the letter reiterated what had been expressed in the initial termination letter but also requested that Corneliuson immediately remove all references to the phrase "Official Akiane Art Gallery" from all of Art & Soulworks's websites, social media pages, and metadata descriptions for search engine purposes. *Id.*

A week after that, Corneliuson sent a 25-page letter to the Kramarik family expressing her surprise and sadness at the sudden nature of the termination of the nearly 12-year business relationship. *See* Corneliuson Summary Letter. In the letter, Corneliuson revealed that she had spent time rereading nearly 3,000 emails going back as early as 2006, which enabled to her to provide a summary of the relevant events of the relationship. The letter references both the licensing and wholesale arrangements, mentioning, for instance, how in 2008, Mark Kramarik directed Art & Soulworks to add an art gallery section to the Art & Soulworks online store in an effort to expand the options to purchase Akiane's paintings. *Id.* at 5. Specifically, Art & Soulworks would receive a 40% discount on canvases from Akiane Gallery (the Kramarik family's own online art gallery) to be resold on art-soulworks.com, and the Art & Soulworks art gallery was "intentionally designed and developed to mirror the Akiane Art Gallery using the same images and pricing for consistency and giving customers purchasing options from two sources." *Id.* 5-6. The letter also references how Corneliuson placed a $4,634.90 order for ten pieces from Akiane Gallery the day before the termination letter was sent. *Id.* at 19. (This is different from the $11,000

value mentioned in Corneliuson's Declaration, so it is not clear which number is right.) According to Corneliuson, she was going to need much more than two months to fully wind-down the arrangement; by then, Akiane products constituted roughly 80 to 85% of Art & Soulworks's business. Corneliuson Decl. ¶ 34.

It is not clear from the record exactly what happened after Corneliuson sent the letter, but in March 2019, Mark Kramarik (Akiane's father) sent another email to Art & Soulworks. R. 83-22, Corneliuson Decl., Exh. 22, March Termination Letter. The March email makes reference to a "revised contract" (which was not included with the record) meant to address Corneliuson's "concerns" about the initial January 2019 termination and wind-down arrangement. *Id.* Specifically, the Kramariks offered to extend the inventory liquidation deadline to July 2019, along with a few other changes. *Id.*

At some point after that March 2019 communication, however, the negotiations between the parties broke down, and in April 2019, Art Akiane sent yet another letter to Corneliuson, this time lamenting how Corneliuson's "additional revisions have strayed too far from the discussed and agreed points for an *Extended Wind Down Agreement*." R. 83-10, Corneliuson Decl., Exh. 10, April Termination Letter. According to this April letter, Art Akiane was "exercising its rights not to re-license nor to extend a wind-down time." *Id*. Thus, continued the letter, Art & Soulworks "no longer has the permission to sell, distribute, market or produce any of Akiane's images/products and needs to immediately remove all images of Akiane's Artwork, Name, Brand, Likeness and References from all its social media and website

platforms." *Id*. Art Akiane also revoked the earlier offer to extend the liquidation deadline and reinstated the original wind-down deadline for Art & Soulworks to liquidate its inventory. *Id*.

According to Corneliuson, Art & Soulworks was thus forced to liquidate all of its *licensed* inventory at "fire sale prices." Corneliuson Decl. ¶ 37. In doing so, Art & Soulworks allegedly "lost hundreds of thousands of dollars that it would have obtained had it had a reasonable period of time in which to make the sales." *Id*. ¶ 39. Separate from the licensed inventory, however, Art & Soulworks did *not* liquidate roughly a million dollars' worth of artwork that it had obtained pursuant to the *wholesale* agreement; according to Corneliuson, all of that art remains in Art & Soulworks's possession and has not yet been liquidated.[8] *Id*. ¶ 37. In addition, there are at least some Akiane pieces—purchased for full price—in Corneliuson's private art collection. *Id*. ¶ 23. With regard to these two categories of artwork, "ASW continues to market for sale" the artwork purchased through the wholesale agreement as well as the pieces in the private collection. *Id*. ¶ 48.

In terms of the digital artwork posted online, Art & Soulworks allegedly hid "hundreds of pages" on its website. Corneliuson Decl. ¶ 45. Also, with Art Akiane's approval, Art & Soulworks changed its online moniker to "Trusted Source of Prince of Peace Gifts and Art." *Id*. Art & Soulworks also added a disclaimer to the "About" section of art-soulworks.com:

---

[8]The million-dollars figure comes from Corneliuson's Declaration, but during the May 2019 TRO hearing, Corneliuson stated that she still had between $250,000 and $400,000 worth of wholesale inventory. R. 10 at 10:10-11. It is not entirely clear which figure is correct, but for purposes of this motion, the exact amount of wholesale inventory left is not crucial.

16

> We were pleased to be the exclusive global licensors and distributors of "Prince of Peace" and all art by Akiane Kramarik from 2006 through March 1, 2019. Considered one of the top 20 living artists, Akiane painted her first masterpiece "Prince of Peace," her portrait of Jesus, at age 8. Akiane, now 25 has informed us that she has chosen to be completely independent. We wish her well and hope that her visions of God, Jesus, and heaven continue to bless her and her artwork.

*Id*. ¶ 46. Moreover, on at least some occasions when Defendants received individual inquiries from customers, Art & Soulworks wrote back to clarify that "we no longer manufacture Gifts and Art by Akiane." *Id*. ¶ 47.

Despite all of these efforts, though, there is no dispute that Akiane's artwork continues to appear on Art & Soulworks's website and social media pages. Specifically, Art & Soulworks continues to host the unmodified thumbnails and images of Akiane's artwork on the online store section of art-soulworks.com—this is presumably done in an effort to sell the art pursuant to the wholesale and private collection agreements. Corneliuson Decl. ¶¶ 48-49. And separately, Art & Soulworks also continues to display the social media montage-type posts featuring modified versions of Akiane's paintings with religious text superimposed on them. *Id*. ¶ 49. To be clear, there is no dispute that Art & Soulworks has not posted any *new* montage images since the termination of the license agreement in 2019. *Id.* ¶ 48. But the prior posts—made while the license agreement was still in effect—are still visible. According to Art & Soulworks, due to the reverse chronological structure of social media posts (as in, newer posts appear before older posts), all of these montage posts are buried far down in Art & Soulworks's social media feeds. *Id.* ¶ 49.

### D. Procedural History

In May 2019, Art Akiane brought this lawsuit against Art & Soulworks and Corneliuson. R. 1. Initially, Art Akiane moved for a temporary restraining order. R. 11. The Court denied the motion after a hearing. R. 26, TRO Hearing Tr. During the hearing, the parties revealed that the scope of disputed issues had substantially narrowed since the complaint was first filed. Art Akiane clarified that it had no problem with Defendants selling off the artwork that they had obtained under the wholesale agreement. *Id*. at 4:15-18 ("They have argued about original works of art, and whether or not they can resell them, and we are not saying they can't. If you buy a painting, you can sell a painting. That is not at issue."). Specifically, Art Akiane acknowledged that there was no "problem with them selling off the authentic inventory purchased from Art Akiane … it does look like the way they are doing it now on the website would be okay." *Id*. at 6:3-6. Similarly, Art Akiane stated that there was no problem with Corneliuson reselling pieces of art from her private art collection. *Id*. at 7:2-5.

What the parties disagreed about at the TRO hearing, however, was social media. Art & Soulworks emphasized that since the termination of the licensing agreement, there had been no new social media posts featuring Akiane's artwork, with the exception of posts made "in connection with a sale … and that is an effort to get rid of this remaining merchandise that [Corneliuson] has been left with … ." TRO Hearing Tr. at 9:6-11. Art Akiane, in response, argued that the social media posts were "more than just postings or advertisements for current products." *Id*. at 12:23-

18

24. Rather, the posts were "flagrant copyright infringement" and also falsely represented that Art & Soulworks's website was the official source for Akiane's art. *Id*. at 12:7-18.

Given the narrowed scope of issues and the fact that the original briefing did not discuss the social media aspect in detail, the Court denied the motion for a temporary restraining order and instead invited Art Akiane to file an expedited motion for a preliminary injunction, R. 25, which it did in October 2019, R. 65.

## II. Standard of Review

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A party seeking to obtain a preliminary injunction must demonstrate: (1) that the case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020). If the moving party meets these threshold requirements, then the court must balance the nature and degree of the potential harm to each party and the public interest. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). "This process involves engaging in what we term the sliding scale approach; the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

### III. Analysis

This case is fundamentally a contract dispute: how much art may Art & Soulworks post online under the licensing and wholesale agreements before the distributor crosses the line into infringement of Art Akiane's intellectual property rights? According to Art Akiane, Art & Soulworks has *no* remaining rights under any of the parties' agreements—which have been terminated—and thus should not be doing *anything* related to Akiane on its website or social media pages. By continuing to display Akiane's artwork online, Art Akiane argues, Art & Soulworks is infringing on Akiane's copyrights, trademarks, and publicity rights. In response, the Defendants concede that they lost all licensing rights when the licensing agreement was terminated in 2019 and accept that they cannot make any *new* promotional posts featuring Art Akiane's intellectual property. But Art & Soulworks argues that any *old* posts lawfully made when the licensing agreement was in place are still lawfully displayed today, regardless of the termination. Def. Resp. Br. at 10-11.

Moreover, Art & Soulworks points out that they still have the right (as *buyers*, not licensees) to resell the artwork they initially bought under the *wholesale* agreement, and Corneliuson may do the same with the pieces in her private art collection. *Id.* at 8. It thus follows that they must also have the right to post pictures of that artwork (and use certain words and phrases and names) in order to resell it online. *Id.* Indeed, Art & Soulworks goes a step further and seeks its own declaration from the Court that (1) the Defendants can display and sell the works acquired through the wholesale agreement and in Corneliuson's private collection; and (2) the

Defendants can continue to use their social media sites and have no obligation to go back through years of posts to delete the ones that were lawfully made when posted. *Id*. at 29. For the reasons explained below, both parties are half-right and half-wrong.

## A. Likelihood of Success on the Merits

Art Akiane must show that it will probably succeed on its claims for copyright infringement, trademark infringement, and violation of the right of publicity. Although Art Akiane cites Seventh Circuit caselaw suggesting that the standard here is merely a "better than negligible" chance of success, Pl. Br. at 16 (citing *HH-Indianapolis, LLC v. Consol. Cty. of Indianapolis*, 889 F.3d 432, 437 (7th Cir. 2018)), the Supreme Court has explicitly stated that "better than negligible" is "not enough," *Nken v. Holder*, 556 U.S. 418, 434 (2009). Rather, something "more than a mere possibility of relief is required." *Id*. (cleaned up). The Court acknowledges that the Seventh Circuit has continued, at times, to rely on the "better than negligible" standard even post-*Nken*, but out of an abundance of caution, the Court will conduct the likelihood-of-success analysis under the more stringent "likely" standard for purposes of deciding this motion. *See Winter*, 555 U.S. at 20.

## 1. Copyright Infringement

First up is copyright infringement. The Copyright Act gives the owner of a copyright the exclusive rights to reproduce a copyrighted work, to distribute the work, to display the copyrighted work publicly, and to prepare derivative works based upon it. 17 U.S.C. § 106. In order to succeed on the copyright claims, Art Akiane must prove "(1) ownership of a valid copyright and (2) copying of constituent elements of the work

that are original." *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016). Here, there is no dispute that Art Akiane owns the copyrights to the thirteen pieces of artwork at issue in this lawsuit.[9] Art Akiane holds the copyright registrations, and under 17 U.S.C. § 410(c), certificates of registration "constitute prima facie evidence of the validity of the copyright[s]."

As for the second element—copying—Art Akiane alleges that the Defendants are committing the following acts of copyright infringement:

- Posting Akiane's artwork online, in the form of both images and videos, in violation of Art Akiane's reproduction and display rights;

- Manipulating Akiane's artwork by adding text to images and editing videos, in violation of Art Akiane's right to prepare derivative works; and

- Encouraging website visitors to download Akiane's art and failing to prevent website visitors from downloading images of Akiane's art, in violation of Art Akiane's distribution rights.

Pl. Br. at 17-27. Art Akiane also asserts that the final allegation of infringement (encouraging and allowing website visitors to download Akiane's art) also constitutes contributory copyright infringement by Art & Soulworks. *Id.* at 26. In short, Art

---

[9]There is some suggestion by Art & Soulworks that Art Akiane did not properly own the copyrights at the time that the parties entered into (and renewed) their licensing agreement. Specifically, the distributor argues that in 2008, when the license agreement was executed, the copyrights were actually owned by Akiane herself (as an individual person), not Art Akiane. Def. Resp. Br. at 9. Akiane did not transfer the copyrights (and trademark rights) to Art Akiane until 2019. *Id.* Thus, Art & Soulworks argues, Art Akiane "lacked legal authority to enter into" the licensing agreement and the oral agreements. *Id.* The Court is unsure what to make of this argument. Playing it through, Art & Soulworks is essentially suggesting that Art Akiane did not have the legal authority to license Akiane's artwork to the distributor for promotional use; that would mean everything the distributor did pursuant to the licensing agreement would actually have been invalid (making the distributor liable to Akiane as an individual)—which does not seem like a winning argument for Art & Soulworks. In any event, Art & Soulworks devotes only a few sentences to this argument and does not develop it. So, for purposes of this motion, the Court will assume that the parties entered into a valid licensing and wholesale agreement.

Akiane argues that, not only did Defendants *never* have the right to display and modify Akiane's art in the ways that they did under the licensing agreement, but they certainly do not have a current right to continue to display and distribute Akiane's art since the license has expired. *Id*. at 27. Similarly, Art Akiane argues that "to the extent Defendants allege that their rights were granted via an oral contract, any rights conferred to Defendants" have since "ended." *Id*. at 28. They do not, according to Art Akiane, have "the right to distribute Art Akiane's images in perpetuity." *Id*.

In response, Art & Soulworks asserts two main arguments First, the distributor points out that there is a distinction between the licensing agreement and the wholesale agreement; as mentioned above, Art & Soulworks does not dispute that it no longer has the right to sell licensed merchandise (like bookmarks and calendars) or to create *new* montage-style posts combining Akiane's art with religious text. Def. Resp. Br. at 11. But Art & Soulworks argues that there is no obligation to remove its *old* social media posts just because the licensing agreement has been terminated. *Id*. Second, even if Art & Soulworks may no longer market licensed merchandise, it argues that it still "has the right to market for sale the works it owns" as a *buyer*. *Id*. at 7. Art & Soulworks's point is that because it *bought* certain pieces of art under the wholesale agreement (and the art in Corneliuson's private collection), it should be allowed to resell to those pieces—and to market them using online images—under the copyright doctrines of first sale and fair use. *Id*. at 16-18.

Because the copyright infringement arguments are slightly different depending on which contract—the licensing agreement or the wholesale agreement—

is implicated, the Court will first address the images of Akiane's artwork that are purely meant to showcase the pieces of art for sale in Art & Soulworks's wholesale inventory (as well as the pieces from Corneliuson's private art collection, although it is not clear whether any of those works are actively up for sale). The Court will then separately consider the montage-type images (involving scripture and other text) that Art & Soulworks posted on its social media pages for broader promotional purposes, as opposed to advertising a particular piece of art for sale. The Court will also address Art Akiane's claims related to videos and, lastly, the arguments about contributory infringement.

### a. Images of Wholesale Artwork

The first category of images comprises Akiane's artwork displayed on the art-soulworks.com online store. Remember that these include both thumbnail images as well as the larger versions that open in a new window when visitors click the thumbnails. For these images, Art Akiane simply points out that the Defendants "distribute and display Akiane's Works on Defendants' website." Pl. Br. at 11 (citing Simmons Decl., Exh. K). In response, Art & Soulworks does not dispute the straightforward observation that these are indeed public displays of Art Akiane's copyrighted works. But Art & Soulworks asserts that these images were posted pursuant to "oral agreements … giving rise to Art & Soulworks's rights to display [the images] for sale post-termination." Def. Resp. Br. at 1. Specifically, Art & Soulworks clarifies that each of these images posted "since the termination relate only to the Wholesale Works and private collection pieces." *Id*. at 10 n.6. In other

words, Art & Soulworks argues that because these images are posted for the purpose of marketing and selling off its wholesale art inventory (paintings, prints, and canvases), these displays should be allowed under the first-sale doctrine or the fair-use exception to infringement.

As a threshold matter, the record is not entirely clear about whether Art & Soulworks was supposed to liquidate its wholesale inventory by some agreed-upon liquidation deadline, or whether the pieces of art purchased pursuant to the wholesale agreement were ultimately exempt from that liquidation requirement. As a reminder, during the termination and wind-down process, Art & Soulworks claims that it was required to sell off all of its *licensed* merchandise at "fire sale prices." Corneliuson Decl. ¶ 37. But there is no dispute that Art & Soulworks still possesses a substantial amount of *wholesale* artwork. *Id.*

Here is why the record is somewhat confusing. The initial termination letter included a "*Licensing* Dissolvement Agreement," which stated that Art & Soulworks must "liquidate inventory: any and all things related to Akiane's Artwork, Name, Brand and Likeness…" January 2019 Termination Letter at 11-12 (emphasis added). That would seem to suggest that the liquidation requirement only applied to the licensed merchandise, not the wholesale merchandise. Yet the "Licensing Dissolvement Agreement" goes on to state that Art & Soulworks "can no longer sell, license or distribute Akiane's *artwork*." *Id.* at 11 (emphasis added). Does the term "artwork" broadly include the pieces of art that Art & Soulworks purchased through the wholesale agreement, or is it instead limited to the artwork that Art & Soulworks

25

printed onto bookmarks and other merchandise? The later communications between the parties similarly do not explain whether the requirement to liquidate "inventory" was meant to encompass only the licensed merchandise, or whether it also included the wholesale-art inventory.

In any event, Art & Soulworks only liquidated its licensed inventory but still holds a substantial amount of wholesale artworks (Corneliuson asserts it is worth more than $1 million, Corneliuson Decl. ¶ 37). Outside of the "Licensing Dissolution Agreement" mentioned above, though, the record does not appear to contain any written agreements governing the wind-down process for the *wholesale* arrangement (which was itself based on only an oral agreement). To be clear, there does not seem to be any dispute that the oral wholesale agreement itself has been terminated; the days of Art & Soulworks placing new bulk orders from Akiane Gallery are over. But the problem is that it takes time to offload goods, which is why these types of agreements typically include at least some guidance on what must happen to inventory in the time period *after* the agreement has been terminated but *before* the inventory is completely liquidated. Here, though, the parties never explicitly wrote down (1) whether Art & Soulworks was allowed to continue to sell off its wholesale-art inventory after the termination of the business relationship; and (2) whether Art & Soulworks could continue to market the wholesale inventory online by posting pictures of the artwork on its online store (or elsewhere). This matters because Art & Soulworks's entire justification for continuing to display images of Akiane's artwork on its website rests on the fact that it needs to display the images

online in order to sell off the artwork in its wholesale inventory (and in Corneliuson's private collection).

On the first point—whether Art & Soulworks is even allowed to continue selling off its wholesale inventory—the answer is yes, at least for purposes of the preliminary-injunction motion. First, in its reply brief, Art Akiane concedes in a footnote that the "preliminary injunction does not seek to bar Defendants from selling Works that it lawfully purchased." Pl. Reply Br. at 1-2 n.2 (emphasis in original). And at the May 2019 TRO hearing, Art Akiane's counsel specifically clarified that there was no problem with Art & Soulworks reselling original works of art by Akiane and that that was not what this dispute was about. TRO Hearing Tr. at 4:15-18 ("If you buy a painting, you can sell a painting. That is not at issue."). So, given that the record does not contain any explicit evidence that the parties agreed for Art & Soulworks to quickly liquidate all of its wholesale inventory by a particular date (in contrast to the explicit references to the "Licensing Dissolvement Agreement" and clear liquidation deadlines for the licensed merchandise), the Court assumes for purposes of this motion that the parties' wholesale agreement *does* allow for Art & Soulworks to sell off the paintings it bought at the wholesale rate, even after the agreement itself was terminated. The opposite reading would be unreasonable, because it would allow Art Akiane to stay silent while Art & Soulworks placed a wholesale order one day, and then unilaterally terminate the agreement the next day, leaving Art & Soulworks stuck with the artwork and no recourse. In any event, Art & Soulworks is certainly

allowed resell the original artworks it purchased under the first-sale doctrine, 17 U.S.C. § 109, which will be discussed in more detail below.

With that first answer in place, the question then is whether—in a legitimate and lawful effort to resell the artwork—Art & Soulworks is allowed to advertise or market that artwork *online*, specifically by posting pictures depicting the artwork. Again, the record is not illuminating because the parties never wrote anything down about this (unlike the communications about the wind-down of the *licensing* agreement, which clearly required Art & Soulworks to remove all online posts featuring Akiane's intellectual property, R. 83-10, Corneliuson Decl., Exh. 10). During the May 2019 TRO hearing, counsel for Art Akiane stated that Art & Soulworks could resell authentic artwork purchased from Art Akiane and that "it does look like the way they are doing it now on the website would be okay." TRO Hearing Tr. at 6:3-6. That would suggest that Art & Soulworks's practice of posting pictures of the artwork for sale (the way they are doing it now on the website) is acceptable to Art Akiane. On the other hand, in the preliminary injunction briefing itself, Art Akiane explicitly included two screenshots of Art & Soulworks's online art store (Simmons Decl., Exh. K; Simmons Decl., Exh. L) as examples of copyright infringement. Pl. Br. at 11-12. So, Art Akiane's position on this issue is not clear.

Art & Soulworks argues that the answer is simple—the first-sale doctrine and the fair-use exception both allow, in the distributor's view, for the posting of images online to resell products. Under the first-sale doctrine, someone who legally acquires a lawfully made copy of a copyrighted work is allowed to sell or otherwise transfer

that *particular copy* without committing copyright infringement. 17 U.S.C. § 109. Importantly, the first-sale doctrine only applies to individual copies; for instance, the buyer of a book (which is copyrighted) is allowed to resell that copy of the book, but is not allowed to scan the pages of the book and post the scans online. Here, too, when Art & Soulworks purchases an individual canvas from Art Akiane, Art & Soulworks is allowed to resell that individual canvas. But, absent some other agreement, Art & Soulworks is not entitled to do whatever it wants with the underlying copyrighted artwork.

Indeed, Art & Soulworks actually concedes in its briefing that the first-sale doctrine does *not* give it the right to publicly display copyrighted images to the world via the internet. Def. Resp. Br. at 17 (citing *Bryant v. Gordon*, 483 F. Supp. 2d 605, 613 (N.D. Ill. 2007)). The text of the statute supports this conclusion—even though Art & Soulworks has relatively broad leeway to distribute (that is, *sell* or other dispose of) the actual *piece* of artwork it purchased, the first-sale doctrine carries much more limited display rights. Specifically, "the owner of a particular copy lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to display that copy publicly, either directly or by the projection of no more than one image at a time, to viewers present at the place where the copy is located." 17 U.S.C. § 109(c). It is obvious that this display-rights provision has not been updated to accommodate the modern phenomenon of online sales and resales; that is evident in the physical-space limitation "to viewers present at the place where the copy is located," which would

29

plainly seem to exclude "the billions of people who would be able to view, remotely, an image displayed over the Internet." *Bryant*, 483 F. Supp. 2d at 613.

So it makes sense for Art & Soulworks to avoid basing its online-display argument on the first-sale doctrine. Instead, Art & Soulworks takes a different route and argues that the wholesale artworks are useful articles. Def. Resp. Br. at 22. A "useful" article is statutorily defined as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. In other words, useful articles are just that; functional items like furniture or clothing that are generally considered to be not expressive. Because of the lack of expressive element, useful articles are not entitled to copyright protection. *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1012 (7th Cir. 2005) (cleaned up). Art & Soulworks's argument here is that the wholesale paintings are useful articles, and thus not entitled to copyright protection anyway, and so it is acceptable for Art & Soulworks to post pictures of the paintings online.

That is a Frankenstein's Monster of an argument. Art & Soulworks is essentially arguing that it is allowed to resell the wholesale artwork under the first-sale doctrine, and it is allowed to post photos of that art online because the artwork is a useful article that is not copyrightable in the first place. But if the artwork is not copyrightable in the first place, then there would be no need to apply the first-sale doctrine, which specifically exists to allow holders of *copyrighted* works to do certain things with the works. Alternatively, assuming the artwork is copyrightable—which

is why the first-sale doctrine is required—then by definition the artwork cannot be a useful article.

To support its useful-article argument, Art & Soulworks contends that *Bryant* held that it was acceptable to display online photos of "t-shirts, calendars and notecards with plaintiff's copyrighted photo" because those things were all useful articles. Def. Resp. Br. at 18 (citing *Bryant*, 483 F. Supp. 2d at 613). There are two problems with this argument. First, *Bryant* did not actually address the fact that the useful articles (the shirts, calendars and notecards) featured a copyrighted photo. The court only went so far as to hold that because shirts, calendars, and notecards were useful articles, it was acceptable to post photos of those items online. *Bryant*, 483 F. Supp. 2d at 613 ("Though it is unclear to the Court exactly what was displayed on the website … the website depicted, among other things, t-shirts, desk clocks, computer mousepads, calendars, and notecards. These items likely qualify as 'useful articles.'"). The court did *not* explicitly say that it was acceptable to *also* post photos of copyrighted works online just by virtue of the copyrighted work being printed on a useful article.

The second problem with Art & Soulworks's useful-articles contention is that the pieces of art being sold on the Art & Soulworks online store fall squarely into the category of copyrightable expression, not useful articles. Art & Soulworks does not provide any explanation or support for why it believes the paintings should be categorized as useful articles. This is certainly not one of those difficult cases where a functional item features some expressive elements (like an artistic gilding on a

chair), and the court must figure out how to sever the copyrightable expressive parts from the noncopyrightable functional parts. These paintings are quintessentially expressive and thus fully copyrightable; as mentioned above, there is actually no dispute (other than implicitly via this useful-articles argument) that Art Akiane owns the copyrights to the paintings and associated digital images at issue in this lawsuit. So that argument fails.

Art & Soulworks next argues that "online display of lawfully acquired prints to promote their sale has been upheld as fair use." Def. Resp. Br. at 18. The determination of fair use generally turns on four factors set out in the statute: (1) the purpose and character of the use, including whether such use is of commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. Having said that, the four factors "are not exhaustive and do not constitute an algorithm that enables decisions to be ground out mechanically." *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003). Here, Art & Soulworks does not spend time going through the four fair-use factors, so the Court will also not belabor them. But as a general matter, fair use offers courts a way out where rigid application of the copyright statute would "stifle the very creativity which that law is designed to foster." *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 575 (1994).

Art & Soulworks's argument here invokes that broader purpose of fair use. At the end of the day, though, the rather abstract fair-use argument offered by Art & Soulworks is still ultimately rooted in *first-sale* principles. As the briefing implicitly highlights, there is an ostensible contradiction between the first-sale doctrine's robust distribution right, 17 U.S.C. § 109(a), and very limited display right, 17 U.S.C. § 109(c). In practice, people who lawfully acquire a copy of a copyrighted work should be allowed to resell (or otherwise dispose of) that copy quite freely, but depending on the type of work, it can be really difficult for resellers to do so using the internet because of the display limitation. For instance, it is certainly possible (and easy) to sell a copy of a book online, because a book sale typically does not depend on posting scanned pages of the book online. In contrast, it is extremely difficult to sell a piece of visual art online without being able to display a photo of the work for potential buyers to see. A picture is worth a thousand words, but unfortunately, pictures *of* pictures do not seem to be allowed under 17 U.S.C. § 109(c).

Because of this awkward application of the first-sale framework to online sales, Art & Soulworks suggests that it is important for courts to give full effect to the first-sale doctrine by carving out a broader exception for the online display of copyrighted works in this context. This is a compelling argument, and indeed, several district courts outside of this Circuit have extended the fair-use exception to apply to online displays of visual works in the context of allowing people to make use of online secondhand marketplaces—which is an important and reasonable goal in this day and age. A district court in California, for instance, held that the four fair-use factors

supported the online display of a photo of a copyrighted object for purposes of selling the object on an online marketplace (in that case, eBay). *Rosen v. eBay, Inc.,* 2015 WL 1600081, *14-20 (C.D. Cal. Jan. 16, 2015). According to *Rosen*, the posting of images online was obviously commercial, but was also highly transformative because the purpose of the images was solely "to provide information to legitimate purchasers under the first sale doctrine, not for the artistic purpose of [the] original images." *Id.* at *15. The second and third factors were neutral, because it was undeniable that the works were creative (visual images) and had been reproduced in full. *Id.* at *18-19. But the fourth factor weighed in favor of fair use because the secondhand sales did not substitute for paying for legitimate copies. *Id.* at *19. Thus, posting images online for first-sale purposes was fair use. *See also Boehm v. Svehla*, 2017 WL 4326308 at *17 (W.D. Wis. Sept. 27, 2017) (holding with no analysis or citation that "[o]nline display of lawfully acquired prints to promote their sale would be a fair use"). More recently, two district courts in New York also came to the same conclusion. *Stern v. Lavender*, 319 F. Supp. 3d 650, 681 (S.D.N.Y. 2018); *Noland v. Janssen*, 2020 WL 2836464, at *7 (S.D.N.Y. June 1, 2020).

Despite all of this, the Court is hesitant to ignore the specific provision of the Copyright Act that explicitly and precisely addresses the very issue of what display rights apply to the first-sale doctrine. As mentioned earlier, Section 109(c) clearly lays out the limitation that someone trying to resell a copyrighted work under the first-sale doctrine is *only* allowed to display that work to "viewers present at the place where the copy is located." 17 U.S.C. § 109(c). It is true that the fair-use doctrine is

34

meant to be a flexible catch-all exception to copyright infringement in cases where the purposes of the Copyright Act would actually be better served by allowing some forms of expression (like parody or criticism) that might otherwise be classified as infringement. But here, the first-sale doctrine is *itself* an exception to copyright infringement—the whole idea of Section 109 is that copyright protection should not be so restrictive as to prevent people who lawfully acquire copies of a copyrighted work from selling it to someone else. The default rule obviously is that the copyright holder has exclusive distribution rights over the copyrighted work, 17 U.S.C. § 106(3), so the first-sale carveout is simply meant to give lawful acquirers of a work the leeway to exercise their own property rights over a particular copy.

Bundled in with that leeway, the statute also recognizes that sales do not magically happen without some sort of mechanism to inform customers that something is available for sale. So Section 109(c) also gives the lawful acquirer a very limited right to display the copyrighted work, but only to potential customers who happen to be in the same "place" as the work. In the digital age, this is odd—but it is not absurd, which is what it would have to be for federal courts to depart from the statutory text. Recognizing that the first-sale doctrine is itself meant to be a narrow exception to what would otherwise be copyright infringement, it is precisely the visual character of the artwork at issue in this case that makes it so important to respect the statutory limit to the widespread publication of digital images or photos of the artwork online. So, although it would make plenty of sense for Congress to allow

lawful acquirers to post pictures of copyrighted work online for purposes of a first sale, that is the point: it is up to Congress to take that step.

But that is not the end of the road for Art & Soulworks. For one, people can always contract around these default rules to come to more reasonable and suitable arrangements for their own situations. In this case, that is precisely what Art Akiane and Art & Soulworks did for more than 12 years via the wholesale agreement. Again, the record is not illuminating in terms of explicitly presenting the comprehensive terms of the oral agreement that the parties came to back in 2008. But there is ample evidence, at least for now as discovery is ongoing, that the wholesale agreement included at least some implied or explicit license for Art & Soulworks to post pictures of Akiane's artwork online. (Of course, the parties never refer to this as a "license" in their briefing, but the Court will use the term here for the sake of simplicity.) To clarify, this wholesale license (for lack of a better description) was entirely separate from the broader license outlined in the actual written licensing agreement, which allowed Art & Soulworks to use copyrighted digital images for merchandising and promotional purposes. Rather, this wholesale license was related to the Kramarik family's alleged request that Corneliuson "essentially mimic the Akiane Gallery website to enhance the exposure and selling opportunities of Akiane's prints and paintings" and "to market and display Akiane's prints, canvasses, paintings, etc., sold by the Akiane Gallery on the Art & Soulworks website, social media and elsewhere." Corneliuson Decl. ¶¶ 14, 16. In other words, when the parties agreed that Art & Soulworks could buy Akiane's paintings at wholesale prices and resell them online to

36

Art & Soulworks customers, part of the assumption—which was carried out for 12 years—was that Art & Soulworks would create a "gallery" section in its online store to sell Akiane's paintings. The online gallery unsurprisingly required the display of digital images of the paintings available for sale. Art Akiane does not dispute this characterization of the wholesale agreement anywhere in its briefing.

Although Art & Soulworks does not play this argument out fully in its briefing, Art & Soulworks does make passing reference to "oral agreements" that "giv[e] rise to Art & Soulworks's rights to display [the online images] for sale *post-termination*." Def. Resp. Br. at 1 (emphasis added). This is a reasonable reading of the wholesale agreement. As mentioned above, when the agreement was in effect, Art & Soulworks had an implied license to display images online in order to resell paintings. And after the agreement was terminated, Art & Soulworks retains the right to continue selling off its wholesale inventory. That is not disputed. So it follows that the implied license to display images online for wholesale purposes also survives post-termination. Indeed, during the TRO hearing, Art Akiane's counsel explicitly said that "the way they are doing it now on the website would be okay" when asked if it was acceptable for Art & Soulworks to continue selling off paintings it had acquired under the wholesale agreement. TRO Hearing Tr. at 6:3-6.

Thus, Art Akiane is not likely to succeed on its copyright infringement claim when it comes to the images of Akiane's artwork on the art-soulworks.com online store, because the Defendants are allowed to display those images in connection with their efforts to resell the artwork that they purchased under the wholesale

agreement. To repeat, the Court comes to this outcome on *contractual* grounds only, not on copyright grounds. Although other district courts have persuasively applied fair use to support the online display of images incident to sales, the textual limitation of Section 109(c) points the other way. Fortunately for Art & Soulworks, however, the parties were able to contract around this statutory gap—the record suggests that while the wholesale agreement was in effect, Art & Soulworks had the right to both sell and display images of Akiane's artworks in its online store. The record also suggests (albeit not as explicitly) that following the termination of the wholesale agreement, Art & Soulworks still has the right to sell off any remaining artwork in its wholesale inventory and to post images on the internet for that limited purpose only. For that reason, Art Akiane is not likely to succeed on its infringement claim against the online displays of the wholesale art for sale.

The private-collection pieces are a different story, however, because there is nothing in the record that suggests that the private-collection transactions ever included an online marketing element. Of course, Corneliuson is certainly allowed to resell any art in her private collection under the first-sale doctrine. The distinction though, is that she is not allowed to display images of her private-collection art online because of the first-sale display limitations discussed above. Nor does fair use apply (again, for the reasons discussed above), and, in this context, there is no contractual hook that allows her to display images of her private-collection art online. (As a reminder, Corneliuson can always get around this by obtaining permission from Art Akiane, although at this point in the litigation, it is not clear whether that is a

realistic option.) The record does not definitively show whether any of the current images in the Art & Soulworks online store reflect pieces from Corneliuson's private collection. But if so, then Art Akiane is likely to prevail on its copyright claim against those images.

### b. Contributory Infringement

This same category of images—the thumbnails and full-size versions of the wholesale art for sale—is also implicated in Art Akiane's contributory infringement claim. The Supreme Court has explained that contributory copyright infringement involves "intentionally inducing or encouraging direct infringement" by other people. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Here, Art Akiane alleges that Art & Soulworks has engaged in contributory infringement by making Akiane's art available for download to its website visitors. First, Art Akiane points to the "free downloads" promotion on the art-soulworks.com website, through which Art & Soulworks apparently encouraged its website visitors to download a free image of *Prince of Peace*. Pl. Br. at 14. Art Akiane also takes issue with the more general fact that there are no digital protections against third-party downloads of any of the copyrighted images on the art-soulworks.com website. For instance, Art Akiane points out, the unaltered images of Akiane's paintings in the art-soulworks.com online store are not watermarked and do not have any sort of protection against a user simply right-clicking the image and saving it onto the user's own desktop. *Id.* at 21. Similarly, Art & Soulworks has not included any sort of copyright warning or other notice that the images belong to Art Akiane. *Id.* Art &

Soulworks does not dispute that its photos do not contain watermarks or other copyright protections against third-party downloads.

Addressing the "free downloads" promotion first, Art Akiane is very likely to succeed on its contributory infringement claim. Inviting website visitors to download a free copy of a copyrighted digital image is squarely intentional encouragement of direct infringement. Perhaps there is a question of whether this type of promotion would have been allowed while the licensing agreement was in place; this would depend on how strong the "all promotional purposes" language was and whether it was intended to allow non-licensees to download the licensed images. But for purposes of this motion, there is no doubt that the licensing agreement has been terminated and that Art & Soulworks, as a former licensee, is not allowed to invite third-parties to download the copyrighted works for free. Indeed, Art & Soulworks's main argument in response is that they removed the offending links and language from their website and that the conduct no longer happens. Def. Resp. Br. at 10. But for the sake of completeness, and to make clear that Art & Soulworks cannot repeat this contributory infringement, the Court holds that Art Akiane is likely to succeed on this claim.

That brings us to the other half of the contributory infringement claim—the argument that Art & Soulworks does not sufficiently protect the copyrighted images from third-party downloads. There are several problems with this argument. First, Art Akiane does not cite any caselaw, nor is the Court aware of any precedent, where the failure to include a watermark or to protect an image against "right-click"

downloading counts as "inducing" or "encouraging" direct infringement. Indeed, as the record suggests, Art Akiane itself failed to watermark or right-click-protect its own digital images when it licensed them to Art & Soulworks to use for broad promotional purposes and for marketing purposes in the Akiane Gallery online store. *See* Corneliuson Decl., Exh. 15. And there is no suggestion in the record that the original licensing or wholesale agreements included any requirement that Art & Soulworks add copyright protections above and beyond what Art Akiane itself used. Similarly, Art Akiane does not cite any precedent for the claim that not adding a copyright notice to the online images counts as contributory infringement. And according to Art & Soulworks, only the thumbnails lack copyright notices; when a visitor clicks through to the full-size images, the copyright and trademark notices become visible. Def. Resp. Br. at 19.

Ultimately, this is not a claim based on allegations that Art & Soulworks actively removed or hid copyright-management information or protection mechanisms, which is more likely to be actionable. (For instance, Art Akiane did not send over an original set of watermarked images for Art & Soulworks to use, and then Art & Soulworks secretly removed the watermarks.) The sole question here is whether Art & Soulworks had an affirmative obligation to include additional protections for the digital images that were not explicitly required as a condition of the oral wholesale agreement (under which Art & Soulworks was asked to "mimic" the Akiane Gallery online store), and indeed that Art Akiane itself had not used. At least at the preliminary-injunction stage, the law is not so clear so that Art &

Soulworks's failure to proactively add a watermark, a copyright notice, and right-click protection to the digital images in its online store supports an inference of an *intent* to induce or encourage infringement. Intent is further undermined by the fact that it would be against Art & Soulworks's own interests to induce third-party counterfeiting and increase the supply of Akiane-related art in the marketplace, in light of the fact that they are actively trying to offload their own Akiane inventory. This is not to mention the evidentiary difficulty of untangling exactly which instances of direct infringement resulted from counterfeiters copying Art & Soulworks's images versus the images on any other website—including Art Akiane's own website.

Thus, on the preliminary-injunction record, Art Akiane is not likely to succeed on its contributory infringement claims. To be clear, this only applies to the images of wholesale artwork in the Art & Soulworks online store, because that is the category of images that the briefing focuses on. To the extent that Art Akiane is alleging that any other online images (like the scripture-montage images on social media) lack proper copyright protection, those do not need to be addressed here because, as explained below, those images likely constitute direct infringement.

### c. Montage Images on Social Media

That brings us to the substantial number of montage-type images on Art & Soulworks's social media pages. As a reminder, these are the images in which Art & Soulworks superimposed religious scripture and other inspirational text onto the digital versions of Akiane's artwork. *See* Simmons Decl., Exh. F; Simmons Decl., Exh. H; Simmons Decl., Exh. I; Simmons Decl., Exh. J; Simmons Decl., Exh. R; Simmons

Decl., Exh. U; Simmons Decl., Exh. V. There is no question that Art Akiane owns the copyrights to the underlying artworks, nor is there any question that Art & Soulworks is still publicly displaying those montage images. Def. Resp. Br. at 6.

To be clear, Art & Soulworks has not published any *new* posts of this kind since the 2019 termination of the licensing agreement. *See* Corneliuson Decl. ¶ 48. Rather, the sole issue here is whether Art & Soulworks is allowed to continue displaying the *old* posts that were made back when the licensing agreement was in place, or whether Art & Soulworks must now go through and delete those posts. According to Art & Soulworks, the old posts do not constitute copyright infringement precisely because they were created pursuant to the licensing agreement. Def. Resp. Br. at 16. Art Akiane of course disagrees.

As a threshold matter, it does not seem like Art & Soulworks is making any copyright arguments, like first sale or fair use, to support the montage-style posts. (The response brief really only discusses first sale and fair use in relation to the unaltered images of wholesale artwork for sale.) In any event, even if Art & Soulworks did invoke first sale or fair use, both of those arguments would fail. For one, Defendants have not explained how these types of images are meant to advertise a specific product (in this case, an individual copy of a painting) being sold. And even if the images were tied to specific product advertisement, it is not clear that the first-sale doctrine, 17 U.S.C. § 109(c), even allows for public online display, as explained earlier. At most, the images are being used to drive web traffic to the art-soulworks.com online store generally. *See* Def. Resp. Br. at 11. As for fair use,

increasing web traffic to an online store is squarely a commercial use and the entirety of the artworks are often used as the base for the religious text. Nor is Art & Soulworks adding anything new to the artwork with the scripture montages; the scripture does not really change the inspirational message of the art (in fact, it is meant to capitalize on the emotional effect and popularity of the art), and it does not really set forth any creative argument or critique about the artwork. 17 U.S.C. § 107. So, fair use is also a losing argument.

That just leaves the licensing agreement as a potential hook for Art & Soulworks's conduct. The first point of contention is whether the licensing agreement *ever* authorized Art & Soulworks to create these types of montage posts. Art & Soulworks says yes, pointing to the broad provision in the licensing agreement that allowed Art & Soulworks to "use" Akiane's art "for all promotional purposes." Def. Resp. Br. at 16 (citing License Agreement at 1). According to Art & Soulworks, these montage-type posts were meant to drive traffic to the online store generally, which clearly fits within the "all promotional purposes" provision. Def. Resp. Br. at 11. Art Akiane, though, points to a later provision in the same contract, which required Art & Soulworks to obtain written consent from Art Akiane "prior to production" of "each product and each image." Pl. Reply Br. at 4 (citing License Agreement at 2). According to Art Akiane, Art & Soulworks did not obtain the necessary approval before posting the montage images. Pl. Reply Br. at 4. In response to that, Art & Soulworks points out that the Kramariks were aware of the content of Art & Soulworks's social media and even "endorsed and assisted with them." Def. Resp. Br. at 20.

Even assuming Art & Soulworks is correct (which might or might not be the case, depending on the proper interpretation of the contractual language), that ultimately does not matter for purposes of deciding this preliminary-injunction motion. Rather, what matters is whether the parties intended for Art & Soulworks to retain rights to create promotional material out of Akiane's artwork *after* the termination of the licensing agreement. And here, nothing in the text of the licensing agreement (or the various schedules attached to the agreement) suggests that the parties intended to allow Art & Soulworks to retain any licensing or promotional rights following the termination of the licensing agreement. Similarly, there is no evidence in the email record that the parties intended for the old social media posts to stay up post-termination. It is true that, in the initial January 2019 termination letter, there is a "Licensing Dissolvement Agreement" attached to the letter; that agreement states that all *future* social media posts are no longer allowed, License Agreement at 11, but does not explicitly mention *past* social media posts featuring Akiane's artwork. But then, in the April 2019 letter withdrawing all wind-down accommodations, Art Akiane did explicitly state that Cornliuson "needs to *immediately remove* all images of [Akiane's artwork] from all its social media and website platforms." Corneliuson Decl., Exh. 10 (emphasis added). That would appear to cover all of the social media montage posts, regardless of when they were posted.

Thus, even if Art Akiane had "approved" of these images at some previous point in time when the licensing agreement was still in effect, or even if Art Akiane itself had collaborated with Art & Soulworks to create the images, Def. Resp. Br. at 11, 20,

that does not matter for purposes of copyright infringement. Art & Soulworks previously had an express license to display Akiane's artwork for merchandising and promotional purposes—but that license no longer exists. The license existed as an exception to Art Akiane's otherwise exclusive copyright privileges (like display, distribution, and reproduction), so without the license, Art & Soulworks may not continue to display the images. There is nothing in the record to suggest that the parties intended for Art & Soulworks to retain some sort of post-termination display right as to the old social media montage posts. So, it is not enough that Art & Soulworks has stopped creating new posts, because the old posts themselves also likely infringe on Art Akiane's display rights. All in all, Art Akiane is likely to prevail on its copyright claim as to the religious-scripture-montage images on Art & Soulworks's social media pages.

### d. Other Images and Videos

For the sake of completeness, it is worth briefly addressing the other examples of alleged copyright infringement highlighted in the briefing. The same principles discussed above apply. So, the alteration of the "Painting the Impossible" documentary, Pl. Reply Br. at 4, as well as any other Akiane images or videos that still remain visible on Art & Soulworks's websites but do not fall within the two categories of images described above (for example, one of Art & Soulworks's Facebook photos contains an image of a *Prince of Peace* rug or tapestry, Simmons Decl., Exh. P), do likely infringe Art Akiane's copyrights. To the extent that Art & Soulworks seeks to justify any of these displays by arguing that they were once acceptable under

the licensing agreement and thus remain acceptable today, that argument fails. No matter how broad the "promotional purposes" provision of the licensing agreement was back when the contract was still in effect, the agreement has since been terminated, and there is no evidence in the record that the parties intended for the promotional license to survive the termination. That means Art & Soulworks no longer has a license to use Art Akiane's images (and videos) for promotional purposes, so by leaving any of those displays up, Art & Soulworks is likely infringing on Art Akiane's copyrights.

It might very well be the case that much of the offending conduct has since been fixed and many of the posts have been removed. The Court only articulates all of this for the sake of completeness and on the off-chance that any images or videos are discovered on Art & Soulworks's sites after this order is issued. In that case, Art & Soulworks should be on notice that Art Akiane is likely to prevail on its copyright infringement claims as to those online displays.

## 2. False Designation of Origin

With the copyright claims out of the way, the trademark claims are up next. Here, Art Akiane argues that it is likely to succeed on its claim for false designation of origin under Section 1125(a) of the Lanham Act. Pl. Br. at 33. Specifically, the Lanham Act prohibits the commercial use of "any false designation of origin … which … is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by

another person…" 15 U.S.C. § 1125(a). In simpler terms, to succeed on this claim, Art Akiane must prove that (1) it owns a protectable trademark and (2) Art & Soulworks's use of the mark is likely to cause confusion among consumers. *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019). In assessing the likelihood of confusion, the Court considers seven relevant factors: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 677-78 (7th Cir. 2001). "No single factor is dispositive and courts may assign varying weights to each of the factors depending on the facts presented." *Id*. at 678.

Here, Art Akiane asserts that it owns the following protectable trademarks: Akiane; Art Akiane; Art by Akiane; and Akiane Art Gallery. Pl. Br. at 36. *See also* Akiane Kramarik Decl. ¶¶ 9, 15-18. Art & Soulworks does not actually dispute any of this, aside from the phrase "Art by Akiane." Def. Resp. Br. at 22. According to Art & Soulworks, it was Art & Soulworks that actually coined the phrase "Art by Akiane," so Art & Soulworks should have claim to the trademark. *Id*. This dispute will be addressed below. Otherwise, the record does not suggest that either party has registered any of the trademarks at issue here. But, given the non-dispute on most of the trademarks and the fact that Art Akiane has used them in commerce for nearly

20 years, the Court will go ahead and assume that Art Akiane owns these marks (except "Art by Akiane") for purposes of this motion.

As for the "likely to cause confusion" requirement, Art Akiane points to several representations by Art & Soulworks that allegedly imply a false affiliation, connection, or association with Akiane. Pl. Br. at 34. For one, Art & Soulworks supposedly presents itself as the "Official Source for Art by Akiane" on its YouTube profile. Simmons Decl., Exh. V. Art & Soulworks also allegedly added the "Official Source" language to the end of the "Painting the Impossible" video, which it impermissibly edited in other ways as well. Simmons Decl., Exh. O. Relatedly, Art Akiane points out that the phrase "OfficialAkianeArt" appears on Art & Soulworks's Facebook page. Simmons Decl., Exh. W.

In addition to the "Official Source" language, Art Akiane also takes issue with Art & Soulworks advertising itself as a "Trusted Source" of Akiane's artwork. Pl. Br. at 35. For instance, the Art & Soulworks website says that Art & Soulworks is the "Trusted Source of Jesus Prince of Peace Gifts & Art," Simmons Decl., Exh. X, while Art & Soulworks's Facebook page also says that Art & Soulworks is the "Trusted source of inspiration & gifts often featuring Prince of Peace, the Heaven is for the Real face of Jesus painted by 8-year old, child prodigy, Akiane Kramarik," Simmons Decl., Exh. Y. In addition, Art Akiane also takes issue with Art & Soulworks using the phrase "Art by Akiane is a trademark of Art & SoulWorks," which it has included on the backs of magnets. Simmons Decl., Exh. N. The Court will address these arguments in turn.

### a. "Official" or "Official Source"

First, Art & Soulworks does not dispute that using phrases like "Official" or "Official Source" might be confusing to customers. These types of descriptors were accurate when Art & Soulworks was an authorized licensee of Art Akiane, but the licensing agreement is over, so Art & Soulworks is no longer an official—meaning authorized—source for Akiane's art. Art & Soulworks points to the fact that it has posted a disclaimer in the "About" section of its website. Corneliuson Decl. ¶ 46. But that does not make "Official Source" any less confusing, especially to the extent that "Official" appears on Art & Soulworks's social media pages.

In any event, Art & Soulworks points out that, to its knowledge, it has removed all online references to "Official Source," and to the extent that any "errant" instances exist, Art & Soulworks has always removed them as soon as it becomes aware of them. Def. Resp. Br. at 21-22. So, it does not seem like Art & Soulworks is seriously contending that "Official Source" is *not* infringing. For purposes of this motion, then, Art Akiane is likely to succeed on its claim that "Official Source" is confusing.

### b. "Trusted Source"

On the other hand, "Trusted Source" conveys a somewhat different message from "Official Source." Specifically, whereas the word "official" falsely suggests some sort of authorization from or organizational affiliation with Art Akiane, the word "trusted" does not carry imply that type of affiliation. Rather, the word "trusted" refers to the fact that a potential buyer can feel secure about "trusting" that the goods being sold are authentic. Of course, as this very lawsuit shows, Art & Soulworks is

not literally a "trusted" partner of Art Akiane at this juncture in the parties' relationship. But Art Akiane does not dispute that at least part of Art & Soulworks's inventory—the art purchased directly from Akiane Gallery pursuant to the oral wholesale agreement—is authentic. In fact, Art & Soulworks asserts that Art Akiane actually agreed that Art & Soulworks could replace "Official Source" with "Trusted Source." Def. Resp. Br. at 22. In that context, the phrase "trusted source" is not likely to mislead consumers into thinking that Art & Soulworks is somehow officially affiliated with or licensed by Art Akiane. At the same time, "trusted source" allows Art & Soulworks to (accurately) convey that it sells authentic (not counterfeit) art on its website, or that it is otherwise a reliable source for religious goods.

There is also the second half of the "Trusted Source" heading, that is, "Prince of Peace." It is not entirely clear if Art Akiane is claiming ownership of the phrase "Prince of Peace," but Art Akiane does take issue with Art & Soulworks's representation that it is a "Trusted Source of Jesus Prince of Peace Gifts & Art." That is not a winning argument, at least at this stage of the case. As Art & Soulworks notes, the phrase "Prince of Peace" is a more general reference to Jesus Christ, and several other artists have also created works titled "Prince of Peace." Def. Resp. Br. at 7. It is true that there might be a potential for confusion if the neutral phrase "Trusted Source of Jesus Prince of Peace Gifts & Art" is directly juxtaposed next to multiple images of Akiane's *Prince of Peace*. But those images have been addressed above via the copyright claims, and upon issuance of the preliminary injunction, Art & Soulworks will not be able to use those images for general promotional purposes.

51

Without those background images, the phrase "Price of Peace Gifts & Art" does not suggest any authorization by or association with Art Akiane. Art Akiane is not likely to prevail on its trademark claim with regard to the phrase "Trusted Source of Jesus Prince of Peace Gifts & Art."

### c. "Art by Akiane"

Finally, the parties dispute whether "Art by Akiane" infringes on Art Akiane's trademark. As a threshold matter, this is another instance where Art & Soulworks asserts that all potentially infringing uses have been scrubbed from the internet, the physical magnets bearing the phrase are no longer being sold, and there is thus "no continued use" of the phrase. Def. Resp. Br. at 23. But, because it is possible that the phrase remains online or because it is possible that Art & Soulworks plans to use it again in the future, it is worth explaining that Art Akiane is likely to prevail on any infringement claim involving "Art by Akiane." This is so even accepting as true Art & Soulworks's claim that it "coined" the phrase. *Id.* at 22. Specifically, Art & Soulworks does not seem to dispute that Art Akiane has a claim over "Akiane." Accordingly, Art & Soulworks, as a former licensee, cannot simply create its *own* mark simply by adding the words "Art by" to its licensor's existing mark. In the same vein, Art & Soulworks cannot invoke "finders-keepers" over the trademark simply because it printed on magnets that "Art by Akiane is a trademark of Art & SoulWorks." In the same way that "Official Source" connotes a misleading post-termination affiliation with Art Akiane, the usage of "Art by Akiane" similarly conveys the misleading idea that Art & Soulworks somehow has authorization to use

Akiane's name to sell a wide variety of religious goods on the internet. Finally, the same applies to efforts to treat "Art by Akiane" as its own brand—for instance, Corneliuson sending emails as "Carol at Art by Akiane" is confusing to consumers because it implies that Corneliuson works at a separate brand or organization called "Art by Akiane," which is not true.

The one exception to all this is if Art & Soulworks uses the words "Art by Akiane" in a purely descriptive manner to communicate that a painting being offered for sale in the online store was, as a factual matter, created "by Akiane." *See* 15 U.S.C. § 1115(b)(4) (mark may be "descriptive of and used fairly and in good faith only to describe the goods or services of such party"). Of course, this is assuming that the painting is authentic and was acquired from the Akiane Gallery via the wholesale agreement. This carve-out reflects the fact that even though the licensor-licensee relationship has ended (such that it is infringement for Art & Soulworks to falsely imply that it is affiliated with Art Akiane and to capitalize on Art Akiane's reputation and goodwill), it is not entirely misleading for Art & Soulworks to continue making *some* references to Akiane and her art because Art & Soulworks does have the right under trademark law to resell the pieces of art lawfully acquired under the wholesale agreement. *See Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 817 (N.D. Ill. 2016), aff'd, 845 F.3d 802 (7th Cir. 2017) (discussing first-sale doctrine in trademark law).

Thus, to sum up, Art Akiane is likely to succeed on its claims of false designation of origin as to the phrases "Official Source" and "Art by Akiane." But Art Akiane is not likely to succeed when it comes to the phrases "Trusted Source" or

"Prince of Peace." Art & Soulworks may also continue referring to "Akiane" or "by Akiane" in a purely descriptive way when trying to resell the authentic art it purchased under the wholesale agreement.

### 3. Right of Publicity

Finally, Art Akiane argues that it is likely to succeed on its Illinois right-of-publicity claim. Under the Illinois Right of Publicity Act, Art & Soulworks may not use Akiane's "identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person." 765 ILCS 1075/30(a). According to Art Akiane, Art & Soulworks violated the Publicity Act by posting Akiane's likeness—in the form of photos and drawings of Akiane—on its social media pages and website in order to promote the sale of merchandise in the art-soulworks.com online store. Pl. Br. at 41-43 (citing Simmons Decl., Exh. V; Simmons Decl., Exh. W; Simmons Decl., Exh. AA).

As a threshold matter, Art & Soulworks argues that the Publicity Act claim is preempted by the federal Copyright Act. Def. Resp. Br. at 23. In response, Art Akiane explains that the Publicity Act claim is meant to get at something distinct from the rights protected under the copyright statute. Pl. Reply Br. at 10. Specifically, Art Akiane argues that, in this case, Art & Soulworks is using Akiane's likeness to advertise products and promote their business more broadly. *Id*. at 10-11. Indeed, courts have refused to apply preemption where a likeness is used to advertise another product or service. *See Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 908-11 (7th Cir. 2005) (holding that a Publicity Act claim based on the use of a photograph of the

plaintiff to sell a hair product was not preempted); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003-05 (9th Cir. 2001) (holding that the use of a photograph of plaintiffs to sell clothing was not preempted). That is precisely what is happening here. Art Akiane is not trying to use the Publicity Act claim as a vehicle for asserting ownership rights over particular images of Akiane; it is not saying, for instance, that Art & Soulworks may not display a photo of Akiane because Art Akiane owns that photo. That would be duplicative of a potential copyright claim and would be preempted. Rather, Art Akiane's claim is that Art & Soulworks is using images of Akiane to advertise products and promote its own business and merchandise—and that is not how Art Akiane wants the images of Akiane to be used. In other words, here, the "alleged unauthorized use of the plaintiff's identity extends beyond the copyrighted work" itself. *Dent v. Renaissance Mktg. Corp.*, 2015 WL 3484464, at *4 (N.D. Ill. June 1, 2015). So, the Publicity Act claim is not preempted.

Turning to the substance of the claim, Art & Soulworks basically invokes the same arguments as before: it has not made any *new* posts using Akiane's likeness, and the posts that do still exist were made back when Art Akiane sanctioned or requested them. Def. Resp. Br. at 23. For the same reasons as discussed above, these arguments also fail. Nothing in the licensing agreement (or the communications following the termination of the licensing agreement) suggests that Art & Soulworks was ever given a right to use Akiane's likeness in perpetuity to promote the art-soulworks.com online store. Similarly, just because Art Akiane sanctioned or requested Art & Soulworks's use of Akiane's likeness at a previous point in the

relationship does not mean Art & Soulworks has permission to use Akiane's likeness forever. Art Akiane is likely to succeed on its right-of-publicity claim.

### 4. Affirmative Defenses

Finally, Art & Soulworks raises a few affirmative defenses, none of which are successful in staving off the preliminary injunction. First, Art & Soulworks argues that Art Akiane has "woefully unclean hands." Def. Resp. Br. at 24. Specifically, Art & Soulworks points out that this lawsuit only arose because "Akiane required [Art Akiane] to summarily terminate the agreement with ASW." *Id*. Then, instead of "honoring the parties' more than 10-year relationship or the practice of renewing them when they expired, [Art Akiane] yanked the rug with no notice." *Id*. As a result, Art & Soulworks was left with unfulfilled orders and reputation damage from its own customers. *Id*. Thus, Art & Soulworks argues, Art Akiane should not now be allowed to "avail itself of the equity of the Court." *Id*. That is neither here nor there. To the extent that Art & Soulworks is suggesting that Art Akiane was not allowed to terminate (or refuse to renew) the licensing and wholesale agreements, that is wrong. With regard to the licensing agreement, there is no dispute that the parties had reached the end of the contract term, and either party could have chosen to renew or not renew the agreement. Similarly, the oral wholesale agreement was terminable at will. Of course, there is the separate issue of Art Akiane allegedly providing no notice to Art & Soulworks of its intent to terminate the contract. But there is no suggestion that the licensing agreement contained any notice requirement. Moreover, there is nothing in the record to suggest that Art Akiane chose not to provide notice of its

intent to terminate in bad faith. This seems more like an unfortunate case where both parties failed to account for the many contingencies of a long-term business relationship. In any event, even if Art Akiane had violated some sort of implied covenant of good faith and fair dealing, Def. Resp. Br. at 24, that is not really a persuasive reason to deny Art Akiane's motion, which deals only with the online display of intellectual property.

Art & Soulworks also argues that Art Akiane has waived its claims. According to Art & Soulworks, the online "displays of Akiane's works were open and notorious and have been occurring with full knowledge by AA since 2011." Def. Resp. Br. at 25. "Waiver may be made by an express agreement or it may be implied from the conduct, acts or words of the party who is alleged to have waived a right. An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009) (citing *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 585 N.E.2d 46, 49 (Ill. 1991)). Here, there was neither express nor implied waiver, at least not on this record. As explained above, it is irrelevant that Art Akiane approved of Art & Soulworks's conduct back in 2011 when the licensing and wholesale agreements were still in place. Nothing in the record suggests that Art Akiane intended to relinquish its right to enforce its intellectual property rights *after* the termination of the agreements. To

the contrary, Art Akiane sent multiple written requests to Art & Soulworks to remove the offending images and phrases. So there was no waiver here by Art Akiane.

Lastly, Art & Soulworks argues that Art Akiane's copyright claims are barred by the statute of limitations. Def Resp. Br. at 25. This too fails. As Art Akiane notes, the fact that the offending posts *continue* to be displayed is what matters, not when they were first posted. Pl. Reply Br. at 13. Here, at least for the purposes of the online displays being challenged in the preliminary-injunction motion, there is no dispute that Art & Soulworks continues to display unauthorized scripture-montage posts and other images and videos online. The statute of limitations is no barrier to the preliminary injunction.

## B. Inadequate Remedy at Law and Irreparable Harm

Because Art Akiane is likely to succeed on (most of) its copyright, trademark, and publicity claims, the next question is whether the inadequate remedy at law and irreparable harm requirements have been met. "These two requirements—irreparable harm and no adequate remedy at law—tend to merge." *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). Specifically, irreparable harm is "harm that cannot be repaired and for which money compensation is inadequate." *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (cleaned up). This requires "more than a mere possibility of harm." *Id. See also Winter*, 555 U.S. at 22. For the reasons explained below, the Court concludes that Art Akiane has sufficiently shown that there is an inadequate remedy at law as well as irreparable harm.

58

As a threshold matter, if the preliminary injunction is granted in this case, the scope of the relief will be narrower than what Art Akiane requests. Specifically, the preliminary injunction will *not* cover the category of conduct that underlies Art Akiane's claims about counterfeiting. That is, Art & Soulworks may continue to display unaltered images of authentic artwork for sale in its online store and will not at this stage be required to add copyright-protection mechanisms like watermarking or right-click protection to the images. Thus, the Court will not consider Art Akiane's counterfeiting arguments for purposes of the irreparable harm and inadequate remedy analyses.

That being said, Art Akiane does identify other forms of harm that *would* be addressed by the preliminary injunction. For one, Art Akiane argues that Art & Soulworks's online postings have usurped Akiane's creative control over the art. Pl. Br. at 44. (Technically, this inquiry should focus on the harm suffered by Art Akiane, not Akiane as an individual, but as a practical matter, Akiane's personal sense of artistic control as the author of the art is relevant to Art Akiane's harms.) Specifically, Art Akiane points out that Art & Soulworks's "unauthorized social media postings" undermines Akiane's decisions to control "her creative expression by fixing it in her art, and displaying it where approved." *Id*. Although the briefing does not go into this, the record clearly shows that Art Akiane had communicated to Corneliuson the fact that Akiane herself wanted to play a more active role in the Art Akiane business and in controlling her aesthetic brand and message. As the initial termination letter made clear, "Akiane wants to speak directly to people worldwide. Directly through her own

messages in film and books, not through other interpretations and marketing. Her new business model is her responsibility to interpret her art how it is supposed to be, not to market it and brand it the way others deem necessary." January Termination Letter at 7. The record does not show exactly what Akiane envisioned her new aesthetic to be, but it is clear that she did not believe that Art & Soulworks's social media posts were a suitable representation of her "brand, business reputation, and goodwill." *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 948 (N.D. Cal. 2009), aff'd, 658 F.3d 1150 (9th Cir. 2011). As a practical matter, that misalignment of vision and control could lead to all sorts of unquantifiable costs—for instance, if Art Akiane wished to move out of the religious-merchandising world and into more mainstream merchandising, or to even move out of merchandising altogether and exclusively sell canvases to high-end galleries, it would be difficult to monetize the loss of those types of opportunities, particularly if they never materialized in the first place because of the existence of Art & Soulworks's social media posts.

Art Akiane also mentions that Art & Soulworks's online conduct has harmed Art Akiane's own marketing efforts, because as long as Art & Soulworks continues to post Akiane-related content, search engines will continue to direct internet users to Art & Soulworks's website instead of Art Akiane's website. Pl. Br. at 46. This loss in internet traffic, too, would be difficult to monetize. For one, the fact that Art & Soulworks was a licensed seller for over a decade would make it difficult to disentangle the so-called legitimate visitors who were drawn to Art & Soulworks's website based on an appreciation of Art & Soulworks, versus the visitors who were,

for lack of a better word, tricked into visiting the Art & Soulworks website because they believed Art & Soulworks was still an official licensee of Art Akiane. In part because Art & Soulworks has been with Art Akiane from the start, it would be near-impossible to even begin to ascertain a baseline "typical" number of visitors to Art Akiane's website in the absence of Art & Soulworks's marketing and search-engine efforts. The same goes for lost sales—Art Akiane has almost always sold art online under the shadow of Art & Soulworks's social media efforts, and because of the absence of a baseline control period, it is not easy to tell whether Art Akiane could be selling even *more* art if the scripture-montage posts did not exist and Art Akiane had a somewhat different reputation in the marketplace.

Same goes for the trademark claims. The Seventh Circuit has explained that "irreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion." *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013). Here, for instance, in addition to the lost-sales and lost-traffic concerns mentioned above, Art Akiane also has an interest in controlling the quality of the goods that are sold under its name. Right now, Art Akiane has no control over the manner in which Art & Soulworks stores the authentic wholesale paintings while they are in inventory, or how Art & Soulworks chooses to package and ship the artwork, or even Art & Soulworks's customer-service practices. All of those things can affect a brand's reputation, so Art Akiane is entitled to some control over the perception of its products in the marketplace. At the same time, this kind of

quality-control goodwill is difficult to fully capture via a specific dollar amount. For instance, it would be near-impossible to untangle whether a customer decided not to buy a painting from Akiane Gallery because they had a bad experience with Art & Soulworks in the past and mistakenly believed Art & Soulworks and Akiane Gallery were one and the same, or if the customer simply decided one day that they no longer liked religious paintings and did not want to buy any more of those types of works. For these reasons, Art Akiane has sufficiently shown both inadequate remedy at law and irreparable harm.

## C. Balancing of Harms

The final step in the inquiry is to balance "the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018) (cleaned up). Under the sliding-scale approach, the more likely Art Akiane is to succeed on the merits, the less crucial it is for the balance of harms to weigh heavily in its favor. *Id.*

Here, Art & Soulworks characterizes itself as "a small business currently hanging by a thread due to [Art Akiane's] conduct." Def. Resp. Br. at 29. Art & Soulworks points out, for instance, that its revenues have declined 90% since 2019. Corneliuson Decl. ¶ 40. The Court is sympathetic to Art & Soulworks's frustrations, but it is important to distinguish the alleged harms caused by the initial termination of the licensing and wholesale agreements from the alleged harms that will be

imposed if the preliminary injunction is granted. And at the most basic level, the damage to Art & Soulworks arising from the preliminary injunction would be a drop in the bucket compared to the effects of the termination of the parties' contractual relationship. In other words, many of the harms highlighted by Art & Soulworks are solely the result of the termination of a longstanding business relationship. For instance, because of the termination of the licensing agreement, Art Akiane was forced to liquidate its existing inventory of licensed merchandise (and obviously is not allowed to manufacture licensed merchandise in the future). But that stays true regardless of the outcome of the preliminary injunction motion. And, as established during the May 2019 TRO hearing, Art & Soulworks is also allowed to keep selling its wholesale and private-collection paintings (as long as they are authentic). That, too, stays true regardless of the outcome of the preliminary injunction motion. So, the preliminary injunction—which deals *only* with intellectual property—does not alter the scope of what Art & Soulworks is and is not allowed to sell. Similarly, if the preliminary injunction is granted, it will not be as expansive as Art Akiane requests; Art & Soulworks will still be able to sell off its wholesale inventory through the art-soulworks.com online store (or on third-party online vendors). And in doing so, Art & Soulworks can continue to post pictures of the artwork for sale. Thus, the injunction will not prevent Art & Soulworks "from mitigating losses and being rid of the unwanted Akiane work." Def. Resp. Br. at 29.

Rather, the vast majority of Art & Soulworks's costs if the motion is granted will be the costs associated with removing its old social media posts and combing

through its online presence to remove any remnants of infringing content. This might seem like a tall order, but Art & Soulworks has already managed to remove many offending posts (like the free-downloads promotion). Of course, Art & Soulworks is also concerned about any secondary reputational and business effects of the sudden removal of its old Akiane-related online content. Def. Resp. Br. at 3. For instance, Art & Soulworks mentions that being forced to delete its old social media posts will impede its ability to form new partnerships with other Christian artists going forward, presumably because of the loss of social media followers and the loss of a record of its longstanding marketing efforts on behalf of Akiane. *Id*. at 3, 30. That is a legitimate concern, but on the other hand, Art & Soulworks's social media presence in general will remain (and has remained) substantial even without the Art Akiane relationship. In addition, Art & Soulworks argues that the uncertainty caused by this litigation has damaged its goodwill with online vendors, because even if it tries to sell a piece to a third-party vendor, Art Akiane will often respond by sending a take-down notice to the vendor. *Id*. at 30. But on that point, it seems like the granting of the preliminary injunction will in fact add clarity where it is needed.

In contrast, if the preliminary injunction is not granted, then Akiane's attempts to branch out and reclaim her personal artistic brand will be severely impeded. As long as the montage-style social media posts remain up, for instance, Akiane will be unable to fully control the aesthetic direction of her paintings, which, as established above, is unquantifiable. And finally, the public interest is also served by upholding copyright and trademark rights and preventing consumer confusion.

*MetroPCS v. Devor*, 215 F. Supp. 3d 626, 640 (N.D. Ill. 2016); *Monster Energy Co. v. Zheng Peng*, 2017 WL 4772769, at *6 (N.D. Ill. Oct. 23, 2017). Thus, given Art Akiane's likelihood of success on the merits and the balance of harms in Art Akiane's favor, the Court finds that Art Akiane is entitled to a preliminary injunction.

### D. Bond

Under Federal Rule of Civil Procedure 65(c), "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The purpose of an injunction bond is to compensate the defendant, in the event he prevails on the merits, for the harm that an injunction entered before the final decision caused him." *Ty*, 292 F.3d at 516. So, because the preliminary injunction will be granted, a bond is appropriate in this case.

In terms of the amount of bond, because "[a] party injured by an erroneous preliminary injunction is entitled to be made whole," the bond must be high enough to cover any losses the defendant incurs in the event the preliminary injunction was erroneously entered. *See Roche Diagnostics Corp. v. Med. Automation Sys., Inc.*, 646 F.3d 424, 428 (7th Cir. 2011). Here, Art Akiane asks for a $10,000 bond, Pl. Br. at 50, while Art & Soulworks asks for a $1 million bond, Def. Resp. Br. at 29. According to Art & Soulworks, $10,000 is "far too low and would be exceeded by the price of even a single piece of art owned by" Art & Soulworks. *Id.* But that is not the correct calculation. As mentioned above, the costs of complying with the preliminary

injunction will purely be the costs of removing infringing online content. Art & Soulworks is not being prevented from marketing or selling off the paintings in its inventory. So, it is not clear why the value of Art & Soulworks's art inventory should serve as the baseline for the bond calculation. That being said, the Court does acknowledge that there will inevitably be some expenses associated with the takedown of content from Art & Soulworks's website and social media pages. But neither side really offers any attempt to quantify what those expenses might amount to. So, the Court finds that a nominal bond of $10,000 is appropriate.

## IV. Conclusion

For the reasons explained above, the motion for preliminary injunction is granted in part and denied in part. To sum up, there is a very narrow universe of actions that Art & Soulworks may take with Art Akiane's intellectual property, all of which relate to selling off the existing inventory of wholesale and private collection artworks. Specifically, the Art & Soulworks and Corneliuson still may:

- Display thumbnail and full-size images of Akiane's artwork online for the sole purpose of reselling authentic works of art purchased under the wholesale agreement;

- Use Akiane's name in order to describe that a particular piece of art was authentically created by Akiane; and

- Use the phrases "trusted source" and "Prince of Peace" online.

But for now, Art & Soulworks and Corenliuson are enjoined from:

- Displaying thumbnail and full-size images of Akiane's artwork online in order to resell the works of art in Corneliuson's private-art collection, absent permission from Art Akiane;

- Displaying Akiane's artwork or derivative works created from that artwork (including all montage-style posts with religious text superimposed on the images) for general promotional purposes not tied to the sale of any particular piece of art;

- Displaying or altering videos belonging to Art Akiane;

- Using the phrase "official source" or representing that "Art by Akiane is a trademark of Art & SoulWorks" or representing that any member of Art & Soulworks is affiliated with "Art by Akiane" (for example, "Carol at Art by Akiane"); and

- Using Akiane's likeness or photo for promotional purposes.

The preliminary injunction binds, upon actual notice, the following: Art & Soulworks, Corneliuson; their officers, agents, servants, employees, and attorneys; and any other persons who are in active concert or participation with anyone of those persons previously listed. With regard to the enjoined activity, the Court acknowledges that the Defendants have already stopped engaging in much of the enjoined practices. But still there remains the possibility that errant displays or references have been overlooked.

As a practical matter, what this means is that Art & Soulworks must go through its social media pages and hide (or delete) any past posts featuring the religious-scripture montages and other modified versions of Akiane's artwork, even if they were made before the termination of the licensing agreement. The same goes for any other images or videos originally posted for "promotional purposes" under the licensing agreement. Similarly, Art & Soulworks may not continue to display any unmodified images of the wholesale artwork once the art is "sold out." Another way to think about this is that the only permissible online posts are thumbnail or full-size

images of the (presumably authentic) pieces of art from Art & Soulworks's wholesale inventory that are actively for sale.

As a final note, there was no need to consider Art Akiane's supplemental submission to justify issuing the preliminary injunction, so the motion to supplement, R. 171, is denied. In light of the ongoing discovery referral, the status hearing of August 28, 2020, is reset to October 9, 2020, at 8:30 a.m., but to track the case only (no appearance is required, as the case will not be called).

ENTERED:

Honorable Edmond E. Chang
United States District Judge

DATE: August 28, 2020