# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ART AKIANE LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 19-cv-02952 |
| ART & SOULWORKS LLC, CAROL CORNELIUSON, CARPENTREE, LLC, and VIRGINIA HOBSON, | ) Judge Edmond E. Chang ) Magistrate Judge Jeffrey Cole |
| Defendants. | ) |
| ART & SOULWORKS LLC, and CAROLYNE CORNELIUSON, | ) |
| Defendants - Counter-Plaintiffs, | ) |
| v. | ) |
| ART AKIANE LLC, | ) |
| Plaintiff - Counter-Defendant, | ) |
| and | ) |
| AKIANE ART GALLERY, LLC, and AKIANE KRAMARIK, | ) |
| Counter-Defendants. | ) |

**ART & SOULWORKS LLC AND CAROL CORNELIUSON'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO RECONSIDER A PORTION OF THE PRELIMINARY INJUNCTION ORDER AND TO STAY ENFORCEMENT OF THAT PART OF THE ORDER UNTIL THIS MOTION IS RESOLVED**

Art & Soulworks, LLC ("ASW") and Carolyne Corneliuson (collectively, "ASW") respectfully submit this Motion to Reconsider a portion of the Court's Preliminary Injunction Order ("Order"), [Doc. #177] and to stay enforcement of that portion of the Order only until this motion has been decided. In support, ASW states as follows:

**INTRODUCTION**

On August 28, 2020, the Court issued a lengthy ruling on Plaintiff Art Akiane LLC's ("Art Akiane's") Motion for Preliminary Injunction, granting it in part and denying it in part. [Doc. #177]. ASW respectfully moves the Court to reconsider one portion of the ruling – the portion relating to the display of posts containing montages that ASW created during the pendency of the License Agreement. As discussed in more detail below, in making its determination on this issue -- that there is a likelihood of success of copyright infringement in Art Akiane's favor based on the continued display of these montages on social media – the Court appeared to have overlooked a legal argument raised by ASW that is dispositive of the issue, and erroneously analyzed the issue under contract law rather than under copyright law. Specifically, the Court did not address ASW's argument that because these montages are derivative works created by ASW while the License Agreement was in place, ASW possessed a copyright in them independent of any copyright protection in the pre-existing material. The Court also made factual assumptions for purposes of this portion of the motion that ASW was permitted to make these derivative works under the License Agreement, but incorrectly ruled that ASW was not permitted to utilize them post-termination, in contravention of 17 U.S.C. § 203(b)(1) which permits the post-termination use of a derivative work created pre-termination. Accordingly, reconsideration of this portion of the ruling is warranted. In addition, because the Court ordered ASW to remove the montage posts in question, ASW also requests that the Court stay the enforcement of only that portion of the Order until this Motion for Reconsideration is resolved; and if the determination is reversed, to withdraw the portion of the Order requiring ASW to remove the montages.[1]

---

[1] To be clear, ASW is not seeking a reconsideration or stay of the entire order (i.e., the ordered removal of non-montage images or photographs of Akiane or videos, etc.); just the removal of posts that contain montages created by ASW while the licensing relationship was in effect.

# BACKGROUND

In the Preliminary Injunction Order, the Court describes the montage displays as follows:

> In addition to directly providing artwork and merchandise for sale through its online store, Art & Soulworks also engaged in extensive online marketing of Akiane's artwork in order to promote both the licensed merchandise as well as the wholesale art pieces. Corneliuson Decl. ¶ 19. For instance, Art & Soulworks operated multiple Facebook pages, including "Prince of Peace Friends" (which currently has roughly 750,000 followers) and "Art & SoulWorks." Id. ¶¶ 35, 50. ***Art & Soulworks often used its Facebook pages to share derivative versions of Akiane's art***. Specifically, Art & Soulworks would superimpose religious scripture and other inspirational text onto the digital images of Akiane's art, and then post the finished product on social media. Id. ¶ 43. In addition to the superimposed text on the artwork itself, the caption to the social media post would often contain additional scripture, as well as a link to the artsoulworks.com online store.

Doc. #177 at 8 (emphasis added). In the portion of the Order containing the ruling on the montage displays, the Court further states:

> That brings us to the substantial number of montage-type images on Art & Soulworks's social media pages. As a reminder, these are the images in which Art & Soulworks superimposed religious scripture and other inspirational text onto the digital versions of Akiane's artwork. There is no question that Art Akiane owns the copyrights to the underlying artworks, nor is there any question that Art & Soulworks is still publicly displaying those montage images. Def. Resp. Br. at 6.
>
> To be clear, Art & Soulworks has not published any new posts of this kind since the 2019 termination of the licensing agreement. See Corneliuson Decl. ¶ 48. Rather, the sole issue here is whether Art & Soulworks is allowed to continue displaying the old posts that were made back when the licensing agreement was in place, or whether Art & Soulworks must now go through and delete those posts. According to Art & Soulworks, the old posts do not constitute copyright infringement precisely because they were created pursuant to the licensing agreement. Def. Resp. Br. at 16. Art Akiane of course disagrees.
>
> ***As a threshold matter, it does not seem like Art & Soulworks is making any copyright arguments,*** like first sale or fair use, to support the montage-style posts. (The response brief really only discusses first sale and fair use in relation to the unaltered images of wholesale artwork for sale.) In any event, even if Art & Soulworks did invoke first sale or fair use, both of those arguments would fail.
>
> \* \*\*
>
> That just leaves the licensing agreement as a potential hook for Art & Soulworks's conduct. The first point of contention is whether the licensing agreement ever authorized Art & Soulworks to create these types of montage posts. Art & Soulworks says yes,

3

pointing to the broad provision in the licensing agreement that allowed Art & Soulworks to "use" Akiane's art "for all promotional purposes." Def. Resp. Br. at 16 (citing License Agreement at 1). According to Art & Soulworks, these montage-type posts were meant to drive traffic to the online store generally, which clearly fits within the "all promotional purposes" provision. Def. Resp. Br. at 11. Art Akiane, though, points to a later provision in the same contract, which required Art & Soulworks to obtain written consent from Art Akiane "prior to production" of "each product and each image." Pl. Reply Br. at 4 (citing License Agreement at 2). According to Art Akiane, Art & Soulworks did not obtain the necessary approval before posting the montage images. Pl. Reply Br. at 4. In response to that, Art & Soulworks points out that the Kramariks were aware of the content of Art & Soulworks's social media and even "endorsed and assisted with them." Def. Resp. Br. at 20.

***Even assuming Art & Soulworks is correct*** (which might or might not be the case, depending on the proper interpretation of the contractual language), that ultimately does not matter for purposes of deciding this preliminary-injunction motion. Rather, what matters is whether the parties intended for Art & Soulworks to retain rights to create promotional material out of Akiane's artwork after the termination of the licensing agreement. And here, nothing in the text of the licensing agreement (or the various schedules attached to the agreement) suggests that the parties intended to allow Art & Soulworks to retain any licensing or promotional rights following the termination of the licensing agreement. Similarly, there is no evidence in the email record that the parties intended for the old social media posts to stay up post-termination. It is true that, in the initial January 2019 termination letter, there is a "Licensing Dissolvement Agreement" attached to the letter; that agreement states that all future social media posts are no longer allowed, License Agreement at 11, but does not explicitly mention past social media posts featuring Akiane's artwork. But then, in the April 2019 letter withdrawing all wind-down accommodations, Art Akiane did explicitly state that Cornliuson "needs to immediately remove all images of [Akiane's artwork] from all its social media and website platforms." Corneliuson Decl., Exh. 10 (emphasis added). That would appear to cover all of the social media montage posts, regardless of when they were posted.

Thus, even if Art Akiane had "approved" of these images at some previous point in time when the licensing agreement was still in effect, or even if Art Akiane itself had collaborated with Art & Soulworks to create the images, that does not matter for purposes of copyright infringement. Art & Soulworks previously had an express license to display Akiane's artwork for merchandising and promotional purposes—but that license no longer exists. The license existed as an exception to Art Akiane's otherwise exclusive copyright privileges (like display, distribution, and reproduction), so without the license, Art & Soulworks may not continue to display the images. There is nothing in the record to suggest that the parties intended for Art & Soulworks to retain some sort of post-termination display right as to the old social media montage posts. So, it is not enough that Art & Soulworks has stopped creating new posts, because the old posts themselves also likely infringe on Art Akiane's display rights. All in all, Art Akiane is likely to prevail

4

> on its copyright claim as to the religious-scripture-montage images on Art & Soulworks's social media pages.

*Id.* at 43-46 (emphasis added) [some internal citations omitted].

## **STANDARD OF REVIEW**

Courts have inherent authority under Federal Rule of Civil Procedure 54(b) to reconsider interlocutory orders "at any time before entering a final judgment." *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012), *Wiegel v. Stork Craft Mfg., Inc.,* 891 F. Supp. 2d 941, 944 (N.D. Ill. 2012). Similarly, a motion for reconsideration and to alter or amend a preliminary injunction order is allowed under Rule 59(e). *Fin. Servs. Corp. of Midwest v. Weindruch*, 764 F.2d 197, 198 (7th Cir. 1985) (noting that "an order granting a preliminary injunction is a judgment within the meaning of" Rule 59(e)).

The analysis under Rule 54(b) or Rule 59(e) is the same and ASW recognizes that a party seeking reconsideration bears a heavy burden. *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Patrick v. City of Chicago,* 103 F. Supp. 3d 907, 911-12 (N.D. Ill. 2015). A reconsideration motion is appropriate to correct manifest errors of law or fact. *Id.* The Seventh Circuit has held that a manifest error occurs when "the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc*., 906 F.2d 1185, 1191 (7th Cir. 1990); *see also Oto v. Metro. Life Ins. Co*., 224 F.3d 601, 606 (7th Cir. 2000) (describing "manifest error" as a "wholesale disregard, misapplication, or failure to recognize controlling precedent"). The decision to grant a motion to reconsider "is a matter squarely within the Court's discretion." *Darvosh v. Lewis*, No. 13 C 4727, 2015 WL 5445411, at 3 (N.D. Ill. Sept. 11, 2015) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc*., 90 F.3d 1264, 1270 (7th Cir. 1996)).

**ARGUMENT**

A. **The Montages Are Derivative Works.**

ASW seeks reconsideration of the Order relating to the montages because the Court overlooked the legal significance of the montages being derivative works. Section 101 of the Copyright Act defines a derivative work as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work'." 17 U.S.C. §101. The Copyright Act specifically grants the author of a derivative work copyright protection in the incremental original expression contributed as part of the derivative work. See id., §103(a), (b); *see also, Schrock v. Learning Curve International Inc. RC2,* 586 F.3d 513, 516 (7th Cir. 2009); *Pickett v. Prince*, 207 F.3d 402, 405 (7th Cir.2000); *Lee v. A.R.T. Co*., 125 F.3d 580, 582 (7th Cir.1997).

A basic principle applicable to derivative works that was not considered in the Order is that "[t]he copyright in a derivative work *is independent of*, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material." 17 U.S.C. §103(2) (emphasis added). In other words, that ASW has rights as the author of the montages does not undermine Art Akiane's full copyright protection in the underlying Akiane art featured in the montages.

The Court acknowledged throughout the Order that the montage displays in question are derivative works. *See, e.g.,* Doc. #177 at 2, 8 ("ASW often used its Facebook *to share derivative versions* of Akiane's work"), 22, 66 ("ASW and Corneliuson are enjoined from …[d]isplaying

… ***derivative works*** created from that artwork (including all montage-style posts with religious text…") (emphasis added). This makes sense, as the montages created by ASW meet the test of originality for copyright, which simply requires that each montage be "independently created" by ASW and that "it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991). The Supreme Court emphasized in *Feist* that "the requisite level of creativity is extremely low; even a slight amount will suffice." *Id.* The *Feist* Court also explained that "[o]riginality does not signify novelty; a work may be original even though it closely resembles other works." *Id.*

      **B.**      **The Montages in Question Were Only Created And Posted While the License Agreement Was Operative.**

The Court acknowledges that the montages were created and posted only when the License Agreement was in effect:

> To be clear, there is no dispute that Art & Soulworks has not posted any new montage images since the termination of the license agreement in 2019. Id. ¶ 48. But the prior posts—made while the license agreement was still in effect—are still visible.

(Doc. #177 at 17, 43). ASW asserted that these montages were created and posted while the License Agreement was in effect to drive traffic to the ASW website and included the ASW website link for promotional purposes under the broad contractual grant that ASW could use Akiane's art "for all promotional purposes." *Id*. at 44 (citing ASW's Resp. Br. at 16).

While Art Akiane seems to contend that it did not sanction or authorize the montages when the License Agreement was in effect, ample evidence was presented in ASW's Response Brief to refute this argument, including posts from Art Akiane's website during the time in question, showing a display of the same montages now at issue. (Doc. #88 at 10-12). ASW also attached as Exhibits 11 and 12 emails from Mark Kramarik showing his knowledge of the scripture being used and that the montages were being posted to Facebook. *Id.* Furthermore, the

7

montages were posted with such frequency on ASW's Facebook page that the idea that the Kramariks *never* saw even a single montage during the 10-year license period defies logic.

Still, the Court did not have to make the ultimate determination as to whether the montages fell within the broad rights afforded ASW in the License Agreement, as the Court instead made an assumption that ASW's position was correct and that the montages *were* allowed by the contract. This assumption, however, should have inured to ASW's benefit but did not. The Court stated:

> ***Even assuming Art & Soulworks is correct*** [that the montages were allowed by the "all promotional purposes in the contract"] (which might or might not be the case, depending on the proper interpretation of the contractual language), that ultimately does not matter for purposes of deciding this preliminary-injunction motion.

(Doc. #177 at 45) (emphasis added).

### C. A Derivative Work Prepared While A License Was Operative Gives Rights in the Derivative Work to the Author *After* the License is Terminated

Under the Copyright Act, "a derivative work prepared under authority of the grant [to prepare a derivative work] before its termination ***may continue to be utilized under the terms of the grant after its termination.***" 17 U.S.C. §203(b) (emphasis added). Indeed, the right to claim copyright in a derivative work "arises by operation of law, not through authority from the copyright owner of the underlying work." *Shrock,* 583 F.3d at 516 (finding that photographs of toy trains authorized by the toy manufacturer were derivative works and that rights in derivative works continued post-termination), *citing* 1 Nimmer on Copyright § 3.06, at 3-34.34. Thus, if the Court's determination is that the montages did fall within the contours of the "all promotional purposes" language of the License Agreement, or the Court assumes that ASW's contention that they did, is true, for purposes of the preliminary injunction motion, then it follows by operation

8

of law that ASW has the right to create the derivative works, and copyright protection in them survives the termination of the License Agreement. *See id.*

### D. The Court Overlooked ASW's Copyright Argument and Incorrectly Relied on Contractual Intent

Although ASW raised the derivative works argument in its Response Brief (Doc. #82 at fn. 12 at 20-21), the Court appeared to have overlooked it, and instead stated:

> [a]s a threshold matter, it does not seem like Art & Soulworks is making any copyright arguments, like first sale or fair use, to support the montage-style posts. (The response brief really only discusses first sale and fair use in relation to the unaltered images of wholesale artwork for sale.)

(Doc. #177 at 43). But ASW did raise the derivative right argument in its Response Brief, stating as follows:

> Art Akiane demands that ASW go back and scrape the internet clean of all images relating to Akiane that ASW posted online when the license agreement was in effect. Under the Copyright Act, "[a] derivative work prepared under authority of the grant before its termination may continue to be utilized under the terms of the grant after its termination..." 17 U.S.C. § 203(b)(1). This is to "preserve the right of the owner of a derivative work to exploit it, notwithstanding the reversion" of rights following termination. *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 173 (1985). Thus, "[t]he critical point in determining whether the right to continue utilizing a derivative work survives the termination of a transfer of copyright is whether it was 'prepared' before the termination." Mills, 469 U.S. at 173. "Pretermination derivative works—those prepared under the authority of the terminated grant—*may continue to be utilized under the terms of the terminated agreement*." Id. (emphasis added). Further, modifications to derivative works are permitted post-termination, so long as any additional material is not based upon the underlying work. *See Architettura, Inc. v. DBSI Cumberland*, 652 F.Supp. 2d 775, 784-85 (N.D. Tex. 2009) (citing 3-11 Nimmer on Copyright § 11.02 n.65). The images Art Akiane alleges constitute infringing posts online and on social media are derivative works—they contain montages of Akiane's artwork and images with material such as stylized scripture added to it. The License Agreement gave ASW the "worldwide & exclusive" right to use all Art Akiane images "for all promotional purposes." ASW made those posts before Art Akiane's abrupt termination. While Art Akiane contends those posts are infringing now—since the license was terminated— that is directly contradicted by § 203(b) and Mills.

The Court however, did not take this argument into consideration when evaluating Art Akiane's likelihood of success on the merits that the continued display of the montages is

9

infringing. Although the Court referred to the montages as derivative works throughout the Order, it did not address or acknowledge the rights that are afforded to ASW as the author of the derivative works under § 203(b) and Mills. To the extent the Court addressed the nature of the works, it was simply to assume that ASW was correct that the montages were created per the grant of the License Agreement. (Doc. #177 at 45). However, the record, and this assumption, followed to its logical conclusion, gives rise to post-termination rights to ASW as a matter of law with respect to the montages.

Instead, the Court focused on the contractual language – not for purposes of determining if the montages were in fact derivative works, but to glean the intent of the parties regarding ASW's post-termination rights. While it is true that the parties could have contracted away the copyright protection that attaches to derivative works, the Court did not examine the contract for that reason. *See Liu v. Price Waterhouse LLP,* 302 F.3d 749, 755 (7th Cir. 2002) ("While the Copyright Act makes authors of derivative works the presumptive owners of copyright rights in their contribution, it also allows parties to adjust those rights by contract.") (quotation marks omitted). Rather, the Court erroneously searched for a *separate* grant of post-termination rights, and in so doing, overlooked the rights that remain with ASW post-termination in the absence of express language limiting such rights.

The Court framed the issue as follows:

Even assuming Art & Soulworks is correct [that the montages were allowed under the "all promotional purposes" language of the License Agreement] (which might or might not be the case, depending on the proper interpretation of the contractual language), ***that ultimately does not matter for purposes of deciding this preliminary-injunction motion***. ***Rather, what matters is whether the parties intended for Art & Soulworks to retain rights to create promotional material out of Akiane's artwork after the termination of the licensing agreement.*** And here, nothing in the text of the licensing agreement (or the various schedules attached to the agreement) suggests that the parties intended to allow Art & Soulworks to retain any licensing or promotional rights following the termination

of the licensing agreement. Similarly, there is no evidence in the email record that the parties intended for the old social media posts to stay up post-termination.

(Doc. #177 at 45) (emphasis added).

However, under copyright law, if there is a determination that ASW *was* authorized to create the montages under the "for all promotional purposes" language while the License Agreement was in effect, there is no commensurate need to expressly afford ASW additional rights in the derivative works post-termination. *See Mills*, 469 U.S. at 173. As the U.S. Supreme Court stated in *Mills,* "[t]he critical point in determining whether the right to continue utilizing a derivative work survives the termination of a transfer of copyright is whether it was 'prepared' **before** the termination." *Id.* (emphasis added).

The only reason to examine the License Agreement with respect to the post-termination rights is to determine if, in addition to the broad grant to ASW to *create* derivative works, there was a prohibition on the attendant rights in those derivative works post-termination. There is no such prohibition. *See* License Agreement.[2] While the Court found that "nothing in the text of the licensing agreement" suggests that the parties intended for ASW to retain any such rights post-termination, the mere act of *allowing* the creation of derivative works as part of the License Agreement, in the absence of an express termination of those rights post-termination, gives ASW the right to display the montages post-termination as a matter of law. 17 U.S.C. §203(b); *Mills*, at 173; and *Schrock v. Learning Curve*, at 523 ("[T]he Act provides that copyright in a derivative

---

[2] Although the Court observed that in an April 2019 letter withdrawing all wind-down accommodations, Art Akiane stated that Corneliuson "needs to immediately remove all images of [Akiane's artwork] from all its social media and website platforms" Doc. #177 at 45, this was not a contract that ASW signed (nor was the "Dissolution Agreement" sent by Art Akiane when it terminated the License Agreement without notice) that would limit ASW's derivative works. Rather both the April 19 letter and the "Dissolution Agreement" were demands by Art Akiane that did not constitute mutually agreed upon contracts.

11

work, like copyright in any other work, arises by operation of law once the author's original expression is fixed in a tangible medium.)

In *Schrock*, the Seventh Circuit rejected the idea that additional permission beyond the permission to make a derivative work is needed for the rights afforded the derivative work to continue post-termination. *Id.* at 515-16 ("In requiring permission to make and permission to copyright the photos, the district court relied on language in *Gracen v. Bradford Exchange*, 698 F.2d 300 (7th Cir.1983), suggesting that both are required for copyright in a derivative work. We have more recently explained, however, that copyright in a derivative work arises by operation of law-not through authority from the owner of the copyright in the underlying work-although the parties may alter this default rule by agreement.")

While it is true that upon termination of the License Agreement with ASW, ASW no longer had the right to create *new* derivative works, the right to continue to display the montages in its social media posts remained unaffected. In fact, as the Court duly noted, ASW has not created new derivative works since the termination, and has not even "re-posted" the old ones (something that under Section 203(b) of the Copyright Act, ASW is entitled to do); it merely left the derivative works it created under the License Agreement in its social media feeds, albeit concealed by nearly two years of new non-Akiane posts.

Therefore, it was manifest error when the Court ruled that "… even if Art Akiane had 'approved' of these images at some previous point in time when the licensing agreement was still in effect, or even if Art Akiane itself had collaborated with Art & Soulworks to create the images…*that does not matter for purposes of copyright infringement*." (Doc. #177 at 45-46) (emphasis added). The grant of the right to create the montage images when the licensing agreement was still in effect does, in fact, matter greatly for purposes of copyright infringement.

12

ASW, as owner of the copyrights in the derivative work has the full panoply of exclusive copyrights in the montages.

Because the Court did not address ASW's argument that the montages are derivative works that ASW is allowed as a matter of law to continue to display post-termination, a manifest error occurred when the Court ruled that Art Akiane demonstrated a likelihood of success on the merits of its copyright infringement claim related to the montages. Similarly, a manifest error occurred when ASW was ordered to remove the displays of the montages given that ASW, as author of the derivative works, has the right to continue to display them. For these reasons, this portion of the preliminary injunction Order should be reversed.

### E. Requiring ASW to Remove the Montages Will Cause Harm

In the Order, the Court acknowledge the negative impact that has resulted from the conduct Art Akiane set into motion when it abruptly terminated the parties' 10- year relationship without notice. (Doc. #177 at 62). Improperly requiring ASW to remove posts that it is entitled to display will cause its own irreparable harm to ASW that will be difficult to quantify in dollars. Because these posts were organically displayed at the time they were posted, once they are removed, even if a ruling on the merits entitles ASW to re-post them at a later date, the impact will be lost, since social media does not allow one to back-date posts and "put them back where they used to be" after they have been removed. Not only do the montages reflect the religious sentiment ASW has chosen to espouse, the montages are essentially a portfolio of ASW's work over the past 10 years. Even though Art Akiane has posted a $10,000 bond as part of the Order, this amount will not be sufficient to remedy the harm that will result from requiring ASW on even a temporary basis, to remove posts that under copyright law, it is entitled to post.

For this reason, ASW also asks the Court to stay enforcement of the portion of the Order related to montages until this motion is resolved.

## CONCLUSION

For the reasons stated above, ASW and Corneliuson respectfully request that this Court reconsider its decision on the Motion for Preliminary Injunction with respect to the montage displays and rule that Art Akiane has not shown a likelihood of success on the merits of the copyright claim related to them. The Court should also reconsider its Order that ASW remove the display of the montages and grant ASW and Corneliuson all other relief the Court deems just and proper. ASW also requests that the Court stay its Order regarding the montages until resolution of this Motion.

Dated: September 2, 2020

Respectfully submitted,

*/s/ Nicole N. Auerbach*

Nicole N. Auerbach
Salvador Carranza
Kehinde Durowade
ELEVATENEXT LAW
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
(312) 676-5469 - Telephone
(312) 676-5499 - Facsimile
nicole.auerbach@elevatenextlaw.com
salvador.carranza@elevatenextlaw.com
kehinde.durowade@elevatenextlaw.com

## CERTIFICATE OF SERVICE

I certify that on September 2, 2020, I caused a copy of the attached **Memorandum in Support of ASW's Motion to Reconsider** to be served upon all counsel of record via the Court's ECF system.

*/s/ Nicole N. Auerbach*
Nicole N. Auerbach
