**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ART AKIANE LLC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 19 C 2952** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **ART & SOULWORKS LLC and CAROL CORNELIUSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

The briefing on the present discovery dispute, [Dkt. #147] while extensive, unfortunately has tended from time to time to focus on the interactions between counsel, which, on occasion, appear to have been strained. [Dkt. #147, Dkt. #148, at 2-6; Dkt. # 157, at 1-7; Dkt. #160, at 1-5]. Given the disparities between the descriptions by counsel of various meetings and interactions, one may well wonder if the respective counsel were at the same meetings and participated in the same interactions. The Response to the Defendants' Motion says it has been withdrawn and suggests that Plaintiff is still producing documents and parts of the defendants' motion are moot. The Defendants deny that in their Reply. Short of ongoing physical supervision by the court, it is often difficult, if not impossible, to determine what has actually gone on between counsel. And, a review of the often competing and lengthy emails exchanged between counsel seldom resolves factual disputes or allows a court to come to a conclusive determination of what actually occurred. Thus, one side saying it has complied with appropriate discovery requests or that further supplementation is not required is not necessarily conclusive. And so, where there is a dispute, we must decide the Motion that has been

filed. [Dkt. #147].

We do not in any way mean to be critical of the skilled lawyers in this case. Quite the contrary. But this is the fifth motion to compel in this case in a matter of about two months. What has occurred here unfortunately is emblematic of the discovery conflicts which routinely (and often needlessly) occur in case after case. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 559 (2007) ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side."). *See also* Frank H. Easterbrook, *Discovery as Abuse*, 69 B.U.L.Rev. 635, 639 (1989). Unfortunately, the problem is not new.[1] But, to borrow the title of an Article by Judge Gettleman, "We Can Do Better." 25 LITIGATION 3 (Summer 1999).

**ARGUMENT**

Without minimizing the importance of the case, the fact remains that, at bottom, this is a case about the commercial rights to about a dozen paintings. With each motion, the party filing it represents that there has been compliance with Local Rule 37.2 and that counsel have conferred in a good faith effort to resolve their discovery dispute. But as this is the fifth dispute between the parties in just a few weeks, it is difficult to conclude that Local Rule 37.2 is really being honored and to understand how such talented lawyers could find themselves in such dilemmas.

---

[1] *See, e.g., Roadway Express, Inc. v. Piper* , 447 U.S. 752 (1980); *Herbert v. Landry*, 441 U.S. 153, 176 (1979); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 903 (7th Cir. 1981); Virginia E. Hench, *Mandatory Disclosure and Equal Access to Justice: The 1993 Federal Discovery Rules Amendments and the Just, Speedy and Inexpensive Determination of Every Action*, 67 Temple L.Rev. 179, 232 (1994); Comment, *Discovery Abuse Under the Federal Rules: Causes and Cures*, 92 Yale L.J. 352 (1982); Milton Pollack, *Discovery—Its Abuse and Correction*, 80 F.R.D. 219, 223 (1979).

**A.**

The Defendants complain of fifty separate discovery requests that they claim the Akianes have not complied with, and they contend further that there has been noncompliance with certain of the Local Rules. [Dkt. #147, 148]. Thus, despite the fact that there could have been multiple "meet-and-confers," [Dkt. # 148, at 2, 5], a large number of disputes have been left unresolved. We are told that emails, not Rule 37.2 conferences, were the preferred method of communication in other disputes and that conferences were very rare in comparison to emails between counsel. [Dkt. #160, at 7]. While emails may be the way of the world today,[2] under Local Rule 37.2, they are not a substitute for a face-to-face or telephonic meeting at which counsel can actually speak to each other, with a view to resolving disputed issues, and not merely repeating positions that have been set forth in prior written email exchanges. The Rule could not be clearer and must be followed. *See BankDirect Capital Fin., LLC v. CapitalPremium Fin., Inc.*, 343 F. Supp. 3d 742, 744 (N.D. Ill. 2018)(collecting cases). Unfortunately, in all too many cases, no more than lip service is paid to the Rule's requirements and, in effect, the task of resolving the conflicts that could and should have been resolved by counsel had Rule 37.2 been followed are shifted to the court.

**B.**

The Motion to Compel cites some fifty separate discovery requests and accompanying responses from six different documents served on three different counter-defendants that the defendant has issues with. Unfortunately, not a single case is cited in support of the Motion as to any one of about forty-five of the requests. Courts generally find that unacceptable. *See, e.g., Shipley*

---

[2] *See generally,* Michael B. Bittner, *Electronic Discovery: Understanding the Framework of Florida E-Discovery Law*, Trial Advoc. Q., Spring 2016, at 22; Lawrence D. Rosenberg, *Lawyers' Poker: Using the Lessons of Poker to Win Litigation*, 54 The Advocate (Texas) 10, 12 (2011),

*v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1063 (7th Cir. 2020)("Arguments that are underdeveloped, cursory, and lack supporting authority are waived."). *Accord Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 n.2 (7th Cir. 2019); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). The Reply Brief suffers from the same deficiency.

The only case cited in the Motion to Compel has to do with litigation funding. *Fulton v. Foley*, 2019 WL 6609298, at 4 (N.D. Ill. 2019). For the Defendants, "[funding] documents are relevant to exploring statements or representations about the facts of the case that [Plaintiff] Counter-Defendants have made and could expand on the allegations of ASW's counterclaims, identify witnesses and potentially be used for impeachment." [Dk. #148 at 12]. But that rationale would obtain in every case and make all funding information discoverable. The cases do not conclude that that is an acceptable rationale for discovery of litigation funding information.

In addition, the Defendants' Reply Brief [Dkt. #160] also does not cite any cases, aside from the case regarding their request for Third-Party funding information contained in their opening brief. [Dkt. #148 at 12]. There is merely the *ipse dixit* that requests involving "litigation funding" might or could reveal information involving the issues in the case. But, as has been said above, if that generalization alone were sufficient, third party funding information would, in effect, be automatically discoverable since matters relating to a given case might have been discussed in some way with actual or prospective lenders. But third party funding information is not automatically discoverable as courts across the country have held. Indeed, *Fulton* acknowledged those courts that have addressed the issue have held that litigation funding information is generally irrelevant to proving the claims and defenses in a case. *See* the authorities collected in *Fulton*, 2019 WL 6609298

at *2. *See also Miller UK Ltd. v. Caterpillar, Inc*., 17 F.Supp.3d 711, 742 (N.D. Ill. 2014).[3]

Significantly, while there are eighteen affirmative defenses and seven separate counterclaims against the Plaintiff, aside from a couple of the documents requests, there is no indication how the requests are relevant to any of the defenses or counterclaims and no specification of which counterclaim or affirmative defense is involved. While it would be a difficult task to sort out so many discovery requests and show how any are relevant to so many affirmative defenses and counterclaims, it is required, and a broad-based, generalized approach is often not conducive to persuading a court of the correctness of a particular position that is sought to be advanced. Indeed, there is a danger in such a case that a court might overlook an otherwise meritorious position. *See, e.g., Fifth Third Mortg. Co. v. Chi. Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012)("When a party comes to us with nine grounds . . . , that usually means there are none."); *Walker v. Abbott Laboratories*, 416 F.3d 641, 643 (7th Cir. 2005); *United States v. Mahoney*, 247 F.3d 279, 282 (D.C.Cir. 2001); *Pit Song Barger v. Gramley*, 141 F.3d 728, 74 (7th Cir. 1998)*; United States v. Brock Smith*, 991 F.2d 1363, 1366 (7th Cir. 1993).

In the main, the Argument section of the Defendants' brief goes like this:

> 1. Third-party Contracts for the purchase, sale, printing, or distribution, and reproduction of Akiane's Works:

---

[3] In addition to the wealth of cases dealing with litigation funding, the literature regarding "litigation funding" is extensive, and there are scores of scholarly articles dealing in one way or another with the concept. A discussion of one aspect or another of litigation funding will be found in the following cases (to cite only a handful). *See, e.g., In re Valsartan N. Nitrosodimethylamine*, 2019 WL 4485702 at *3 (D.N.J. 2019); *Benitez v. Lopez*, 2019 WL 1578167, at *1 (E.D.N.Y. 2019); *Kaplan v. S.A.C. Capital Advisors, L.P., S.A.C.*, 2015 WL 5730101, at *5 (S.D.N.Y. 2015), aff'd, 141 F. Supp. 3d 246 (S.D.N.Y. 2015); *Space Data Corp. v. Google LLC*, 2018 WL 3054797, at *1 (N.D. Cal. 2018); *MLC Intellectual Property LLC v. Micron Technology, Inc*., 2019 WL 118595, at *2 (N.D. Cal. 2019); *Yousefi v. Delta Electric Motors, Inc*., 2015 WL 11217257, at *2 (W.D. Wash. 2015).

•RFP 9 and 11 to Art Akiane
•RFP 7 Akiane Gallery
•RFP 7 to Akiane Kramarik

2. Documents and communications tending to show any acts or omissions by Counter-Defendants that constitute permission to anyone, to copy, reproduce, duplicate, modify, alter, or distribute Akiane's Works:

• RFP 10 to Art Akiane
•RFP 8 to Akiane Gallery.

3. Internet/Social Media posts relating to Akiane:
•RFP 17 to Art Akiane
•RFP 15 to Akiane Gallery

[Dkt. #148, at 10].

That is what the defendants have provided for over forty-one of the fifty or so requests on which they seek a ruling. There are no explanations given or arguments presented. It is just a list. And while I could grant a motion supported by an appropriate memorandum, with citations to the record and supported by pertinent authority, I ought not and cannot grant a list like the one provided. In essence, the defendants have asked me to scroll through nine exhibits, covering 250 pages, and for each of the four dozen or so requests, discern how it is relevant to any one of the defendants' twenty-five counterclaims or affirmative defenses, and then manufacture an argument, illuminated by case law, on the defendants' behalf.[4] "We will not fill th[e] void by crafting arguments and performing the necessary legal research" on behalf of either side. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 842 (7th Cir. 2010).

---

[4] To make matters worse, Defendants' counsel has placed all the document requests defendants made to the three Akianes onto EC/CMF in a single 137-page exhibit. As the Defendants provide no page citations to their exhibits, for example, to locate the first disputed request, I would have to scroll through 102 pages. But courts are admonished they are not to play "archaeologist with the record." *DeSilva v. DiLeonardi,* 181 F.3d 865, 867 (7th Cir.1999). *See also United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)("[j]udges are not like pigs, hunting for truffles buried in [the record].").

This is not a preference; it is something courts are forbidden to do. *See, e.g., Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 297 (7th Cir. 2018); *Rahn v. Bd. of Trustees of N. Illinois Univ*., 803 F.3d 285, 294 (7th Cir. 2015); *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015). Requiring the court to perform such a task would be patently unfair. It would require the court to weigh in on one side to the disadvantage of the other and would be inconsistent with the adversary system, itself. The Ninth Circuit put it this way:

> If the district court, or later this court, searches the whole record, in practical effect, the court becomes the lawyer for the respondent, performing the lawyer's duty of setting forth specific facts showing that there is a genuine issue for trial. The movant is then denied a fair opportunity to address the matter in the reply papers.

*Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). *Accord United States v. Gustin*, 642 F.3d 573, 575 (7th Cir. 2011)("it is not a judge's job to assist one advocate at another's expense."). Indeed, the Supreme Court recently emphasized, "[i]n our adversarial system of adjudication we follow the principle of party presentation." *United States v. Sineneng-Smith*, _U.S._, 140 S.Ct. 1575, 1579 (2020).

That principle assigns to the court the role of "neutral arbiter of matters the parties present." *Id.* Thus, "as a general rule, [o]ur system is designed around the premise that [parties represented by competent counsel] know what is best for them and are responsible for advancing the facts and arguments entitling them to relief.'" *Id*. at 1579. (Brackets in original). Of equal importance, is the principle that a court ought not to do organizational tasks that could and ought to have been done by counsel, lest time be improperly taken away from other cases waiting in the queue with properly supported and explained motions. *Channell v. Citicorp Nat. Services, Inc.*, 89 F.3d 379, 386 (7th Cir.

1996); *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir. 1987). Accordingly, the defendants' motion is denied as to all the requests in the "list."

**C.**

The rulings on the remaining Requests are as follows:

Interrogatory 6 (to Art Akiane): Defendants fail to include Interrogatory 6 or Art Akiane's objections thereto in their exhibits [Dkt. #148-2, at Pages 32-33/45], so their motion is denied as to this interrogatory.

Interrogatory 9 (to Art Akiane): It asks Plaintiff to identify and describe all instances since January 1, 2015 in which it posted or shared an image relating to Akiane's Works through the Internet, including but not limited to posting to or sharing through social media. Rather than explain the relevance of this request to any of its counterclaims, defendants merely complain that Art Akiane has requested the same type of information from them. But the case they cite does not support their entitlement in this case to the requested documentation. Of course, both sides in a case are entitled to *legitimate* discovery. But that obvious principle is all that *Johnstone v. Fox*, 1986 WL 7978, at 1 (N.D. Ill. 1986) holds. The legitimacy of discovery in this, as in all cases, is determined by Rule 26 of the Federal Rules of Civil Procedure – not by some principle of automatic and simple equivalence.

Thus, merely because the Plaintiff requested a certain category of information from Defendants does not mean that an identical request from the Defendants to the Plaintiff is automatically legitimatized and must be honored. The discovery rules, not some abstract principle of equivalence determines the permissibility of any given request. Moreover, Art Akiane responded that it did not post after January 1, 2015. The motion is denied as to this interrogatory.

Interrogatory 5 (to Akiane Kramarik): It asks Plaintiff to identify and describe all instances since January 6, 2008 in which You licensed any of Akiane's Works or the likeness of Akiane Kramarik, including identifying the person or entity, what work was licensed, the date and the amount of royalties received. Akiane Kramarik listed 19 instances, by date, and pointed to several documents regarding royalty payments. Defendants complain that this response fails to identify the works licensed. Plaintiff must identify which works were licensed in the foregoing instances.

Interrogatory 6 (to Akiane Kramarik): It asks her to identify and describe all instances since January 6, 2008 in which she gave permission to any person or entity to produce, reproduce, duplicate, copy, modify, or print Akiane's Works. Ms. Kramarik answered that "Art Akiane LLC has certain rights to produce, reproduce, duplicate, copy, modify, or print her artwork. See documents produced at bates numbers AA000561-AA000568. Further answering, Akiane stated that TSG Products, Inc. was authorized to print puzzles in November 2017 relating to 'Jesus,' 'Messenger,' and 'Today.'" Defendants assert that this response cannot be true, because she identified 19 instances where she licensed her work. Licensing and merely granting permission are two different things – why else would defendants have drafted two separate interrogatories. This response is adequate.

RFP Nos. 53, 51, and 47 to Art Akiane, Akiane Gallery, and Akiane Kramarik respectively requested all documents and communications evidencing *any* third-party investment, litigation funding, loans or *other financial interests* being used in whole or part to pay for this Action. (Emphasis supplied). The defendants have provided no explanation of how such a limitless, all inclusive request seeks "relevant" information, beyond positing the generalization that the documents are relevant to "exploring statements or representations about the facts of the case...."

and "could expand on the allegations of [defendants'] counterclaims, identify witnesses, and potentially be used for impeachment." This request is imprecise, conjectural, and generalized. As our previous discussion demonstrates, it is improper. Indeed, the Defendants' "explanation," if acceptable, would be applicable in any case involving inquiries about funding. But they are not. Decisions on relevancy are made on a case-by-case basis and each is dependant on surrounding facts, circumstances, and issues. *See* 1C. Mueller & L. Kirkpatrick, Federal Evidence, § 4.3 at 568 (3d ed. 2003); 2 Weinsteins, Federal Evidence, § 401.07 (McLaughlin ed. 2007). Indeed, evidentiary patterns are often distinctive from case to case and, indeed, possibly always unique, and that the uniqueness of the evidence in any case makes it difficult for courts to be controlled by past judicial evaluations of the relevance or probative worth of seemingly similar evidence. 1A Wigmore on Evidence, § 37.3 at 1040 (Tillers Rev. 1983).

As the Supreme Court and the Seventh Circuit have cautioned that "[f]ailure to exercise [control over what is and is not relevant] results in needless and enormous costs to the litigants and to the due administration of justice." *See* cases collected in *Sapia v. Bd. of Educ. of the City of Chicago*, 2017 WL 2060344 at *2 (N.D.Ill. 2017). And they have emphasized that the core requirement of Rule 26(b)(1) that non-privileged material sought in discovery must be "relevant" should be firmly applied. *Herbert v. Lando,* 441 U.S. 153, 177 (1979). *Accord Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008); *Gonzalez v. Nat'l Broadcasting Co., Inc.*, 155 F.3d 618, 626 (2nd Cir. 1998); *Jett v. Warrentech Corp.*, 2020 WL 3104673, *2 (S.D.Ill. 2020); *Gray v. Acadia Healthcare Co., Inc.*, 2020 WL 4876855, *2 (E.D.Ok. 2020); *PolyOne Corp. v. Lu*, 2017 WL 2653130, *1 (N.D.Ill. 2017).

The speculative possibility that litigation funding may exist in a given case and that information was transmitted to a prospective funder would, under the Defendants' theory, make broad-based discovery regarding litigation funding virtually automatic. But it is not as cases throughout the country have made clear. *See* cases collected in *Fulton v. Foley*, 2019 WL 6609298, at 4 (N.D. Ill. 2019). *See also* discussion in *Miller UK Ltd., supra.* The defendants' contrary conclusion impermissibly mechanizes discovery whenever litigation funding is involved.

Reliance for the Defendants' principle of virtually automatic discoverability of litigation funding information is said to be derived from *Fulton v. Foley*, *supra*. Yet, as *Fulton*, itself, holds, discovery of any and all documents involved in possible litigation funding cases is not automatic. Moreover, *Fulton* did not endorse the expansive conclusion claimed by the Defendants. In our system, "fishing expeditions" continue to be prohibited. *Equal Employment Opportunity Comm'n v. Union Pac. R.R. Co.*, 867 F.3d 843, 852 (7th Cir. 2017). Moreover, courts that have examined the issue have generally held that litigation funding documents are protected by the work-product doctrine – a proposition acknowledged by the very case cited by the Defendants. *See Fulton v. Foley*, 2019 WL 6609298 at *3.

In most instances, the real (not theoretical) significance and purpose of the inquiry is to learn *whether* litigation funding is involved in the case. That knowledge would allow the inquiring party to learn whether its opponent has financial difficulties requiring an outside infusion of capital, necessary to allow a party to sue in the first place or to defend itself in litigation. But those facts are "irrelevant" – and potentially harmful to the party obtaining litigation funding – without legitimately advancing the purposes of litigation or of defense one whit. In short, broadly asking in discovery for "documents relating to third-party funding for this litigation" [Dkt. #148 at 12] is insufficient without

some detailed, meaningful explanation to satisfy the requirement of relevancy.

In any event, it is significant to note what actually occurred in *Fulton*. There, the court quashed the subpoena as drafted; but then it went on to order production of documents evidencing fact-based information and documents, including any statements directly provided by plaintiff to a specifically named funder. In other words, the court did the work of the moving party by explaining how the request could be justified. Long standing principles discussed earlier persuade me that I ought not to redraft the subpoena and to make a party's case for it and thus, the request as made will be denied. *See supra*. In any event, such broad, far-reaching discovery is, in this case, out of proportion with the needs of the case. Fed.R.Civ.P. 26(b)(1).

RFP Nos. 57, 55, and 51 (to Art Akiane, Akiane Gallery, and Akiane Kramarik respectively) seek documents reflecting permissions given to the Akianes to use any celebrity's likeness. Defendants argue that these documents are relevant to their counterclaim of "unclean hands" on the theory that if the Akianes used other celebrity likeness without permission, but now accuse Defendants of doing the same, they come to court with "unclean hands." That interpretation of the doctrine is fundamentally flawed. "Equity does not demand that its suitors shall have led blameless lives... as to other matters...." *Precision Instrument Mfg. Co. v. Auto Maintenance Machine Co.*, 324 U.S. 806, 814-15 (1945). If the rule were otherwise, no one could be a plaintiff. Consequently, the doctrine merely requires that suitors "shall have acted fairly and without fraud or deceit *as to the controversy in issue*. *Id.* (Emphasis supplied). The doors of a court of equity are only closed to one tainted with inequitableness or bad faith "relative to the matter in which he seeks relief." *Id. Accord Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 822 (7th Cir. 2010); *Packers Trading Co. v. Commodity Futures Trading Comm'n*, 972 F.2d 144, 149 (7th Cir.

1992). *See also Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright §13.09[B] p. 13-112. If the rule were as the Defendants tacitly suggest, no one could be a plaintiff in any case.

Evidence of use of celebrity likenesses has nothing to do with the paintings at issue here, and Defendants do not suggest that they were harmed in any way if such alleged use occurred. Thus, the materials they seek are irrelevant to any proper "unclean hands" defense they might have in this case. The motion is denied as to this request.

RFP No. 38 (to Akiane Kramarik) seeks documents relating to the valuation of Akiane Gallery. As the Defendants concede, they received these documents from Art Akiane. Thus, their motion is denied as to this request.

**POSTSCRIPT**

On September 1, 2020, the Defendants moved to "Supplement Their Motion to Compel on One Issue." [Dkt. #178]. The terse Motion pointed out that the Defendants had previously "sought to determine whether [the Plaintiff/Counter-Defendants] had obtained third-party funding for this litigation and if so, the documents relating to such funding." [Dkt. #178 at p. 2]. The Motion noted that the Plaintiff/Counter-Defendants refused to produce the documents, contending that *if* such documents existed, they would be irrelevant and protected by the work-product doctrine/privilege. *Id.* As we have seen, courts that have examined this issue have generally held that litigation funding documents are protected by the work-product doctrine. *See* discussion *supra; Fulton*, *supra* at *3.

The Motion to Supplement stated that in August 2020 a reporter from Bloomberg News had contacted Defendants' counsel and said that a litigation funding firm had contacted Bloomberg in an effort to get it to write an article about the case. The Motion attached as an exhibit a copy of an

Article by Roy Strom of Bloomberg News. The Article stated that Akiane Kramarik and her parents had contacted the author and told him that a California based funding firm, which the Article said they named, had provided them with a half million dollars for this litigation. The Article gave a highly condensed and simplified version of what the case is about and contained a generalized discussion of the pros and cons of litigation funding. Based on the contents of the Article, the Motion to Supplement concluded that the Plaintiff/Counter-Defendants had "sought to publicize the information about the litigation funding they have obtained," they should not at the same time be permitted to shield the issue from discovery. The Motion insisted that by participating in the preparation of the Article, the Plaintiff "waived any protection afforded by the work-product doctrine." *Id.* at 3. The Motion asked for a finding of waiver.

But that *necessarily* assumed that the factual statements in the Article were true. Indeed, that assumption is critical to the requested finding of waiver by the Plaintiff/ Counter-Defendants. To demonstrate waiver, a party must show a "clear, unequivocal decision of a party demonstrating an intent to waive a known right." *Anderson v. Catholic Bishop of Chicago*, 795 F.3d 645, 651 (7th Cir. 2014). By requesting a finding of waiver based on the Article, the Defendants were necessarily using the Article for the truth of the matters asserted in it. But newspaper articles dependent on the truthfulness of statements made therein violate the hearsay rule. *Stollings v. Ryobi Techs, Inc.*, 725 F.3d 753, 761 (7th Cir. 2017); *Mosely v. City of Chicago*, 252 F.R.D. 421, 429 (N.D.Ill. 2008)(and cases cited).[5]

[5] We leave aside questions of proper authentication of the Article and will assume for purposes of the present motion that the Article is authentic. But questions under the hearsay rule are analytically distinct from questions of authentication.

And while the request for a finding of waiver is made in the context of a discovery motion – which do not require adherence to strict evidentiary requirements – a court is not at liberty to find waiver based upon statements claimed to have been made to an Article's author where the only support for that fact is the Article, itself. Perhaps the statements in the Article were made and were accurately reported. But perhaps not. On the present showing, I cannot conclude that Mr. Strom was, in fact, approached by one or more of the Kramariks and that they in fact made the statements attributed to them by the Article. The party asserting waiver has the burden of proving that a waiver occurred, as the very case relied on by the Defendants holds. *Fulton,* 2019 WL 660928 at *4 (citing *Miller*, 17 F.Supp.3d at 737). The defendant who bears the burden of proving waiver has "put forth no facts to demonstrate that a waiver has occurred." *Fulton*, *supra* at *4. And while I allowed the Motion to Supplement to be filed, I did not thereby grant the relief the Motion requested, and I do not do so now.

**CONCLUSION**

For the above reasons, while the Defendants' Motion to Supplement [Dkt. #178], may be filed, the requested relief is denied. The Defendants' Motion to Compel [Dkt. #147] is granted in part and denied in part.

Any future discovery motions must be accompanied by a joint statement from the parties providing the information required in Local Rule 37.2, along with the time spent on each interrogatory or request at the meeting, and the arguments and cases advanced by both sides in those discussions. The statement should be sufficiently detailed to allow a real appreciation of the parties' efforts, and allow the court to determine whether their conversation accorded with the Local Rule. Only then will any further discovery motion be considered. *See, e.g., Autotech Techs. Ltd. P'ship*

*v. Automationdirect.Com, Inc*., 2007 WL 2713352, at *4 (N.D. Ill. 2007); *O'Toole v. Sears, Roebuck & Co.*, 302 F.R.D. 490, 491 (N.D. Ill. 2014).

**ENTERED:**______________________________________
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 9/18/20