**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ART AKIANE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-02952 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| ART & SOULWORKS LLC, | ) | |
| CAROL CORNELIUSON, | ) | |
| CARPENTREE, INC, and | ) | |
| VIRGINIA HOBSON, | ) | |
| | ) | |
| Defendants / Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AKIANE ART GALLERY, LLC | ) | |
| AKIANE KRAMARIK, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of the collapse of a longstanding business relationship between artist Akiane Kramarik and the company that used to distribute Akiane's original artwork.[1] The original lawsuit was filed by a corporate entity, Art Akiane LLC, against Art & SoulWorks LLC, and Carol Corneliuson, the owner and sole member of Art & Soulworks. R. 1, Original Compl.[2] Art & Soulworks and Corneliuson filed a counterclaim adding to the suit Akiane Kramarik personally, as well as another

---

[1]The Court has subject matter jurisdiction over the federal intellectual property claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367. First names are used for various Kramarik family members for clarity's sake.

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

corporate entity, Akiane Art Gallery LLC. R. 27, Original Answer & Counterclaim. Art Akiane has amended its Complaint twice, adding Carpentree, Inc., and Virginia Hobson as defendants. R. 38, First Am. Compl.; R. 96, Second Am. Compl.

After two years of litigation, Defendants Art & Soulworks LLC, Carol Corneliuson, and Carpentree have asked the Court to make a choice-of-law determination. R. 217, Defs.' Mot.[3] They ask the Court to apply Colorado law to various claims by each party. R. 218, Defs.' Br. Art Akiane, together with Akiane Art Gallery and Akiane Kramarik, argue that the Defendants are dressing up a discovery dispute as a choice-of-law motion, and that deciding the motion now would be both unnecessary and premature. R. 226, Pl. Resp. On review of the filings and the posture of the case, the Court agrees that the time is right for a choice-of-law determination, and concludes that Colorado law applies to some claims, while Illinois law applies to others.

## I. Background

For purposes of this opinion, a concise summary of relevant facts should provide enough context to decide Art & Soulworks' motion. A much more detailed background of the case can be found in the prior opinion that decided Art Akiane's motion for a preliminary injunction. R. 177.

Akiane Kramarik has been creating art since the age of four. R. 66-1, Pl. Br., Exh. 2, Akiane Kramarik Decl. ¶ 2. She has attained considerable fame and success, exhibiting her work around the world, making media appearances, and raising money

---

[3]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

for charities. *Id.* ¶¶ 3–8. At least 13 of her works—including all of the works at issue in this litigation—are federally registered copyrighted works. *See* R. 66-1, Pl. Prelim. Injunction Br., Exh. 1, Simmons Decl. Exh. B, Copyright Certificates; R. 66-1, Pl. Prelim. Injunction Br., Exh. 3, Mark Kramarik Decl. ¶ 4. Art Akiane LLC, the family's licensing entity for Akiane's art, holds those copyrights. *Id.*

In 2006, when Akiane was around 11 years old, the Kramarik family began an informal business relationship with Carol Corneliuson, the owner of a religious-goods company called Art & Soulworks. R. 83, Corneliuson Decl. ¶¶ 5, 7. The initial agreement was for Art & Soulworks to print Akiane's art onto bookmarks (and similar products) to be sold at larger retail outlets. *Id.* ¶ 7. Meanwhile, the Kramarik family themselves also marketed and sold Akiane's artwork through Akiane Gallery, their online gallery. Akiane Kramarik Decl. ¶ 5.

This arrangement with Art & Soulworks was memorialized in a more formal way in 2008, when the Kramarik family, via Art Akiane, executed a written licensing agreement with the distributor. Corneliuson Decl. ¶ 8; Mark Kramarik Decl. ¶ 17. Under the licensing agreement, Art Akiane gave Art & Soulworks the right to "produce and sell bookmarks, journals, wallet cards, calendars, [and] greeting cards" featuring Akiane's artwork. R. 218-1, Exh. A, Contract at 1. In exchange, Art & Soulworks would pay a royalty fee to Art Akiane for merchandise sold to retailers and customers. *Id.* But the written contract had no choice-of-law provision. *Id.* at 1–2.

Around that same time, Art Akiane and Art & Soulworks also entered into an oral agreement allowing the distributor to sell and market Akiane's actual artwork—

3

that is, physical prints and canvases. Corneliuson Decl. ¶¶ 13–15. As far as the record shows, this verbal "wholesale agreement" was never written down. Nonetheless, under this arrangement, Art & Soulworks apparently sold more than 50,000 pieces of Akiane's art. *Id.* ¶ 21. Art & Soulworks and Art Akiane renewed their written contract in 2012 and 2016. R. 218-1, Exh. A, Contract at 2.

In January 2019, Corneliuson was expecting to renew Art & Soulworks' contract with Art Akiane again, but instead received a termination letter from the Kramariks. R. 83-4, Corneliuson Decl., Exh. 4, January Termination Letter. The Kramariks attached a "Licensing Dissolvement Agreement" to the letter, instructing Corneliuson to make immediate and drastic changes to Art & Soulworks' website and social media pages to dissociate herself from Akiane Kramarik. January Termination Letter at 11–12. *See also* Mark Kramarik Decl. ¶ 21. The letter also instructed Art & Soulworks to liquidate all of its inventory, defined as "any and all things related to Akiane's Artwork, Name, Brand and Likeness." January Termination Letter at 12. Another letter soon followed, expressing similar requests. R. 66-1, Simmons Decl., Exh. DD, Corneliuson Summary Letter at 20. Corneliuson replied with a 25-page letter expressing her surprise and sadness at the sudden nature of the end of the nearly 12-year business relationship. *See* Corneliuson Summary Letter. Corneliuson explained that Art & Soulworks would need a much longer time than they had been given to wind down their operations and sales of Akiane Kramarik's artwork and related products. *Id.* at 22–25.

4

The parties communicated about possibly extending the deadline for inventory liquidation, and otherwise altering the terms of the termination of their relationship. *See* R. 83-22, Corneliuson Decl., Exh. 22, March Termination Letter; R. 83-10, Corneliuson Decl., Exh. 10, April Termination Letter. But the negotiations broke down. Art Akiane ultimately insisted on rapid liquidation of Art & Soulworks' inventory, which led Art & Soulworks to liquidate all of its *licensed* inventory at "fire sale prices," according to Corneliuson. Corneliuson Decl. ¶ 37. Separate from the licensed inventory, however, Art & Soulworks did *not* liquidate roughly $1 million worth of artwork that it had obtained pursuant to the *wholesale* agreement; according to Corneliuson, that art remained in Art & Soulworks's possession and was not liquidated. *Id*.

At this point in the litigation, Art & Soulworks asks the Court to make a choice-of-law determination on only some of the claims in this action, so it makes sense to briefly recap those claims and their basis. First up are the breach-of-contract claims. Art Akiane claims that Art & Soulworks breached their contract by failing to disclose all their sales and pay all royalties required by the contract. Second Am. Compl. ¶¶ 66–69, 207–15. Art & Soulworks counterclaims that Art Akiane failed to pay an agreed-on commission for a referral that Art & Soulworks made after the parties' original contract expired. R. 47, Am. Counterclaims ¶¶ 36–37, 75–79. Art & Soulworks also brings a counterclaim against Art Akiane for breach of the duty of good faith and fair dealing, accusing Art Akiane of acting in bad faith by terminating the parties' license, wholesale, and printing agreement without notice. *Id*. ¶¶ 80–88.

5

Next up are the claims for tortious interference with prospective economic advantage. Art Akiane brings a tortious-interference claim against Carolyn Corneliuson personally. Second Am. Compl. ¶¶ 70–76, 169–75. Art Akiane accuses Corneliuson of holding herself out as the sole representative of Akiane's artwork to the public and failing to properly refer interested buyers to Art Akiane for negotiations. *Id.* ¶¶ 70–76. This allegedly interfered with Art Akiane's "reasonable business expectancy of entering into a valid business relationship with customers with whom Art Akiane would have sold artwork to." *Id.* ¶ 170. Art & Soulworks in turn brings tortious-interference claims against not only Art Akiane, but Counter-Defendants Akiane Art Gallery and Akiane Kramarik (personally). Am. Counterclaims ¶¶ 96–110. The first of these claims accuses Akiane herself, and her LLC, Akiane Art Gallery, of intentionally influencing Art Akiane to end its business relationship with Art & Soulworks and Corneliuson. *Id.* ¶¶ 101–05. The second accuses all of the Counter-Defendants (Akiane Kramarik, Akiane Art Gallery, and Art Akiane) of sending wrongful takedown notices to customers of Art & Soulworks after the parties' contract was terminated. *Id.* ¶¶ 62–70, 107–10.

Finally, both sides have filed unjust enrichment claims. Art Akiane alleges that Art & Soulworks and co-defendant Carpentree have profited by reproducing, distributing, and selling the works of art that rightfully belong to Art Akiane without permission. Second Am. Compl. ¶¶ 148–51. These unauthorized sales allegedly took place both before and after the parties' contract ended. *Id.* ¶ 5. In turn, Art & Soulworks claims that Akiane Kramarik, Akiane Gallery, and Art Akiane have unjustly

6

profited from the goodwill and online infrastructure Art & Soulworks built up during their business relationship, after forcing Art & Soulworks to stop selling Akiane's work. Am. Counterclaims ¶¶ 89–95.

## II. Analysis

### A. Choice of Law Rules in Illinois

The choice of law rules are different for substantive law versus procedural rules.

### 1. Choice of Law: Substantive

In general, "[f]ederal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). In Illinois, courts apply forum law unless there is "an actual conflict with another state's law." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020). It is only necessary to perform a choice-of-law determination when a difference between the states' laws would affect the outcome of the dispute. *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014). "The party seeking the choice-of-law determination bears the burden of demonstrating a conflict, *i.e.*, that there exists a difference in the law that will make a difference in the outcome." *Id.* In this case, that means Art & Soulworks must demonstrate an outcome-determinative difference between Illinois and Colorado law before this Court will conduct a substantive choice-of-law analysis. When no choice-of-law analysis is needed, the court simply applies the law of the forum state. *Gunn*, 968 F.3d at 808.

7

When conducting a substantive choice-of-law analysis, Illinois courts follow the approach of the Second Restatement of Conflicts of Laws. *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007). Under this approach, "the rights and liabilities as to a particular issue are to be governed by the jurisdiction which retains the 'most significant relationship' to the occurrence and the parties." *Id.* Federal courts in Illinois also apply this approach when hearing state law claims.

### 2. Choice of Law: Procedural

Traditionally, and in Illinois, "the law of the forum state controls procedural questions." *Cox v. Kaufman*, 571 N.E.2d 1011, 1015 (Ill. App. 1991) (cleaned up).[4] In Illinois, statutes of limitation are considered procedural rules and are therefore governed by the rules of the forum state. *Id.*; *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (Ill. 2002); *see also Heiman v. Bimbo Foods Bakeries Distribution Co.*, 902 F.3d 715, 718 (7th Cir. 2018). Usually this will mean applying the Illinois statute of limitations, but Illinois's own rules for statutes of limitations include a borrowing statute that requires courts to apply another state's statute of limitations in certain circumstances: "When a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State." 735 ILCS 5/13-210. In other words, if the statute of

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

limitations in the state where the cause of action arose would bar a suit, the suit cannot be filed in Illinois to circumvent that other state's statute of limitations. The borrowing statute applies only if none of the parties are Illinois residents. *Miller v. Lockett*, 457 N.E.2d 14, 18 (Ill. 1983); *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 723 N.E.2d 687, 693 (Ill. App. Ct. 1999).

Before diving into the claim-by-claim analysis, it is worth pausing to explain why the time is right to make a choice-of-law determination. Art Akiane protests that the defense is dressing up a discovery dispute as a conflict of laws, that the decision is premature, and that further discovery will reveal information that will affect the choice of laws. Pl. Resp. But the defense's choice-of-law motion is not the same as its discovery motion. Once a conflict of laws has been identified, and once that conflict becomes a make-or-break point for discovery, it is important to decide the issue so that discovery can be shaped by the correct governing law. Also, armed with the knowledge of which state's law applies, the parties can allocate their resources efficiently and make informed decisions about settlement and litigation. That is why the magistrate judge quite sensibly recommended that this Court address the choice-of-law issue at this point in the litigation. Art Akiane has not explained why or how further discovery (especially after so much of it) might affect the choice of law in this case. And on the current discovery record, it seems unlikely that more discovery would make a difference. Of course, if further discovery somehow reveals new facts that affect the choice of law (as unlikely as that is), the parties can ask the Court to revisit today's decision.

9

## B. Breach of Contract

A major impetus for the choice-of-law motion is Art & Soulworks' position that the Colorado statute of limitations applies to Art Akiane's breach-of-contract claims. R. 228, Defs.' Reply at 4, 7–8. It turns out that Colorado law does apply——but not for the reasons that Art & Soulworks proffers.[5]

Art & Soulworks has not identified a conflict between the substantive laws of Colorado and Illinois governing breach of contract claims. As explained earlier, the party seeking a substantive choice of law determination *must* identify such a conflict before a court can conduct a choice of law analysis. *Bridgeview Health Care*, 10 N.E.3d at 905.

Art & Soulworks offers two supposed conflicts. One can be easily dispatched: according to the defense, the mere existence of a disagreement between the parties over which law applies triggers a choice-of-laws analysis. Defs.' Reply at 7. This is wrong. Art & Soulworks needed to identify a conflict of *laws*, not a mere conflict between *parties*. Yes, a conflict between the parties is necessary to trigger a choice-of-law determination, because a court is typically willing to accept an agreed-on choice of law. *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies"). But it is not sufficient—as discussed earlier, Illinois requires the party seeking the

---

[5]The motion for a determination of choice of law is co-signed by Art & Soulworks and Carolyne Corneliuson. For convenience's sake, this opinion will mostly just refer to Art & Soulworks as the movant.

determination to show that a difference exists *between the laws* that would make a difference to the outcome. *Bridgeview Health Care*, 10 N.E.3d at 905.

Art & Soulworks' main argument, however, is that Colorado and Illinois laws differ substantively because they allow for different measures of damages. Defs.' Br. at 4. Art Akiane protests that the difference between the two states is the statute of limitations for breaches of contract, and statutes of limitations are *procedural* matters governed by the law of the forum state (in this case, Illinois). Pl.s Resp. at 7. Art & Soulworks counters in its reply brief: "Here, the issue is not the timeliness of the claim, but rather, the elements of proof, rules of interpretation and the measure of damages." Defs.' Reply at 4. It points out, correctly, that damages law is considered substantive law. *Id.*, citing *Arpin v. United States*, 521 F.3d 769, 776 (7th Cir. 2008). But Art Akiane has the better side of the argument here, because Art & Soulworks has *not* identified differences in the elements of proof, rules of interpretation, or measure of damages in Colorado and Illinois law. It is true that Art Akiane will recover more damages if it can bring its claims under Illinois's longer statute of limitations. But that is *only* because of the longer statute of limitations, *not* because of any other identified differences in the law governing breach of contract claims in each state.[6]

---

[6]In fact, the measure of damages appears to be substantially the same in Colorado and Illinois. *See, e.g.*, *Acoustic Mktg. Rsch., Inc. v. Technics, LLC*, 198 P.3d 96, 98 (Colo. 2008) ("In a breach of contract action, the measure of damages is the amount it takes to place the plaintiff in the position it would have occupied had the breach not occurred"); *In re Illinois Bell Tel. Link-Up II*, 994 N.E.2d 553, 558 (Ill App. Ct, 2013) ("The proper measure of damages for a breach of contract is the amount of money necessary to place the plaintiff in a position as if the contract had been performed" (cleaned up)).

11

So the real question is: which statute of limitations applies to the parties' breach-of-contract claims? To answer that question, the Court first *must* apply Illinois rules. This is because "Illinois law—unlike federal law—considers statutes of limitations to be procedural issues governed by the law of the forum." *Heiman*, 902 F.3d at 718 (7th Cir. 2018). But as explained earlier, Illinois law includes a borrowing statute that prevents litigants from pursuing claims in Illinois courts that would have been barred by the statute of limitations in the state where the claim accrued. 735 ILCS 5/13-210.

The borrowing statute applies in this case and leads the Court to apply the Colorado statute of limitations to all the breach-of-contract claims.[7] The exception to the borrowing statute for Illinois residents does not apply. *Miller*, 457 N.E.2d at 18. Under Illinois law, a corporation can only have one residence—its place of incorporation—no matter where it is headquartered or does business. *Martin v. Cent. Tr. Co. of Illinois*, 159 N.E. 312, 317 (Ill. 1927); *LeBlanc v. G.D. Searle & Co.*, 533 N.E.2d 41,

---

[7]Art Akiane argues that the borrowing statute does not apply because (1) Art & Soulworks did not raise the argument and (2) Art & Soulworks did not argue that any of Art Akiane's claims could not be raised in another state. Pl. Resp. at 5–6. Under the circumstances here, however, refusing to apply the borrowing statute would be plain error. It is plain as day that the Court is required to follow Illinois law with regard to applying the statute of limitations, as Art Akiane itself argued. It just so happens that Illinois law includes the borrowing statute, which applies here. What's more, even if Art & Soulworks did not raise the argument in briefing this particular motion, it is far from clear that Art & Soulworks would have forfeited (and certainly not intentionally waived) the argument going forward. What would happen at the summary judgment stage, for example? If Art & Soulworks could raise the argument at that point, then all the prior effects that the wrong choice of law had on discovery and the conduct of the parties would have to be disentangled. At least one federal court previously has seen fit to address the borrowing statute in the absence of any briefing by the parties, *Telular Corp. v. Mentor Graphics Corp.*, 282 F. Supp. 2d 869, 871 (N.D. Ill. 2003), and that is appropriate here too.

42–43 (Ill. App. Ct. 1988). All parties agree that Art Akiane LLC and Akiane Gallery LLC are Idaho companies. Defs.' Reply at 5. Even after Art Akiane moved its office to Illinois and registered as a foreign corporation here, it remained an Idaho resident for purposes of this inquiry. That means the exception for residents does not apply.[8]

Moreover—and crucially—the Court concludes that the causes of action at issue arose in Colorado. To determine where a cause of action for breach of contract has arisen, Illinois courts apply the "most significant relationship" test from the Second Restatement of Conflict of Laws. *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). "Under this test, the contacts relevant to the choice-of-law decision include the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicil[e], residen[ce], place of incorporation, and business of the parties." *Id.* (cleaned up). Based on the record of documentary evidence, it is clear that the parties' dispute is at best tenuously linked to Illinois, whereas most of the Restatement factors connect it to Colorado.

When the parties first negotiated and signed their contract in 2008, Art & Soulworks was a Wisconsin corporation, and Art Akiane LLC was an Idaho corporation. R. 218-1, Exh. A, Contract; R. 218-2, Exh. B, Art Akiane Idaho LLC Record; R. 218-5, Exh. E, Corneliuson Colorado Decl. ¶ 4. When the parties renewed in 2012 and 2016, Art Akiane was still an Idaho corporation, but Art & Soulworks was a Colorado corporation with its principal place of business in Colorado. Art Akiane Idaho LLC

---

[8]The exception for Illinois residents would apply to the counterclaims against Akiane Kramarik, personally, but those are not breach-of-contract claims.

13

Record; Corneliuson Colorado Decl. ¶¶ 2–4. Art & Soulworks performed its end of the contract from Colorado, including promoting Akiane Kramarik's artwork online, storing and shipping merchandise and artwork, and even using computer servers located in Colorado. Corneliuson Colorado Decl. ¶¶ 7–10. By contrast, there is very little in the record to suggest that the contract had much of a relationship to Illinois. Art Akiane has submitted the affidavit of Mark Kramarik, in which he explains that Art Akiane was "based and operating in Illinois" in 2016 when it renewed the contract with Art & Soulworks. R. 226-1, Mark Kramarik Illinois Decl. ¶¶ 3–5. But Mark Kramarik and Art Akiane do not explain what significant activities Art Akiane engaged in in Illinois, or why the activities (whatever they are) should outweigh the activities of Art & Soulworks in Colorado. Moreover, Art Akiane never became an Illinois LLC, which matters for the next part of the test.

Looking at the domicile, residence, and place of incorporation of the parties does not help Art Akiane. As explained above, a corporation can have only one residence for purposes of this inquiry, and that is its place of incorporation. *LeBlanc*, 533 N.E.2d at 42–43. The residence of Art Akiane was and remains Idaho. Idaho LLC Record. For Art & Soulworks, it has been Colorado since 2010. Corneliuson Colorado Decl. ¶¶ 2–3. In the absence of any argument as to why Idaho law should govern this dispute (neither side proposes that outcome), and considering the compelling facts and argument set forth by the defense, the Court concludes that Colorado is the state with the most significant relationship to the parties' contract dispute.

14

So, in a roundabout way, the Court has arrived at the conclusion hoped for by Art & Soulworks: under Illinois's borrowing statute, Colorado's statute of limitations applies to the breach-of-contract claims filed by Art Akiane and Art & Soulworks.

As for the *substantive* breach of contract law to be applied, Art & Soulworks has not identified any conflict between the laws of Colorado and Illinois, so the Court will apply the law of the forum state, Illinois. *Gunn*, 968 at 808.

### C. Breach of the Duty of Good Faith & Fair Dealing

Art & Soulworks has identified a conflict between Illinois and Colorado law when it comes to violations of the implied duty (or covenant) of good faith and fair dealing. Defs.' Br. at 12. In Colorado, a party can bring a standalone claim for violation of the implied covenant of good faith and fair dealing that is inherent in every contract. *See Amoco Oil Co. v. Ervin,* 908 P.2d 493, 497 (Colo. 1995), *as modified on denial of reh'g* (Jan. 16, 1996). But in Illinois, no such standalone claim is permitted. *See N. Tr. Co. v. VIII S. Michigan Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995) ("Although the covenant of good faith and fair dealing is used as an aid in construing a contract, it does not form the basis of an independent tort recognized in Illinois"). This is a clear and significant conflict—if the Court applies Illinois law, Art & Soulworks will have to jettison one of its claims.

Art Akiane argues that there is not really a conflict, because Illinois courts allow breach-of-contract claims based on violations of the implied covenant. Pl. Resp. at 14. While this characterization of Illinois law is accurate, the laws are still different in a way that would affect the outcome of this specific case. In the case cited by Art

15

Akiane, the party seeking to bring a claim based on violation of the covenant had a separate breach-of-contract claim onto which it could tack its covenant-based claim. *LaSalle Bank Nat'l Assoc v. Paramont Properties*, 588 F. Supp. 2d 840, 853 (N.D. Ill. 2008). Art & Soulworks does not have that option. Its claim for breach of the duty of good faith and fair dealing is based on Art Akiane's alleged bad-faith termination of their longstanding business relationship without advance notice. Am. Counterclaims ¶¶ 81–88. Its sole breach-of-contract claim against Art Akiane is based on an entirely different set of facts: Art Akiane's alleged failure to pay commissions owed to Art & Soulworks for customer referrals. *Id.* ¶¶ 75–79. There is no way to graft the first claim onto the second.

Because this is another version of a contract dispute, the correct test to determine which state's law applies to the dispute is, again, the significant relationship test from the Restatement (Second) of Conflict of Laws. *Hinc*, 382 F.3d at 719. As discussed earlier, this test comes out in favor of applying Colorado law. Art & Soulworks thus may continue to pursue its claim for violation of the covenant of good faith and fair dealing under Colorado law.

### D. Tortious Interference / Unjust Enrichment

Art & Soulworks asks the Court to apply Colorado law to its tortious-interference claims, but fails to identify any conflict between the tortious-interference laws of Illinois or Colorado. Defs.' Br. at 7. The Court will not engage in a conflict-of-laws analysis where the moving party has failed to establish that a conflict exists.

Similarly, Art & Soulworks asks the Court to apply Colorado law to both sides' claims for unjust enrichment, without articulating how Illinois and Colorado laws differ. Defs.' Br. at 10. It is not enough to assert, as Art & Soulworks does, that unjust enrichment claims are generally complicated and conflicting. *Id.* The party requesting a choice-of-law analysis must show that a specific conflict exists between the laws of the different states and that choosing between them will make a difference to the outcome of the case. *Bridgeview Health Care*, 10 N.E.3d at 905. Since Art & Soulworks has not done so for the unjust enrichment claims, the Court will not conduct a choice-of-law analysis.

In the absence of an identified conflict between Colorado and Illinois law, the Court will apply the law of Illinois—the forum state. *Gunn*, 968 F.3d at 808.

### III. Conclusion

The Court holds:

- the Colorado statute of limitations applies to Art Akiane's and Art & Soulworks' breach-of-contract claims;

- Illinois substantive law applies to Art Akiane's and Art & Soulworks' breach-of-contract claims;

- Colorado substantive law applies to Art & Soulworks' claim for violation of the covenant of good faith and fair dealing;

- Illinois substantive law applies to Art Akiane's and Art & Soulworks' tortious-interference claims; and

- Illinois substantive law applies to Art Akiane's and Art & Soulworks' unjust enrichment claims.

17

With the choice of law decided, the parties may resume the litigation. The tracking status hearing of September 17, 2021, is reset to November 5, 2021 at 8:30 a.m., but to track the case only (no appearance is required).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 16, 2021

18