**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ART AKIANE LLC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 2952 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ART & SOULWORKS LLC and | ) | |
| CAROL CORNELIUSON, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

"Motion practice is not a series of trial balloons where you [submit] what you think is sufficient, [you] see how it flies, and if it does not, you go back and try again. If that is the way the system worked we would have motion practice going on forever."

*Hansel 'N Gretel Brand, Inc. v. Savitsky*, 1997 WL 698179, *2 (S.D.N.Y.1997).

**A.**

After an all-too-brief hiatus, the now 20-month-old discovery dispute between the parties is back before the court. Twenty months is a long time, and unfortunately the conflict continues and certain matters remain unresolved. And so, here we are with the eighth discovery motion, or quasi-discovery motion, from the plaintiff, all of which, in the main, trod repeatedly over the same ground. [Dkt. ## 120, 122, 124, 126, 196, 212, 213, 262].

Plaintiff bases its eighth discovery motion [Dkt. #262] on a misrepresentation. Plaintiff tells the court that the requests involved in this current motion are "new discovery requests," but they are not. Save for two exceptions, they are the same requests that plaintiff raised in the raft of motions filed in March of 2020 and which were ruled on back in September of 2020. It might seem plaintiff is trying to mislead the court, but the misrepresentation it makes is so easily shown to be

false that we prefer to think it must have been the result of poor proofreading or an inexact choice of words. Plaintiff has a track record of fancy packaging that belies reality, including calling, what in reality was a motion for reconsideration that would have gutted a previous ruling, a "Request for Minor Clarification." This proves once again that titles do not count. *See Krivak v. Home Depot U.S.A.*, Inc. 2 F.4th 601, 604 (7th Cir. 2021)("Regardless of what counsel calls [the motion], [and] regardless of the lingo associated with the post judgment motion" a motion is determined by its substance "regardless of what counsel calls it...."); *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Insurance Company*, 671 F.3d 635 (7th Cir. 2011); *Guyton v. United States*, 453 F.3d 425, 426 (7th Cir. 2006).

In any event, as can easily be seen from a comparison of the current "new discovery requests" and those plaintiff previously brought to court in its trio of motions to compel, there is nothing new here. The only difference is that the previous requests came with no qualifier as to whether they had to do with plaintiff's copyright claim or the plaintiff contract claim. Now, plaintiff has slapped a coda on each of those old requests – "pursuant to the Licensing Agreement" – and pretends they are, magically, "new discovery requests" that the court has not previously had to rule on. But, they're not. Hopefully, the following comparison chart will put that notion to rest[1] :

---

[1] The discovery requests plaintiff served on defendant Art & Soulworks and defendant Corneliuson were virtually identical. However, instead of simply using the same numbers to identify the request to both parties, the plaintiff chose to jumble the numbers. [Dkt. #188]. This, of course, served to complicate the work of both opposing counsel in responding and of the court when plaintiff filed its motions to compel.

2

| **PLAINTIFF'S CURRENT MOTION** | **PLAINTIFF'S PREVIOUS MOTIONS** |
|---|---|
| **Interrogatory No. 1:** Identify and describe all instances in which you received permission from Art Akiane LLC, Akiane Art Gallery, LLC, Akiane Kramarik, Mark Kramarik, Jeanlu Kramarik, or Foreli Kramarik to produce, reproduce, duplicate, copy, modify, or print Art Akiane's Works from January 11, 2009 to the present pursuant to the Licensing Agreement. | **[Dkt. #120, at 7]:** Interrogatory No. 5: Interrogatory No. 5 required ASW to "[i]dentify and describe all instances in which you received permission from Art Akiane, Akiane Art Gallery, LLC, [or a member of the Kramarik family] to produce, reproduce, duplicate, copy, modify, or print Art Akiane's Works." |
| **Interrogatory No. 2 (ASW):** Identify all persons, including any third-party companies, You engaged, retained, employed, or otherwise worked with to print Art Akiane's Works from January 11, 2009 to the present pursuant to the Licensing Agreement. | **[Dkt. #120-2, at 5]:** Interrogatory No. 6 required ASW to "[i]dentify all persons, including any third-party companies, You engaged, retained, employed, or otherwise worked with to print Art Akiane's Works. Moreover, |
| **Interrogatory No. 3 (ASW):** Identify and describe all instances in which You added the text "© Art & SoulWorks," "© Art & SoulWorks, LLC," "© Art-SoulWorks.com," "© www.Art-SoulWorks.com," "© www.JesusPrinceofPeace.com," "Art & SoulWorks," "Art-SoulWorks.com," or "www.JesusPrinceofPeace.com" to any of Art Akiane's Works from January 11, 2009 to the present pursuant to the Licensing Agreement. | **[Dkt. #120, at 10]:** Interrogatory No. 14 required ASW to "[i]dentify and describe all instances in which You added the text '© Art & SoulWorks,' '© Art & SoulWorks, LLC,' '© Art-SoulWorks.com,' '© www.Art-SoulWorks.com,' '© www.JesusPrinceofPeace.com,' 'Art & SoulWorks,' 'Art-SoulWorks.com,' or 'www.JesusPrinceofPeace.com' to any of Art Akiane's Works." Whether ASW added copyright management information to images of Art Akiane's works is relevant to Art Akiane's copyright infringement claim under 17 U.S.C. § 1202(a). |
| **Interrogatory No. 15 (Corneliuson):** Identify and describe all instances in which You modified any of Art Akiane's Works from January 11, 2009 to the present pursuant to the Licensing Agreement. | **[Dkt. #122, at 5]:** Interrogatory No. 1 required that Corneliuson "[i]dentify and describe all instances in which [she] modified any of Art Akiane's Works." Corneliuson's and ASW's modifications of Art Akiane's works are fundamental issues in this case, and relate to Corneliuson's modification of Art Akiane's artwork, which are elements of Art Akiane's copyright infringement claim under 17 U.S.C. § 106, and Art Akiane's claim of removal, falsification and alteration of copyright management information under 17 U.S.C. § 1202. |
| **Interrogatory No. 16 (Corneliuson):** Identify and describe all instances from January 11, 2009 to the present pursuant to the Licensing Agreement in which You added the text "(C) Art & SoulWorks," "(C) Art & SoulWorks, LLC," "(C) Art-SoulWorks.com," "(C) www.Art-SoulWorks.com," "(C) www.JesusPrinceofPeace.com," "Art & SoulWorks," "Art-SoulWorks.com," or www.JesusPrinceofPeace.com to any of Art Akiane's Works. | **[Dkt. #122, at 5]:** Interrogatory No. 2 required Corneliuson to "[i]dentify and describe all instances in which [she] added the text '© Art & SoulWorks,' '© Art & SoulWorks, LLC,' '© Art-SoulWorks.com,' '© www.Art-SoulWorks.com,' '© www.JesusPrinceofPeace.com,' 'Art & SoulWorks,' 'Art-SoulWorks.com,' or 'www.JesusPrinceofPeace.com' to any of Art Akiane's Works." Whether Corneliuson added copyright management information to images of Art Akiane's works is relevant to Art Akiane's copyright |

3

**Interrogatory No. 17 (Corneliuson)**: Identify and describe all instances in which You removed, cropped out, or altered text on any of Art Akiane's Works from January 11, 2009 to the present pursuant to the Licensing Agreement.

**Interrogatory No. 18 (Corneliuson):** Identify and describe all instances in which You sent, shared, distributed, or permitted other persons to download images relating to Art Akiane's Works through the internet from January 11, 2009 to the present pursuant to the Licensing Agreement.

**Interrogatory No. 19 (Corneliuson):** Identify and describe all instances in which You printed or directed another person or entity to print Art Akiane's Works, including identifying the person, what they printed, and the amount they printed from January 11, 2009 to the present pursuant to the Licensing Agreement.

**Interrogatory No. 20 (Corneliuson):** Identify and describe all instances in which You posted or shared an image relating to Art Akiane's Works through the internet, including but not limited to posting to or sharing through social media from January 11, 2009 to the present pursuant to the Licensing Agreement.

**Interrogatory No. 21 (Corneliuson):** Identify and describe all instances in which you received permission from Art Akiane LLC, Akiane Art Gallery, LLC, Akiane Kramarik, Mark Kramarik, Jeanlu Kramarik, or Foreli Kramarik to produce, reproduce, duplicate, copy, modify, or print Art Akiane's Works from

management information ("CMI") claim under 17 U.S.C. § 1202(a).

**[Dkt. #122, at 6]:** Interrogatory No. 3 required Corneliuson to "[i]dentify and describe all instances in which [she] removed, cropped out, or altered text on any of Art Akiane's Works." Whether Corneliuson removed or altered text containing copyright management information from Art Akiane's works bears directly on Art Akiane's CMI claim under 17 U.S.C. § 1202(b).

**[Dkt. #122, at 8]:** Interrogatory No. 4 required Corneliuson to "[i]dentify and describe all instances in which [she] sent, shared, distributed, or permitted other persons to download images relating to Art Akiane's Works through the Internet." Corneliuson's distribution of copies of Art Akiane's works is another primary issue in dispute because "sending," "sharing" and "distributing" Art Akiane's artwork relates directly with the "distributing copies" element of Art Akiane's copyright infringement claim

**[Dkt. #122, at 7]:** Interrogatory No. 5 required Corneliuson to "[i]dentify and describe all instances in which [she] printed or directed another person or entity to print Art Akiane's Works, including identifying the person, what they printed, and the amount they printed." Corneliuson's printing of Art Akiane's works and hiring third parties to print the works is a central issue in this case. Printing and copying Art Akiane's artwork relates directly with the copying (i.e. printing) element of Art Akiane's copyright infringement claim.

**[Dkt. #122, at 8]:** Interrogatory No. 7 required Corneliuson to "[i]dentify and describe all instances in which [she] posted or shared an image relating to Art Akiane's Works through the Internet, including but not limited to posting to or sharing through social media." Whether Corneliuson and ASW were permitted to share images of Art Akiane's works on their social media profiles and website is another primary issue because "sharing" and "distributing" Art Akiane's artwork on social media and the Internet relates to the "distributing copies" element of Art Akiane's copyright infringement claim.

**[Dkt. # 122, at 8]:** Interrogatory No. 8 asked Corneliuson to "[i]dentify and describe all instances in which you received permission from Art Akiane, Akiane Art Gallery, LLC, Akiane Kramarik, Mark Kramarik, Foreli Kramarik, Jeanlu Kramarik, or Foreli Kramarik to

January 11, 2009 to the present pursuant to the Licensing Agreement.

**Interrogatory No. 22 (ASW)**: Identify and describe all instances in which You modified any of Art Akiane's Works from January 11, 2009 to the present pursuant to the Licensing Agreement.

**Interrogatory No. 23 (ASW):** Identify and describe all instances in which You printed or directed another person or entity to print Art Akiane's Works, including identifying the person, what they printed, and the amount they printed from January 11, 2009 to the present pursuant to the Licensing Agreement.

**Interrogatory No. 24 (ASW):** Identify and describe all instances in which You sent, shared, distributed, or permitted other persons to download images relating to Art Akiane's Works through the Internet from January 11, 2009 to the present pursuant to the Licensing Agreement.

**Interrogatory No. 25 (ASW):** Identify and describe all instances in which You posted or shared an image relating to Art Akiane's Works through the Internet, including but not limited to posting to or sharing through social media from January 11, 2009 to the present pursuant to the Licensing Agreement.

produce, reproduce, duplicate, copy, modify, or print Art Akiane's Works.

**[Dkt. #120, at 4]:** Interrogatory No. 1 required that ASW "[i]dentify and describe all instances in which [it] modified any of Art Akiane's Works." ASW's modifications of Art Akiane's works is a fundamental issue in this case, and relate to its modification of Art Akiane's artwork, which are elements of Art Akiane's copyright infringement claim under 17 U.S.C. § 106, and Art Akiane's claim of removal, falsification and alteration of copyright management information under 17 U.S.C. § 1202.

**[Dkt. #120, at 5]:** Interrogatory No. 2 required ASW to "[i]dentify and describe all instances in which [it] printed or directed another person or entity to print Art Akiane's Works, including identifying the person, what they printed, and the amount they printed." ASW's printing of Art Akiane's works and hiring third parties to print the works is a central issue in this case. Printing and copying Art Akiane's artwork relates directly with the copying (i.e. printing) element of Art Akiane's copyright infringement claim

**[Dkt. # 120, at 6]:** Interrogatory No. 3 required ASW to "[i]dentify and describe all instances in which [it] sent, shared, distributed, or permitted other persons to download images relating to Art Akiane's Works through the Internet." ASW's distribution of copies of Art Akiane's works is another primary issue in dispute because "sending," "sharing" and "distributing" Art Akiane's artwork relates directly with the "distributing copies" element of Art Akiane's copyright infringement claim.

**[Dkt. #120, at 7]:** Interrogatory No. 4 required ASW to "[i]dentify and describe all instances in which You posted or shared an image relating to Art Akiane's Works through the Internet, including but not limited to posting to or sharing through social media." Whether ASW was permitted to share images of Art Akiane's works on its social media profiles and website is another primary issue because "sharing" and "distributing" Art Akiane's artwork on social media and the Internet relates to the "distributing copies" element of Art Akiane's copyright infringement claim.

It does not go unnoticed, of course, that in resubmitting these previous requests, plaintiff has changed the numbering of nearly every single one. The obvious impression is one of deliberate subterfuge to make it more difficult to discover that they are not, as plaintiff submits, brand new discovery requests. "Honesty of purpose prompts frankness of statement." *Crosby v. Buchanan*, 90 U.S. (23 Wall.) 420, 457 (1875). *Accord United States v. Black*, 684 F.2d 481, 484 (7th Cir. 1982).

In their objections to each of the original requests, the defendants complained that they were open-ended, and that there was no time frame limiting the demand. [Dkt. #120-2, 120-3]. As a precursor to filing their trio of motions back in March 2020, plaintiff served defendants with a "deficiency letter" addressing their objections, but failing, in every instance, to mention the obvious time frame problem with their requests. [Dkt. #120-1]. Even if there were no statute of limitations problem, from Illinois to Colorado and beyond, completely open-ended discovery requests without time limitations rarely, if ever, withstand scrutiny. *Vann-Foreman v. Illinois Cent. R.R. Co.*, 2020 WL 6262361, at *3 (N.D. Ill. 2020); *Ehnert v. Steamfitters Loc. 449*, 2021 WL 461901, at *2 (W.D. Pa. 2021); *Farm Credit Leasing Servs. Corp. v. Smith*, 2020 WL 6163541, at *5 (E.D. Ark. 2020); *Free Stream Media Corp. v. Alphonso Inc.*, 2017 WL 6209309, at *5 (N.D. Cal. 2017); *Cornette v. I.C. Sys., Inc.*, 2017 WL 10398533, at *3 (S.D. Fla. 2017); *Lyons v. Leach*, 2014 WL 823408, at *1 (E.D. Mich. 2014).

As the movant, then, plaintiff had, and has, the burden to show that its open-ended, unlimited discovery requests were somehow relevant. *Eternity Mart, Inc. v. Nature's Sources, LLC*, 2019 WL 6052366, at *2 (N.D. Ill. 2019); *Washtenaw Cty. Employees' Ret. Sys. v. Walgreen Co.*, 2017 WL 1545764, at *1 (N.D. Ill. 2017); *Omnireps, LLC v. Add-On Computer Peripherals, LLC*, 2017 WL

11569214, at *1 (N.D. Ill. 2017); *West v. Miller*, 2006 WL 2349988, at *2 (N.D. Ill. 2006).[2] As can be seen from the foregoing chart, in every instance, plaintiff went about doing this by explaining that its request was relevant to its copyright claim. *See also Art Akiane LLC. v. Art & SoulWorks LLC*, 2020 WL 5604064, at *2 (N.D. Ill. 2020)("... it is plaintiff's argument throughout its motions that its requests are "relevant" to its copyright claims...."). But those were completely unsupported assertions. As just explained, and was explained in the ruling on plaintiff's motions, saying "I have a copyright claim" doesn't begin to show one is entitled to five or ten or twenty years of discovery. Again, open-ended discovery is rarely if ever appropriate and, as was also explained at the time, copyright claims are subject to a three-year statute of limitations. *Art Akiane*, 2020 WL 5604064, at *2. *See Petrella v. Metro-Goldwyn-Mayer, Inc*., 572 U.S. 663, 671 (2014).

Throughout its first round of motions, plaintiff did not cite a single case to support its claim of relevance of these time-limitless interrogatories. [Dkt. ##120, at 4-10; 122, at 5-9]. Throughout those motions, the plaintiff simply ignored the open-ended nature of its discovery requests. And, throughout those motions, plaintiff ignored the applicable statute of limitations. One supposes what plaintiff had in mind was that the court would redraft its requests for it, adding an appropriate time-frame. Going against its better judgment and a long line of cases, *see Chapman v. First Index, Inc*., 2012 WL 13207962, at *4 (N.D. Ill. 2012)("It is not the Court's responsibility to redefine and redraft discovery requests that are obviously overbroad."); *Rotstain v. Trustmark Nat'l Bank*, 2020 WL 6550501, at *7 (N.D. Tex. 2020)("The Court is not required to redraft overly broad discovery requests."); *Copeland v. C.A.A.I.R., Inc*., 2020 WL 972754, at *5 (N.D. Okla. 2020)("... it is not

---

[2] The overarching importance of relevancy has been discussed in this case. *See Art Akiane LLC. v. Art & Soulworks LLC*, 2020 WL 5593242, at *5 (N.D. Ill. Sept. 18, 2020).

the Court's responsibility to redraft discovery requests that are obviously overbroad . . . ."); *Moskowitz v. Am. Sav. Bank, F.S.B.*, 2019 WL 7496775, at *3 (D. Haw. 2019); *Uni-Sys., LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *5 (E.D.N.Y. 2017); *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2015 WL 13238450, at *4 (D. Nev. 2015); *Heim v. BNSF Ry. Co.*, 2014 WL 6949044, at *9 (D. Neb. 2014); *Medicis Pharm. Corp. v. Actavis Mid Atl. LLC*, 282 F.R.D. 395, 398 (D. Del. 2012); *Primm v. Aerofil Tech., Inc.*, 2012 WL 13102523, at n.4 (M.D. Fla. 2012); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 WL 502721, at *8 (D. Colo. 2010), *Dombach v. Allstate Ins. Co.*, 1998 WL 695998, at *7 (E.D. Pa. 1998), the court did just that, using the three-year copyright statute of limitations – that's the act the plaintiff invoked repeatedly in its motions, after all – as a guide.

The thinking was that, given the parties' proven inability to comply in good faith with Local Rule 37.2, *see Art Akiane LLC. v. Art & Soulworks LLC*, 2020 WL 5593242, at *1 (N.D. Ill. 2020)(". . . as this is the fifth dispute between the parties in just a few weeks, it is difficult to conclude that Local Rule 37.2 is really being honored . . . ."); *Art Akiane LLC. v. Art & SoulWorks LLC*, 2020 WL 5604064, at *1 (N.D. Ill. 2020)("It is not going out on a limb to suspect that a single meeting that engenders four motions to compel and hundreds of pages of filings suggests a certain degree of obduracy in discovery by both sides."); [Dkt. #166], sending plaintiff back to the drawing board would only result in another 560 pages of motions, exhibits, and briefs. [Dkt. ##120-127, 157-158, 165]. Indeed, most recently, the attorneys in this case were not even capable of bridging the gap of just thirty days between their two proposed fact discovery deadlines and arriving at an agreed upon date. [Dkt. #268].

No good deed goes unpunished. Instead, about a month after the rulings on plaintiff's motions, plaintiff filed what it tendentiously (and quite inaccurately) called a "Request for Minor

Clarification." [Dkt. #192]. In it, plaintiff attempted to redraft its previous motions and briefs to tie relevance of its requests to its breach of contract claim. Indeed, in its reply brief, the plaintiff asked the court, essentially, to redraft its previous briefs to make clear that its discovery requests "also account[ed] for Art Akiane's Illinois Breach of Contract claim and go back ten years" [Dkt. #201, at 3]. As should be painfully obvious, that was an argument plaintiff chose not to raise, let alone develop, at any point in its initial round of briefing.

Arguments that a party fails to raise, or raises without development and citation to pertinent authority are, of course, waived or forfeited. Waiver and forfeiture are distinct legal concepts. *Hamer v. Neighborhood Hous. Servs. of Chi.*, —— U.S. ——, 138 S. Ct. 13, 17 n.1, 199 L.Ed.2d 249 (2017). Whereas waiver is the "intentional relinquishment or abandonment of a known right," forfeiture is the mere failure to raise a timely argument, due to either inadvertence, neglect, or oversight. *United States v. Olano*, 507 U.S. 725, 733 (1993); *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020). Similarly, arguments that could have been, but weren't, raised in an original motion cannot be raised in a motion to reconsider the ruling on that original motion. *McGreal v. Vill. of Orland Park*, 928 F.3d 556, 559 (7th Cir. 2019); *see also Baker v. Lindgren*, 856 F.3d 498, 503 (7th Cir. 2017)("The district court correctly noted that arguments raised for the first time in a motion to reconsider are waived"); *In re Outboard Marine Corp.*, 386 F.3d 824, 828 (7th Cir. 2004) (noting that a party waives arguments by not raising them until the motion for reconsideration). So, again, waiver or forfeiture is a major obstacle to what plaintiff's counsel is trying to do here. Despite having more than one chance to do so, while plaintiff's counsel has at least tacitly conceded that they failed to raise any breach of contract relevance argument in their original motions [Dkt. #192, at 2], counsel has never gotten around to explaining the thought process behind the laser focus on

the Copyright Act to the exclusion of all its other claims in its motions to compel. So, it is difficult to say whether it was a choice or a blunder. Either way, it was definitely a mistake.

In filing their "Request for minor Clarification", plaintiff's counsel made another blunder. As was pointed out in the ruling on plaintiff's "Request", if plaintiff thought there was an error in the original ruling on its motions to compel; if plaintiff thought the court had ignored any case it had made for its discovery requests being relevant to any claims other than the Copyright claims is repeatedly pointed to in its motions, it had to file objections to that ruling within fourteen days. [Dkt. #201, at 3]; Fed.R.Civ.P. 72(a)("A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."); *see also Foreman v. Wadsworth*, 844 F.3d 620, 625 (7th Cir. 2016). It didn't. As a result, these arguments regarding relevance beyond Copyright claims have been waived at least twice over.[3]

Two chances and hundreds of paged of filings ought to have been the end of things, but undaunted, the plaintiff then issued the foregoing, so-called "new" discovery requests, with a reference to the parties' licensing agreement tacked on to the end of each of its original requests. They were certainly not "new", and so, of course, they resulted in yet another set of objections from the defendants and yet another motion to compel from the plaintiff in January 2021. [Dkt. #212]. Labeling the requests "new" and pasting "licensing agreement" on the end of them didn't change the fact that there was *still* an obvious timeframe problem. The plaintiff's "new" requests sought

---

[3] The failure the file objections to the original ruling was most likely a deliberate choice – and, so, a waiver – as the plaintiff would have had no valid argument that the court had erred by ignoring a contract relevance claim because the plaintiff clearly had not made any such argument.

information dating back *over a decade* before plaintiff filed suit on May 1, 2019; all the way back to January 2009. [Dkt. #212, at 8-9].[4]  In its January 2021 motion to compel, the plaintiff explained that its "requests go to the heart of Plaintiff's well-pled and still-pending [breach of contract] claim, which Plaintiff explicitly pled under Illinois law. . . . Under Illinois law, the statute of limitations looks back ten years. . . . which enables Plaintiff to seek ten years of damages for Defendants' breaches." [Dkt. #212, at 4].

So, according to plaintiff, the parties were now fighting over whether the Illinois ten-year statute of limitations applied, or the three-year Colorado statute of limitations.  Obviously, ten years of discovery would be ridiculously disproportionate if the Colorado statute applied, and I pointed this out to the parties while noting that it was mind-boggling why, two years into this case, the matter had not been presented to the court for resolution. [Dkt. #215].  *Finally*, after all that time, the defendants filed a very tardy choice of law motion before Judge Chang [Dkt. #218] and I stayed briefing on the plaintiff's motion to compel until that was resolved. [Dkt. #221].  The motion to compel was then, eventually, withdrawn. [Dkt. #241].  On September 16, 2021, Judge Chang determined, *inter alia*, that Colorado's three-year statute of limitations applied to plaintiff's breach of contract claim. [Dkt. #252, at 17].

Two weeks later, plaintiff filed their current motion to compel, which, as demonstrated by the earlier chart, *see supra*, covers the same discovery requests that plaintiffs have been arguing about for over a year.  But, in this new motion, the plaintiff simply cast aside its stance that it was entitled to ten years' worth of discovery based on Illinois's ten-year statute of limitations as though

---

[4] Plaintiff seems to have based the January 11, 2009, on the date the parties' licensing agreement expired, January 10, 2009, as opposed to the date plaintiff filed suit. [Dkt. #212, at 5].

it had not been the linchpin of its requests in its January 2021 motion. Now, essentially, plaintiff argued that the statute of limitations is all but irrelevant, and that "[d]efendants' unilateral imposition of a strict 3-year discovery cutoff is improper." [Dkt. #262, at 11]. This is a remarkable position to take after ignoring the statute of limitations completely, then arguing that Illinois's ten-year statute controlled this issue, and finally asserting that the decision regarding whether Illinois's or Colorado's statute of limitations was of monumental importance:

> The difference between Illinois's ten-year statute of limitations, versus a three-year statute of limitations, would potentially mean the loss of hundreds of thousands (perhaps millions) of dollars of damages to Plaintiff. This is why courts treat choice of law determinations with the seriousness of other dispositive motions.

[Dkt. #212, at 7]. So now, after Judge Chang's efforts, and in the third round of briefing on these same discovery requests, plaintiff tells the court it doesn't matter at all, and it still is entitled to discovery going back ten years.

To add insult to that injury, plaintiff has filed yet another motion for reconsideration – this one honestly titled – targeted at Judge Chang's thorough and well-reasoned ruling. [Dkt. #266]. Judge Chang hedged bets in his Opinion, allowing that "if further discovery somehow reveals new facts that affect the choice of law (as unlikely as that is), the parties can ask the Court to revisit today's decision." [Dkt. #252, at 9]. We need not get into plaintiff's motion for reconsideration, of course, but it was certainly ill-timed, filed as it was *after* the plaintiff most recent motion to compel. And, it would appear that the supposedly "new" facts – plaintiff's owner declaring that plaintiff was conducting its business out of Illinois and the defendant Corneliuson even traveled there to negotiate the renewal of the licensing agreement [Dkt. #266-1] – aren't new at all (surely they were known to plaintiff's owner all along) and were not discovered through "further discovery." But, that was just an initial impression and perhaps one that Judge Chang shared as he denied the motion for

12

reconsideration on November 4, 2021. [Dkt. #277].

So, the plaintiff has unnecessarily taken the court on a confusing and costly Odyssey. Each time a motion was decided, the plaintiff came back with another covering the same ground. Each time a plaintiff staked everything on an argument and it proved to be a losing argument, it came back with a new argument that could have been raised all along. Legal concepts like waiver meant nothing to plaintiff's counsel. Over and over and over the course of 20 months, essentially, plaintiff is still bringing the same requests to court. In sum, the timeline is as follows:

March 23-25, 2020 – two motions totaling 151 pages with exhibits in which plaintiff tied the relevance of discovery requests without any temporal limitations exclusively to its Copyright Act claims. [Dkt. ##120, 122].

September 18, 2020 – given plaintiff's exclusive reliance on the Copyright Act to show the relevance of its discovery requests, the court rules that plaintiff is entitled to three years' worth of discovery in keeping with the Copyright Act's statute of limitations. [Dkt. ##186, 188].

October 14, 2020 – two weeks after the time for objecting to the previous ruling expired, plaintiff files what it misleadingly called a "Request for Minor Clarification" seeking reconsideration of the foregoing rulings and arguing, for the first time, that its discovery requests are relevant to its breach of contract claim and that, therefore, Illinois's ten-year statute of limitations applies. [Dkt. #192].

November 5, 2020 – the court denies the plaintiff's so-called "Request for Minor Clarification", noting that plaintiff waived its breach of contract and ten-year statute of limitations arguments under Fed.R. Civ.P. 72(a), and waived them by failing to raise them in its original motions to compel and associated briefing. [Dkt. #203].

January 25, 2021 – After reissuing the now twice-ruled-on discovery requests with a "licensing agreement" reference attached to the end of each requests and seeking discovery back to January 2009, plaintiff files another motion to compel; 105 pages with exhibits, including an eighteen-page brief filed in violation of Local Rule 5.2. The plaintiff argued again that it was entitled to ten years' worth of discovery under Illinois's breach of contract statute of limitations, despite the court's ruling that the argument had been waived twice over. [Dkt. #212]. This motion is eventually withdrawn while Judge Chang considers the defendants' conflict of laws motion.

September 16, 2021 – Judge Chang rules, *inter alia*, that Colorado's three-year

statute of limitations applies to plaintiff's breach of contract claims. [Dkt. #252].

September 27, 2021 – plaintiff files the current version of its motion to compel covering the same requests raised back in March of 2020 (albeit with the licensing agreement reference added) and that have been ruled on twice. The requests continue to ask for more than ten years' worth of discovery and, despite tying its ten-year discovery exclusively to Illinois's ten-year statute of limitations, plaintiff suddenly takes the position that the statute of limitations and Judge Chang's ruling are irrelevant, and raises a handful of new arguments that it failed to so much as hint at in the multiple rounds of its previous filings. [Dkt. #256].

Through all that, the court has had to sift through hundreds of pages of briefs and exhibits and will end up having to issue six opinions covering this same ground. [Dkt. ##183, 186, 203, 252]. All, as we have said, to the needless detriment of other litigants waiting in the queue for the court's attention. The defendants – a virtually defunct business and its sole proprietor – have collectively been made to respond to eleven sets of interrogatories (consisting of over 50 individual interrogatories, not including subparts), five sets of document requests (consisting of over 85 separate requests document requests), and three sets of requests to admit (consisting of 19 individual requests relating to approximately 100 separate and distinct documents). They have produced more than 20,000 pages, of documents including documents, some dating back as far as 2006. After all that, plaintiff is, yet again, arguing that it is entitled to more than ten years' worth of discovery, an argument it has failed to properly support for more than twenty months.

Clearly, given all that has gone before, all the waivers and/or forfeitures and the shifting stances, the plaintiff cannot simply be granted ten years and five months worth of discovery. The torturous journey the plaintiff has taken the court on is out of all proportion to the issues at stake in this case. It bears repeating that "[m]otion practice is not a series of trial balloons where you [submit] what you think is sufficient, [you] see how it flies, and if it does not, you go back and try

14

again. If that is the way the system worked we would have motion practice going on forever," *Hansel 'N Gretel Brand, Inc. v. Savitsky*, 1997 WL 698179, *2 (S.D.N.Y.1997), to the consequent disadvantage of other litigants "patiently waiting in the queue for the limited time of federal judges." *Channell v. Citicorp Nat. Services, Inc*., 89 F.3d 379, 386 (7th Cir.1996). *See also Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 301 F. Supp. 3d 50, 59–60 (D.D.C. 2018)("Parties are not permitted to float trial balloons in motions . . . only to retract but preserve their claims when the opposing party makes a stronger argument."). "To allow the [plaintiff] to successfully prevail at this point would be to allow them to avoid the consequences of their own strategic decision[s]. . . with the inevitable and obvious consequences to judicial efficiency and to the rule that seeks to prevent sandbagging of the court, and one's opponent by taking a position, and when that doesn't work, simply taking another position." *Heffernan v. City of Chicago*, 286 F.R.D. 332, 336 (N.D. Ill. 2012); *see Sheehan v. City of Markham*, 282 F.R.D. 428, 430 (N.D.Ill.2012) (collecting cases). Parties are bound by the strategic decisions they and their counsel make. *Silc v. Crossetti*, 956 F. Supp. 2d 957, 961 (N.D. Ill. 2013)(collecting cases). There are risks associated with staking everything on tying relevance to a copyright claim or with later tying relevance to the applicability of Illinois's statute of limitations. *See, e.g, Paramount Media Grp., Inc. v. Vill. of Bellwood*, 2015 WL 7008132, at *7 (N.D. Ill. 2015). If plaintiff had alternate theories on why it was entitled to an unlimited period of discovery back in March 2020 or more than ten years of discovery back in January 2021, it should have rolled out all its artillery then. *See Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir.1996).

**B.**

Still, it is worthwhile to make a few points about the arguments plaintiff suddenly raises for the first time in its current version of its motion to compel. As is its habit, plaintiff has raised a handful of arguments that could have been and ought to have been raised either in March of 2020 or January of 2021, but were nowhere to be seen:

> "Statutes of limitations are not outer boundaries to discovery." [Dkt. #262, at 10-11, 14].

> The statute of limitations is tolled because plaintiff did not discover defendants' breach of the Licensing Agreement "until the suit was filed because ASW hid its illicit printing and sales when it 'side-stepped' Art Akiane." [Dkt. #262, at 11-12, 13].

> Colorado's six-year statute of limitations for recovery of a liquidated debt applies. [Dkt. #262, at 12].

> "Plaintiff is entitled to discovery for the span of the Licensing Agreement because it relates to Defendants' intent, knowledge, plan, and motive" as "Defendants and Carpentree conspired to "sidestep" Art Akiane in January 2016." [Dkt. #262, at 15].

To be clear, each of these arguments has, as the foregoing discussion makes plain, been waived or forfeited. But a brief discussion should demonstrate that, having chosen a questionable strategy of advancing some and withholding other arguments throughout this ordeal, plaintiff at this point has adopted a "thousand paper cuts strategy" as a last ditch effort. The Seventh Circuit has repeatedly criticized this type of presentation, *see Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 513 (7th Cir. 2011); *United States v. Pearson*, 340 F.3d 459, 464 (7th Cir. 2003); *United States v. Evans*, 92 F.3d 540, 546 (7th Cir. 1996), calling it, variously, "the equivalent of a laser light show of claims may be so distracting as to disturb our vision and confound our analysis." *United States v. Lathrop*, 634 F.3d 931, 936 (7th Cir. 2011) (collecting cases); a "scattergun approach [that] generally does not serve [clients] well," *Cole v. Comm'r*, 637 F.3d 767, 772 (7th Cir. 2011); or a

16

"kitchen sink approach to briefing [that] cause[s] distraction and confusion, [and] also consumes space that should be devoted to developing the arguments with some promise." *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000). A brief containing a collection of insubstantial arguments once caused the Sixth Circuit to remark that "[w]hen a party comes to us with nine grounds for reversing the [lower court's decision], that usually means there are none." *Fifth Third Mortg. Co. v. Chi. Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012).

First, there is the proposition that "[s]tatutes of limitations are not outer boundaries to discovery." [Dkt. #262, at 10-11]. Generally, "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken, or to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). So, the statute of limitations may not be a rigid boundary, but the lack of rigidity doesn't automatically entitle a party to the unbounded discovery plaintiff sought originally or the ten years and five months plaintiff now seeks, especially when a party staked all to a claims – Copyright and breach of contract – that have a three-year statute of limitations. The cases plaintiff relies on don't say otherwise. In *Geinosky v. City of Chi.*, 675 F.3d 743 (7th Cir. 2012), the court allowed discovery beyond the limitations period because the claim was conspiracy, and discrete actions furthered that conspiracy both before and during the limitations period. 675 F.3d at 750 ("if Geinosky can prove that they were part of a conspiracy, they can still be held liable for the later actions of co-conspirators that harmed the plaintiff during the limitations period."). That is not the case with the "garden-variety" claims the plaintiff has brought here. Similarly, the situation in *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351 (N.D. Ill. 2005) was exceedingly more complex: it was an anti-trust action with

17

continental reach. *See Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*, 95 F.R.D. 398, 399 (S.D.N.Y. 1982) (discovery in antitrust cases "routinely goes beyond the statutory period"). Indeed, in *Sulfuric Acid*, the statute of limitations was not even in play when the discovery dispute was brought to court because the defendants had long since withdrawn that objection and opted for arguing "undue burden." And finally, in *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 808 (7th Cir. 1999), intent was an issue so discovery outside the statute of limitations was relevant to establishing the requisite intent. 190 F.3d at 808. Intent is not an issue in a breach of contract case. Suffice it to say, none of this takes us from three years to one hundred and twenty-five months.

Compounding plaintiff's problem is that it seems to have been operating under an outdated notion regarding the scope of discovery – or, as is more likely, intentionally ignored the bounds of discovery applicable to this case. Repeatedly, plaintiff has submitted that "discovery requests are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action," citing *Rubin v. Islamic Republic of Iran*, 349 F.Supp.2d 1108, 1111 (N.D. Ill. 2004). [Dkt. #262, at 5; #212, at 1; #122, at 3; #120, at 3]. But that is an obsolete and, now, an overly broad statement of the law. *Rubin* was decided seventeen years ago; it cited *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001), which relied on *AM Intern., Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (N.D.Ill.1981) and 8 Wright & Miller, Federal Practice and Procedure, Civil § 2008 (1970). The date of the Wright and Miller edition – 1970 – is important. The line of cases leading up to that quote from *Rubin* are all based on the old version of Fed.R.Civ.P. 26(b)(1) which, until 2000, required only that the information sought be "relevant to the subject matter involved in the pending action." "Subject matter" tended to go well beyond the parties' claims and defenses. Now, of course, discovery is limited in scope to "non-privileged matter that is relevant to any party's claim

18

or defense and proportional to the needs of the case." Fed.R.Civ.P. 26(b)(1). And, similarly, back in 1970, discovery was not hemmed in by the concept of proportionality, which made its debut in 1983 to "deal with the problem of over discovery." Linda Sandstrom Simard, *Seeking Proportional Discovery: The Beginning of the End of Procedural Uniformity in Civil Rules*, 71 Vand. L. Rev. 1919, 1928 (2018).

The direction of discovery since 1970 – at least the intention behind the Rules changes – has been away from unbridled, "any possibility" discovery, which had been decried as a runaway train, *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 901 (7th Cir. 1981); or a monster on the loose, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986); or the bane of modern litigation. *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000).

But, even setting the Rule changes aside, and regardless of the provenance of a quote, a judge overseeing discovery in a case dealing with a triple terrorist suicide bombing that killed five people and wounded nearly two hundred others, *see Rubin v. Islamic Republic of Iran*, 349 F.Supp.2d 1108 (N.D. Ill. 2004), is understandably and properly apt to allow far more discovery, even with questionable bases, than one dealing with a case about the commercial value of a handful of paintings. Ten years and five months of discovery in this case, where the applicable statute of limitations for the licensing agreement is just three years, is clearly disproportionate. Only "literary perversity or jaundiced partisanship" could suggest otherwise. Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527-28 (1947).

Next there is the argument that the statute of limitations is tolled because plaintiff did not discover defendants' breach of the Licensing Agreement "until the suit was filed because ASW hid

19

its illicit printing and sales when it 'side-stepped' Art Akiane" or because "Defendants and Carpentree conspired to "sidestep" Art Akiane in January 2016." [Dkt. #262, at 11-12, 13, 15]. The argument is based in its entirety on a 2016 email among the Hobsons (Carpentree) produced in discovery once this suit was filed. Plaintiff provides the court with no context for the email and doesn't develop this argument beyond trumpeting "side-stepping" in bold face multiple times. But, "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016). *Accord Harrington v. Duszak*, 971 F.3d 739, 741 (7th Cir. 2020). In any event, the email appears to relate to delays, due to Mr. Kramarik, with the Hobsons trying to get an idea of pricing for a printing order, and Corneliuson providing a sample. [Dkt. #262-3, Page 2/20]. The email indicates that this was within the licensing agreement so it is not clear how it was "illicit." Moreover, an earlier Hobson email from January 13, 2016, suggests that Mr. Kramarik knew or "should have . . . discovered [the breach] by the exercise of reasonable diligence," Colo.Rev.Stat. § 13–80–108(6), much earlier than plaintiff is now claiming. [Dkt. #262-3, Page 3/20 ("Akiane's dad called Carol last week and said there were at least 20 different sources for Carpentree POP framed art online. He wants this shut down.")].

Then there is plaintiff's assertion that Colorado's 6-year statute of limitations for "[a]ll actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action" applies. [Dkt. #262, at 12]; *see* Colo.Rev.Stat. § 13-80-103.5(1)(a) . As the plaintiff concedes, that only takes this back six years, not ten. [Dkt. #262, at 12]. And, oddly, plaintiff also argues in nearly the same breath that the debt it seeks to recover is "an 'indeterminable' amount of money." [Dkt. #262, at 12].

20

All that being said, it is well within the broad discretion of the court to allow some leeway beyond a three-year cut-off. *King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017); *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016). Of course, a magistrate judge handling discovery has no idea what the district court judge will deem significant or even relevant when the time comes for summary judgment or trial. This can sometimes be a difficulty with bifurcation between substantive issues and discovery disputes. So the tendency is – as will happen here – to err on the side of more discovery instead of less. *See* Frank H. Easterbrook, Discovery As Abuse, 69 B.U.L. Rev. 635, 639 (1989)("One common form of unnecessary discovery (and therefore a ready source of threatened discovery) is delving into ten issues when one will be dispositive. A magistrate lacks the authority to carve off the nine unnecessary issues; for all the magistrate knows, the judge may want evidence on any one of them. So the magistrate stands back and lets the parties have at it. Pursuit of factual and legal issues that will not matter to the outcome of the case is a source of enormous unnecessary costs, yet it is one hard to conquer in a system of notice pleading and even harder to limit when an officer lacking the power to decide the case supervises discovery."). As such, I will exercise my discretion to set the bar at five years. If the defendants have not already provided interrogatory responses and responsive documents covering that time frame – they claim that they have, at least in some instances [Dkt. #267, at 8, 9-11, 15] – they must do so.[5]

Given all that the plaintiff has done in this case, and all it has put the defendants and the court through needlessly, the result might appear somewhat inequitable. But while the lion's share

---

[5] I agree with the defendants that no further responses are required for Interrogatories Nos. 1 and 22. As written, they do not pertain to any oral agreements the parties might have had. The interrogatories clearly ask the defendants to "[i]dentify and describe all instances in which you received permission to produce, reproduce, duplicate, copy, modify, or print Art Akiane's Works from January 11, 2009 to the present *pursuant to the Licensing Agreement*." Thus, they are focused on the parties' written licensing agreement.

21

of the responsibility for the tangle that this dispute has been goes to the haphazard manner in which plaintiff has proceeded, the defendants have not exactly covered themselves in glory. If there are significant issues with conflicts of laws and statutes of limitations, those should be raised early on for resolution, if possible, so the course of discovery can be determined. That did not occur here. Raising a potentially dispositive conflict of laws question nearly two years into a case does not help the court move the case and discovery along. Leaving a patchwork of statute of limitations questions lying around for two years is also no help.

The plaintiff's Motion to Compel [Dkt. #262] is denied.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 11/5/21

22