UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ART AKIANE LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ART & SOULWORKS LLC, and<br>CAROLYNE CORNELIUSON,<br><br>    Defendants. | Civil Action No.: 19-cv-02952<br><br>Hon. Judge Edmond E. Chang<br><br>Hon. Mag. Judge Jeffrey Cole |
| ART & SOULWORKS LLC, and<br>CAROLYNE CORNELIUSON,<br><br>    Defendants-Counter-Plaintiffs,<br><br>v.<br><br>ART AKIANE LLC,<br><br>    Plaintiff-Counter-Defendant,<br><br>and<br><br>AKIANE ART GALLERY, LLC, and<br>AKIANE KRAMARIK,<br><br>    Counter-Defendants. | |

**ART & SOULWORKS AND CAROLYNE CORNELIUSON'S
<u>REPLY IN SUPPORT OF THEIR MOTION FOR MISCELLANEOUS RELIEF</u>**

    Nowhere in Plaintiff Art Akiane, LLC's Response (Dkt. 315) to Defendants' Motion (Dkt. 311) does Plaintiff try to justify either of the actions at issue in the motion. Notably, Plaintiff does not provide any support for its instruction to its witness not to answer any deposition questions about whether Plaintiff is paying attorneys' fees, nor does it explain why it should be able to use a document produced as part of a settlement conference, and subject to an agreement that it would be used for settlement purposes only. Instead, Plaintiff opts to spend its time disingenuously contending that there were no "meet and confers,"

that the first issue was waived and that the instruction not to answer was in reliance on this Court's prior ruling on litigation funding. Plaintiff further claims that the document produced only in settlement is not a trade secret and therefore, the relief sought is unwarranted. As addressed below, none of Plaintiff's arguments support a denial of Defendants' motion, which ought to be granted in full.

**A. Issue One – The Instruction Not to Answer Based on Attorney-Client Privilege**

Plaintiff never asserts that its counsel's instruction to Foreli Kramarik not to answer questions about attorneys' fees because the issue was protected by attorney-client privilege was an appropriate instruction. It does not because it cannot. Rather, Plaintiff argues: (a) Defendants did not ask Mark Kramarik the question and should have; (b) the issue is waived; (c) this Court's prior ruling relating to litigation funding was the true basis for its instruction; and (d) Defendants misinterpret the Court's July 25 ruling (Dkt. 310) which only related to experts. Defendants will address these arguments in order.

*1. The Question Should Have Been Posed to Mark Kramarik, Plaintiff's Corporate Designee*

Plaintiff argues without support that questions about attorneys' fees should have been directed to Mark Kramarik, Art Akiane's corporate designee who also gave an individual deposition, rather than to Foreli Kramarik, whom it describes as an "individual, non-party witness." (Dkt. 315 at 2, 4). First, Defendants are unaware of any rule or case law that states that questions regarding the case may be posed only to the corporate representative and not to any other witness. Although Plaintiff tries to diminish the connection Foreli has to the Plaintiff LLC, a "good standing" search with the Illinois Secretary of State's Office lists Art Akiane as a foreign LLC in which both Mark Kramarik and Foreli Kramarik were listed as managers. (See Corporation/LLC Search/Certificate of Good Standing from ilsos.gov for Art Akiane LLC, attached as Exhibit 1.) In addition, the articles of incorporation for the LLC in Idaho, its state of incorporation, also lists Foreli Kramarik as a manager, and the most recent Annual Report filed last month in Idaho lists her as the sole manager. (See Articles of Organization attached as Ex. 2, and Annual Report filed July 5, 2022 attached as Ex. 3.) Under Idaho law, "[i]n a

manager-managed limited liability company… any matter relating to the activities and affairs of the company is decided exclusively by the manager." Idaho Code Ann. § 30-25-407 (West); *see also*, *Cement-Lock v. Gas Tech. Inst.*, 618 F. Supp. 2d 856, 890 (N.D. Ill. 2009) (addressing a similar law to the Idaho statute – "in a manager-managed company… [e]ach manager is an agent of the company for the purpose of its business.") Therefore, questions pertaining to Art Akiane were appropriately posed to Mrs. Kramarik, who is listed as the sole manager of LLC, and should not have been thwarted by counsel's instruction.

Second, even though it is Defendants' prerogative to decide to whom it wants to pose questions, it did not raise this line of questioning to Mark Kramarik for several reasons, including, that at the time that his depositions were taken, neither Akiane Kramarik's nor Akiane Art Gallery's depositions had been taken. Both are parties to ASW's counterclaim of tortious interference. Information gleaned in those depositions made this line of questioning appropriate, and since Mark Kramarik's depositions were over, the question was posed to the manager of the LLC, Foreli Kramarik.

2. Waiver

Plaintiff claims that because fact discovery ended and Defendants did not raise the attorney-client privilege instruction at that time, it is waived. (Dkt. 315 at 2-3). "The touchstone of waiver is a knowing and intentional decision." *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005). No such intention decision exists. Plaintiff claims that Defendants could have contacted the Court during the deposition to resolve the issue at that time. As the transcript shows, this line of questioning came at the end of Foreli's deposition. At the time the exchange occurred, it was 5:18 pm., past court hours. (Dkt. 311-1 at 155:15). Furthermore, the parties continued to discuss the issue during the ensuing break, until they went back on the record to conclude the deposition without further questions asked, at 5:32 pm. (Id. at 155:18.) As Defendants stated during the break that they would provide support for their position and send an email seeking a formal "meet and confer," no attempt to call the Court after

3

hours was made. As noted in their opening brief, Defendants followed up with an email and ultimately with a meet and confer conference in March 2022. (Dkt. 311-2).

As the Court knows, filing motions are expensive and a party must weigh a host of factors in deciding whether to raise an issue to the Court, including the cost, timing and if any alternative remedies might exist. Defendants opted to accept the alternative remedy, to let sleeping dogs lie as long as the position Plaintiff took – that questions about attorneys' fees were off limits – was adhered to by Plaintiff in all future depositions as well. It *was* so adhered to until the very last deposition in the case, that of Mr. Plumpe on July 25, 2022. Instead of applying the same rationale it applied when it instructed Foreli Kramarik not to answer, Plaintiff instead sought the assistance of this Court to compel an answer to the exact same line of questions it had refused to answer. During the ensuing conference with the Court, Defendants' counsel raised the inconsistent position of Plaintiff and asked the Court how to proceed. The Court noted that the matter should be easily resolved and thus, Defendants attempted to do so.

At no point did Defendants intend to waive this issue or state that it was doing so. Instead, it moved forward with the case, holding Plaintiff to the position it asserted, however incorrect, as long as it was applicable to all parties. When Plaintiff took an inconsistent position during Mr. Plumpe's deposition, Defendants raised the inconsistency in the conference to the Court, and then followed that discussion with yet another effort to resolve what should have been a simple matter (*see* Dkt. 311-4), followed by this motion when it could not. Given that Plaintiff took action inconsistent with its position on July 25, 2022 and Defendants raised it in a motion on July 29, 2022 before the conclusion of expert discovery, the issue was neither waived nor untimely.

3. *The Objection Was Based on this Court's Ruling on Litigation Funding Discovery*

The transcript attached as Ex. A to Defendants' Motion (Dkt. 311-1) and the email exchanges and conversations that followed clearly establish that the ***only*** basis upon which Plaintiff instructed its witness not to answer was attorney-client privilege. Nevertheless, Plaintiff now contends that when it

4

instructed its witness not to answer (and stated it was doing so based on attorney-client privilege), "Plaintiff's objection *relied on* the Court's finding that the information on who was funding the litigation was not relevant." (Dkt. 315 at 3) (emphasis added). To say this is revisionist history is an understatement.

The question of "Is Art Akiane paying any attorneys' fees?" posed to Foreli Kramarik was not posed to elicit the identity of Plaintiff's litigation funder. That information had been disclosed years earlier when Plaintiff opted to reach out to media and participate in an article to gain publicity about the litigation funding it had obtained in this case, replete with a photo of Akiane Kramarik posing in a t-shirt with the funder, Legalist's name emblazoned upon it. Rather, this line of questioning was designed to determine whether Akiane Kramarik or her company Akiane Art Gallery, the two parties charged with tortious interference relating to the termination of the decade-long contract between ASW and Art Akiane, were contributing to the payment of Art Akiane's fees. It was also asked to determine if any other third-party was involved, which might reveal bias or an inter-connection among the many Kramarik companies. The Court's prior ruling denying Defendants' request for discovery regarding the litigation funding is not at issue, and until its response brief, Plaintiff never asserted that it was.[1]

    4. *The Court's July 25 Ruling Only Applied to Experts*

Plaintiff also claims that Defendants misapply this Court's July 25 ruling (Dkt. 310) in which it held that questions about who is paying Plaintiff's damages expert's fees must be answered. Plaintiff interprets the Court's language relating to "an expert or any other **witness fee**" to mean that the issue of

---

[1] Though this line of questioning was not designed to elicit testimony about litigation funding, from a purely academic standpoint, Defendants note that since the discovery ruling, other federal courts have determined that the issue of litigation funding should be revealed in the case. *See 3rd Eye Surveillance, LLC v. United States*, 158 Fed. Cl. 216, 229 (2022) ("the mere existence of an agreement or communication with a litigation funder can be relevant and discoverable"); *FastShip, LLC v. United States*, 143 Fed. Cl. 700, 717 (2019) (the "disclosure of [litigation funding] agreements ... encourage[s] transparency and…can bear on determining whether a party is the real party in interest"); *see also* the April, 18 2022 Standing Order of Delaware District Court Chief Judge Connolly, requiring disclosures about litigation funding in all cases, and Local Civil Rule 7.1.1 for the federal District Court for the District of New Jersey, requiring a similar disclosure.

5

bias in connection with attorneys' fees only applies to experts and third-party witnesses. (Dkt. 315 at 4, emphasis in original). Plaintiff cites no case law to support the theory that bias only applies to experts or third-party witnesses. Nevertheless, the question at hand is whether the instruction not to answer whether Art Akiane, LLC was paying any attorneys' fees was appropriate. Defendants have already explained the basis for the question (and the logical questions that would have followed if Foreli Kramarik had been allowed to answer). These were questions designed to elicit information that was reasonably calculated to lead to the discovery of admissible evidence regarding their counterclaims. Nothing in the July 25 Order states that the issue of attorneys' fees is appropriate for experts and third-party witnesses, but not appropriate under these facts to the manager of the Plaintiff LLC in the case.

5. *Plaintiff's Falsehoods*

Because Plaintiff claims Defendants violated the meet and confer rules, Defendants are forced to point out the many instances in which Plaintiff stretches the truth in its response. First, Plaintiff repeatedly, but falsely contends that "outside discussions in March 2022…the parties had not discussed the issue again before Defendants filed their motion." (Dkt. 315 at 2.) It is unclear how many attempts at resolution Plaintiff thinks are required before the proverbial dead horse is considered effectively beaten. On this record, though, the issue was raised (1) at Foreli's deposition; (2) on break before the conclusion of the deposition; (3) in an email following the deposition, where Defendants' counsel asked for a meet and confer and provided support for Defendants' position (Dkt. 311-2); (4) in the subsequent meet and confer in March 2022; (5) at the meet and confer during Mr. Plumpe's deposition; (6) at the conference with the Court during Mr. Plumpe's deposition; and (7) in an email exchange the day after Mr. Plumpe's deposition (Dkt. 311-4). In every single exchange noted, Plaintiff held fast to their position that the question was shielded based on attorney-client privilege.

Plaintiff is further disingenuous in its footnote 2 claiming that it "offered several compromises" to resolve the matter. (Dkt. 315, n.2). The only "offer" came the day before Plaintiff's response brief

6

was due, and while Defendants were quite willing to avoid expending further fees on the two issues in the motion that should have been easily resolved, Plaintiff did not agree to the language proposed by Defendants to be included in the proffered sworn declaration. This is Plaintiff's prerogative, but to then attempt to characterize Defendants as being somehow wildly unreasonable is inappropriate. Further, Plaintiff was unwilling to engage *at all* in resolving the second issue, offering only that it would agree "*to allow* Defendants to reserve their rights" to raise the issue at trial. As Defendants had already expended the fees to file this motion, and have always had the right to raise the issue at trial, without the need for agreement with Plaintiff to do so, such a proposal was hollow and rejected.

### B. Issue Two – Use of Information Produced Only As Part of a Settlement Conference

As with the first issue, in its Response, Plaintiff does not even attempt to justify the use of a document produced only as part of the settlement conference the parties had with this Court. Instead, it incorrectly argues that "nowhere did the parties agree to or state that the document was not to be used." (Dkt. 315 at 5). This statement is belied by the language in the email exchange attached to Defendants initial brief, in which Defendants' counsel stated: "The materials [items produced for the settlement conference] will need to be subject to an agreement that ***they are being produced for settlement purposes only and not for use in the litigation*** (recognizing that if we don't settle and you are entitled to any based on the current litigation, you will get them)." (June 24, 2019, 4:31 p.m. email, Dkt. 311-6) (emphasis added).[2]

Plaintiff also misapprehends the argument Defendants are making. Defendants do not contend the information is privileged or a trade secret and that is why it should not be used.[3] Rather, the

---

[2] It is hard to believe Plaintiff was unaware that the email in question was produced as part of the settlement discussions. The email did not contain a bates label, and was dated August 1, 2019, the date of a settlement conference between the parties. But even if Plaintiff was unaware of the nature of the document during the deposition, it was advised of the context when Defendants' counsel put an objection on the record to the use of the document during the deposition, and then explained the context more fully in a subsequent email. (Dkt. 311-4). Plaintiff still refused to abide by the original "for settlement purposes only" agreement and again, has forced Defendants to have to incur needless fees for what should have been an undisputed issue.

[3] If that were the case, Defendants would have filed the exhibit under seal.

information contained in the document was created for purposes of settlement only and subject to an agreement it would not be used for any other purpose. The document was not a document maintained in the ordinary course of ASW's business; it was selective information reflecting a snapshot in time in order to facilitate settlement, which required an inventory of only a certain subset of the art ASW owned. As that information was not required to be and was not produced in the course of discovery in this matter, there is no context in the record Defendants can point to should Plaintiff continue to violate the parties' agreement, which makes it prejudicial to Defendants.[4]

Moreover, although the concept of the parties ever engaging in a settlement conference again may seem farfetched at this point in the litigation, not being able to rely on agreements regarding the use of information obtained in such a conference would certainly deter Defendants, and presumably, all parties, from wanting to participate in that process in the future. "The confidentiality of settlement proceedings in this court is well-established." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 517 (7th Cir.2007); *In re Young*, 253 F.3d 926 (7th Cir.2001); *Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 488 (7th Cir. 2008) ("A pleading that contains information in violation of settlement conference confidentiality must be withdrawn.")

## CONCLUSION

For the reasons stated above and in its opening brief, Defendants Art & Soulworks and Carolyne Corneliuson respectfully request that this Court grant the relief it has requested.

---

[4] If, as Plaintiff contends, seeking to strike the document from the Plumpe deposition is "too egregious," Defendants are content to accept a prohibition on the use of the testimony and document in any future motion or at trial. This compromise was offered to Plaintiff but rejected.

Dated: August 10, 2022                                    Respectfully submitted,

*/s/ Nicole N. Auerbach*

Nicole N. Auerbach
Kehinde Durowade
ELEVATENEXT LAW
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
(312) 676-5460 - Telephone
(312) 676-5499 - Facsimile
nicole.auerbach@elevatenextlaw.com
kehinde.durowade@elevatenextlaw.com

## CERTIFICATE OF SERVICE

I, Nicole Nehama Auerbach, an attorney, hereby certify that the foregoing was filed with the Court via CM/ECF on August 10, 2022, which provided notice of same to all parties who have made an appearance in this case.

/s/ *Nicole Nehama Auerbach*
Nicole Nehama Auerbach