**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ART AKIANE, LLC,

          Plaintiff / Counter-Defendant,

            v.

ART & SOULWORKS LLC, and
CAROL CORNELIUSON,

          Defendants / Counter-Plain-
          tiffs.

            v.

AKIANE ART GALLERY, LLC, and
AKIANE KRAMARIK,

          Counter-Defendants.

No. 1:19-CV-02952

Judge Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

This dispute follows a breakdown in the business relationship between Art Akiane, which is the licensing entity of artist Akiane Kramarik and her family, and their erstwhile retailer, Art & Soulworks. Their formal licensing agreement evolved from an informal business arrangement that began almost two decades ago. R. 96, Second Am. Compl. ¶ 47.[1] Under the agreement, Art & Soulworks reproduced Akiane's artwork on certain products like greeting cards, journals, and bookmarks; in

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

exchange, Art Akiane received royalties. *Id.* ¶ 48. After the licensing agreement expired, Art Akiane brought this lawsuit, alleging that Art & Soulworks misused Akiane's artistic paintings, engaged in unlicensed reproductions of her artworks, and breached the terms of the agreement. *See generally* Second Am. Compl.

Art Akiane brings an assortment of statutory claims under the Copyright Act, Lanham Act, the Digital Millenium Copyright Act (DMCA), the Illinois Uniform Deceptive Practices Act, and the Illinois Right of Publicity Act, alongside common law claims of unjust enrichment, unfair competition, and breach of contract.[2] R. 96, Second Am. Compl. Art & Soulworks and Carol Corneliuson (the owner of Art & Soulworks) are the remaining Defendants in this action.[3] The Defendants move for partial summary judgment against most of the claims and seek to narrow the potentially available DMCA damages. R. 332, Mot. for Part. Summ. J. Art Akiane opposes Plaintiff's motion entirely and counters by moving for partial summary judgment on additional claims and counterclaims, as well as exclusion of the Defendant's expert. R. 355, Def.'s Resp. at 1-2. Art Akiane also moves for the Court to hold the Defendants in contempt for violating an earlier-issued preliminary injunction, *see* R. 177, Prelim. Inj. Order., which barred the Defendants from using Akiane Kramarik's name,

---

[2]The Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331, 1338, and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367. *See* Second Am. Compl. ¶¶ 18–20.

[3]Although the Second Amended Complaint is the currently operative complaint, two of the named defendants, Carpentree (an online vendor) and Virginia Hobson (the owner of Carpentree), have settled Art Akiane's claims. R. 291, Joint Stipulation of Dismissal. After the entry of the settlement, Carpentree and Hobson withdrew their crossclaims against Art & Soulworks and Carol Corneliuson. R. 295, Joint Stipulation of Dismissal of Crossclaims.

likeness, or previous affiliation with Art & Soulworks to promote their business, *see* R. 329, Pl.'s Contempt Mot. For the reasons explained below, the parties' motions for summary judgment are granted in part and denied in part. The motion to hold the Defendants in contempt is denied.

## I. Background

In deciding the parties' cross-motions for summary judgment, the Court views the evidence in the light most favorable to the respective non-moving party. *Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So when evaluating Art Akiane's summary judgment motion, the evidence is viewed in the Defendants' favor, and vice-versa when evaluating the defense's summary judgment motion. The facts below are undisputed unless otherwise noted.

### A. Akiane's Artwork

In 2003, at just eight years old, Akiane Kramarik completed her most famous work of art, a portrait of Jesus Christ entitled *Prince of Peace*. R. 354, Pl.'s Statement of Additional Facts (PSAF) at ¶ 4.

3



The portrait led to Akiane's artwork being featured in gallery exhibitions around the world, as well as talk show appearances, hundreds of media writeups, and even a book deal for Akiane. R. 363, Def.'s Resp. to PSAF ¶¶ 5–6. Since then, Akiane has produced other artwork, at least 13 of which—including all the works at issue in this litigation—are federally registered copyrighted works. *Id.* ¶¶ 9–10.

### B. Licensing and "Wholesale" Agreements

In 2006, the Kramarik family entered into an informal business relationship, through written and oral agreements, with Carol Corneliuson. R. 343, Def.'s Statement of Facts (DSOF) ¶ 4. The Kramarik family, via their licensing entity Art Akiane, formalized this arrangement with Art & Soulworks in 2008 by executing the first

iteration of the licensing agreement at issue in this litigation. Def.'s Resp to PSAF ¶ 12. Under the licensing agreement, Art Akiane granted Art & Soulworks the right to "produce and sell bookmarks, journals, wallet cards, calendars, [and] greeting cards" featuring Akiane's artwork. *Id.* ¶ 16, Exh. 154, Licensing Agreement (the "License") at 1. In return, Art & Soulworks paid a royalty fee to Art Akiane for all merchandise sold to retailers and customers. Def.'s Resp. to PSAF ¶ 21. The agreement also granted Art & Soulworks a license to use digital images of Akiane's paintings in "promotional advertisements and materials, and for all promotional purposes in connection with the LICENSEE's web site and Internet related business without cost or royalty to the LICENSOR." *Id.* ¶ 22 (capitalization in original). But the License declared that Art Akiane retained control over the copyrights to the digital images, and the images could only be used for purposes specified in the License. *Id.* ¶ 25. Also, Art & Soulworks agreed "to obtain written/email/faced art approval from Art Akiane … on each product and each image prior to production." *Id.* ¶ 23. The License was "renewable if both parties so desire." *Id.* Either party could elect not to renew the License for any reason without providing the other party with advance notice of its intention not to renew. *Id.* ¶¶ 13–14.

Soon after signing the initial License in 2008, Art Akiane began permitting Art & Soulworks to buy artworks directly from the Akiane Gallery at discounted prices for resale on the Art & Soulworks online shop. R. 352, Pl.'s Resp. to DSOF ¶ 9. This "wholesale agreement" was never written down, but the parties continued this course of dealing throughout the duration of their licensing agreement. *Id.* ¶¶ 9–10. Art &

Soulworks would also regularly "drop-ship" artwork by fulfilling orders for pieces not in its own inventory and then later ordering those pieces from the Akiane Art Gallery (of which Akiane Kramarik is the sole member) to deliver to its customers. Def.'s Resp. to PSAF ¶ 87. According to Art & Soulworks, it sold more than 50,000 pieces of Akiane's art via this arrangement. Pl.'s Resp. to DSOF ¶ 9. The parties openly dispute the nature, extent and precise terms of the wholesale purchases of Akiane's art. Def.'s Resp. to PSAF ¶ 131.

In 2012, after expiration of the initial License term, the parties renewed the agreement through 2015. Def.'s Resp. to PSAF ¶ 35. They did so again on May 18, 2016, with a License renewal through January 11, 2019. *Id.* ¶ 36. Across both renewal periods, the parties opted not to change the underlying terms of the licensing agreement. *Id.* ¶ 37. Separate from the written License, Art Akiane orally authorized Art & Soulworks to make other items not covered by the written License, such as magnets, mugs, and tapestries on a product-by-product and image-by-image basis. Pl.'s Resp. to DSOF ¶ 8. According to the Defendants, in the 2016 renewal, the License included a "Second Schedule A" that expanded the number and categories of images that the Defendants were allowed to make and sell. *Compare* License, Exh. 154 *with* DSOF, Exh. 18 at Second Sch. A. But Art Akiane disputes that a Second Schedule A was ever presented to the Kramarik family or included as part of the 2016 renewal. Def.'s Resp. to PSAF ¶¶ 38–43. In any event, the Second Schedule A still limited the universe of licensed products that Art & Soulworks could sell and did not grant

6

permission to produce *framed* wallet cards, greeting cards or calendar pages, digital downloads, or fine art prints. *Id.* ¶¶ 44—45; DSOF, Exh. 18 at Second Sch. A.[4]

### C. Use of Images, Products, and Trademarks

Although Art Akiane always required approval of products prior to their initial production, Def.'s Resp. to PSAF ¶¶ 47, 50, the parties actively dispute whether Art Akiane adhered to requiring prior approval of images used by Art & Soulworks for promotional purposes. *Id.* ¶¶ 47–49, 61. This includes a dispute over whether prior approval was ever required for Art & Soulworks to offer, as a promotion, a free download of Akiane's *Prince of Peace* to all website visitors. *Id.* ¶¶ 52–54. Also disputed is whether the prior-approval requirement extended to the use of derivative images and montages of Akiane's artwork by Art & Soulworks on social media sites. *Id.* ¶¶ 62, 64–73. Many hundreds of these images, montages, and products advertised on social media by Art & Soulworks contained alterations to copyright management information, and again the parties contest whether that was done without approval from Art Akiane. *Id.* ¶¶ 74–75.

For the duration of the License agreement, Art & Soulworks held itself out as the "Official," Trusted," or "Authorized" source for Akiane Art. Def.'s Resp. to PSAF ¶ 81, Exh. 172. On the one hand, Art & Soulworks was entitled to do so as the

---

[4]Art & Soulworks disputes that the framing of wallet cards and greeting cards occurred without Art Akiane's knowledge. DSOF, Exhs. 75-76. The parties dispute whether Art Akiane was aware that Art & Soulworks (among other third-party vendors) were selling framed wallet cards and greeting cards throughout the parties' business relationship. Def.'s Resp. to PSAF ¶¶ 55–57.

7

"worldwide and exclusive" licensee of Art Akiane when the License was active. *Id* ¶ 81 (citing License). On the other hand, Art & Soulworks' use of certain trademarks such as "Art by Akiane™ is a trademark of ©Art & Soulworks" on product labels was not explicitly set forth in the License. *Id.* ¶ 80. Nonetheless, Art & Soulworks contends that Art Akiane was aware that, throughout the parties' 12-year relationship, Art & Soulworks applied the trademark to products that it sold. *Id.*

The Defendants also allege that, in 2015 or 2016, Art Akiane and Art & Soulworks entered into an oral agreement giving Art & Soulworks the right to print and sell certain Akiane artworks outside of the schedule of works attached to the License. R. 352-3, Exh. 141; R. 47– Def.'s Am. Counterclaim (DAC) ¶¶30–32. The precise terms of this agreement were never written down and the parties dispute whether Art & Soulworks has offered enough evidence to support that it had approval from Art Akiane to engage in the scope and scale of printed works that it did. Def.'s Resp. to PSAF ¶¶ 124–129.

### D. Post-License Liquidation and Conduct

In January 2019, Art Akiane sent a letter to Carol Corneliuson notifying her that Art Akiane would not renew the License. R. 343-37, Exh. 36. Akiane's parents (Mark and Foreli Kramarik) and her brother (Jean Lu Kramarik) took responsibility for drafting the January 2019 Letter, but the parties dispute the degree of involvement by Akiane herself, or the Akiane Gallery, in Art Akiane's decision not to renew the License with Art & Soulworks. Def.'s Resp. to PSAF ¶¶ 91–104. Along with the January 2019 Letter, Art Akiane sent Corneliuson a Licensing Dissolvement

Agreement, which was drafted and signed entirely by Akiane Kramarik and the members of the Kramarik family who controlled Art Akiane. *Id.* ¶ 105. The Dissolvement Agreement instructed Art & Soulworks to immediately remove all "Official" titles from the "Prince of Peace Painting by Akiane Kramarik" Facebook page that it had created to promote Akiane's artwork, because of the potential that members of the public would confuse the site as "the artist's official Facebook page." PSAF ¶ 106, Exh. 36 at 12–13. Art & Soulworks was also ordered to cease all representations of itself as an "Official" or "Authorized" source of Akiane's artwork; refrain from making any online posts that used Akiane's "likeness, Name, Brand, or Artwork"; and "no longer sell, license, or distribute Akiane's artwork" as well as discontinue the sale of "all merchandise … associated with Akiane's brand and artwork." *Id.*

The parties soon entered a post-License liquidation period—originally set to end March 1, 2019—during which Art & Soulworks could sell off much of its existing inventory of Akiane-associated products. Def.'s Resp. to PSAF ¶¶ 110–11. The sides continued negotiations on extending the liquidation period, but eventually reached an impasse, leading Art Akiane to assert that the sell-off window would close on April 13, 2019. *Id.* ¶¶ 112–15. At this point, Art & Soulworks was told it "no longer has the permission to sell, distribute, market or produce any of Akiane's images/products and needs to immediately remove all images of Akiane's Artwork, Name, Brand, Likeness, and References from all its social media and website platforms." R. 344-37, Exh. 73. Despite this admonishment, Art & Soulworks does not dispute that it continued displaying on social media many montages incorporating images of Akiane's artwork,

9

which it maintains are derivative works. Def.'s Resp. at PSAF ¶ 117. It also continued to "advertise" free downloads of Akiane's *Prince of Peace* painting to its website visitors and engaged in storytelling about Akiane's life and paintings as part of its promotion of paintings that it had purchased from Art Akiane. *Id.* ¶¶ 118–19.

Art Akiane then filed this lawsuit, R. 1 (Complaint), and eventually filed a preliminary injunction motion, seeking a court order enjoining the Defendants from engaging in any potential violations of Akiane's copyrights to her artwork or using her likeness to promote Art & Soulworks online channels. R. 65, Mot. for Prelim. Inj. 1–2. The Court granted the motion and directed the Defendants to scrub their social media and website to remove posts that might feature and create a false appearance of association with Akiane, her likeness, and her artwork. Prelim. Inj. Order at 65–68. But the preliminary-injunction order also held that Art & Soulworks has "an implied license to display images online in order to resell paintings. And after the agreement was terminated, Art & Soulworks retains the right to continue selling off its wholesale inventory." *Id.* at 39. To allow the Defendants to sell the remaining inventory purchased from Art Akiane, the Court permitted Art & Soulworks to "[d]isplay thumbnail and full-size images of Akiane's artwork online" and "use Akiane's name in order to describe that a particular piece of art was authentically created by Akiane." *Id.* at 66. Still, the Defendants were enjoined from "[u]sing Akiane's likeness or photo for promotional purposes," and from "[d]isplaying Akiane's artwork or derivative works created from that artwork (including all montage-style posts with religious

text superimposed on the images) for general promotional purposes not tied to the sale of any particular piece of art." *Id.* at 67.

### E. Post-Injunction Order Conduct

After entry of the preliminary injunction, Art Akiane sent the Defendants various cease-and-desist letters demanding that they scrub their online channels for any infringing content to comply with the order. R. 330, Decl. of Adam Wolek Supporting Pl.'s Contempt Mot., Exhs. 2–4, 7. Each of the takedown letters identified specific instances of alleged violations. *Id.* An apparent cycle of action and reaction set in, in which Art Akiane would admonish the Defendants about an infringement and the Defendants would take down the infringing content, but then the Defendants committed a new violation, causing the issuance of another takedown letter.

In some instances, the Defendants held firm in the face of Art Akiane's takedown letters and denied that they had any obligation to remove certain content. For example, as Art & Soulworks continued to sell down its inventory of wholesale items purchased from Art Akiane, Art Akiane accused Art & Soulworks of using Akiane's name, image, artwork, and likeness to sell copies of the book *Akiane: Her Life, Her Art, Her Poetry* or of the *Prince of Peace* painting. *Id.*, Exh. 7. The Defendants rejected the notion that the preliminary injunction forbade them from using "publicly available information included to promote the work so that the reader will be more compelled to purchase it." *Id.*, Exh. 8.

That said, Art & Soulworks admits that violations of the preliminary injunction cited in the Plaintiff's Contempt Motion did happen, either inadvertently or as it

11

brought itself into compliance with the order after each Art Akiane takedown notice. R. 345, Def.'s Resp. to Contempt Mot. at 4, 6. This includes an instance in which a drop-down navigation on the Defendants' website was reinstated after the issuance of the preliminary injunction, republishing multiple previously suppressed pages, displays, and language that violated the order. R. 346, Carol Corneliuson Decl. ¶¶ 18–20. This admission does not extend to the Defendants' liquidation sale of some 26 pallets of Akiane-related products to Carpentree, which apparently predate and fell outside the purview of the preliminary injunction. *Id.* ¶¶ 10–15; Def.'s Resp. to Contempt Mot. at 4–5.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary-judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only competent evidence of a type otherwise admissible at trial, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that

it is entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*¸ 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*¸539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

### A. Defenses & Affirmative Defenses

First, the Defendants move for partial summary judgment on a set of defenses and affirmative defenses, including (1) Art Akiane's statutory standing to sue; (2) the preemption of certain state claims by federal copyright law; (3) the applicability of the statute of limitations to bar or to limit some of the claims; and (4) whether Art Akiane waived its intellectual property rights and should be estopped from binging this lawsuit. The Court examines each of these affirmative defenses in turn.

### 1. Standing on Copyright Infringement, DMCA, Contributory Copyright Infringement, and Inducement of Copyright Infringement (Counts 1, 6, 10, and 11)

For a first defense, the Defendants argue that Art Akiane does not have "standing" to bring the copyright claims and the DMCA claims. The issue is not really whether Art Akiane has Article III standing to sue; instead, the Defendants contend that Art Akiane does not have ownership of the copyrights under the governing federal statutes. Federal copyright law provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any

13

infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. §501(b). Likewise, a plaintiff seeking to sue another under the DMCA must first prove "ownership of a valid copyright on a work." *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1193 (Fed. Cir. 2004) (applying Seventh Circuit law). Vicarious liability claims for copyright violations—such as contributory infringement and inducement of infringement—are no different. *See, e.g.*, *Design Craft Fabric Corp. v. K-Mart Corp.*, 2001 WL 688491, at *3 (N.D. Ill. Feb. 14, 2001) (holding that the plaintiff had no standing to bring a contributory infringement claim because the plaintiff was neither the owner nor the exclusive licensee).

The Defendants contend that Art Akiane lacks standing to pursue copyright infringement and DMCA claims for artworks that are not included in the assignment of rights from Akiane Kramarik. R. 333, Def.'s Mem. Part. Summ. J. (Def.'s Mem.) at 7–9. The crux of that argument is that Akiane and Akiane Art Gallery assigned to Art Akiane the copyrights to *only* 13 works by the artist, including the right to sue for past copyright transgressions. DSOF ¶ 55. The Defendants express concern that Art Akiane is seeking to enforce unassigned copyrights; the Defendants premise the concern on the report authored by Art Akiane's damages expert, who provided two damages calculations for the DMCA claims: one for the 13 works and another for works outside of the assigned 13. R. 342-1, Exh. 80 at 8.

But this dispute is no longer live. Art Akiane concedes that it does *not* seek to enforce copyrights beyond the 13 assigned works. R. 355, Pl.'s Opp. to Part. Summ. J. and Mem. for Part. Summ. J. (Pl.'s Resp.) at 37. According to Art Akiane, the

damages expert's secondary calculation of DMCA damages that included works outside the assigned 13 was merely superfluous. *Id.* With this concession in place, there is no question that Art Akiane has statutory standing to enforce the copyrights in the 13 assigned artworks.

## 2. Preemption of Unfair Competition, Illinois Deceptive Trade Practices Act, and Unjust Enrichment (Counts 3, 4, and 5)

Next, the Defendants seek summary judgment on the claims for common law unfair competition, the Illinois Deceptive Trade Practices Act, and unjust enrichment, because those claims are purportedly preempted by the Copyright Act.[5] Two conditions must be met for a state law or state common law to be preempted by the Copyright Act: "[f]irst, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specific in § 102. Second, the right must be equivalent to any of the rights specified in § 106." *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986). The Plaintiff does not dispute that the 13 artworks at issue here are fixed in tangible form

---

[5]The Copyright Act expressly preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" and which are "in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(a). Importantly for this section, § 301(b) of the Act includes an express non-preemption clause making clear that "Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to … (1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression … (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 …."

nor that they come within the subject matter of copyright as contemplated in § 102 of the Copyright Act. Instead, Art Akiane argues that the rights it asserts are broader than the rights specified in § 106, and thus are not preempted.

"To avoid preemption, the state claim must incorporate [1] an extra element that changes the nature of the action so that it is [2] qualitatively different from a copyright infringement claim." *Marobie-FL, Inc. v. National Ass'n of Fire and Equipment Distributors*, 983 F. Supp. 1167, 1180 (N.D. Ill. 1997) (citations omitted) (cleaned up).[6] Here, each of the state claims challenged by the Defendants survive preemption, as explained next.

### a. Unfair Competition (Count 3)

The Plaintiff's common law unfair-competition claim is premised on the Defendants' alleged misconduct in causing consumers to incorrectly believe that Akiane and Art Akiane authorized the Defendants to sell the artist's works, and that the Defendants were otherwise affiliated with Art Akiane. This element of unfair competition—consumer *confusion*—goes beyond what is needed to prove a federal copyright infringement, which does not require confusion. *See Richardson v. Kharbouch*, 156 F.4th 849, 856 (7th Cir. 2025) (setting forth the two elements of a copyright claim: (1) ownership of a valid copyright; and (2) copying of the work's original elements). Given that Art Akiane acknowledges that Illinois common law unfair-competition claims

---

[6]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

require a showing of confusion, as well as a showing of misappropriation, the claim is not preempted. Pl.'s Resp. Br. at 38 (citing *Stephen & Hayes Constr., Inc. v. Meadowbrook Homes, Inc.*, 988 F. Supp. 1194, 1200 (N.D. Ill. 1998)).

### b. Deceptive Trade Practices Act (Count 4)

Next for consideration is the claim under the Illinois Deceptive Trade Practices Act. Art Akiane premises this claim on alleged violations of Sections 2(1), 2(3), and 2(5) of the Act. *See* Second Am. Compl. ¶ 143; 815 ILCS § 510/2(1), (3) and (5). Those subsections of the statute provide that a person engages in deceptive trade practices when that person "(1) passes off goods or services as those of another …; (3) causes a likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another … ; [or] (5) represents that goods or services has sponsorship, approval, characteristics … that they do not have." *Id.* The Defendants argue that the Copyright Act preempts this claim because the additional element of consumer confusion does not make the claim "qualitatively different from a claim of copyright infringement." Def. Mem. at 11—12 (citation omitted).

But the pertinent provisions of the Deceptive Trade Practices Act are *not* violated by the mere act of reproduction, distribution, performance, or display of copyrighted works. The pertinent subsections all require, in some form or another, a likelihood of consumer confusion. As pleaded in this case, the claim under the Deceptive Trade Practices Act requires a showing that consumers were likely to be confused that Art Akiane had authorized the Defendants' continued sales or were otherwise still authorized or affiliated with Art Akiane. This goes beyond mere copying of a

17

copyrighted work. Here, the alleged violation of the Deceptive Trade Practices Act survives preemption.

### c. Unjust Enrichment (Count 5)

Next up is the Illinois common law claim for unjust enrichment.[7] Art Akiane premises this claim on the same allegations of copyright infringement, namely, that Art & Soulworks reproduced, distributed, and sold Art Akiane's works without prior authorization. Second Am. Compl. ¶¶ 109–123, 149–50. To prove unjust enrichment under Illinois common law, Art Akiane must show that the Defendants "unjustly retained a benefit to [Art Akiane's] detriment, and that [Defendants'] retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Banco Panoamericano, Inc. v. City of Peoria, Illinois*, 880 F.3d 329, 333 (7th Cir. 2018) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672, 679 (1989)). Because Art Akiane premises the unjust-enrichment claim on the copyright violations, there is nothing different about the two claims, which results in preemption. It is true that an unjust-enrichment claim requires an unjust retention of the conferred benefit, and that is arguably an element beyond copyright infringement. But the Copyright Act provides for disgorgement of "any profits of the infringer that are attributable to the infringement," 17 U.S.C. § 504(b), which is another way

---

[7]Prior to the filing of the summary judgment motions, the parties disputed the choice of law that should apply to the claims for breach of contract, tortious interference, and unjust enrichment. Because the Defendants did not present a conflict between the laws of Colorado and Illinois on the elements of unjust enrichment, the law of Illinois governs these claims. *See* R. 252, Choice-of Law Order at 17.

of saying that a copyright defendant—like an unjust-enrichment defendant—is liable for disgorging the benefit conferred on the defendant. So, retention of a benefit is not an element that differentiates unjust enrichment from copyright infringement. *See Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 500 (7th Cir. 2011) (explaining that the Copyright Act preempts state law claims when the right is fixed in tangible form, comes within the subject matter of copyright, and is equivalent to any of the rights specified in § 106). Given the complete overlap in these claims, the unjust-enrichment claim is preempted and thus dismissed.

### 3. Statute of Limitations

Art & Soulworks next argues that Art Akiane cannot seek damages on the claims for copyright, DMCA, and breach of contract outside the applicable statute of limitations periods. Def.'s Mem. at 23–24. Art & Soulworks proposes a three-year limitations period for the statutory copyright and DMCA claims, and also three years the breach-of-contract claims under Colorado law. *Id.*

First, the Copyright Act provides that "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). As the Supreme Court has explained, this statute of limitations establishes a "separate-accrual" rule, meaning that "when a defendant commits successive violations [of the Copyright Act], the statute of limitations runs separately from each violation." *Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663, 671 (2014). This reading runs parallel to the "discovery rule" that courts have adopted for the accrual of copyright claims. Under the discovery rule, a copyright claim accrues—and the

19

limitations clock begins—when the plaintiff learns or reasonably should have learned that the defendant was infringing a protected work. *See Petrella*, 572 U.S. at 670 n.4 ("[A]lthough we have not passed on the question, nine Courts of Appeals have adopted … a 'discovery rule,' which starts the limitations period when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." (cleaned up)); *see also Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 618 (7th Cir. 2014) (explaining that the Seventh Circuit recognizes the discovery rule in copyright cases and declining to address whether *Petrella* abrogates the rule). Here, a fact-finder must decide when Art Akiane learned or reasonably should have learned of the alleged copyright, DMCA, and breach of contract violations.

An affirmative defense on statute of limitations grounds, *see* Fed. R. Civ. P. 8(c), is a defendant's burden to prove. *Celotex*, 477 U.S. at 322–23 (explaining that on summary judgment it is the moving party's burden to "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). At this stage, the parties genuinely dispute when Art Akiane became aware or should have reasonably known that the alleged copyright infringements occurred. With genuine issues of fact to be decided, this factual determination will be left to a jury.

Second, as to breach of contract, the Colorado state law governing this subject[8] sets two different statutes of limitations depending on the type of claim: six years for "[a]ll actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action," Colo. Rev. Stat. § 13-80-103.5(1)(a), and three years for other contract actions, Colo. Rev. Stat. § 13-80-101(1). Colorado courts apply the six-year limitations period "if an agreement sets forth a method for determining the amount due, regardless of the need to refer to facts external to the agreement." *Interbank Invs., LLC v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 (Colo. App. Ct. 2000). Here, the parties' License provides a fixed method for moneys due by setting a 10% royalty owed to Art Akiane on all of Art & Soulworks' direct retail sales. *See* License ¶ J. Under Colorado law, unpaid royalties like that—on a fixed percentage—trigger the six-year limitation period. *See, e.g.*, *BP v. Patterson*, 185 P.3d 811, 812 (Colo. 2008). Indeed, the instruction of the Colorado Supreme Court is that "a longer period of limitations should prevail where two statutes of limitations are arguably applicable." *Regional Transp. Dist. v. Voss*, 890 P.2d 663, 668 (Colo. 1995) (collecting cases). So the six-year limitation period applies to Art Akiane's contract claims, beginning on the date on which the jury determines the breach was discovered or reasonably should have been discovered.

---

[8]*See* R. 252, Choice-of-Law Order at 10–15 (holding that Colorado's statute of limitations applies to the breach-of-contract claims filed by Art Akiane and Art & Soulworks).

#### 4. Waiver and Estoppel

Next, the Defendants seek summary judgment to declare that Art Akiane waived its right to sue on, and should be estopped from asserting, the claims for copyright infringement, DMCA violations, Lanham Act infringement, unfair competition, Deceptive Trade Practices Act violations, unjust enrichment, contributory infringement, inducement of infringement, and violations of the Illinois Right of Publicity Act. Def.'s Mem. at 26—28. First, as a matter of law, it is not clear that both waiver *and* estoppel—which are distinct legal doctrines—are available for all the claims that the Defendants seek to preclude.[9] Second, even if waiver and estoppel are available defenses across all the listed claims, the Defendants do not allege undisputed facts specific enough to justify summary judgment in their favor.

For copyright infringement, the defense of equitable estoppel applies "when a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception …." *Petrella*, 572 U.S. at 684; *see also Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1228 (7th Cir. 1991) ("For estoppel to apply in a copyright action, the copyright owner must be aware of the infringing conduct and yet act in a way that induces the infringer reasonably to rely upon such action to his detriment."). Separately, the "doctrine on waiver acknowledges that a right may be taken away

---

[9]For instance, the Lanham Act lists laches, estoppel, and acquiescence as available equitable defenses to trademark infringement, but does not list waiver. 15 U.S.C. §§ 1069, 1115(b)(9); *see Nat'l Council of U.S. Soc. of St. Vincent de Paul, Inc. v. St. Vincent de Paul Comm. Ctr. of Portage Cnty.*, 2017 WL 6759411, at *15 (W.D. Wis. Dec. 29, 2017).

from its holder as a penalty for failure to assert it in a clear and timely manner." *Goldman v. Gagnard*, 757 F.3d 575, 579 (7th Cir. 2014) (cleaned up) (citation omitted). For implied waivers, claimants must point to "a clear, unequivocal, and decisive act" showing the intentional relinquishment of a known right." *Delta Consult. Grp. V. R. Randle Const. Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009) (cleaned up). The Defendants bear the burden of proving waiver and estoppel, which are affirmative defenses. Fed. R. Civ. P. 8(c)(1); *see also Sphere Drake Ins. v. All. Am. Life Ins.*, 300 F. Supp. 2d 606, 628–29 (N.D. Ill. 2003), *aff'd*, 376 F.3d 664 (7th Cir. 2004).

According to Art & Soulworks, these defenses rely on the following facts. Over the course of the parties' 12-year licensing agreement, Art Akiane allegedly had knowledge of how Art & Soulworks used Art Akiane's marks and works, yet did not complain about those uses before filing this lawsuit. DSOF ¶¶ 17, 18, 20, 23–26, 28, 60–61. Art Akiane was also on notice that montages of Akiane's artworks with altered CMI and scripture on social media were being published as early as August 2014. *Id.* ¶¶ 40–43, 45–46. The parties' relationship was purportedly guided by constant communication and feedback in which Art & Soulworks relied on Art Akiane to approve the products put up for sale and also general advertising practices. *Id.* ¶¶ 7, 15. The Defendants profess that they relied on Art Akiane's supposed lack of complaint—and willingness to extend the licensing agreement—to justify continuation of the conduct that is now challenged in this lawsuit. *Id.* ¶¶ 40–42, 64.

On the record evidence, summary judgment on waiver and estoppel is not proper here. First, nearly every fact on which Art & Soulworks bases its waiver and

estoppel defenses is genuinely disputed by Art Akiane.[10] Second, Art Akiane alleges countervailing facts challenging the notion that they ever provided Art & Soulworks with the kind of "clear, unequivocal, decisive act" waiving copyright protections as to images or montages posted on social media, free downloads of its artworks, or copyright-information alterations on Akiane-related images and products.[11] Third, the Defendants' waiver defense does not apply to Art Akiane's claims related to Defendants' post-License acts where, by definition, the expiration of the parties' licensing agreement effectuated the *return* of exclusive copyright authority to Art Akiane, rather than a waiver of that authority (given the post-License disputes between the parties. And fourth, as to the estoppel defense, the Defendants must show no genuine issue that Art Akiane engaged in "intentionally misleading representations concerning their abstention from suit." *Petrella*, 572 U.S. at 684. That is a high hurdle to scale, and Art Akiane genuinely disputes the underlying facts, *see* Pl.'s Resp. to DSOF ¶¶ 33–34, 40–42, making it improper for summary judgement.

---

[10]*See* Pl.'s Resp. to DSOF ¶¶ 7, 15, 17–18, 20, 23–26, 28, 40–43, 45–46, 60–61, and 64.

[11]Art Akiane asserts that it requested that Art & Soulworks receive "prior approval of all images before posting them on social media." PSAF ¶¶ 66–70. Art Akiane denies that it clearly and unequivocally waived its claims as to Art Soulworks' extending free downloads of *Prince of Peace* to all visitors of Art & Soulworks' website. PSAF ¶¶ 15–17, 45, 54–56.

**B. Copyright Infringement, DMCA, Contributory Copyright Infringement, and Inducement of Copyright Infringement (Counts 1, 6, 10, and 11)**

Moving on to the merits of the underlying claims and counterclaims,[12] first up is the set of claims for copyright infringement. The Copyright Act gives the owner of a copyright the exclusive rights to reproduce a copyrighted work, to distribute the work, to display the copyrighted work publicly, and to construct derivative works based upon it. 17 U.S.C. § 106. To succeed on its copyright claims, Art Akiane must prove "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Muhammad Ali v. Final Call, Inc*, 832 F.3d 755, 760 (7th Cir. 2016). As already explained earlier, Art Akiane has confined its copyright claims to those 13 pieces of artwork on which it holds copyright registrations. *See supra*, Section III.A.1. Under 17 U.S.C. § 410(c), certificates of registration "constitute prima facie evidence of the validity of the copyright[s]."

Concerning the second element—copying—Art Akiane alleges that the Defendants committed the following acts of copyright infringement:

- Posting modified versions of Akiane's artwork online, in the form of both images and videos (including after the License expired), in violation of Art Akiane's reproduction and display rights;

- Manipulating Akiane's artwork by altering copyright management information, adding text to images, and editing videos in violation of Art Akiane's right to prepare derivative works;

---

[12]Where applicable, the Court adopts the reasoning from the preliminary injunction order to the analysis of the same facts and evidence presented on this claim. *See* Prelim. Inj. Order at 21–47.

25

- Exceeding the terms of the License by selling framed wallet and greeting cards; and

- Encouraging website visitors to download Akiane's art and failing to prevent website visitors from downloading images of Akiane's art, in violation of Art Akiane's distribution rights.

Pl.'s Resp. at 5–19. Art Akiane asserts that, on the last form of infringement (that is, encouraging and allowing website visitors to download Akiane's art), Art & Soulworks committed contributory infringement. *Id.* at 5–6. Art Akiane also moves for summary judgment against the Defendants' first and second affirmative defenses, that is, the assertion that Art & Soulworks had oral "Wholesale" and "Printing" agreements under which the Defendants could use the works beyond what was in the written License. Pl.'s Resp. at 26–28 & n. 27; R. 352-4, Exh. 158 at 62.

In response, Art & Soulworks cross-moves for summary judgment on this set of claims and offers five main arguments. First, the License granted Art & Soulworks the authority to publish promotional materials featuring Akiane's artwork, as well as authority to create derivative works from these promotions that Art & Soulworks could continue to display after the License expired. Def.'s Mem. at 21–23; Def.'s Reply at 5–13. Second, the License-based authority to create derivative works included permission to alter copyright management information on the Akiane artwork that it posted, which undermines the necessary state of mind needed to violate the DMCA. Def.'s Mem. at 12–20; Def.'s Reply at 5–14. Third, the sale of framed greeting and wallet cards was not outside the authority under the License; in any event, Art

26

Akiane knew of and yet did not prohibit the sales; and the mere placement into frames of works that Art & Soulworks otherwise had authority to sell does not constitute copyright infringement. Def.'s Mem. at 24–25; Def.'s Reply at 17–19. Fourth, the License gave Art & Soulworks the right to invite all its website visitors to free downloads of Akiane's *Prince of Peace* as a promotion. Def.'s Mem. at 24–25; Def.'s Reply at 4–5. And fifth, that there is record evidence showing that the disputed oral agreements existed and that the Defendants paid royalties to Art Akiane on the sales made from them. Def.'s Reply at 23–25.

On review of the record evidence, as explained below, not surprisingly there are genuine disputes of fact on what authorizations the Defendants derived from Art Akiane to engage in the copying, distribution, and reproduction of Akiane's works during the period of the License. Having said that, for post-License conduct, liability is partially entered against Art & Soulworks for certain challenged conduct when it was clear to all that any previous authority to offer for sale and to distribute Akiane's works had ended.

### 1. Montage Images and Derivative Works

Art Akiane moves for partial summary judgment on its copyright infringement claim, but only on the Defendants' display and distribution of works on social media after the License expired on January 11, 2019. Pl.'s Resp. at 7. There is no factual dispute on whether the Defendants kept displaying modified versions of Akiane's artwork—including digital images combining multiple works into one, superimposing religious scripture or other text, and cropping images of artworks—after the License.

27

The Defendants did so. R. 352-3, Exh. 150 at 6; Pl.'s Resp. to DSAF ¶ 54. For the post-License use of promotional montages, Art Akiane is entitled to summary judgement: even if Art & Soulworks could create limited-use derivative works for promoting Art Akiane's products *during* the License, there was no such authority *after* its expiration. For the defense cross-motion for summary judgment, there is a genuine dispute of material fact over the scope of Art & Soulworks' permission—implied or explicit under the terms of License—to create derivative works.

**After the License period.** Taking the post-License period first, as the copyright owner, Art Akiane retained the exclusive rights to display, distribute, and "prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2)–(3), (5). So it was up to Art Akiane to decide if "[a]ny of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified in section 106, may be transferred." 17 U.S.C. § 201(d)(2); *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 382 (7th Cir. 2011) ("These rights are divisible, meaning the owner may convey each of them to a different person."). The scope of any subdivision or transfer of rights belonging to the copyright owner depends on the terms of the conveyance— in this case, the License. 17 U.S.C. § 201(d)(1); *see also Frerck v. John Wiley & Sons, Inc.*, 2014 WL 3512991, at *5 (N.D. Ill. July 14, 2014). Art & Soulworks argues that because the License granted it the right to use certain images of Akiane's art "for all promotional purposes in connection with [Art & Soulworks'] website and Internet-related business," *see* License at ¶ D, it was authorized to prepare derivatives of the copyrighted works as promotional advertisements. Def.'s Mem. at 22–23. But the

28

terms of the License contain no explicit authorization for Art & Soulworks to produce derivative works, particularly derivative works that it would then somehow own after the License's expiration. *See Gracen v. Bradford Exchange*, 698 F.2d 300, 303 (7th Cir. 1983) (explaining that a licensee "was licensed to use [the licensor's] copyright in its series of collectors' plates but not to copyright the derivative works thus created"). This limitation makes sense, because a copyright owner is "naturally reluctant to authorize a licensee to take out copyrights on derivative works—copyrights that might impede him in making his own derivative works or licensing others to do so." *Gracen*, 698 F.2d at 303–04. Indeed, here the License provided that Art Akiane would maintain the materials it supplies to Art & Soulworks for the creation of any promotions "and all copyrights related to them shall remain the exclusive property of Akiane Art Gallery, LLC." License ¶ K. This cuts against the idea that the License's promotional-purposes authorization explicitly granted Art & Soulworks authority to create derivative works, let alone obtain ownership of any derivative works. Moreover, "copyright licenses are assumed to prohibit any use not authorized." *Beasley v. John Wiley & Sons, Inc.*, 56 F. Supp. 3d 937, 943 (N.D. Ill. 2014) (cleaned up).

Absent that explicit authorization, the Defendants' derivative-works defense for the *post*-License display of Akiane-related montages fails as a matter of law. There is no genuine factual dispute over whether the actual displays of these montages happened after the License expired, so Art Akiane is entitled to summary judgment on liability on post-License display of montages.

29

**During the License period.** With regard to the Defendants' display and distribution of montages *during* the License period, genuine issues of material facts exist over whether Art Akiane's implicitly consented to the posting of montages as part of Art & Soulworks' promotion of the works. As explained earlier, the posting, distribution, and display of Art & Soulworks' montages were an integral part of its promotional efforts (or at least a reasonable jury could so find) for the sale of Akiane-related products. In 2011, Art & Soulworks created a Facebook page to sell Akiane-related products, and then began posting promotional montages on a "nearly a daily" basis. Pl.'s Resp. to DSOF ¶¶ 33–34. Viewing the evidence in the Defendants' favor, a reasonable jury could find that Art Akiane consented to the creation and display of these montages well before it brought this lawsuit. Or viewed in Art Akiane's favor, a jury could reject the notion that the Defendants had implicit, unwritten consent. So the question of copyright infringement liability for montage posts during the License must be made by a jury at trial.

### 2. Framed Postcards and Wallet Cards

As noted earlier, Art Akiane alleges that the Defendants exceeded the scope of the License by impermissibly putting postcards and wallet cards into frames and then selling them as framed artwork by Akiane. Second Am. Compl. ¶¶ 6, 55–57, 59–60, 62, 116, 186, 200. The parties cross-move for summary judgement on this issue. The Defendants posit that a licensee's mere placement of a work into a frame does not qualify as copyright infringement, and that the Defendants' conduct is excusable because Art Akiane was both aware of the sale of these framed cards and accepted

30

royalties for them. Def.'s Mem. at 24–25. Art Akiane counters that framing these cards transformed "knick-knacks" into something that appeared to be framed artwork, which would have required a separate license. Pl.'s Resp. at 19–22.

Like many other issues in this case, this one boils down to the resolution of a genuine factual dispute: whether the Defendants acted with consent by Art Akiane to continue the sale of framed cards after Art Akiane was made aware of this practice. Each side submits credible countervailing evidence supporting its side of the story. The Defendants admit that in the 2014 to 2015 timeframe, Mark Kramarik communicated that he did not want *Carpentree* to continue the sale of framed wallet cards and postcards. R. 352-1, Exh. 95, (Corneliuson Dep. 02/17/2022) at 208:16–209:25. At the same time, the Defendants argue that the exclusion of Carpentree from the production and sale of these framed cards was not tantamount to a restriction on *Art & Soulworks'* authorization to do the same. Pl.'s Resp. to DSAF ¶ 40; R. 363, Corneliuson Decl. II ¶ 15. Indeed, the Defendants continued production of—and paid royalties on—the sale of the framed cards after Carpentree was limited. Pl.'s Resp. to DSAF ¶ 45; Corneliuson Dep. 02/17/2022 at 218:20–219:7, 221:24–222:14. Art Akiane disputes that the command to stop the sale of framed cards was so limited, and that the order was for the sale to stop in its entirety. Pl.'s Resp to DSAF ¶ 40. It is also notable that, at least when viewed in Art Akiane's favor, Art Akiane's sporadic access to itemized royalty reports breaking down product sales would have made it difficult to determine if the framed card sales were still ongoing. *See* PSAF ¶¶ 46–47. In sum,

there is a genuine factual dispute on whether there was consent to sell framed post-cards and framed wallet cards. Neither side wins summary judgment on this issue.

### 3. Free Image Downloads

The parties cross-move for summary judgment on Art Akiane's claims for copyright infringement, including contributory infringement, on the free image downloads that Art & Soulworks offered to visitors of its website. Second Am. Compl. ¶¶ 7–8, 71,73, 115; Pl.'s Resp. at 5–6. The Defendants argue the claims should be dismissed because Art Akiane was "aware of and approved [Art & Soulworks'] free downloads promotions." Def.'s Mem. at 25 (citing DSOF ¶ 61). On the other side, Art Akiane seeks summary judgment to find the Defendants liable for the free downloads after the License's expiration. Pl.'s Resp. at 5–6.

Starting with Art Akiane's motion, this Court already held at the preliminary-injunction stage that "the licensing agreement has been terminated and that Art & Soulworks, as a former licensee, is not allowed to invite third-parties to download the copyrighted works for free." Prelim. Inj. Order at 40. The Defendants provide no direct response to post-termination liability on legal grounds; factually, the Defendants argue that Art & Soulworks did not allow any free downloads after the License expired. Def.'s Reply at 5. Defendant Corneliuson also attests that Art & Soulworks did not offer any free downloads after the License expired. *See* R. 362-1, Corneliuson Decl. II ¶ 13. Because the Defendants do not dispute that they would have been liable for free downloads *if* they offered downloads after the License's expiration, the Court holds that the Defendants are liable for any downloads that happened after the

32

License's termination. Having said that, Art Akiane must prove that the post-License downloads actually happened to recover damages (whether actual or statutory).

On the Defendants' cross-motion for summary judgment, the Court denies the motion. A genuine dispute of material fact exists on whether Art Akiane gave approval to Art & Soulworks to offer free downloads of the *Prince of Peace* image to website visitors. The Defendants argue that their authority to do so extended from the breadth of the License's promotional provision granting it the right to use Akiane's art "for all promotional purposes," *see* License ¶ D, which Art Akiane disputes, *see* Pl.'s Resp. to DSOF ¶¶ 32, 63, and the parties' course of dealing. With open factual questions remaining on the breadth of the promotional-purposes provision and whether the parties' course of dealing authorized Art & Soulworks to offer free image downloads as a promotion, the Defendants are not entitled to summary judgement on this issue.

### 4. Oral Wholesale and Printing Agreements

The final copyright-infringement issue is whether to enter judgment against the Defendants' asserted defenses that Art Akiane *orally* granted authority for the Defendants to use the works for wholesale sales and in connection with a printing agreement. Def.'s Resp. at 26–27 n. 27. Art Akiane contends that the Defendants fail to offer sufficient evidence that the alleged oral agreements existed, or if they did, what were their terms or whether there was any breach of the duty of good faith and fair dealing. *Id.* at 26; PSAF ¶¶ 127–34. In the Seventh Circuit, Defendants waive affirmative defenses at summary judgment by failing to "come forward with evidence

supporting" the defenses and "develop[ing] no cogent legal argument in support of that defense." *United Cent. Bank v. Wells St. Apartments, LLC*, 957 F. Supp. 2d 978, 988 (E.D. Wis. 2013), *aff'd sub nom. United Cent. Bank v. KMWC 845, LLC*, 800 F.3d 307 (7th Cir. 2015). The parties do not brief what choice of law would govern these alleged oral agreements, but there would be no conflict of law between Illinois and Colorado law anyway, because both states require enforceable contracts to be sufficiently definite. *Compare DiLorenzo v. Valve & Primer Corp.*, 807 N.E.2d 673, 678 (Ill. App. Ct. 2004) ("A contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract.") *with Stice v. Peterson*, 355 P.2d 948, 952 (Colo. 1960) ("The court can supply some elements in a contract, but they cannot make one; and when the language in a contract is too uncertain to gather from it what the parties intended, the courts cannot enforce it.").

Here, the Defendants offer sufficient evidence to generate a genuine dispute of fact on whether the parties orally entered into side agreements that covered the wholesale purchases and the printing of Akiane artwork. *See, e.g.*, Pl.'s Resp. to DSOF ¶ 9; Pl.'s Resp. to DSAF ¶ 53. Art Akiane seeks to bar the Defendants from arguing that they had a license to print Akiane-related works and to resell items they had purchased from Art Akiane at wholesale prices under the first-sale doctrine. R. 151, Art & Soulworks and Corneliuson Ans. to Second Am. Compl. at 56. Art Akiane contends that (1) these oral agreements were not sufficiently definite, *see* Def.'s Reply at

34

11; (2) the Defendants only present one instance in which they were allowed to print Akiane works outside the License terms, *see id.* at n.17; and (3) no overarching whole-sale agreement defined the Defendants' direct purchase of Akiane artwork, *see* Pl.'s Resp. to DSOF ¶ 9. The Defendants counter by pointing to at least one instance in which Corneliuson and Mark Kramarik set the terms of what appears to be an agreement to print specific Akiane works at a certain quantity for a specific price. *See* R. 361-41, Exh. 217. This discussion of printing authorization outside the terms of the License does not appear to be a one-off occurrence. *See* R. 361-4 and 361-5, Exhs. 179–80. The Defendants have also submitted evidence of myriad wholesale purchases (with definite prices) of Art Akiane's artwork dating back to June 2008. *See* Pl.'s Resp. to DSOF ¶ 9; R. 47-3, Exh. 3. Thus, there is a genuine dispute of material fact on whether oral agreements authorized the printing and wholesale purchases of Akiane-related works outside the terms of the License. The Court denies Art Akiane's summary judgment against the Defendants' first and second affirmative defenses.

### C. Copyright Management Information (Count 6)

Next up are Art Akiane's DMCA claims for the unlawful alteration of copyright management information (often called CMI, for short) and the follow-on distribution of Akiane artworks. 17 U.S.C. §§ 1202(a), (b). The parties cross-move for summary judgement, asking on the one hand that the Court toss these claims, Def.'s Mem. at 12–20, and on the other hand to find the Defendants liable for DMCA violations dating back to the first years of the parties' licensing agreement. Pl.'s Resp. at 7–22.

"The DMCA seeks to hamper copyright infringement in the digital age by protecting copyright management information (CMI) in various ways." *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 928 (N.D. Ill. 2013) (citing 17 U.S.C. § 1202) (cleaned up). CMI includes any information conveyed in connection with copies of a work, including identifying information about the work, its author, or the copyright owner. 17 U.S.C. § 1202(c). Section 1202(a) prohibits providing or distributing CMI that is false, while § 1202(b) prohibits intentionally removing or altering CMI, or distributing CMI knowing that it has been altered. 17 U.S.C. §§ 1202(a), (b). Knowledge or intent (or both, depending on the subsection) is required for liability under both sections. *Id.*

The Defendants argue that they are entitled to summary judgement against this claim because (1) they acted within their authority under the License and Art Akiane's approval, Def.'s Mem. at 12–16; and (2) there is insufficient evidence that they possessed the required mental state for violating the statute, *id.* at 16–20. On the first argument, there is a genuine dispute of material fact on whether Art Akiane explicitly or implicitly approved the CMI alterations and distribution on social media. For instance, the Defendants assert that they have created products using the altered CMI with Art Akiane's approval since the start of the License, DSOF ¶¶ 17–21, but Art Akiane denies that it granted permission to alter any CMI for numerous products and montages, Pl.'s Resp. to DSOF ¶¶ 17–25. The Defendants stake their defense on the open factual question of whether the CMI alterations to images published on social media and included on the physical products that it sold happened with Art

36

Akiane's blessing. Def.'s Mem. at 15–16. Meanwhile, Art Akiane stakes its call for summary judgment on the same genuinely disputed fact. Pl.'s Resp. at 12–15. On the record evidence, a reasonable jury could go either way on these factual questions, so neither side wins summary judgment on this issue.

Moving on to the Defendants' second argument, that is, that they did not have the requisite mental state for a violation under §§ 1202(a) or 1202(b), the Seventh Circuit has not yet analyzed the mental-state requirement in detail. But both the Second and Ninth Circuits have concluded that the statute includes a "double scienter requirement." *Krechmer v. Tantaros*, 747 F.App'x 6, 9 (2d Cir. 2018) (interpreting § 1202(a)) (summary order); *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) (interpreting §1202(b)). Restated another way, Art Akiane must show that the Defendants had either an intent to induce, enable, facilitate, or conceal infringement, or, at a minimum, knowledge or reasonable grounds to know that its actions would do so. 17 U.S.C. §§ 1202(a), (b).

The Defendants say that Art Akiane cannot prove the requisite intent or knowledge because Art & Soulworks had reason to believe that the License and the parties' course of dealing granted it implied, if not express, permission to create de- rivative works. Def.'s Reply 6–12. Corneliuson also asserts that she believed that the derivative products and images created from Akiane's works under the License were separately copyrightable products of Art & Soulworks. *See* R. 352-1, Exh. 94, (Cor- neliuson Dep. 02/16/2022) at 110:6–113:22. For the same reasons discussed in the previous section, the Court rejects the Defendants' *legal* argument that they could

copyright the derivative works, because no reasonable jury could find that Art Akiane granted that right. But on the factual question, Corneliuson's averment that she believed (even mistakenly) that she was not infringing, and Art Akiane's arguable lack of persistent enforcement of CMI integrity during the License, creates a genuine factual dispute on the requisite mental state. So summary judgment on the DMCA claim is denied for both sides.

### D. False Designation of Origin (Count 2)

Art Akiane asks for summary judgment on the Lanham Act claim for false designation of origin.[13] On this particular claim, even when the evidence is viewed in the Defendants' favor, the Court agrees that summary judgment must be entered. As discussed below, the Defendants are liable for false designation by using Art Akiane's unregistered trademark—"Akiane"—and by its unauthorized use of the phrase "Art by Akiane" on products sold by Art & Soulworks. For after the License expired, the Defendants are also liable for any usage of the phrases "Art by Akiane" or "Official Source" in offering Akiane-related products for sale.

To succeed on this claim, Art Akiane must prove that (1) it owns a protectable trademark and (2) Art & Soulworks' use of the mark is likely to cause confusion among consumers. *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019). In assessing the likelihood of confusion, the Court considers seven relevant factors: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the

---

[13]Where applicable, the Court again adopts the reasoning from its Preliminary Injunction Order. *See* Prelim. Inj. Order at 47–54.

products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 677–78 (7th Cir. 2001). "No single factor is dispositive and courts may assign varying weights to each of the factors depending on the facts presented." *Id.* at 678.

Here, Art Akiane argues Art & Soulworks should be held liable for its use of the mark "Art by Akiane."[14] Pl.'s Resp. at 4. Art Akiane also asserts that the Defendants are liable for representing themselves as the "Official Source" of Akiane-related products after the License expired. *Id.* Art & Soulworks does not dispute that it could be held liable for post-License appropriation of these phrases, if proven. Instead, Art & Soulworks denies that Art Akiane can show that Art & Soulworks used either of these phrases following termination of the License, including during the inventory-liquidation period ending on April 13, 2019. Def.'s Reply. at 3 n. 3. Art & Soulworks also contends that the Plaintiff consented to its use of the "Art by Akiane" mark during the License period. Def.'s Mem. at 16. The Court addresses these issues in turn.

---

[14]The parties dispute ownership of the "Art by Akiane" trademark, which is unregistered by either party. Prelim. Inj. Order at 48. At the preliminary-injunction stage, the Court concluded that as a former licensee, Art & Soulworks cannot create its own mark by simply adding the words "Art by" to its licensor's existing mark, "Akiane." *Id.* at 52. Likewise, Art & Soulworks cannot claim ownership of a trademark merely because it printed "Art by Akiane is a trademark of Art & Soulworks" on magnets or other products it sold via the License. *Id.* Even moving past the preliminary-injunction stage, nothing in the summary judgment record would permit a reasonable jury to find otherwise.

### 1. Use of "Art by Akiane" During License

The parties dispute whether Art & Soulworks had Art Akiane's consent to use the phrase "Art by Akiane" during the License period. Art Akiane denies that consent was given or that Art & Soulworks has produced any evidence to suggest Art Akiane was aware of Defendants' use of the phrase on physical products. Pl.'s Reply at 3. In response, Art & Soulworks says that it has "extensively set[] forth how [Art Akiane] routinely approved the use of the phrase 'Art by Akiane™' and even 'Art by Akiane™ is a © of Art & Soulworks' on products that it bought from [Art & Soulworks] and sold on its own website." Def.'s Reply at 4. Art & Soulworks cites five pages in its briefs for support of this assertion. *Id.* (citing Def.'s Mem. at 9, 21, 31–33). None of the cited pages deal with the issue of trademark infringement, let alone reference the phrase "Art by Akiane" or how Art Akiane "routinely approved" use of the phrase.[15]

First, the record does not suggest that Art Akiane has registered the trademark "Akiane," even though the Plaintiff has used it in commerce for nearly 20 years. When, as here, a mark is unregistered, the Plaintiff bears the burden to establish its entitlement to protection under the Lanham Act based on the "distinctiveness" of the mark. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.,* 149 F.3d 722, 727 (7th Cir. 1998). "The law recognizes five categories of trademarks, in ascending order

---

[15]The Defendants cite the same five pages to argue that the doctrine of equitable laches bars Art Akiane's claims. Def.'s Reply at 4. Because the cited evidence is not relevant to a laches defense, that argument fails too.

of distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). "Trademarks that are fanciful, arbitrary [i.e. made-up terms like 'Kodak'] or suggestive are fully protected, while descriptive words (e.g. 'bubbly' champagne) may be trademarked only if they have acquired *secondary meaning*." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1085 (7th Cir. 1988) (cleaned up), *abrogated on other grounds by Ill. Republican Party v. Pritzker*,973 F.3d 760, 763 (7th Cir. 2023). In turn, "[s]econdary meaning is acquired when in the minds of the public, the primary significance of a product feature … is to identify the source of the product rather than the product itself." *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998) (cleaned up). Although Art Akiane does not identify a category for its unregistered "Akiane" trademark, the close association between Akiane Kramarik and her unique artworks suggest that it is at least a suggestive mark and perhaps even arbitrary. And the Defendants do not genuinely dispute that the mark is protectable.

Next, on the likelihood of confusion, as explained in the Preliminary Injunction Order, a former licensee (like the Defendants) cannot lawfully create its own purported trademark by merely adding the words "Art by" to its licensor's existing mark. Prelim. Inj. Order at 52. The same is true for the Defendants' use of the phrase "Art by Akiane is a trademark of Art & Soulworks." The usage of "Art by Akiane" at any point before or after the licensing agreement expired conveyed the misleading idea that Art & Soulworks had authorization to use Akiane's name to sell a wide range of

41

goods through its online retail operation. This finding applies equally to the Defend-ants' efforts to treat "Art by Akiane" as its own brand, such as Corneliuson emailing others as "Carol at Akiane Art." because it implies that Corneliuson has authorization to sell products on behalf of a separate brand called "Akiane Art." *See* R. 352-4, Exh. 175.

The only exception to false designation to the Defendants' use of a phrase like "Art by Akiane" is if the use was purely descriptive in communicating that a painting being offered for sale in the online store was, as a factual matter, created "by Akiane." *See* 15 U.S.C. § 1115(b)(4) (mark may be "descriptive of and used fairly and in good faith only to describe the goods or services of such party"). This assumes, of course, that the painting being described is authentic. So it would not be misleading for Art & Soulworks to make *some* references to Akiane and her art. After all, Art & Soul-works retained the right under trademark law to resell the art pieces it lawfully pur-chased under its wholesale agreement with Akiane Art Gallery. *See Hart v. Amazon, Inc.*, 191 F. Supp. 3d 809, 817 (N.D. Ill. 2016) (discussing the first-sale doctrine in trademark law), *aff'd*, 845 F.3d 802 (7th Cir. 2017). But any other use of "Art by Aki-ane" created liability for false designation.

### 2. Post-License Conduct

Art Akiane also seeks summary judgment on the Defendants' post-License use of terms like "Official Source" and "Art by Akiane." The Court has already decided, in the preliminary-injunction decision, that these terms infringe marks because of the confusion they are likely to cause, especially following termination of the License. *See*

Prelim. Inj. Order at 50. So, to the extent that Art Akiane can show that Art & Soulworks has used these terms after the licensing agreement ended, Art & Soulworks will be liable for trademark infringement. The parties do not dispute that the post-License liquidation period ended on April 13, 2019. Pl.'s Resp. to DSAF ¶ 14. This is the start date for post-License infringements by Art & Soulworks for the marks at issue. Art Akiane must prove the post-License instances of infringement in order to receive damages.

### E. Unjust Enrichment (Counterclaim 4)

The Defendants bring a counterclaim that Art Akiane was unjustly enriched by receiving the "benefit of the business goodwill, social media followers, and promotional support" that the Defendants argue they created during the License period, and for "crippling [Art & Soulworks] in order to obtain sales that otherwise would have gone in part to [Art & Soulworks]." DAC ¶ 92. Art Akiane moves for summary judgment against the counterclaim, arguing that it is precluded by the existence of a valid contract from which the asserted benefits accrued by Art Akiane flow. Def.'s Resp. at 29–30. The Court agrees.

"When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–689 (7th Cir. 2004) (citations omitted) (applying Illinois law). Here, the undisputed facts supporting Defendants' unjust-enrichment claim are part and parcel of the exchange of consideration that the parties effectuated under the License. First, the parties do not dispute that the

43

License granted the Defendants permission to use the works specified on Schedule A of the agreement "in promotional advertisements and materials for all promotional purposes in connection with the LICENSEE's web site and Internet related business without cost or royalty" to Art Akiane. License at ¶ D; Def.'s Resp. to PSAF ¶ 22. The Defendants also admit they remade their website and social media channels to promote Akiane's artwork pursuant to the promotional provisions of the License. Def.'s Resp. to PSAF ¶ 79.

"In determining whether a claim falls outside a contract, the subject matter of the contract governs, not whether the contract contains terms or provisions related to the claim." *Utility Audit, Inc.*, 383 F.3d at 689 (citations omitted). As noted above, the creation of promotional material using Art Akiane's images in connection with the online retail business of Art & Soulworks is covered by the License. The subject matter of online promotional material covers promotion on social media channels aimed at driving traffic to the Art & Soulworks website. It also extends to the Defendants' efforts to shield the parties' *joint* financial interest in sending takedown notices to those unlawfully recreating competing products to the ones sold on the Art & Soulworks website under the License.

Even viewing the facts in the Defendants' favor, Art Akiane is entitled to summary judgement against the unjust-enrichment counterclaim.

44

### F. *Prince of Peace* Domain Name and the Anti-Cybersquatting Act

The Defendants next move for summary judgment against the claim that they violated the Anti-Cybersquatting Consumer Protection Act by using the domain names: facebook.com/jesusprinceofpeace and jesusprinceofpeace.com/. Second Am. Compl. ¶¶ 46, 84, 162–168; Def.'s Mot. at 2. Congress enacted the Anti-Cybersquatting Act "to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks—a practice commonly referred to as 'cybersquatting.'" S. Rep. No. 106–140, at 4. To establish a cybersquatting claim under the Act, a claimant must show: (1) that she had a distinctive mark at the time of the registration of the domain name; (2) that the defendant "registers, traffics in, or uses a domain name" that is "identical or confusingly similar to that mark"; and (3) that the defendant has "a bad faith intent to profit from that mark." 15 U.S.C. § 1125(d)(1).

Like two ships passing in the night, the parties dispute different elements of a claim under the Anti-Cybersquatting Act. For its part, Art Akiane argues that there is a genuine issue on the Defendants' bad-faith intent, because Corneliuson admitted that she created the Prince of Peace domains as an intended association with Akiane's *Prince of Peace* painting. Pl.'s Mem. at 44–45; PSAF ¶¶ 7, 64–65; Pl.'s Resp. to DSOF ¶¶ 33–34. Art Akiane also posits that the parties do not dispute that Corneliuson devoted these Prince of Peace domains to Akiane and her artwork. PSAF ¶ 81; R. 344-

13–344-23, Exh. 58; R. 355 at 44–45. For their part, the Defendants omit any direct response to Art Akiane's arguments and instead argue that the Plaintiff failed to establish the threshold element of a claim under the Act, namely, the ownership of a *distinct* mark. Def.'s Mem. at 28–29.

Art Akiane's ownership of a valid *copyright* to the *Prince of Peace* painting does not entitle it to ownership of a distinct *trademark* bearing that same name. *See Pheonix Entm't. Partners v. Rumsey*, 829 F.3d 817, 825–26 (7th Cir. 2016). The "rights protected by trademark and copyright laws are distinct." *Id.* at 825. "Not infrequently, the owner of the trademark for a particular good may not own the copyright on the expressive content of that good, just as the owner of the trademark for a particular good subject to patents may not own the patent rights." *Id.* This dichotomy is true of Art Akiane, which controls the copyrights connected to *Prince of Peace* but not the unregistered mark "Prince of Peace" itself. *See Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998) ("When a mark is unregistered—as is the case here—the plaintiff has the burden to establish its entitlement to protection under the Lanham Act based on the 'distinctiveness' of the mark."). Here, "the phrase 'Prince of Peace' is a more general reference to Jesus Christ," as used in the Bible and by other artists who have likewise created works titled "Prince of Peace." Prelim. Inj. Order at 51. The use of this phrase in the domain name of a Facebook page or website is not controlled by Art Akiane any more than it is controlled by any other artist or creator who has published a work with the same subject.

46

Because Art Akiane cannot demonstrate the ownership of a valid trademark in the title "Prince of Peace," the Defendants are entitled to summary judgement against the Anti-Cybersquatting claim.

### G. Tortious Interference

Art Akiane and the Defendants cross-move for summary judgment on the tortious interference claims and counterclaims (both sides asserted that type of claim against the other). As explained below, Art Akiane is entitled to summary judgement against the Defendants' tortious-interference counterclaim. And Art Akiane's claim for tortious interference with prospective economic advantage is waived because Art Akiane failed to respond to the Defendants' argument for dismissal.

### 1. Prospective Economic Advantage (Count 8)

The Defendants argue that summary judgment is warranted on Art Akiane's tortious-interference claim because Art Akiane cannot show and has "not identified a single opportunity that was thwarted, nor any damage that it has suffered as a result of [Art & Soulworks'] alleged actions." Def.'s Mem. at 29–30. Art Akiane did not respond to the defense arguments in any of Art Kiane's briefs. "A party's failure to address an argument in a summary judgment response is deemed a waiver." *DeLaney v. Chertoff,* 2008 WL 4773163 *3 (N.D. Ill. Oct. 30, 2008) (collecting cases). Here, Art Akiane waives its tortious-interference claim by making no attempt to present countervailing facts. So summary judgment is granted as to this claim (Count 8), and it is dismissed with prejudice.

## 2. Contractual Interference by Akiane and Akiane Art Gallery (Counterclaim 5)

The Defendants' tortious-interference claim alleges that Akiane Kramarik and Akiane Art Gallery took steps to influence Art Akiane's decision to allow its licensing agreement with Art & Soulworks and Corneliuson to expire. DAC ¶¶ 96–106. The claim for tortious interference rests on the contention that the continuation, expectancy, or reasonable wind down of the parties' business dealings was obstructed by Akiane "threatening Art Akiane with the removal of all rights, title and interest in her artwork, and name and likeness," if Art Akiane did not end its business with Defendants. DAC ¶ 105.

Illinois law governs the Defendants' tortious-interference counterclaim. *See* Choice-of-Law Order at 16–17. To survive summary judgment, the Defendants must establish that a reasonable jury could find (1) the existence of a valid and enforceable contract; (2) Akiane and Akiane Art Gallery's awareness of the contractual relation; (3) Akiane and the Gallery's intentional and unjustified inducement of a contractual breach; (4) a subsequent breach by Art Akiane caused by Akiane or the Gallery's wrongful conduct; and (5) damages resulting from the breach. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003) (applying Illinois law). There is no dispute between the parties on the first two elements: Akiane and her Gallery were aware of an existing contract and of the long-standing business relationship between the Defendants and Art Akiane. Def.'s Resp. to PSAF ¶ 99.

48

But there are three pieces of evidence that the Defendants rely on to show that Akiane personally engaged in intentional and unjustifiable inducement of a contractual breach. The Defendants point first to the January 2019 Letter, which includes a general reference to Akiane Kramarik's preference for "going completely independent" with regard to her artwork. January 2019 Letter at 4. Second, the Dissolvement Agreement that was attached to the January 2019 Letter was signed by Akiane Kramarik. And third, Corneliuson testified that she understood that Akiane did not wish to renew the License. R. 343-15, Exh. 15, Carol Corneliuson Dep. Vol. 2 at 278:16–279:8. Art Akiane does not dispute that Akiane communicated her preference that Art Akiane not renew the License in the immediate term. January Letter at 4; PSAF ¶¶ 99–102. But without more, Akiane's mere expression of an opinion does not amount to tortious interference. *See In re Estate of Albergo*, 656 N.E.2d 97, 104 (Ill. App. Ct. 1995) ("The giving of honest advice within the scope of a request for the advice is conditionally privileged and therefore does not constitute improper interference with a contract."). It was also not a surprise to the Defendants that Akiane would be a part of Art Akiane's decision to renew. Def.'s Resp. to PSAF ¶ 90. Thus, viewing this evidence in a light most favorable to the Defendants, no reasonable jury could find that Akiane and the Akiane Art Gallery engaged in intentional and unjustifiable inducement of a contractual breach.

Next, the Defendants cannot show that Art Akiane breached its contractual obligations by violating Colorado's implied duty of good faith and fair dealing. *See infra*, Section III.I.3. Non-renewal of the License obviously was not required, and

49

there is no violation of good faith or fair dealing when both sides could validly decide whether to renew. Def.'s Resp. to PSAF ¶¶ 13–14. Because there was no breach of the underlying agreement, the Defendants cannot satisfy the fourth element of the tortious interference claim. Thus, on the record evidence, no reasonable jury could find that Akiane Kramarik or Akiane Art Gallery tortiously interfered with the License.

## H. Business Expectancies (Counterclaim 6)

The Defendants also bring a counterclaim for tortious interference with business expectancies, alleging that Art Akiane, Akiane Art Gallery, and Akiane Kramarik (for convenience's sake, the Counter-Defendants) sent baseless DMCA Takedown Notices to various Art & Soulworks customers. FAC ¶¶ 107–110. The Counter-Defendants contend that this tortious-interference claim is preempted by federal law. Pl.'s Resp. at 33–34. The Defendants do not respond to this argument in their reply brief, Def.'s Reply at 26–27, so they have waived the claim. Given the case law interpreting the private cause of action for causing takedowns of material based on knowing misrepresentations, and given the absence of any responsive argument from the Defendants, this tortious-interference claim is dismissed. 17 U.S.C. § 512(g) (private cause of action); *see, e.g., Tine Bak LLC v. Selkatz, Inc.*, 2020 WL 9074806, at \*5 (C.D. Cal. Nov. 30, 2020) (holding that tortious-interference claims premised exclusively on the submission of DMCA notices is preempted by the DMCA); *Stardock Sys., Inc. v. Reiche*, 2019 WL 8333514, at \*4–5 (N.D. Cal. May 14, 2019) (same); *Quill Ink Books, Ltd. v. Soto*, 2019 WL 5580222, at \*1, \*4 (E.D. Va. Oct. 29, 2019) (same); *Stevens v. Vodka & Milk, LLC*, 2018 WL 11222927, at \*1–3 (S.D.N.Y. March 15, 2018)

50

(same and collecting cases); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2011 WL 2690437, at *3–5 (N.D. Cal. July 8, 2011) ("[A] DMCA Takedown Notification is a creature of a federal statutory regime, and … that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification.").

## I. Right of Publicity (Count 9)

Next, the Defendants ask for summary judgment on Art Akiane's claim under the Illinois Right of Publicity Act. Second Am. Compl. ¶¶ 176–182; Def.'s Mot. at 2. The Publicity Act superseded the Illinois common law tort of "appropriation of another's name or likeness, *Dwyer v. American Express Co.*, 652 N.E.2d 1351, 1353 (Ill. App. Ct. 1995), codifying the right for a "person to control the commercial value of his or her identity," *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005). To succeed on this claim, Art Akiane must prove: "(1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purpose." *Huston v. Hearst Communications, Inc.*, 53 F.4th 1097, 1099 (7th Cir. 2022) (citing 765 ILCS 1073/30). Here, the Defendants argue that Art Akiane's claim is barred by the statute of limitations and, in any event, lacks sufficient evidence.

First, on the statute of limitations, the Publicity Act does not contain a specific statute of limitations, but Illinois courts apply a one-year limitations period from the date of publication. *Giovannelli v. Walmart, Inc.*, 164 F.4th 1052, 1055 (7th Cir. 2026) (applying single-publication rule) (citing *Blair v. Nevada Landing P'ship.*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006)). Here, Art Akiane specifies that it is only seeking damages under the Act for post-License conduct. R. 365, Pl.'s Reply at 1. The

expiration of the License on January 11, 2019, ended Art Akiane's consent for Art & Soulworks to publish new posts on public domains portraying a continued affiliation with Akiane or her artwork. Given the May 2019 filing of the complaint setting forth this claim, R. 1, Complaint ¶¶ 120–126, there is no limitations bar for the post-License misappropriation.

Second, on evidentiary sufficiency, there is a genuine factual dispute on whether Art & Soulworks had permission to use Akiane's likeness and identity for commercial gain after the License expired. As discussed earlier, the Defendants' continued to display (and sometimes newly posted) Akiane images, stories, montages, and free downloads of *Prince of Peace*. *See* Def.'s Resp. to PSAF ¶¶ 116–122. Summary judgment on this claim is denied.

### J. Breach of Contract (Count 12 / Counterclaims 2 and 3)

The parties move for summary judgment on three contract-breach claims: alleged unpaid royalties due *from* the Defendants (Count 12); unpaid commissions owed *to* the Defendants (Counterclaim 2); and breach of the implied duty of good faith and fair dealing due to lack of advanced notice from Art Akiane that the License would not be renewed (Counterclaim 3).

### 1. Unpaid Royalties (Count 12)

On Art Akiane's contract-breach claim for unpaid royalties, there is no dispute that Art & Soulworks was obliged to pay Art Akiane a 10% royalty on items sold under the License agreement. License at ¶ J; R. 352-4, 158, Def.'s Ans. to Second Am.

52

Compl. ¶ 209. Indeed, the Defendants' Amended Counterclaim includes an admission that Art & Soulworks still owes Art Akiane $23,413.74 in outstanding royalty payments for items sold when the License was still in effect. DAC ¶ 86; Exh. 95, Corneliuson Dep., Vol. 2 at 262:16–19. Art & Soulworks concedes that it is in breach of the License by still owing these royalties. R. 360, Def.'s Reply at 2. But the Defendants now challenge whether the earlier accounting of the outstanding debt is correct. *Id.* at 2–3.

The Defendants based their argument on the Plaintiff's damages-expert report, which estimates that outstanding royalty payments owed to Art Akiane are significantly lower than the previously identified amount. The report, written by Michael Malkiewicz, applies a 10% royalty rate on underreported Art & Soulworks sales "made from either May 1, 2013, or May 1, 2016, six years or three years prior to the filing date of the complaint, through May 13, 2019, the last date in which [Art & Soulworks] appears to have sold an Art Akiane-related product." R. 342-1, Exh. 80 ¶ 86. Malkiewicz calculated that Art Akiane is entitled to outstanding royalties of $8,686 from May 1, 2013, through May 13, 2019. *Id.* ¶ 88 and Schedule 5. Art & Soulworks now says that Malkiewicz's estimates are the accurate estimates of the unpaid royalties, even though the Defendants point to conflicting statements on which of the two Malkiewicz-backed figures is correct. *Compare* Def.'s Reply at 2–3 (adopting the $8,686 estimate) *with* R. 361, Def.'s Statement of Additional Facts (DSAF) ¶ 47 (adopting the $8,473 estimate). But the Defendants' statements adopting these

Malkiewicz figures do not cite any other evidence. DSAP ¶ 47.[16] Absent any explanation, the Defendants must be held to the judicial admission made in their own Amended Counterclaim on the amount of royalties due. "Judicial admissions are formal concessions in the pleadings … that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995). Admissions of that kind are typically treated as conclusive and "have the effect of withdrawing a fact from contention." *Id.* (cleaned up). On that basis, Art Akiane is entitled to summary judgement on the unpaid-royalties claim in the amount of $23,413.74.

### 2. Unpaid Commission (Counterclaim 2)

Art Akiane moves for summary judgment against the Defendants' second counterclaim, which alleges that Art Akiane *and* Akiane Art Gallery failed to pay the Defendants a referral commission for the purchase of original Akiane paintings. DAC ¶¶ 36–37, 75–79. Art Akiane admits that it is holding, in escrow, $10,050 in commissions due to the Defendants. Pl.'s Reply at 24 n. 25. The remaining question is whether Akiane Art Gallery has any potential liability.

Under Illinois law, the required elements for breach of contract claim are (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3)

---

[16]Art & Soulworks claims the reason it mistakenly admitted owing $23,413.74 in royalties is due to its failure to consider that it "paid royalties through Q4 2018 and was never paid by Carpentree for the second batch of liquidated items." Def.'s Reply at 2 (citing DSAF ¶ 47). The portion of the statement that the Defendants rely on for this assertion offers no explanation or evidentiary support for the contention. Indeed, DSAF ¶ 47 merely says, "ASW owes $8,473 in unpaid [royal]ties, which ASW is holding as an offset, if any, pending resolution of this dispute," without explaining why the Defendants changed the estimate from the DAC ¶ 86.

breach by the defendant; and (4) an injury. The parties did not include a written and signed agreement with their filings, so the Court evaluates this contract claim through the lens of implied contract, which requires "show[ing] the same elements as an express contract, as well as a meeting of the minds and a mutual intent to contract." *New v. Verizon Commc'ns, Inc.*, 635 F. Supp. 2d 773, 782–83 (N.D. Ill. 2008) (applying Illinois contract law).

The alleged unpaid commission arises from an email sent by Mark Kramarik to Corneliuson, wherein Mark Kramarik offered a 15% commission on the recent sale of Akiane paintings. *Id.* at Exh. D. Though contract terms are discussed in the email, the parties do not provide a written or signed document bearing the final contract terms and signatories. Neither Akiane Kramarik nor Akiane Art Gallery—of which Akiane is the sole member, *see* DAC ¶ 10—is included in the emails between Corneliuson and Mark Kramarik. The Defendants do not cite to evidence supporting the notion that there was any meeting of the minds between the Defendants and *Akiane Art Gallery*. The Defendants' sole basis for asserting this claim against Akiane Art Gallery is that the Gallery only assigned Art Akiane the copyrights to 13 artworks, so presumably (though it is not clear) some of the artworks purchased through the Defendants' referral may have fallen outside of those 13. Def.'s Reply at 19. But Akiane Art Gallery's copyright assignment is not relevant to the question of whether a contract existed between the Defendants and the Gallery for commissions. Even if Akiane Art Gallery retained all the copyrights to the paintings purchased by customers acting on the Defendants' referral, there still is no evidence of a referral contract

between Akiane Art Gallery and the Defendants. So Akiane Art Gallery is entitled to summary judgment against this claim for unpaid commissions.

### 3. Duty of Good Faith and Fair Dealing
### (Counterclaim 3)

The Defendants also allege that Art Akiane violated the implied duty of good faith and fair dealing "by failing to give [Defendants] advanced notice of the termination" of the License. DAC ¶ 82. But the License had no specific terms that "required either party to renew it" and "[e]ither party was free to decide, for any reason and at any time, not to renew the License." Def.'s Resp. to PSAF ¶ 13. The Defendants also admit that "the License did not include a notice provision requiring either party to provide the other party with advance notice of its intention not to renew the License." *Id*. ¶ 14. Nevertheless, the Defendants still contend that Art Akiane violated the duty to act in good faith. But no reasonable jury could find in the Defendants' favor on this claim, as explained next.

First, this counterclaim is governed by Colorado law. Choice-of-Law Order at 15–16. Colorado, like most jurisdictions, recognizes that "[a] duty of good faith and fair dealing is implied in every contract subject to the Uniform Commercial Code." *ADT Security Servs., Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 293 (Colo. App. Ct. 2007) (citing Colorado Revised Statutes § 4-1-304). But "[t]he duty of good faith and fair dealing applies when *one party* has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) (emphasis added) (citations omitted). It "may be relied

upon only when a manner of performance under a *specific contract term* allows for discretion on the part of either party" and "it will not contradict terms or conditions for which a party has bargained." *Id.* (emphasis added) (citation omitted). And the "concept of discretion in performance refers to one party's power after contract formation to set or control the terms of performance." *Id.* (cleaned up). The duty of good faith and fair dealing thus only applies when a party retains unilateral discretion over a specific term of an agreement and then abuses that discretion by manipulating it in a way that violates the other party's reasonable expectations. *See ADT Security Servs., Inc.*, 181 P.3d at 293 ("Thus, the implied covenant of good faith and fair dealing is breached when a party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract.").

The Defendants do not identify a specific term of the License that gave Art Akiane unilateral discretion to set or control the terms of performance. Instead, the Defendants appear to rely on an expectation that the contract would be renewed. This argument is flawed twice over. First, contract renewal is, by definition, not a term of performance and the Defendants do not cite to a Colorado case supporting that proposition. Second, even if the Court adopts the Defendants' view that contract renewal is a contractual term to which the duty of good faith could apply, the License explicitly says that the parties' agreement is "renewable if *both* parties so desire." License ¶ G (emphasis added). The Defendants admit, as they must, that this License vests *bilateral* control over the term of renewal. Def.'s Resp. to PSAF ¶¶ 13–14. Likewise, the

57

parties do not dispute that both sides were not obligated to give the other "advanced notice of its intention not to renew the License." Def.'s Resp. to PSAF ¶ 14. As explained above, the contractual duty of good faith cannot contradict terms or conditions for which the parties have bargained. This claim must be dismissed.

### K. DMCA Takedown Notices (Counterclaim 7)

The Defendants' final counterclaim alleges that Akiane Kramarik, the Akiane Art Gallery, and Art Akiane acted in bad faith in sending DMCA takedown notices pursuant to § 512(f) of the Copyright Act to Art & Soulworks customers. DAC ¶¶ 111–13. As pertinent here, the DMCA imposes liability for false takedown notices if (1) the defendant knowingly and materially misrepresented that an activity was infringing[17]; (2) the representations were mistaken or misidentified the activity as infringing; (3) the representations were relied upon by the alleged infringer in removing material or activity claimed to be infringing; (4) caused the plaintiff's harm. *See* 17 U.S.C. § 512(f).

---

[17]Although the Seventh Circuit has yet to interpret the mental-state requirements of § 512(f), courts in this district have held that liability requires that the defendant actually know that he is making a misrepresentation. *See Sunny Factory, LLC v. Chen*, 2022 WL 742429, at *4 (N.D. Ill. Mar. 11, 2022) ("It cannot be that Congress intended broad punitive authority to curtail inaccurate notifications of copyright infringement without proof of knowing and intentional misrepresentation."); *Milo Enter., Inc. v. Bird-X, Inc.*, 2022 WL 874625, at *9 n. 8 (N.D. Ill. March 24, 2022) ("This Court agrees that a knowing misrepresentation is required to show a violation of the DMCA."); *see also Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004–05 (9th Cir. 2004) (liability for improper infringement notices under § 512(f) requires "a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner"); *White v. UMG Recordings, Inc.*, 2021 WL 6052106, at *2 (S.D.N.Y. Dec. 21, 2021) ("In order to state a claim under § 512(f), courts in this Circuit require plaintiffs to show 'actual knowledge,' *i.e.*, that the defendants *knew* that they were making a material misrepresentation") (emphasis in original and collecting cases).

Here, the Defendants first argue that Jean Lu, Akiane, and Mark Kramarik were involved in the sending of takedown notices by reviewing documents and products ordered from online sites and identifying which items should be taken down. DSAF ¶ 66. Art Akiane disputes this statement in part by denying that Jean Lu, Akiane, or Mark helped "send" takedown notices. Pl.'s Resp. to DSAF ¶ 66. Still, Art Akiane acknowledges that "Jean Lu and Mark Kramarik reviewed [Art & Soulworks] documents and ordered [Art & Soulworks] products from various websites as part of an effort to identify Akiane-related items they believed were infringing and/or unauthorized." *Id*. Art Akiane also acknowledges that Akiane video recorded her father deconstructing one of these third-party products that were subject to the Art Akiane's review of infringing items. *Id*. Still, it appears Art Akiane's counsel was primarily responsible for the writing and direct sending of takedown notices to Art & Soulworks' customers, *see* R. 352-3, Exh. 142, so there is a genuine dispute of fact as to whether Jean Lu, Akiane, and Mark participated in the effort to identify the items that became the subject of Art Akiane's takedown notices.

Second, Defendants argue that "several items" targeted in the takedown notices were purchased before the License expired, citing the deposition statements of Carpentree Owner Virginia Hobson. DSAF ¶ 67. Hobson's statements are based on her review of one item: a single framed image of *Prince of Peace*. R. 361-28, Hobson Dep. Vol. 2 at 85:16–88:18; *compare* R. 366-6, Exh. 225 *with* R. 366-7, Exh. 226. The framed *Prince of Peace* was part of the trove of items seized by Art Akiane from Carpentree following their settlement and it came with Carpentree-endorsed stickers on

the back of the frame, which, as Hobson testified, changed every year. Hobson Dep. Vol 2 at 86:1–11; *see also* Pl.'s Resp. to DSAF ¶ 67. When asked to date the stickers on the back of the frames depicted at her deposition, Hobson said it was a sticker that her husband had "created years ago." *Id.* at 86:23–87:8. The Defendants emphasize that because at least some of the items that Art Akiane's takedown notices removed from the inventories of Art & Soulworks customers were sold long before 2019, Art Akiane may have knowingly misrepresented these items as infringing material. *See* Def.'s Reply at 27. Hence, a genuine issue of material fact exists on what actual knowledge Art Akiane and its members possessed as they prepared their takedown notices.

Third, the Defendants allege that Art Akiane's takedown letters were relied on by its customers to remove, return, and request a refund on purchased inventory. DSAF ¶ 68. The Defendants only point to Carpentree's customers as those who returned Akiane-related inventory to Carpentree due to receiving a takedown notice. Pl.'s Resp. DSAF ¶ 68. But the alleged removal of online Akiane-related material by Carpentree's customers does not amount to evidence of injury incurred by either of the Defendants. PSAF ¶ 151. So, the Defendants have not shown a genuine dispute on whether they were harmed by Art Akiane's takedown notices. Without evidence of harm, the Defendants cannot satisfy the damages requirement of Section 512(f). 17 U.S.C. § 512(f). No reasonable jury could find that the Defendants suffered any harm caused by Art Akiane's DMCA takedown notices, so summary judgment is entered against this counterclaim.

60

## L. Expert Testimony

Within the competing motions for partial summary judgment, the parties set forth what are really three motions in limine seeking to exclude expert testimony. *See* Def.'s Mem. at 31–34; Pl.'s Resp. at 8 n. 9; Pl.'s Resp. to DSOF ¶ 39. But this is not the right time to decide motions in limine, because the summary judgment motions do not turn on the admission or exclusion of this evidence. Instead, challenges under Evidence Rule 702 should be litigated in the lead up to the pretrial conference and trial, rather than at the summary judgment stage. Of course, Rule 702 challenges that are *relevant* to summary judgment motions would be decided now, just like any other challenge to the admissibility of evidence for consideration in a summary judgment decision. But that is not what the parties tee up. The Court will set deadlines for the filing of Rule 702 motions before the trial.

## IV. Contempt Motion

Finally, Art Akiane filed a motion to deem the Defendants in civil contempt for alleged violations of the preliminary injunction, which barred infringement of Art Akiane's assigned copyrights and the use of Akiane Kramarik's name, image, or likeness for general promotional purposes. *See* Contempt Mot. at 21–22. Art Akiane seeks a modification of the preliminary injunction to further restrict any references to Akiane, the meaning behind her artwork, and the parties' prior business relationship.

*Id.* Art Akiane also asks for sanctions against the Defendants[18] and for attorney's fees incurred for the contempt motion. *Id.*

In general, civil contempt "is remedial, and for the benefit of the complainant," as opposed to criminal contempt, which "is punitive, to vindicate the authority of the court." *Federal Trade Comm'n v. Trudeau*, 579 F.3d 754, 769 (7th Cir. 2009) (cleaned up) (quoting *Workers of Am. v. Bagwell*, 512 U.S. 821, 827–28 (1994)). This Court may impose sanctions for civil contempt that are designed to either coerce compliance with a court order or to compensate a complainant for losses associated with contemptuous conduct. *Id.* But any coercive sanction issued by the Court must still give the contemnor an opportunity to "purge" their contempt, so that they can avoid punishment by coming into compliance with the order. *Id.* To successfully show that a contempt finding should be entered, Art Akiane bears the burden of proving four things by clear and convincing evidence: (1) the preliminary injunction sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the contemnor's violation was significant, meaning that it did not substantially comply with the injunction; and (4) the contemnor failed to take steps to reasonably and diligently comply with the injunction. *See Prima Tek II, LLC v. Klerk's Plastic Indust., B.V.*, 525 F.3d

---

[18]In support of their request, Art Akiane requests that the Court fine Defendants $1,000 per day of noncompliance with the preliminary injunction. Art Akiane presents no evidence that the Defendants profited $1,000 each day that they were purportedly in contempt, or that that kind of penalty is needed to ensure compliance. *See In re Aimster Litig.*, 2003 WL 2002764, at *6 (N.D. Ill. Apr. 15, 2003) (measuring a plaintiff's fine request for civil contempt against the evidence presented by the plaintiff showing defendants' profit each day they were in contempt).

533, 542 (7th Cir. 2008). But there is no need to show that the contemnor's violation was willful, because a court "may find a party in civil contempt if that party has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Ill. Cent. Railroad Co. v. Belcher*, 2023 WL 5994141, at *3 (N.D. Ill. Sept. 15, 2023) (cleaned up).

Art Akiane contends that the Defendants have violated the injunction in five ways: (1) displaying Akiane's images and artwork for unauthorized promotional purposes; (2) posting montage-style images using Akiane's artwork; (3) using Akiane's persona to promote third-party products; (4) implying a continuing affiliation with Akiane and the marketing of her artwork; and (5) advertising images of Akiane's artwork that the Defendants no longer sell. In response, Art & Soulworks disputes the occurrence of only three of the violations cited in Art Akiane's motion, *see* Def.'s Resp. to Contempt. at 1316, and admits that the others happened, *see id.* at 9–10.

The first disputed violation involves an October 20, 2020 Facebook post by the Defendants using a cropped image of Akiane's *Father Forgive Them* painting. R. 330-16, Exh. A; Pl.'s Contempt Mot. at 16. The image contains a link to Art & Soulworks' website and to the shopping cart where the purchase of the *Father Forgive Them* painting can be made. Def.'s Resp. to Contempt at 14. The Defendants were enjoined from "displaying Akiane's artwork or derivative works they created from that artwork, including "montage-style posts" with superimposed religious text on the images, for general promotional purposes not tied to the sale of specific pieces of art. Prelim. Inj. Order at 67. But the Order did not prohibit the Defendants from

63

displaying thumbnail or full-size images of Akiane's artwork done for the "sole pur-pose of reselling authentic works of art purchased under the wholesale agreement." *Id.* at 66. Here, there was no violation for the posting of the link tied directly to the *Father Forgive Them* painting. To be sure, ideally the Defendants would have just posted a full-size image of the painting with a link included separately. That said, the Court does not find that the Defendants significantly deviated from the preliminary injunction. And there is no separate violation for the inclusion of religious scripture in the post, because it was not superimposed on the image.

The second contested alleged violation arises out of the Defendants' use of Aki-ane's persona for the promotion of third-party products. R. 330-17, Exh. 17; Pl.'s Resp. at 17–19. The Defendants displayed an image of Akiane, lifted from her book cover, and also displayed an account of Akiane's life story and works. *Id.*, Exh. 17. The webpage also included marketing of a book and movie called *Heaven is for Real*, which features the impact that Akiane's *Prince of Peace* painting had on a child. *Id.* The content tries to connect the stories of the child and Akiane to promote the idea that *Prince of Peace* is the one true depiction of Jesus Christ of Nazareth. *Id.* According to the Defendants, the image of Akiane's book cover linked to a page where one could purchase her book from Art & Soulworks (which it purchased from Art Akiane in a separate wholesale purchase outside the License). *See* 345-2, Exh. B-4. But the dis-cussion of Akiane's connection to the story of the child also includes links to pages where a consumer could purchase the *Heaven is for Real* book and movie from Art & Soulworks. *Compare* R. 330-17, Exh. 17 *with* R.330-18, Exh. 18. This cross-marketing

of Akiane-related products and third-party materials does fall within the category of "[u]sing Akiane's likeness or photo for promotional purposes," which is prohibited by the injunction. Prelim. Inj. Order at 67. But the interpretation is reasonably arguable, so the Court will not deem the Defendants to have committed contempt for that conduct. There was also some ambiguity in the preliminary injunction's authorization for the Defendants to "[u]se Akiane's name in order to describe that a particular piece of art was authentically created by Akiane." *Id.* at 66. The Defendants did ultimately suppress the page during an apparent scrub of their website (despite its inadvertent reappearance) for infringing content. For these reasons, the Court does refrains from finding that the Defendants clearly violated an unambiguous command or failed to be diligent in correcting its noncompliance.

The third disputed violation is straightforward. Art Akiane alleges that the Defendants displayed an image of Akiane's *On My Knees* painting, but the Defendants are not selling the painting. Pl.'s Contempt. Mot. at 20–21. The Defendants maintained that the painting was still on sale within the Art & Soulworks inventory. Mot. at 14–15. The Defendants also submit that the broader issue of displaying images of paintings that are sold out is now remedied by more diligent checks of their website to ensure that items still for sale are not marked as "sold out." *Id.* at 15. Again, the Court refrains from finding an actual violation of the preliminary injunction. Nevertheless, the Defendants should be on alert that as soon as an Akiane work is sold out, the Defendants must promptly take down any remaining promotional material related to that item.

The remaining violations are admitted by the Defendants, but were caused by an inadvertent reinstatement of suppressed webpages containing infringing content after Art & Soulworks tried "to add a new product line to its website and consolidate the navigation." Def.'s Resp. to Contempt. Mot. at 9. Art & Soulworks explains that the inadvertent reposting of infringing material was caused by "Carol Corneliuson having to handle the website modifications without the benefit of a paid website manager" and was not due to lack of reasonable diligence. *Id.* 10–11. The Court credits this explanation. Art & Soulworks cured the reposting within a reasonable timeframe. Carol Corneliuson Decl. ¶¶ 18–19. The webpages containing infringing content were removed soon after Corneliuson became aware that they had reemerged. *Id.* ¶ 20. So the evidence does not support, by clear and convincing evidence, that Defendants failed to take reasonable steps to come back into compliance with the injunction. In sum, then, there is no need to hold the Defendants in contempt, no is fee-shifting appropriate.

At the same time, Art Akiane was forced to closely monitor the Art & Soulworks website and social-media channels to ensure that the Defendants remained in compliance with the preliminary injunction. For that reason, the Court modifies the injunction to be more specific as follows:

- Remove from the Art & Soulworks webpages and social media all text that suggests or implies an ongoing commercial relationship between Art & Soulworks and Akiane, or Art Akiane;

- Remove all images of Akiane artwork from the Art & Soulworks webpages that feature the C.B. [minor's name redacted], and the *Hevan is for Real* book series and movie;

- Remove from the Art & Soulworks website and social media pages all images of Akiane artwork that are not for sale or are sold out, including specific framed versions of Akiane artwork that are no longer available, even if other versions of that piece of artwork are available;

- Correct all incorrect title names for Akiane artwork listed on the Art & Soulworks website or social media pages so that they match the official copyrighted titles of the Akiane artworks that remain in the Art & Soulworks inventory.

### V. Conclusion

To summarize the decisions on the motions for partial summary judgement:

1.      The Defendants' motion for summary judgment for lack of standing on copyright infringement, DMCA, contributory copyright infringement, and inducement of copyright infringement (Counts 1, 6, 10, and 11, respective) is denied.

2.      The Defendants' motion for summary judgement against common law unfair competition (Count 3) and the Illinois Deceptive Trade Practices Act (Count 4) is denied, but granted against unjust enrichment (Count 5).

3.      The Defendants' motion for summary judgment against the DMCA (Count 6) is denied.

4.      The Defendants' motion for summary judgment invoking the derivative-works exception is denied as to copyright infringement, DMCA, contributory

copyright infringement, and inducement of copyright infringement (Counts 1, 6, 10, and 11, respectively).

5.     The Defendants' motion for summary judgment on damages within the statute of limitations as to copyright infringement, DMCA, and breach of contract is denied.

6.     The Defendants' motion for summary judgement on Counts 1, 10, and 11 related to unlicensed framing and free download offers is DENIED.

7.     The Defendants' motion for summary judgement on waiver and estoppel as to copyright infringement (Count 1), trademark infringement (Count 2), common law unfair competition (Count 3), Illinois Deceptive Trade Practices Act (Count 4), unjust enrichment (Count 5), Illinois Right of Publicity Act (Count 9), contributory copyright infringement (Count 10), and inducement of copyright infringement (Count 11) is denied (though judgment is entered against unjust-enrichment claim (Count 5), as discussed above)

8.     The Defendants' motion for summary judgment against the Anti-Cyber-squatting Act claim (Count 7) is granted.

9.     The Defendants' motion for summary judgment against the claim for tortious interference with prospective advantage (Count 8) is granted.

10.     The parties' cross-motions for summary judgment on the claim under the Illinois Right of Publicity Act (Count 9) are denied.

11.     The Plaintiff's motion for summary judgment for unpaid royalties (Count 12) is granted, and the motion of Art Akiane Gallery against the unpaid-commissions counterclaim (Counterclaim 2) is granted.

12.     The Plaintiff's motion for summary judgment against the claim for breach of the duty of good faith and fair dealing (Counterclaim 3) is granted.

13.     The Plaintiff's motion for summary judgment against the unjust-enrichment counterclaim (Counterclaim 4) is granted.

14.     The Plaintiff's motion for summary judgment against the counterclaims for tortious interference with contract and tortious interference with business expectations (Counterclaims 5 and 6) is granted.

15.     The Plaintiff's motion for summary judgment against the counterclaim for violation of DMCA takedown procedure (Counterclaim 7) is granted.

ENTERED:

                s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2026